IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN NOAKES <br><br> Plaintiff, <br><br> v. <br><br> CASE WESTERN RESERVE UNIVERSITY, ET AL <br><br> Defendants | Case No. 1:21-cv-01776 <br><br> Judge: <br><br><br> AFFIDAVIT OF JOHN NOAKES |

1. I am the Plaintiff in this case. I am submitting this Affidavit in support of the Motion for a Preliminary Injunction.

2. I am a student at the Case Western Reserve University School of Medicine, which is part of Case Western Reserve University (collectively "CWRU"). I believe that the disclosure of my identity will cause me irreparable harm as this case involves matters of the utmost personal intimacy, including education records protected from disclosure by the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g; 34 CFR Part 99.

3. In fall 2020, I was accused of sexual misconduct by another student, referred to here as "Jane Roe." CWRU investigated the matter and, following a hearing, I was cleared of all charges. CWRU officials – including the Title IX Coordinator and a Dean in the Medical school – were unhappy with the outcome began a retaliatory campaign of intimidation and harassment against me. I have been subjected to investigations and disciplinary action by the Medical School's Committee on Students ("COS"). This campaign culminated in threats from school administrators that I could be expelled if I continued to assert my rights under Title IX or pursue retaliation complaints against administrators.

1

4. I began dating Jane Roe in Summer 2020.

5. Jane Roe alleges that I sexually assaulted her on October 20, 2020. I unequivocally deny Jane Roe's allegations. Jane Roe had previously threatened to report me to the Title IX Office because she was upset we broke up.

6. On November 7, 2020, I reported to the CWRU Office of Equity that I was being threatened and harassed by Jane Roe. A few hours later, at 1:29 pm, Dr. Steven Ricanati, the associate dean for student affairs for the School of Medicine, reported to the Office of Equity that Jane Roe had been sexually assaulted by me.

7. On November 11, 2020, Jane Roe indicated to the Title IX investigators that she did not want to move forward with a formal complaint, but simply wanted a no-contact directive. The next day, I indicated to the Title IX Office that I did not wish to proceed with an investigation against Jane Roe at the time but may choose to move forward at a later date.

8. On December 24, 2020, Jane Roe decided to move forward with a formal complaint against me. This complaint was investigated and CWRU conducted a hearing. I was found "not responsible," meaning I was not guilty of misconduct.

9. Administrators at CWRU immediately began a campaign of harassment in retaliation for my defending myself in the Title IX process. The CWRU investigators were unhappy that I had been found not responsible because they believed Jane Roe. For example, Dr. Ricanati told me during the investigation that I should get therapy, and that my belief I did not need therapy was "medically uninformed" and "toxic masculinity."

10. After I was exonerated at the hearing, I posted on a GroupMe group chat used by the Medical School, "All glory and honor to the Most High, who is my refuge and fortress. That's all, thanks." I also changed my name to "[John Noakes] (1-0)."

a. I was immediately removed from the GroupMe chat group by another student who acted as a group moderator. This had the effect of excluding me from class discussions and most of the communication from class student representatives regarding curricular activities.

b. Students submitted complaints to the School of Medicine criticizing me for participating in the Title IX process. One of the complaints allegedly said, "It should not matter if [Jane Roe] could not prove it. I know something bad happened."

c. Darnell Parker, the Senior Associate Vice President for Equity, requested an "urgent conversation" on Zoom. During this meeting, he admitted that my post had not violated any school rules or policies in his posts and that he was free to discuss the Title IX process with anyone. Nonetheless, Parker said I needed to "watch myself."

d. Students circulated a "petition" encouraging their classmates to refuse to work me. Dr. Ricanati was informed of the petition but took no action.

e. On April 16, 2021 Dr. Ricanati sent a whole-school email stating that, "your words have consequences" and threatening discipline for "gloating over the misfortune of others."

f. On April 19, 2021, Dr. Ricanati called me. He was upset about outcome the Title IX process and threatened me with institutional discipline. I submitted a retaliation complaint against Dr. Ricanati and Dr. Parker with the Office of Equity on the same day.

11. On April 21, 2021, Dr. Ricanati informed me that Dr. Marjorie Greenfield, his subordinate, would be in touch about the disciplinary process. That same day, Dr. Ricanati sent an email to a close friend of Jane Roe inviting other students to a meeting to discuss various topics, including "the CWRU Title IX process" and "Identify[ing] potential action items." I was not informed of the meeting.

12. On April 27, 2021 I was referred to the COS for disciplinary action, including possible dismissal. When I complained to Dr. Greenfield and others that the actions of Parker and Ricanati may be retaliatory in nature and specifically objected that review by the COS appeared to be retaliatory, I was told that "the medical school will proceed with the process without your active participation."

13. On May 13, 2021, I appeared before the COS. The COS ordered me undergo empathy coaching and provide a letter from a behavioral therapist stating that I am receiving therapy.

    a. The COS action is likely to damage my reputation and future employment prospects. By suggesting that I engaged in unprofessional conduct, the COS may affect my ability to work with professors at the medical school and obtain recommendations for residency programs.

    b. The COS action is likely to deter other students from complaining about the CWRU process or bringing their own Title IX retaliation complaints. I am aware of classmates who believe that the school is trying to "send a message" by subjecting me to review and sanctions by the COS.

14. Since the COS, I have been subjected to further retaliatory intimidation and harassment.

    a. Dr. Greenfield attempted to coerce and pressure me to take the next year off in order to accommodate the desires of Jane Roe.

    b. Since school re-started, I have been subjected to further harassment and intimidation by Jane Roe, including further false and malicious allegations against me. I have informed CWRU administrators, but no action has been taken against Jane Roe. I was told by my "empathy coaches" that I should "put blinders on" while on campus.

    c. On September 1, 2021, Dr. Greenfield told me I should not submit any complaints to the Title IX Office because: even though "this is unfair," Title IX "only creates a toxic

4

environment." She warned me that bad things could happen if I pursue my Title IX complaint against Jane Roe.

    d. On September 7, 2021 Dr. Greenfield told me that "you need to not make your own Title IX report… You need to just hunker down and do your own stuff if you're going to stay in the class." She then threatened me if I complained about the CWRU process or retaliation. She said, "You're digging yourself a hole, honey" and "I can't protect you."

15. I am fearful that CWRU will continue to take additional retaliatory actions against me through the COS. In addition to the comments by Greenfield, I received a letter from the Title IX office indicating that my "unprofessional" conduct was being referred to the COS. I am not aware the Jane Roe has similarly been referred to the COS.

16. Further adverse actions by the COS will deny me the benefits of education at my chosen school, damage my academic and professional reputations, and may affect my ability to enroll at other institutions of higher education and to pursue a career.

17. The actions by the COS so far, and the threatened future actions, have caused, and are likely to cause, humiliation, damage to my reputation, and a concomitant harm to future employment prospects. In particular, the COS process risks damaging my chances to obtain a residency through the match program following medical school. Even the threat of being hauled before the COS – with the risk of expulsion – is likely to deter my fellow students from complaining about the CWRU Title IX process, defending themselves in a Title IX process, or challenging retaliatory actions.

Pursuant to 28 U.S. Code § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of September 2021.


[REDACTED] a/k/a John Doe

.