IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NOAKES, | ) | Case No. 1:21-cv-01776 |
| | ) | |
| Plaintiff, | ) | Judge Pamela A. Barker |
| | ) | |
| v. | ) | **DEFENDANT'S OPPOSITION TO** |
| | ) | **PLAINTIFF'S EMERGENCY** |
| CASE WESTERN RESERVE UNIVERSITY, | ) | **MOTION FOR TEMPORARY** |
| *et al.*, | ) | **RESTRAINING ORDER** |
| | ) | |
| Defendants. | ) | |

Plaintiff is asking this Court to contradict the letter and spirit of Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§1681-1688 ("Title IX") and to create dangerous precedent with widespread implications by foreclosing Defendant Case Western Reserve University ("CWRU" or "Defendant" or the "University")[1] from investigating a complaint of retaliation involving cyberbullying made by a female student who previously complained of sexual assault. Title IX requires all educational institutions that receive federal funds, including CWRU, to maintain policies prohibiting discrimination on the basis of sex and to investigate complaints of sexual misconduct and related retaliation and to remediate violations of these policies. Consistent with these obligations, CWRU maintains a Sexual Harassment Policy[2] ("the Policy"). Individuals who experience conduct prohibited by the Policy are directed to report the behaviors to CWRU's

---

[1] The Complaint improperly names "Case Western Reserve University School of Medicine" as a defendant. CWRU's School of Medicine is not a separate legal entity. The corporate entity subject to suit is CWRU and, therefore, no response on behalf of "Case Western Reserve University School of Medicine" is necessary or appropriate.

[2] During the 2020-2021 academic year, CWRU maintained an Interim Sexual Harassment Policy, available at < https://case.edu/equity/sites/case.edu.title-ix/files/2020-08/Interim%20Sexual%20Harassment%20%20Policy.pdf>. Effective September 13, 2021, CWRU maintains a Sexual Harassment Policy, available at <https://case.edu/equity/sexual-harassment-title-ix/sexual-harassment-policy>.

1

Title IX Coordinator, and CWRU's Office of Equity reviews the case. In the fall of 2020, Jane Roe,[3] a female student, submitted a complaint to CWRU's Office of Equity alleging Plaintiff sexually assaulted her. CWRU investigated the allegations and found that Plaintiff did not violate the Policy.

On September 7, 2021, Ms. Roe complained to Rachel Lutner, Senior Associate Vice President – Equity and Title IX Coordinator, that a Tumblr website contained content she believed was in retaliation for her sexual assault complaint against Plaintiff. On September 10, 2021, Ms. Lutner informed Ms. Roe that there was insufficient information to connect Plaintiff to the Tumblr posts and that CWRU would not be further investigating. On September 12, 2021, Ms. Roe complained to Ms. Lutner that the content of the posts about Ms. Roe on Tumblr were increasingly more harassing and intimidating and contained specific information about Ms. Roe and her prior Title IX complaint against Plaintiff, including accusations that Ms. Roe was not clear-headed and fabricated lies about Plaintiff, that she engaged in self-destructive behaviors, that she believes she can get away with anything, and that she follows Plaintiff around and carries pepper spray with her. Ms. Roe asserted that Plaintiff was using the Tumblr website to retaliate against her for her earlier complaint that he sexually assaulted her. The posts also disclosed details only accessible to Plaintiff. For example, the posts contained screenshots originating from Plaintiff's phone depicting text messages between Plaintiff and Ms. Roe, information regarding Plaintiff's private discussions with his mother, a description of how █████████████████████████████ █████████████████[4] and details about "his first ███████████████." In the days

---

[3] The female student complainant is referred to in Plaintiff's Complaint as Jane Roe.

[4] When Plaintiff filed the Complaint, he also filed a Motion for Leave to Proceed Anonymously in order to protect his identity. The Tumblr site identifies Plaintiff by name and includes detailed and specific information about Plaintiff, such that a simple Google search for these descriptions results in one hit – only the Tumblr site. Accordingly, these

2

that followed, the posts attacked and harassed others, including student leaders in the medical school (*e.g.* "I can't think of a better example of what an adult teacher's pet looks like"). And, members of the School of Medicine community began receiving invitations to a new Instagram account, which posted a link to the Tumblr content. Ms. Lutner reviewed the additional posts and determined that, at that point, there was a reasonable basis to believe that Plaintiff, or someone acting on his behalf, shared or posted information on social media to intimidate, embarrass, harass, or punish Ms. Roe for filing a Title IX complaint against Plaintiff. By September 14, 2021, Ms. Lutner decided to investigate the Tumblr posts, and she scheduled a call with Ms. Roe for September 15, 2021 to communicate her decision, before Plaintiff even filed this lawsuit.[5]

Plaintiff asks this Court to hold him above the law and CWRU's policies by terminating the University's investigation because it ***could potentially*** lead to negative consequences for him. "Judges must be sensitive to the effects on education of heavy-handed judicial intrusion into school disciplinary issues… [and] one component of academic freedom is the right of schools to a degree of autonomy in the management of their internal affairs." *Doe v. St. Francis School Dist.*, 694 F.3d 869, 873 (7th Cir. 2012). *See also Faparusi v. Case Western Reserve Univ.*, No. 1:16 CV 1586, 2016 WL 6645995, *1 (N.D. Ohio Nov. 10, 2016) (Judge Boyko denying a motion for a temporary restraining order: "the Sixth Circuit has affirmed that courts will not interfere with a private university's right to enforce disciplinary standards without a showing of clear abuse of discretion"). If this Court grants Plaintiff's Motion, and prevents CWRU from investigating

---

descriptions have been redacted to protect Plaintiff's identity. CWRU has filed a Motion for Leave to File Under Seal in order to provide this Court with an unredacted copy of this Opposition along with a full copy of the Tumblr content.

[5] Indeed, Plaintiff was well aware, before filing the Complaint, that CWRU was reviewing the Tumblr content, as Ms. Lutner asked Plaintiff if he was involved with the Tumblr posts on September 10, 2021, which Plaintiff referenced in the Complaint. (*See* Compl., ¶ 98.)

3

allegations of retaliation, it would effectively sanction cyberbullying against individuals who filed sexual misconduct complaints under Title IX that did not result in findings against the respondents. Halting the investigation would have a chilling effect on the reporting of alleged sexual misconduct in the University community. It would send a loud and clear message: private colleges and universities have no authority to administer their disciplinary policies and procedures, thereby eviscerating Title IX and the well-established rights of private colleges and universities to establish and enforce rules of conduct.

CWRU has not yet started its investigation, no hearing has been set, and no findings have been made. Courts routinely deny similar motions for temporary restraining orders when there has been no hearing, no findings or decisions, and no sanction or discipline. *See, e.g., Roe v. Director, Miami Univ., Office of Community Standards*, No. 1:19-cv-136, 2019 WL 1439585, at *9 (S.D. Ohio April 1, 2019) (denying plaintiff's request for injunctive relief where the lawsuit was filed to prevent the Title IX hearing because no finding had been issued); *Doe v. Oberlin College*, No. 1:20CV669, 2020 WL 1696979, at *2 (N.D. Ohio April 7, 2020) (denying injunctive relief and dismissing plaintiff's Title IX claims as premature because no hearing had been scheduled); *Doe v. The Ohio State Univ.*, 136 F.Supp.3d 854, 864-65 (S.D. Ohio 2016) (denying student's motion for temporary restraining order and preliminary injunction where the plaintiff's claims were not yet ripe as "there has been no… hearing, no decision, no sanction"); *Doe v. The Univ. of Chicago*, No. 16 C 08298, 2017 WL 818859, at *5 (N.D. Ill. Sept. 22, 2016) (denying the respondent's request for injunctive relief where the lawsuit was filed in the early stages of the Title IX process and finding that "[i]f a hearing is eventually held, we do not know that harm will result; a tribunal might very well clear [the plaintiff] of any wrongdoing"). CWRU respectfully requests that this Court do the same here.

4

## STATEMENT OF FACTS

In the fall of 2020, Plaintiff and Ms. Roe began their studies at CWRU's School of Medicine and shortly thereafter commenced a romantic relationship. (Affidavit of Rachel Lutner, at ¶ 4b, attached as Exhibit A.) On November 7, 2020, Ms. Roe reported to the Office of Equity that Plaintiff sexually assaulted her on October 20, 2020. (Ex. A at ¶ 4d.) Pursuant to the Policy, CWRU conducted an investigation into the allegations and convened a hearing panel. (Ex. A at ¶ 4d.) Following the hearing, and based on the evidence gathered during its investigation, CWRU found that Plaintiff did not violate the Policy. (Ex. A at ¶ 4d.) On April 15, 2021, CWRU notified Plaintiff of the outcome of its investigation. (Ex. A at ¶ 4e.) That same day, Plaintiff posted the following message on a GroupMe chat to all CWRU first year medical students, including Ms. Roe: "All glory and honor to the Most High, who is my refuge and fortress. That's all, thanks." (Ex. A at ¶ 4e.) Plaintiff also changed his GroupMe handle from "[Plaintiff]" to "[Plaintiff (1-0)]."[6] (Ex. A at ¶ 4e.) Ms. Roe submitted a complaint against Plaintiff alleging that his GroupMe activities were in retaliation for Ms. Roe's filing of a Title IX complaint and that she received a note on her car that read "f*ck you whore." (Ex. A at ¶ 4g.) CWRU determined there was insufficient evidence to hold a hearing and closed the matter. (Ex. A at ¶ 4g.)

On September 7, 2021, Ms. Roe complained to Ms. Lutner that a Tumblr website contained content that she believed was in retaliation for her prior Title IX complaint. (Ex. A at ¶ 7.) Ms. Lutner reviewed the posts. (Ex. A at ¶ 7.) She asked Plaintiff about the posts, and Plaintiff responded that he had no knowledge of the posts and no obligation to look into who posted them. (Ex. A at ¶ 7.) On September 10, 2021, Ms. Lutner informed Ms. Roe that there was insufficient

---

[6] Ms. Roe and other students reported to CWRU that they understood this (1-0) notation to represent the "score," *i.e.* Plaintiff had won round 1, while Ms. Roe had lost this time. (Ex. A at ¶ 4f.)

5

information to connect Plaintiff to the posts, and that CWRU would not be further investigating. (Ex. A at ¶ 7.) On September 12, 2021, Ms. Roe complained to Ms. Lutner that the content of the posts about Ms. Roe on Tumblr were increasingly more harassing and intimidating and contained specific information about Ms. Roe and her prior Title IX complaint against Plaintiff, including accusations that Ms. Roe was not clear-headed and fabricated lies about Plaintiff, that she engaged in self-destructive behaviors, that she believes she can get away with anything, and that she follows Plaintiff around and carries pepper spray with her. (Ex. A at ¶ 7, Ex. 1[7].) The posts also disclosed details only accessible to Plaintiff, including, for example, screenshots originating from Plaintiff's phone depicting text messages between Plaintiff and Ms. Roe, information regarding Plaintiff's private discussions with his mother, a description of how ███████████████████ ███████████████████████████████ details about "his first ██████████ ██████," specific details about Plaintiff's involvement in the Title IX proceedings and how it affected Plaintiff from his perspective, up to date references to communications between Plaintiff and the Office of Equity, communications between Plaintiff and the School of Medicine administrators, a description of how Plaintiff feels in class and while interacting with others, and how Ms. Roe and others apparently look at Plaintiff when walking down the stairs. (Ex. A at ¶ 7, and Ex. 1.) In the days that followed, the posts attacked and harassed others, including student leaders in the medical school (*e.g.* "I can't think of a better example of what an adult teacher's pet looks like"). (Ex. A at ¶ 8, and Ex. 1.) In addition, members of the School of Medicine community, including CWRU employees, began receiving invitations to a new Instagram account, which posted a link to the Tumblr content. (Ex. A at ¶ 9.) Ms. Lutner reviewed the additional posts and,

---

[7] Exhibit 1 to Exhibit A is a copy of the Tumblr posts. CWRU is filing Exhibit 1 to Exhibit A under seal.

on September 14, 2021, before Plaintiff filed the Complaint (and without any knowledge that Plaintiff may be filing a lawsuit), determined that, at that point, there was a reasonable basis to believe that Plaintiff, or someone on his behalf or working with him, may be sharing or posting information on Tumblr to intimidate, embarrass, harass, or punish Ms. Roe for filing a Title IX complaint against Plaintiff, which may implicate the Policy.[8] (Ex. A at ¶ 10, Ex. 1.) On September 14, 2021, before Plaintiff filed the Complaint, Ms. Lutner scheduled a meeting for September 15, 2021 at 9 a.m. to notify Ms. Roe that CWRU would be proceeding with an investigation of her retaliation complaint. (Ex. A at ¶¶ 10, 14.)

## STANDARD OF REVIEW

In analyzing a request for a temporary restraining order, a district court must consider four factors: (1) the plaintiff's likelihood of success on the merits; (2) whether the plaintiff may suffer irreparable harm absent the injunction; (3) whether granting the order or injunction will cause substantial harm to others; and (4) the impact of an injunction upon the public interest. *Déjà vu of Nashville, Inc. v. Metro Gov't of Nashville & Davidson County*, 274 F.3d 377, 400 (6th Cir. 2001). Courts caution that "[a]n injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Reid v. Hood*, No. 10CV2842, 2011 WL 251437, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). As noted by the Supreme Court, a motion for injunctive relief requires "substantial proof" and the standard is "much higher" than that on summary judgment. *Mazurek*, 520 U.S. at 972.

---

[8] As the public Tumblr posts identify Plaintiff by name, CWRU is not including the website address or a copy of the voluminous posts with this Opposition.

7

## LAW AND ARGUMENT

### I. CWRU Is Required By Law To Investigate Title IX Complaints, Including Allegations Of Retaliation For Filing A Sexual Misconduct Complaint.

CWRU is a private university located in Cleveland, Ohio that is subject to the requirements of Title IX and its implementing regulations. Under Title IX, CWRU is required to investigate allegations of sexual misconduct and retaliation and to make disciplinary and remedial decisions that it believes are in the best interest of its educational environment. Retaliation is defined as "[i]ntimidation, threats, coercion, or discrimination… for the purpose of interfering with any right or privilege secured by [T]itle IX." 34 C.F.R. § 106.71. Ms. Roe complained that the content of public posts on Tumblr were harassing and intimidating, and that she believed Plaintiff posted (or assisted with posting) the content in retaliation for Ms. Roe's filing of a sexual assault complaint against him. CWRU is required by law to investigate Ms. Roe's retaliation complaint. Indeed, a failure to investigate such allegations that a person is retaliating against another because that person filed a Title IX complaint against them would violate Title IX and the Policy.

### II. Courts Give Broad Deference To Colleges In Sexual Misconduct Proceedings And Internal Investigations.

It is well-established that universities and colleges must be afforded "deference in their disciplinary decisions and processes." *Doe v. The Ohio State Univ., supra*; *Marshall v. Ohio Univ.*, Case No. 2:15-cv-775, 2015 WL 1179955, *10 (S.D. Ohio Mar. 13, 2015). "Moreover, in the University setting a disciplinary committee is entitled to a presumption of honesty and integrity absent a showing of actual bias." *Doe. v. Univ. of Cincinnati*, No. 1:15-cv-600, 2015 WL 5729328, at *2 (S.D. Ohio Sept. 30, 2015) (*citing McMillan v. Hunt*, No. 91-3843, 1992 WL 168827, at *2

8

(6th Cir. 1992)). Stated differently, "[j]udges must be sensitive to the effects on education of heavy-handed judicial intrusion into school disciplinary issues… [and] one component of academic freedom is the right of schools to a degree of autonomy in the management of their internal affairs." *St. Francis School Dist.*, *supra*, at 873. Indeed, "[a]s a general rule, Title IX is not an invitation for courts to second-guess disciplinary decisions of colleges or universities." *Doe v. Univ. of St. Thomas*, 240 F.Supp.3d 984, 989 (D. Minn. 2017); *see also Stenzel v. Peterson*, No. 17-580, 2017 WL 4081897, at *3 (D. Minn. Sept. 13, 2017). Federal courts in Ohio are generally "reluctant to interfere with [a university's] disciplinary processes, which are specifically designed to 'provide an environment that facilitates learning.'" *Marshall v. Ohio Univ.*, *supra*, at *10 (denying plaintiff's motion for temporary restraining order).

### III. Plaintiff Cannot Establish That He Is Likely To Succeed On The Merits Of His Title IX Retaliation Claim.

To prevail on a Title IX retaliation claim, Plaintiff must prove that: (1) he engaged in protected activity; (2) CWRU knew of the protected activity; (3) he suffered an adverse school-related action; and (4) a causal connection exists between the protected activity and the adverse action. *Bose v. Bea*, 947 F.3d 983, 992 (6th Cir. 2020). Plaintiff cannot meet the high standard required to prove that he suffered an adverse school-related action or that there is a causal connection.

#### A. Plaintiff Cannot Establish That He Suffered An Adverse School-Related Action.

As evidenced by the September 21, 2021 letter from CWRU to Plaintiff, which serves as the impetus for Plaintiff's Motion, CWRU has only just notified Plaintiff that it received a formal complaint against him alleging retaliation in connection with the prior Title IX proceedings involving content posted to Instagram and Tumblr on or around September 10, 2021. (ECF 10-1,

9

PAGEID #310-14.)[9] The September 21, 2021 letter states that "[t]his letter serves as formal notice that CWRU will be conducting a prompt, thorough, and impartial investigation of these allegations" pursuant to its policies. The investigation has not yet begun, no hearing has been set, and no findings have been made. (Ex. A at ¶ 12.) Thus, Plaintiff cannot establish an "adverse action" as no outcome has been reached or is even likely to be reached. *See, e.g., Ludlow v Northwestern Univ.*, 79 F. Supp.3d 824, fn. 5 (N.D. Ill. 2015) (*quoting Keeton v. Morningstar, Inc.*, 667 F.3d 877, 885–86 (7th Cir. 2012) (interpreting Title VII: "no adverse action of any kind was taken against [the plaintiff] as a result of the investigation and the investigation itself was not an adverse action")).

Plaintiff's Motion for Temporary Restraining Order focuses on CWRU's investigation into Tumblr posts in September 2021 and seeks to prevent CWRU from beginning that investigation. Plaintiff's arguments regarding adverse action, however, relate to coaching he received in connection with his GroupMe activities in April 2021. Even if Plaintiff could establish that coaching constitutes an adverse action (which CWRU contends he cannot), the appropriate remedy would not be to prevent CWRU from investigating entirely separate and unrelated allegations of retaliation related to harassing content posted about Ms. Roe and her Title IX proceedings on a public Tumblr page. This would lead to absurd results, essentially insulating a respondent found not liable in one Title IX proceeding from being investigated for unrelated conduct in another Title IX proceeding. Pursuant to its obligations and responsibilities under Title IX and the Policy, CWRU must investigate the new allegations of retaliation just as it would have a duty to investigate

---

[9] Approximately one week before Noakes filed this action, CWRU's Office of Equity received complaints under Title IX relating to the Tumblr account. CWRU had already determined to investigate the matter prior to Plaintiff's filing of the lawsuit. (Ex. A.).

10

an alleged rape by someone previously found not to have violated the Policy in a separate Title IX proceeding.

### B. Plaintiff Cannot Establish That There Is A Causal Connection Between Protected Activity And Adverse Action.

The decision-maker, Ms. Lutner was not involved with the prior Title IX proceedings involving Plaintiff and Ms. Roe. (Ex. A at ¶ 5.) And, at the time she decided and communicated to Ms. Roe that CWRU would be investigating her retaliation complaint, Ms. Lutner was not aware of Plaintiff's filing of a lawsuit. (Ex. A at ¶¶ 10, 14.)

### C. Plaintiff Cannot Establish Irreparable Harm As His Claim Is Not Ripe For Adjudication.

In *Doe v. The Ohio State University*, the court addressed a similarly pre-mature claim where a hearing was yet to be held and a decision was not yet made. The Court determined that the majority of claims were not ripe, and it refused to disrupt the process midway. *Supra* at 864-865. Because CWRU has not even begun its investigation, and there is no evidence as to the potential outcome of the investigation, Plaintiff's Motion is premature and not yet ripe, as he cannot establish irreparable harm.

To establish irreparable harm, Plaintiff must show harm that is certain and immediate, rather than speculative or theoretical. *Coalition of Radioactive Materials Users, Inc. v. Griepentrog*, 945 F.2d 150, 154 (6th Cir. 1991). Further, the possibility that adequate relief may be available at a later date weighs heavily against a claim of irreparable harm. *NACCO Materials Handling Group, Inc. v. Toyota Materials Handling USA, Inc.*, 246 Fed. Appx. 929, 943 (6th Cir. Tenn. 2007) (*citing Sampson v. Murray*, 415 U.S. 61, 90 (1984)). Because CWRU has not even begun its investigation yet, Plaintiff has not and cannot make a clear showing that he is in danger of imminent and irreparable harm, as he has not been damaged. *See, e.g., Jackson v. Macalester*

11

*College*, No. 16-cv-0448 (WMW/BRT), 2016 WL 3029932, *4 (D. Minn. Mar. 11, 2016) (denying injunctive relief at outset of disciplinary process for lack of irreparable harm); *Doe v. The Ohio State Univ.*, *supra* (same); *Wiley v. Texas State Univ.*, No. 1:18-CV-930-RP, 2019 WL 317247, at *4 (W.D. Texas Jan. 24, 2019) (dismissing plaintiff's claim as unripe because any risk of irreparable harm to plaintiff's reputation and future career opportunities were "contingent future events that may not occur as anticipate, or indeed may not occur at all" because the University's administrative process had not concluded). *See also Doe v. The Univ. of Chicago*, *supra* (denying the respondent's request for injunctive relief where the lawsuit was filed in the early stages of the Title IX process and finding that "[i]f a hearing is eventually held, we do not know that harm will result; a tribunal might very well clear [the plaintiff] of any wrongdoing"). In his Motions, Plaintiff focuses on the alleged harm or likely impact of the School of Medicine's Committee on Students' proceedings concerning matters unrelated to the Tumblr blog posts at issue in the September 21, 2021 letter. There is no evidence to suggest that harm is certain and immediate from CWRU's investigation into the Tumblr posts, as CWRU has not even begun its investigation into these allegations.

Here, Plaintiff seeks injunctive relief ***before*** CWRU applies its internal procedures and/or makes any determination. CWRU has only notified Plaintiff that it received a formal complaint of retaliation and that it would be investigating. There is no imminent and irreparable harm sufficient to justify the requested temporary restraining order, and Plaintiff's Motion seeking to prevent CWRU from even beginning an investigation should be denied. *See Marshall v. Ohio Univ.*, *supra*, at *10 (denying plaintiff's motion for temporary restraining order because "the Court is reluctant to interfere with [the University's] disciplinary processes, which are specifically designed to 'provide an environment that facilitates learning.'"); *Jackson*, *supra*, at *2 (where the college had

not yet interviewed the respondent – should he elect to participate – regarding the alleged sexual assault, "the Court will not speculate as to whether [the college] will determine that [the respondent] is responsible for any violations of the Policy, or what sanction or remedy (if any) might be imposed" as such "speculative harm cannot justify the issuance of [injunctive relief]").

### IV. Even if Plaintiff Could Establish Irreparable Harm (Which He Cannot), Or A Substantial Likelihood of Success On The Merits (Which He Cannot), The Potential Harm To Jane Roe, CWRU, And The University Community, As Well As The Potential Impact Of The Requested Injunction On The Public Interest, Weigh Heavily In Favor Of Denying Plaintiff's Motion.

Even if Plaintiff could establish irreparable harm (which he cannot) or a substantial likelihood of success on the merits (which he cannot), the potential harm to the public in granting the requested injunction greatly outweighs the harm to Plaintiff. This Court must consider the harm to Jane Roe, the female complainant, and the University community if the Court were to halt this investigation. If it turns out that Plaintiff violated the Policy, and there is no access to adjudication and remediation under the Policy, then Ms. Roe and the University community will have been failed and the letter and spirit of Title IX frustrated. Allowing Plaintiff's request for judicial intervention in CWRU's internal Title IX process in this case, especially when that process is only beginning, would invite all respondents in sexual misconduct proceedings to preempt Title IX investigations by rushing to court as soon as they are notified that an allegation exists. Because granting Plaintiff's Motion in this case will cause substantial harm to the complainant Jane Roe and to CWRU's community as a whole and will threaten the significant public interest in the effectiveness and autonomy of on-campus sexual misconduct investigation procedures, this Court should deny Plaintiff's Motion.

## CONCLUSION

For the reasons outlined above, Defendant respectfully requests that the Court deny Plaintiff's *Emergency Motion for Temporary Restraining Order*.

Respectfully submitted,

*/s/ Amanda T. Quan*
John Gerak (#0075431)
Amanda T. Quan (#0086623)
Alexandria A. Gardella (#0100000)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
amanda.quan@ogletree.com
alexandria.gardella@ogletree.com

*Attorneys for Defendant Case Western Reserve University*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 24, 2021 a copy of the foregoing *Defendant's Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order* was electronically filed with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *Amanda T. Quan*
*One of the Attorneys for Defendant*

48651190.10