IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN NOAKES, | Case No. 1:21-cv-1776-PAB |
| Plaintiff, | Judge: BARKER |
| v. | REPORT OF PARTIES' PLANNING MEETING UNDER FED. R. CIV. P. 26(f) AND LR 16.3(b)(3) |
| CASE WESTERN RESERVE UNIVERSITY, | |
| Defendant. | |

1. Pursuant to Fed. R. Civ. P. 26(f) and LR 16.3(b)(3), meetings were held on November 8, 2021 and March 7, 2022, and were attended by:

    Joshua Engel, counsel for Plaintiff

    Amanda Quan, counsel for Defendant

2. The parties have engaged in preliminary expedited discovery, and have begun discovery in this case, and, therefore stipulate that the pre-discovery disclosures required by Fed. R. Civ. P. 26(a)(1) are not necessary.

3. The parties recommend the following track: Standard

4. The CWRU process related to the Tumblr Matter that was the subject of the Motion for a Temporary Restraining Order is ongoing. Plaintiff believes that this case will be suitable for mediation following the completion of this process. Following the conclusion of the internal proceedings relating to the Tumblr posts, the parties will notify the Court if they believe this case is suitable for mediation at that time.

5. The parties do not consent to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

1

6.	Electronically Stored Information. The parties agree to the following method for conducting discovery of electronically-stored information:

If ESI is a subject of discovery, it should be requested with as much specificity/particularity as possible to minimize the required expense, including the form or forms in which it should be produced:

**Form of production.**  To the extent that the parties engage in any e-discovery, unless otherwise agreed upon, the parties may disclose/produce ESI in hardcopy or static form (e.g., searchable .pdf or .TIFF, to the extent searchable files are possible), thereby allowing documents produced to be indexed and individually marked through "bates" stamping.  Consistent with Federal Rule of Civil Procedure 34(b)(iii), the parties presumptively need not produce the same ESI in more than one form; however, after the production of ESI in a hardcopy or static form, the parties may request disclosure of metadata or native files for particular documents where good cause has been demonstrated, *e.g.*, when the original creation date of a document is at issue and disputed, or when a static image is not reasonably usable, *e.g.*, when a .pdf image is unable to capture/display all column/information contained in a spreadsheet such as an Excel file.  If relevant ESI existing in a database or databases in a proprietary format will be produced, unless there is a compelling reason why the original ESI in native format for such information need be produced or another form is more appropriate, the parties intend to "produce" information from these databases by pulling data into more reasonably usable form, *e.g.*, Excel spreadsheets.  Consistent with Fed. R. Civ. P. 34(b), on-site inspections/testing of electronic media shall be permitted only where good cause for the same has been demonstrated.

**Search parameters/terms.**  The parties already engaged in expedited and preliminary discovery, which included Defendant's search for and production of initial ESI.  Once CWRU's internal proceedings regarding the Tumblr posts described in the Complaint have concluded,

2

Defendant will produce additional responsive, non-privileged ESI using the keyword searches and processes reasonably anticipated to respond to outstanding document requests. The parties will meet and confer to attempt to reach an agreement on further ESI, if appropriate.

**Preservation of ESI.** The parties have taken reasonable steps to ensure that documents and ESI and other tangible objects are not destroyed, removed, mutilated, altered, concealed, deleted or otherwise disposed of. Plaintiff previously requested that ESI be preserved and that CWRU employees be instructed to preserve and ESI maintained on personal devices such as cell phones. CWRU does not agree to expand its obligations beyond that which is required by the civil rules; CWRU maintains, however, that it has taken (and will continue to take) reasonable steps to preserve relevant documents and ESI. The parties agree that any party may delete or recycle active files electronically stored on servers or hard drives reasonably likely to contain documents after the party has made and secured a copy of the active files which contain information within the scope of this proposal contained on said data storage device. A party need not preserve information electronically stored on servers, hard drives, or similar locations not reasonably likely to contain information within the scope of this proposal. Plaintiff maintains that a party must make an effort to obtain ESI stored on personal electronic devices of employees. Again, CWRU does not agree to expand its obligations beyond that which is required by the civil rules; CWRU maintains, however, that it has taken (and will continue to take) reasonable steps to preserve relevant documents and ESI. The fact that a particular document or tangible object may be included in the scope of the parties' agreement is not intended to, and does not, establish or suggest that the document is discoverable, relevant to, or admissible in this matter. By agreeing to preserve documents in accordance with the terms hereof, the parties do not waive any objection to the ultimate discoverability or admissibility of any such documents.

**Inadvertent Production.** The parties agree to the following procedures regarding claims of privilege or of protection as trial-preparation material asserted after production: If a producing party inadvertently or mistakenly produces information, documents or tangible items that should have been withheld subject to a claim of attorney-client privilege or work product immunity, such production shall not prejudice such claim or otherwise constitute a waiver of any claim of attorney-client privilege or work product immunity for such information, provided that the producing party promptly makes a good-faith representation that such production was inadvertent or mistaken and takes prompt remedial action to withdraw the disclosure upon its discovery. Within three (3) business days of receiving a written request to do so from the producing party, the receiving party shall return to the producing party any documents or tangible items that the producing party represents are covered by a claim of attorney-client privilege or work product immunity and were inadvertently or mistakenly produced. The receiving party shall also destroy all copies or summaries of, or notes relating to, any such inadvertently or mistakenly produced information; provided, however, that such an order shall not preclude the party returning such information from making a motion to compel production of the returned information on a basis other than a waiver because of its inadvertent production as part of a discovery production. The producing party shall retain copies of all returned documents and tangible items for further disposition.

7. Recommended Discovery Plan:

    (a) Describe the subjects on which discovery is to be sought and the nature and extent of discovery.

Plaintiff intends to seek discovery related to liability and damages. This discovery is reasonably anticipated to include (i) discovery on Plaintiff's retaliation claim relevant under the framework described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); (ii) discovery on Plaintiff's deliberate indifference claim relevant under *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629 (1999); and (iii)

4

discovery on Plaintiff's selective enforcement and erroneous outcome claims relevant under the framework described in *Yusuf v. Vassar College*, 35 F.3d 709 (2d Cir. 1994).  Discovery on Plaintiff's breach of contract claim is likely to be included in (i) and (ii).

Defendant intends to seek discovery related to Plaintiff's claims and alleged damages by way of deposition, interrogatories, requests for production of documents, and other permissible discovery vehicles.

(b) Discovery cut-off date:  September 30, 2022 (or, if the complaint is amended after May 27, 2022, four months after the filing of any amended complaint)

8.     Recommended dispositive motion date:  December 30, 2022

9.     Recommended expert discovery date:  November 30, 2022

> Expert report(s) by party initially seeking to introduce expert testimony recommended due date: October 17, 2022
>
> Responsive expert report(s) due date:  November 17, 2022

10.    Recommended cut-off date for amending the pleadings and/or adding additional parties:  May 27, 2022 or within 14 days of the completion of any CWRU internal proceedings related to the Tumblr matter, whichever is later.  Defendant does not object to the filing of an Amended Complaint following the completion of the CWRU internal proceedings related to the Tumblr matter.

11.    Recommended date for Status Hearing:  June 2022

12.    Recommended date for Settlement Conference:  July 2022

13.    Other matters for the attention of the Court:

a.     The parties anticipate presenting a proposed Protective Order for the Court's approval.  The Protective Order is necessary to protect the confidentiality of personal identifying information protected from disclosure by the Federal Educational and Privacy Rights Act ("FERPA"), or other confidential information that may be exchanged during discovery.

b. CWRU's internal proceedings relating to the Tumblr posts described in the Complaint are pending and in progress. The parties agreed to stay Defendant's discovery obligations until seven (7) days following the completion of these internal proceedings. In the event that the internal proceedings are not completed by the end of April, the parties may request that the Court modify the dates recommended in this Report.

c. Plaintiff intends to seek discovery of information and documents concerning any investigation or adjudications of any formal or informal complaints or reports of sexual misconduct or retaliation made to CWRU from 2016 to the present.

CWRU maintains that the information and documents sought by these discovery requests (and by the related third-party subpoena issued by Plaintiff to the law firm of Baker & Hostetler, which CWRU frequently retains and has retained to conduct various investigations) is not relevant to Plaintiff's claims in this action, is not proportional to the needs of the case, and is outside the proper scope of discovery under the Federal Rules of Civil Procedure. Further, CWRU opposes disclosure of the requested documents because they are highly sensitive and confidential documents about persons who are not parties to this action, these documents are protected from disclosure by the Federal Educational and Privacy Rights Act ("FERPA"), and disclosure would also violate CWRU's policy on maintaining an individual's privacy, including the privacy of those who make Title IX complaints and those who respond to those complaints.

CWRU notes that discovery does have "ultimate and necessary boundaries," and that, "[w]hen the requested documents implicate third-party privacy interests, a court may require that the requesting party make a 'compelling showing of relevance' before ordering production." *Briggs v. Board of Trustees Columbus State Community College*, 2009 WL 2047899, *3 (S.D. Ohio 2009). To be compelling, "a party seeking the discovery… must demonstrate, notwithstanding the breadth of discovery, that the value of the information sought would outweigh the privacy interests of the affected individuals." *Id.* This

standard is further heightened where student records are involved. *See, e.g., Alig-Mielcarek v. Jackson*, 286 F.R.D. 521, 526 (N.D. Ga. 2012) (courts permit discovery of education records only when the party requesting the records has met a "significantly heavier burden" to show that its interests in obtaining the records outweighs the significant privacy interest of the students" – this standard applies even where personally identifiable information regarding students is redacted). Overly broad and untailored requests made without a compelling justification are not permissible, and courts regularly protect against such fishing expeditions. *See, e.g., Theidon v. Harvard Univ.*, No. 15-cv-10809-LTS, 2016 WL 5024195 (D.Mass. 2016) (granting defendants' motion to quash subpoena issued to non-party and cautioning that "[t]here is a grave 'imbalance between the need for' such documents and 'the burden sought to be placed on the non-party'"); *Khan v. Abercrombie & Fitch*, 201 F.3d 431 (2nd Cir. 1999) (affirming denial of plaintiff's "broad discovery request for all complaints… for the preceding ten years [finding it] was not reasonably calculated to elicit admissible evidence and would have imposed greater costs on [the company] than benefit to [plaintiff's] case").

CWRU notes that Plaintiff is not seeking statistical data, but rather complete investigative files, unduly burdensome email searches, and other records concerning any complaints or reports of sexual misconduct or retaliation filed by any and all non-party faculty, staff, or students, including for numerous years prior to Plaintiff's enrollment at CWRU. CWRU is in the process of determining the number of relevant complaints and investigations to facilitate and further its discussions with Plaintiff regarding these discovery requests.

Plaintiff maintains that the information sought is relevant to Plaintiff's Title IX claim in order to evaluate if there has been a past pattern and practice of gender discrimination. The Sixth Circuit has held that the causal element of a Title IX claim could be established by evidence concerning how the school handled other cases involving allegations of sexual assault. *Doe v. Miami Univ.*, 882 F.3d 579, 594 (6th Cir. 2018) (inference of gender discrimination could be shown from "statistical

7

evidence" and broad discovery into the facts and circumstances of other cases in order to determine whether "the alleged patterns of gender-based decision-making, . . . in fact, exist"). This is precisely the type of discovery permitted in other Title IX cases. In *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2015 U.S. Dist. LEXIS 141218 (Oct. 16, 2015), a court explained:

> [The student's] Title IX claim alone presents good cause for such… discovery of at least the records of sexual misconduct proceedings… Stated simply, if The Ohio State University has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation. Determining whether such a problem exists necessitates looking at the data and the context surrounding that data. Given such inarguable relevance, the Court finds it remarkable that the OSU Defendants would argue that good cause is lacking.

2015 U.S. Dist. LEXIS 141218, at *5-6. *See also Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *12 (Oct. 15, 2018) (school conceded that such files were relevant to a Title IX claim); *Doe v. Rollins College*, M.D.Fla. No. 6:18-cv-1069-Orl-37LRH, 2019 U.S. Dist. LEXIS 236677, at *11-12 (Apr. 10, 2019) (files pertaining to other investigations are relevant to claim that school "has engaged in a pattern of discrimination against male students who are accused of sexual assault" and that school's "policies for investigating sexual violence treat men differently than women… by, among other things, failing to conduct full and fair investigations.").

Plaintiff observes that "Federal policy favors broad discovery in civil rights actions." *Inmates of Unit 14 v. Rebideau*, 102 F.R.D. 122, 128 (N.D.N.Y.1984). Plaintiff also observes that the Sixth Circuit has held that FERPA does not prohibit the release of records so long as student's personal identifying information is redacted. *See, e.g., United States v. Miami Univ.*, 294 F.3d 797 (6th Cir. 2002).

8

Respectfully submitted,

FOR PLAINTIFF:

    /s/ Joshua Engel
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

FOR DEFENDANT:

    /s/ Amanda Quan
John Gerak (#0075431)
Amanda T. Quan (#0086623)
Alexandria A. Gardella (#0100000)
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
amanda.quan@ogletree.com
alexandria.gardella@ogletree.com

**CERTIFICATE OF SERVICE**

This certifies that the foregoing was filed electronically on March 9, 2022. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

    /s/ *Amanda T. Quan*    
Amanda T. Quan (0086623)
