# SEXUAL HARASSMENT POLICY AND PROCEDURES FOR FACULTY, STUDENTS, EMPLOYEES, AND THIRD PARTIES

Case Western Reserve University

**Title:** Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties

**Effective date:** September 13, 2021

**Responsible Official:** Senior Associate Vice President for Equity

**Responsible University Office:** Office of Equity

**Revision History:** 2014, 2016, 2021

**Related legislation and University policies:** Title IX of the Education Amendments of 1972

**Review Period:** 5 Years

**Date of Last Review:** 2021

**Relates to:** All Faculty, Students, Employees and Third Parties

# Table of Contents

Table of Contents                                                                                              3

I. GENERAL PROVISIONS                                                                          7

A. Application                                                                                              7

B. The Title IX Coordinator                                                                       7

C. Terminology                                                                                           8

D. Independence and Conflict-of-Interest                                              9

E. Supportive Measures                                                                           10

F. Emergency Removal                                                                             11

G. Jurisdiction of CWRU                                                                          11

H. Promptness                                                                                          12

I. Time Limits on Reporting                                                                      13

J. Online Sexual Harassment                                                                   13

K. Sexual Harassment                                                                             13

L. Consent, Incapacitation and Coercion                                              17

M. Relationships Involving Authority or Power                                     18

N. Retaliation                                                                                           18

O. Grievance Process Pool                                                                      19

2. Investigator, Panel Member Appointment and Advisor                    19

3. Pool Member Training                                                                          19

P. Mandated Reporting                                                                            20

1. Confidential Resources                                                                        20

2. Mandated Reporters and Formal Notice/Complaints                        21

Q. When a Complainant Does Not Wish to Proceed                             22

R. Federal Timely Warning Obligations                                                  22

S. False Allegations and Evidence                                                          23

T. Amnesty for Complainants and Witnesses                                        23

U. Federal Statistical Reporting Obligations                                         23

V. Academic Freedom                                                                             24

W. Recordkeeping                                                                                          24

X. Disabilities Accommodations in the Resolution Process                                                 25

Y. Revision of this Policy and Procedures                                                                25

Z. Statement of the Rights of the Parties                                                                25

See Appendix A.                                                                                          25

II. RESOLUTION PROCESS FOR ALLEGED VIOLATIONS OF THE POLICY ON SEXUAL HARASSMENT (PROCESS
"A")                                                                                                    26

A. Notice and the Formal Complaint                                                                       26

B. Initial Assessment                                                                                    26

1. Violence Risk Assessment                                                                              27

2. Dismissal (Mandatory and Discretionary)                                                               28

C. Counterclaims                                                                                         29

D. Right to an Advisor                                                                                    29

1. Who Can Serve as an Advisor                                                                            29

2. Advisor's Role in Meetings and Interviews                                                             29

3. Advisors in Hearings/University-Appointed Advisor                                                     29

4. Pre-Interview Meetings                                                                                 30

5. Advisor Violations of CWRU Policy                                                                      30

6. Sharing Information with the Advisor                                                                   30

7. Privacy of Records Shared with Advisor                                                                 31

8. Expectations of an Advisor                                                                             31

9.  Expectations of the Parties with Respect to Advisors                                                 31

10. Assistance in Securing an Advisor                                                                     31

E. Informal Resolution Processes                                                                         31

1. Alternate Resolution                                                                                   32

2. Respondent Accepts Responsibility for Alleged Violations                                              33

3. Negotiated Resolution                                                                                  33

F. Formal Grievance Process: Notice of Investigation and Allegations                                     33

G. Process Timeline                                                                                       34

H. Appointment of Investigators                                                                          34

4

I. Impartiality                                                                                      34

J. Delays in the Investigation Process and Interactions with Law Enforcement        35

K. Steps in the Investigation Process                                                 35

L. Role and Participation of Witnesses in the Investigation                          36

M. Recording of Interviews                                                           37

N. Referral for Hearing                                                              37

O. Hearing Decision-Maker Composition                                               37

P. Evidentiary Considerations in the Hearing                                        37

Q. Notice of Hearing                                                                 38

R. Pre-Hearing Matters                                                              39

S. Pre-Hearing Meetings                                                             39

T. Joint Hearings                                                                   40

U. Hearing Procedures                                                               40

1.        Concerns About Bias or Conflict of Interest                               40

2. The Investigator Presents the Final Investigation Report                         40

3. Questions for the Parties and Witnesses                                          41

4. Refusal to Submit to Cross-Examination and Inferences                            41

V. Recording Hearings                                                               41

W. Deliberation, Decision-making, and Standard of Proof                             41

X. Notice of Outcome                                                                42

III. RESOLUTION PROCESS FOR ALLEGED VIOLATIONS OF THE POLICY ON SEXUAL HARASSMENT WHERE
PROCESS "A" IS NOT APPLICABLE (KNOWN AS PROCESS "B")                                 43

A. Initial Assessment                                                               43

B. Resolution Process Pool                                                          44

C. Counterclaims                                                                    44

D. Advisors                                                                         45

1. Expectations of an Advisor                                                       45

2. Expectations of the Parties with Respect to Advisors                             45

3. Assistance in Securing an Advisor                                                45

E. Resolution Options                                                               45

1. Informal Resolution                                                                                           46

a. Alternate Resolution                                                                                          46

b. Respondent Accepts Responsibility for Alleged Violations                                                      46

c. Negotiated Resolution                                                                                         47

2. Administrative Resolution                                                                                     47

F. Investigation                                                                                                 47

G. Hearing and Determination                                                                                     49

1. Hearing                                                                                                       49

2. Outcome and Appeal                                                                                            49

H. Additional Details of the Investigation Process                                                              50

1. Witness responsibilities                                                                                     50

2. Remote processes                                                                                             50

3.Recording                                                                                                      50

4. Evidence                                                                                                      50

5. Notification of Outcome                                                                                       50

IV. SANCATIONS, POST-HEARING MATTERS AND APPEAL PROCESS APPLICABLE TO PROCESS A AND
PROCESS B                                                                                                        51

1. Sanctions                                                                                                     51

B. Sanctioning Guidelines                                                                                        52

C. Withdrawal or Resignation While Charges Pending                                                               53

D. Long-Term Remedies/Other Actions                                                                              53

E. Failure to Comply with Sanctions and/or Interim and Long-Term Remedies and/or Responsive
Actions                                                                                                          54

F. Appeals                                                                                                       54

1. Grounds for Appeal                                                                                            54

2. Appeal process                                                                                                55

3. Status of Sanctions During the Appeal                                                                         55

4. Appeal Considerations                                                                                         55

Appendix A: Statement of Rights of the Parties                                                                   57

# I. GENERAL PROVISIONS

## A. Application

This Policy prohibits sex-based discrimination that takes the form of harassment, which can encompass sexual harassment, sexual assault, stalking, sexual exploitation, dating violence or domestic violence. Allegations of sex-based discrimination, in the form of sexual harassment, reported pursuant to this Policy, are subject to resolution using Case Western Reserve University's ("CWRU" or "university") "Process A" or "Process B," as determined by the Title IX Coordinator, and as detailed below. Allegations of sex-based discrimination in which the reported discrimination does not constitute sexual harassment may be subject to resolution pursuant to this Policy, but not pursuant to Process A or Process B, which apply only to allegations of sexual harassment.

When the Respondent is a member of the CWRU community, the grievance procedures described in this Policy may be available regardless of the status of the Complainant, who may or may not be a member of the CWRU community. This community includes, but is not limited to, students, student organizations, faculty, administrators, staff, and third Parties such as guests, visitors, volunteers, invitees, and campers. The procedures below may be applied to incidents, patterns, and/or the campus climate, all of which may be addressed and investigated in accordance with this Policy.

## B. The Title IX Coordinator

Title IX of Education Amendments of 1972 ("Title IX") prohibits discrimination based on sex, including sexual harassment, in education programs that receive federal funding.

Inquiries concerning the application of Title IX may be directed to the Title IX Coordinator for the university or to the Assistant Secretary for the Office of Civil Rights of the Department of Education. The Title IX Coordinator is:

Rachel E. Lutner, J.D.
Senior Associate Vice President for Equity
University Title IX Coordinator
Section 504 Coordinator
Nursing Research Building, Suite 1180
2120 Cornell Road
Cleveland, OH 44106
216-368-3066 rachel.lutner@case.edu
http://www.case.edu/equity/

Reports may be directed to the Office of Civil Rights, United States Department of Education, http://www.ed.gov/about/offices/list/ocr/index.html.  Individuals experiencing harassment or discrimination also always have the right to file a formal grievance with the government authorities:

| Office of Civil Rights (OCR) | Cleveland Office |
|---|---|
| 400 Maryland Avenue, SW | Office of Civil Rights |
| Washington, DC 20202-1100 | U.S. Department of Education |
| Customer Service Hotline#: 1-800-421-3481 | 1350 Euclid Avenue, Suite 325 |
| Fax: (202) 453-6012 | Cleveland, OH 44115-1812 |
| TDD: (877) 521-2172 | Telephone: (216) 522-4970 |
| Email: OCR@ed.gov/ocr | Fax: (216) 522-2573; |
| | TDD: (800) 877- 8339 |

Email: OCR.Cleveland@ed.gov

# C. Terminology

- *Advisor* means a person chosen by a Party or appointed by CWRU to accompany the Party to meetings related to the Resolution Process, advise the Party on that process, and conduct cross-examination for the Party at the Process "A" hearing, if any.

- *Complainant* means an individual who is alleged to be the victim of conduct that could constitute sexual harassment or retaliation for engaging in a protected activity pursuant to this Policy.

- *Confidential Resource* means an employee who is not a Mandated Reporter of Notice of sexual harassment or retaliation (irrespective of Clery Act Campus Security Authority status).

- *Days* means business days.

- *Directly Related Evidence* is evidence connected to the Complaint or Respondent, but is neither inculpatory (tending to prove a violation) nor exculpatory (tending to disprove a violation), and will not be relied upon in the decision making process.

- *Education Program or Activity* means locations, events, or circumstances where CWRU exercises substantial control over the Respondent and the context in which the reported sexual harassment occurs, and includes any building owned or controlled by a student organization that is officially recognized by CWRU.

- *Final Determination*: A conclusion by the preponderance of the evidence that the alleged conduct occurred or did not occur, and did or did not violate this Policy.

- *Finding*: A conclusion by preponderance of the evidence that the conduct did or did not occur as alleged.

- *Formal Complaint or Complaint* means a document submitted or signed by a Complainant or signed by the Title IX Coordinator alleging sexual harassment against a Respondent and requesting that the CWRU investigate the allegations pursuant to this Policy.

- *Formal Grievance Process* is set out in Process A, described below, to address conduct that falls within this Policy and within the scope of Title IX as defined in its regulations (34 §CFR Part 106.45).

- *Grievance Process Pool* includes any hearing officers, appeal officers, and Advisors who may perform any or all of these roles (though not at the same time or with respect to the same case).

- *Hearing Decision Panel* refers to those who have decision-making and sanctioning authority within CWRU's Formal Grievance process.

- *Informal Alternative Resolution* procedures offer resolution options other than Process A and Process B below, do not require a hearing or cross examination, and are described in this Policy.

- *Investigator* means the person or persons charged by the Office of Equity at CWRU with gathering facts about an alleged violation of this Policy, assessing relevance, synthesizing the evidence, and compiling this information into an Investigation Report and file of directly related evidence.

- *Mandated Reporter* means an employee of CWRU who is obligated by to share knowledge, notice, and/or reports of sexual harassment or retaliation with the Title IX Coordinator.

- *Notice* means that an employee, student or third Party has informed the Title IX Coordinator or other Official with Authority of the alleged occurrence of sexual harassment and/or retaliation for opposing such conduct.

- *Official with Authority (OWA)* means an employee of CWRU explicitly vested with the responsibility to implement corrective measures for sexual harassment or retaliation for exercising rights granted pursuant to this Policy on behalf of CWRU.

- *Parties* include the Complainant(s) and Respondent(s), collectively.

- *Pool* refers to faculty, staff and students who are trained to perform the roles required by Process A and Process B.

- *Remedies* are post-finding actions directed at the Complainant and/or the community as mechanisms to address safety, prevent recurrence, and restore access to CWRU's educational program.

- *Respondent* means an individual who has been reported to be the perpetrator of conduct that could constitute sexual harassment in violation of this Policy or retaliation for engaging in a protected activity.

- *Resolution* means the result of an Informal or Formal Grievance Process.

- *Sanction* means a consequence imposed by CWRU on a Respondent who is found to have violated this policy.

- *Sexual Harassment* is the umbrella category including the offenses of sexual harassment, sexual assault, stalking, and dating violence and domestic violence.

- *Title IX Coordinator* is at least one official designated by CWRU to ensure compliance with Title IX and CWRU's policy which implements Title IX. References to the Title IX Coordinator throughout this policy may encompass a designee of the Title IX Coordinator for specific tasks.

## D. Independence and Conflict-of-Interest

The Title IX Coordinator manages the Formal Grievance Process, set out in this Policy as Process A, and acts with independence and authority free from bias and conflicts of interest. The Title IX Coordinator oversees all resolutions under this Policy and these procedures. The members of the Office of Equity or designees are vetted and trained to ensure they are not biased for or against any Party in a specific case, or for or against Complainants and/or Respondents, generally.

To raise any concern involving bias or conflict of interest by the Title IX Coordinator, contact the Office of General Counsel. Concerns of bias or a potential conflict of interest by any other member in the process should be raised with the Title IX Coordinator.

# E. Supportive Measures

CWRU will offer and implement appropriate and reasonable supportive measures for both Parties upon notice of alleged sexual harassment or retaliation[1].

Supportive measures are non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to the Parties to restore or preserve access to the university's education program or activity, including measures designed to protect the safety of all Parties or the university's educational environment, and/or deter harassment, discrimination, and/or retaliation.

The Title IX Coordinator promptly makes supportive measures available to both Parties upon receiving Notice or a complaint. At the time that supportive measures are offered, the university will inform the Complainant, in writing, that they may file a Formal Complaint with the university either at that time or in the future, if they have not done so already. The Title IX Coordinator works with the Parties to ensure that supportive measures that are planned and implemented are effective to address the Parties' needs.

The university will maintain the privacy of the supportive measures, provided that privacy does not impair the university's ability to provide the supportive measures. CWRU will act to ensure as minimal an academic/occupational impact on the Parties as possible. CWRU will implement measures in a way that does not unreasonably burden the other Party.

These actions may include, but are not limited to:

- Referral to counseling, medical, and/or other healthcare services
- Referral to the Employee Assistance Program Impact Solutions
- Referral to community-based service providers
- Visa and immigration assistance
- Student financial aid counseling
- Education to the community or community subgroup(s)
- Altering campus housing assignment(s)
- Altering work arrangements for employees or student-employees
- Safety planning
- Providing campus safety escorts
- Providing transportation accommodations
- Implementing contact limitations (no contact orders) between the Parties
- Academic support, extensions of deadlines, or other course/program-related adjustments
- Persona Non Grata (PNG)
- Timely Warnings
- Class schedule modifications, withdrawals, or leaves of absence
- Increased security and monitoring of certain areas of the campus
- Any other actions deemed appropriate by the Title IX Coordinator

---

[1] Allegations of retaliation for exercising rights granted by this Policy are handled generally under this Policy but not under Process A or Process B.

Violations of No Contact Orders will be referred to appropriate student or employee conduct processes for enforcement.

# F. Emergency Removal

CWRU can remove a student Respondent entirely or partially from an education program or activities on an emergency basis when an individualized safety and risk analysis has determined that an immediate threat to the physical health or safety of any student or other individual justifies removal. This risk analysis is performed by the Title IX Coordinator in conjunction with the Behavioral Intervention Team using its standard objective violence risk assessment procedures.

In all cases in which an emergency removal is imposed, the student, or, if the Respondent is a student organization, two (2) representatives from the student organization, will be given notice of the action and the option to request to meet with the Title IX Coordinator prior to such action/removal being imposed, or as soon thereafter as reasonably possible, to explain why the action/removal should not be implemented or should be modified. A Respondent may be accompanied by an Advisor at this meeting with the Title IX Coordinator. The Respondent will be given access to a written summary of the basis for the emergency removal prior to the meeting to allow for adequate preparation.

This meeting is not a hearing on the merits of the allegation(s), but is an administrative process intended to determine solely whether the emergency removal is appropriate. When this meeting is not requested within 48 hours, objections to the emergency removal will be deemed waived. A Complainant and their Advisor may be permitted to participate in this meeting if the Title IX Coordinator determines it is equitable to do so. This section also applies to any restrictions that a coach or athletic administrator may place on a student-athlete arising from allegations related to Title IX. There is no appeal process for emergency removal decisions.

The Title IX Coordinator has sole discretion under this Policy to implement or stay an emergency removal and to determine the conditions and duration. Violation of an emergency removal under this Policy will be grounds for discipline, which may include expulsion.

CWRU will implement the least restrictive emergency actions possible in light of the circumstances and safety concerns. As determined by the Title IX Coordinator, these actions could include, but are not limited to: removing a student from a residence hall, temporarily re-assigning an employee, restricting a student's or employee's access to or use of facilities or equipment, allowing a student to withdraw or take grades of incomplete without financial penalty, authorizing an administrative leave, and suspending a student's participation in extracurricular activities, student employment, student organizational leadership, or intercollegiate/intramural athletics.

At the discretion of the Title IX Coordinator, alternative coursework options may be pursued to ensure as minimal an academic impact as possible on the Parties.

Where the Respondent is an employee, existing provisions for interim action are applicable.

# G. Jurisdiction of CWRU

This Policy applies to the education program and activities of CWRU, to conduct that takes place on campus or on property owned or controlled by CWRU, at CWRU-sponsored events, or in buildings owned or controlled by CWRU's recognized student organizations. The Respondent must be a member of CWRU's community for the grievance process provisions of this Policy to apply.

11

This Policy is also applicable to the effects of off-campus misconduct that effectively deprives someone of access to the university's educational program. The university may also extend jurisdiction to off-campus and/or to online conduct when the Title IX Coordinator determines that the conduct affects a substantial university interest.

Regardless of where the conduct occurred, the university will address Notice and/or Complaints to determine whether the conduct occurred in the context of its employment or educational program or activity and/or has continuing effects on campus or in an off-campus sponsored program or activity. A substantial university interest includes any or all of the following:

1. Any action that constitutes a criminal offense as defined by law. This includes, but is not limited to, single or repeat violations of any local, state, or federal law.

2. Any situation in which it is determined that the Respondent poses an immediate threat to the physical health or safety of any student or other individual.

3. Any situation that significantly impinges upon the rights, property, or achievements of oneself or others or significantly breaches the peace and/or causes social disorder.

4. Any situation that is detrimental to the educational interests or mission of the university.

If the Respondent is unknown or is not a member of the university community, the Title IX Coordinator will assist the Complainant in identifying appropriate campus, local and other resources and support options and/or, when criminal conduct is alleged, in contacting local or campus law enforcement if the individual would like to file a police report.

When the Respondent is not a member of the university community, supportive measures, remedies and resources may be accessible to the Complainant by contacting the Title IX Coordinator.

The university may take other actions as appropriate to protect the Complainant from third Parties, such as barring individuals from university property and/or events.

All vendors serving the university through third-Party contracts are subject to the policies and procedures of their employers

When the Respondent is enrolled in or employed by another institution, the Title IX Coordinator can assist the Complainant in liaising with the appropriate individual at that institution, as it may be possible to allege violations through that institution's policies.

Similarly, the Title IX Coordinator may be able to **assist and support** a student or employee Complainant who experiences sexual harassment in an externship, study abroad program, or other environment external to the university where sexual harassment or nondiscrimination policies and procedures of the facilitating or host organization may give recourse to the Complainant.

## H. Promptness

All allegations are acted upon promptly by the university once it has received Notice or a Formal Complaint. Complaints may take **60-75** business days to resolve. There may be exceptions and extenuating circumstances that can cause a resolution to take longer, but CWRU will avoid all undue delays within its control.

Any time the general timeframes for resolution outlined in the university's procedures will be delayed, the university will provide written notice to the Parties of the delay, the cause of the delay, and an estimate of the anticipated additional time that will be needed as a result of the delay.

# I. Time Limits on Reporting

There is no time limitation on providing Notice to or filing Complaints with the Title IX Coordinator. However, if the Respondent is no longer subject to the university's jurisdiction and/or significant time has passed, the ability to investigate, respond, and provide remedies may be more limited or impossible.

Acting on Notice or Complaints significantly impacted by the passage of time (including, but not limited to, the rescission or revision of policy) is at the discretion of the Title IX Coordinator, who may document allegations for future reference, offer supportive measures and/or remedies, and/or engage in informal or formal action, as appropriate.

When Notice or Complaints are affected by significant time delay, the university will typically apply the policy in place at the time of the alleged misconduct and the procedures in place at the time of notice/complaint.

# J. Online Sexual Harassment

The policies of CWRU are written and interpreted broadly to include online manifestations of any of the behaviors prohibited below, when those behaviors occur in or have an effect on the university's education program and activities or use CWRU networks, technology, or equipment.

Although CWRU may not control websites, social media, and other venues in which sexually harassing communications are made, when such communications are reported to university, it will engage in efforts to address and mitigate the effects of those communications.

Members of the community are encouraged to be good digital citizens and to refrain from online sexual harassment, such as feeding anonymous gossip sites, sharing inappropriate content via social media, unwelcome sexual or sex-based messaging, distributing or threatening to distribute revenge pornography, breaches of privacy, or otherwise using the ease of transmission and/or anonymity of the Internet or other technology to harm another member of the university community.

# K. Sexual Harassment

Case Western Reserve University has adopted the following definition of Sexual Harassment to address the unique environment of an academic community.

Acts of sexual harassment may be committed by any person upon any other person, regardless of the sex, sexual orientation, and/or gender identity or expression of those involved.

All policies encompass actual and/or attempted offenses.

Sexual Harassment, as an umbrella category, includes the offenses of sexual harassment, sexual assault, domestic violence, dating violence, and stalking, and is defined as:

> Conduct on the basis of sex or gender or that is sexual that satisfies one or more of the following:
>
> 1. Quid Pro Quo:
>
>     a) an employee of CWRU
>
>     b) conditions the provision of an aid, benefit, or service of CWRU
>
>     c) on an individual's participation in unwelcome sexual conduct.
>
> 2. Sexual Harassment:

        a)   unwelcome conduct

        b)   determined by a reasonable person

        c)   to be so severe, and

        d)   pervasive, and

        e)   objectively offensive,

        f)   that it effectively denies a person equal access to the CWRU's education program or activity.[2]

3. Sexual assault, defined as:

        a)   Sex Offenses, Forcible:

           i)   Any sexual act[3] directed against another person,

---

[2]Unwelcomeness is subjective and determined by the Complainant(except when the Complainant is below the age of consent).Severity, pervasiveness, and objective offensiveness are evaluated based on the totality of the circumstances from the perspective of a reasonable person in the same or similar circumstances ("in the shoes of the Complainant"), including the context in which the alleged incident occurred and any similar, previous patterns that may be evidenced.

[3]Sexual acts include:

1) Forcible Rape:
    a)   Penetration,
    b)   no matter how slight,
    c)   of the vagina or anus with any body part or object, or
    d)   oral penetration by a sex organ of another person,
    e)   without the consent of the Complainant.

2) Forcible Sodomy:
    a)   Oral or anal sexual intercourse with another person,
    b)   Forcibly,
    c)   and/or against that person's will (non-consensually), or
    d)   not forcibly or against the person's will in instances in which the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

4) Sexual Assault with an Object:
    a)   The use of an object or instrument to penetrate,
    b)   however slightly,
    c)   the genital or anal opening of the body of another person,
    d)   forcibly,
    e)   and/or against that person's will (non-consensually),
    f)   or not forcibly or against the person's will in instances in which the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

5) Forcible Fondling:
    a)   The touching of the private body parts of another person (buttocks, groin, breasts),
    b)   for the purpose of sexual gratification,
    c)   Forcibly,
    d)   and/or against that person's will (non-consensually),
    e)   or not forcibly or against the person's will in instances in which the Complainant is incapable of giving consent because of age or because of temporary or permanent mental or physical incapacity.

14

        ii)    without the consent of the Complainant,

        iii)   including instances in which the Complainant is incapable of giving consent.

  b) Sex Offenses, Non-forcible:

        i)    Incest:

             (1)  Non-forcible sexual intercourse,

             (2)  between persons who are related to each other,

             (3)  within the degrees wherein marriage is prohibited by Ohio State law.

        ii)   Statutory Rape

             (1)  Non-forcible sexual intercourse,

             (2)  with a person who is under the statutory age of consent of 16 years of age.

4. Dating Violence, defined as:

  a) Violence,

  b) on the basis of sex,

  c) committed by a person,

  d) who is in or has been in a social relationship of a romantic or intimate nature with the Complainant.

        i)    The existence of such a relationship shall be determined based on the Complainant's statement and with consideration of the length of the relationship, the type of relationship, and the frequency of interaction between the persons involved in the relationship. For the purposes of this definition—

             (1)  Dating violence includes, but is not limited to, sexual or physical abuse or the threat of such abuse.

             (2)  Dating violence does not include acts covered under the definition of domestic violence.

5. Domestic Violence[4], defined as:

  a) Violence,
  b) on the basis of sex,
  c) committed by a current or former spouse or intimate partner of the Complainant,
  d) by a person with whom the Complainant shares a child in common, or
  e) by a person who is cohabitating with, or has cohabitated with, the
  f) Complainant as a spouse or intimate partner, or
  g) by a person similarly situated to a spouse of the Complainant under the domestic or family violence laws of State of Ohio, or

---

[4]To categorize an incident as Domestic Violence, the relationship between the Respondent and the Complainant must be more than just two people living together as roommates. The people cohabitating must be current or former spouses or have an intimate relationship.

e) by any other person against an adult or youth Complainant who is protected from that person's acts under the domestic or family violence laws of the State of Ohio.

6. Stalking, defined as:

   a) engaging in a course of conduct[5],
   b) on the basis of sex,
   c) directed at a specific person, that
      1. would cause a reasonable person[6] to fear for the person's safety, or
      2. the safety of others; or
      3. Suffer substantial emotional distress[6].

7. Sexual Exploitation, defined as:

   a) Taking non-consensual or abusive sexual advantage of another,
   b) for their own benefit, or
   c) for the benefit of anyone other than the person being exploited, and
   d) that conduct does not otherwise constitute sexual harassment under this Policy.

Examples of Sexual Exploitation include, but are not limited to:

- Sexual voyeurism (such as observing or allowing others to observe a person undressing or using the bathroom or engaging in sexual acts, without the consent of the person being observed)

- Invasion of sexual privacy.

- Taking pictures, video, or audio recording of another in a sexual act, or in any other sexually-related activity when there is a reasonable expectation of privacy during the activity, without the consent of all involved in the activity, or exceeding the boundaries of consent (such as allowing another person to hide in a closet and observe sexual activity, or disseminating sexual pictures without the photographed person's consent), including the making or posting of revenge pornography.

- Prostituting another person.

- Engaging in sexual activity with another person while knowingly infected with human immunodeficiency virus (HIV) or a sexually-transmitted disease (STD) or infection (STI), without informing the other person of the infection.

- Causing or attempting to cause the incapacitation of another person (through alcohol, drugs, or any other means) for the purpose of compromising that person's

---

[5] Course of conduct means two or more acts, including, but not limited to, acts in which the Respondent directly, indirectly, or through third Parties, by any action, method, device, or means, follows, monitors, observes, surveils, threatens, or communicates to or about a person, or interferes with a person's property.

[6] Reasonable person means a reasonable person under similar circumstances and with similar identities to the Complainant. [6] Substantial emotional distress means significant mental suffering or anguish that may but does not necessarily require medical or other professional treatment or counseling.

16

ability to give consent to sexual activity, or for the purpose of making that person vulnerable to nonconsensual sexual activity.

- Misappropriation of another person's identity on apps, websites, or other venues designed for dating or sexual connections.

- Forcing a person to take an action against that person's will by threatening to show, post, or share information, video, audio, or an image that depicts the person's nudity or sexual activity.

- Knowingly soliciting a minor for sexual activity.

- Engaging in sex trafficking.

- Creation, possession, or dissemination or child pornography.

# L. Consent, Incapacitation and Coercion

**Consent** is knowing, voluntary, and clear permission by word or action to engage in sexual activity. Since individuals may experience the same interaction in different ways, it is the responsibility of each Party to determine that the other has consented before engaging in the activity.

If consent is not clearly provided prior to engaging in the activity, consent may be ratified by word or action during the interaction or thereafter, but clear communication from the outset is strongly encouraged.

For consent to be valid, there must be a clear expression in words or actions that the other individual consented to the specific sexual conduct. Reasonable reciprocation can be implied. For example, if someone kisses you, you can kiss them back (if you want to) without the need to explicitly obtain their consent to being kissed back. Consent can also be withdrawn once given, as long as the withdrawal is reasonably and clearly communicated. If consent is withdrawn, that sexual activity should cease within a reasonable time.

Consent to some sexual contact (such as kissing or fondling) cannot be presumed to be consent for other sexual activity (such as intercourse). A current or previous intimate relationship is not sufficient to constitute consent.

Proof of consent or non-consent is not a burden placed on either Party involved in an incident. Instead, the burden remains on Case Western Reserve University to determine whether its Policy has been violated. The existence of consent is based on the totality of the circumstances evaluated from the perspective of a reasonable person in the same or similar circumstances, including the context in which the alleged incident occurred and any similar previous patterns that may be evidenced.

Consent CANNOT be given if a person's ability to resist or consent is incapacitated because of a mental illness or physical condition or if there is a significant age or perceived power differential.

**Incapacitation** is a state in which someone cannot make rational, reasonable decisions because the person lacks the capacity to give knowing consent (e.g., to understand the "who, what, when, where, why or how" of the sexual interaction). Incapacitation is determined through consideration of all relevant indicators of an individual's state and is not synonymous with intoxication, impairment, blackout and/or being drunk. This Policy also covers a person whose incapacity results from a temporary or permanent physical or mental health condition, involuntary physical restraint, and/or the consumption of incapacitating drugs.

It is a defense to a Policy violation that the Respondent neither knew nor should have known the Complainant to be physically or mentally incapacitated. "Should have known" is an objective,

reasonable person standard, which assumes that a reasonable person is both sober and exercising sound judgment.

It is not an excuse that the Respondent was intoxicated and, therefore, did not realize the incapacity of the Complainant. The question of whether the Respondent should have known of the incapacity of the Complainant is an objective question about what a reasonable person, exercising sober, good judgment, would have known, in the same or similar circumstances.

**Coercion** is <u>unreasonable</u> pressure for sexual activity. Coercive conduct differs from seductive conduct based on factors such as the type and/or extent of the pressure used to obtain consent. Once someone makes clear that they do not want sex, that they want to stop, or that they do not want to go past a certain point of sexual interaction, continued pressure beyond that point can be coercive.

## M. Relationships Involving Authority or Power

The university considers sexual relationships between the two individuals to be a basic violation of professional ethics and responsibility when one Party has any professional responsibility for another's academic, job performance, or professional future. This includes but is not limited to sexual relationships between faculty (including teaching assistants and laboratory supervisors) and their students or between supervisors and their employees, even if deemed mutually consenting relationships.  Because of the asymmetry of these relationships, "consent" may be difficult to assess, may be deemed not possible, and may be construed as coercive.  Such relationships have the potential to result in claims of sexual harassment.  For more information, see Consensual Relationship Policy at http://www.case.edu/equity.

## N. Retaliation

Protected activity under this Policy includes reporting an incident that may implicate this Policy, participating in the Grievance Process, supporting a Complainant or Respondent, assisting in providing information relevant to an investigation, and/or acting in good faith to oppose conduct that constitutes a violation of this Policy.

It is prohibited for CWRU or any member of the community to take or attempt to create adverse action by intimidating, threatening, coercing, harassing, or discriminating against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding or hearing under this Policy.

Acts of alleged retaliation should be reported immediately to the Title IX Coordinator and will be promptly investigated pursuant to this Policy, but are not required to proceed pursuant to Process A or Process B, which apply only to sexual harassment. CWRU will take all appropriate and available steps to protect individuals who fear that they may be subjected to retaliation.

Charges against an individual for code of conduct violations that do not involve sex discrimination or sexual harassment but arise out of the same facts or circumstances as a report or complaint of sex discrimination, or a report or complaint of sexual harassment, for the purpose of interfering with any right or privilege secured by Title IX, constitutes retaliation.

The exercise of rights protected under the First Amendment does not constitute retaliation.

Charging an individual with a code of conduct violation for making a materially false statement in bad faith in the course of a Grievance Proceeding under this Policy does not constitute retaliation,

provided that a determination regarding responsibility, alone, is not sufficient to conclude that any Party has made a materially false statement in bad faith.

# O. Grievance Process Pool

Process A and Process B rely on a Pool of faculty, staff and students ("the Pool") to carry out the process. Panel members consist of faculty, staff and students drawn from the Pool. The list of Pool members, their training, the roles in which Pool members may serve and the process for becoming a Pool member is found at  https://case.edu/equity/sexual-harassment-title-ix/file-report/grievance-process-pool

## 1. Pool Member Roles

Members of the Pool are trained annually on performing a variety of roles, and serve in in the following roles, at the direction of the Title IX Coordinator:

1. To provide appropriate intake of and initial guidance to the Parties

2. To act as an Advisor to the Parties

3. To perform or assist with initial assessment

4. To investigate complaints

5. To serve as a hearing facilitator (process administrator, no decision-making role)

6. To serve as a Decision-maker regarding the complaint

7. To serve as an Appeal Decision-maker

## 2. Investigator, Panel Member Appointment and Advisor

The Title IX Coordinator appoints the investigators, Panel members and Advisors.

## 3. Pool Member Training

The Pool members receive annual training. This training includes, but is not limited to:

1. The provisions of this Policy

2. How to conduct investigations and hearings

3. Implicit bias

4. Disparate treatment and impact

5. Reporting, confidentiality, and privacy requirements

6. Applicable laws, regulations, and federal regulatory guidance

7. How to implement appropriate and situation-specific remedies

8. How to investigate in a thorough, reliable, and impartial manner

9. How to uphold fairness, equity, and due process

10. How to weigh evidence

11. How to conduct questioning

12. How to assess credibility

13. Impartiality and objectivity

14. How to render findings and generate clear, concise, evidence-based rationales

15. The definitions of all offenses

16. How to apply definitions used by CWRU with respect to consent (or the absence or negation of consent) consistently, impartially and in accordance with this Policy

17. How to conduct an investigation and grievance process including hearings, appeals, and informal Resolution Processes

18. How to serve impartially by avoiding prejudgment of the facts at issue, conflicts of interest, and bias

19. Technology used at live and remote hearings

20. Issues of relevance of questions and evidence

21. Issues of relevance as related to drafting an Investigation Report that fairly summarizes relevant evidence

22. How to determine appropriate sanctions based on the findings in a particular matter

Specific training is also provided for Appeal Decision-makers, Investigators, Advisors (who are employees), and Panel chairs. All Pool members are required to attend training annually. The materials used to train Pool members are posted on the Equity webpages.

# P. Mandated Reporting

All Case Western Reserve University employees (faculty, staff, administrators, resident assistants, teaching assistants, graduate assistants and orientation leaders) are required to report actual or suspected gender discrimination, sexual harassment or retaliation to appropriate officials immediately, though there are some limited exceptions.

It is important to be aware of confidentiality and mandatory reporting requirements when consulting campus resources. On campus, some resources may maintain confidentiality and are not required to report actual or suspected gender discrimination or sexual harassment. They may offer options and resources without any obligation to inform an outside agency or campus official unless a Complainant has requested the information be shared.

If a Complainant expects formal action in response to allegations, reporting to a Mandated Reporter will result in connections for the Complainant with resources to report crimes and/or Policy violations, and the Complainant's information will be shared with the Title IX Coordinator (and/or police, if desired by the Complainant), who will take action following receipt of the report.

The following sections describe the reporting options at CWRU for a Complainant or third Parties (including parents/guardians when appropriate):

## 1. Confidential Resources

If a Complainant would like the details of an incident to be kept confidential, the Complainant may speak with:

- Licensed professional in University Health and Counseling Services
- Student Advocate for Gender Based Violence Prevention, Education, and Advocacy

20

- Inter-religious Council on-campus members of the clergy/chaplains working within the scope of their license or ordination
- Off-campus (non-employees):
  - Licensed professional counselors and other medical providers
  - Local Cleveland Rape Crisis Center
  - Domestic Violence Center
  - Local or state assistance agencies
  - Clergy/Chaplains
  - Attorneys

All of the above-listed individuals will maintain confidentiality when acting under the scope of their licensure, professional ethics, and/or professional credentials, except in extreme cases of immediacy of threat or danger or abuse of a minor or individual with a disability, or when required to disclose by law or court order.

Employees: For confidential resources for faculty and staff, the Employee Assistance and Work Life Program (IMPACT Solutions) is a confidential resource.

CWRU employees who are confidential and who receive reports within the scope of their confidential roles will timely submit anonymous statistical information for Clery Act purposes unless they believe it would be harmful to their client or patient.

## 2. Mandated Reporters and Formal Notice/Complaints

All employees of CWRU (including resident assistants, teaching assistants, and orientation leaders), with the exception of those who are designated as Confidential Resources, are Mandated Reporters and must promptly share with the Title IX Coordinator all known details of a report made to them in the course of their employment. Mandated reporters must also promptly share all details of behaviors that could constitute sexual harassment as defined in this Policy that they observe or have knowledge of, even if not reported to them by a Complainant, or if they are shared by a third Party. Complainants may want to carefully consider whether they share personally identifiable details with non-confidential Mandated Reporters, as those details must be shared with the Title IX Coordinator.

Generally, disclosures in climate surveys, classroom writing assignments or discussions, human subjects research, or at events such as "Take Back the Night" marches or speak-outs do not provide Notice that must be reported to the Title IX Coordinator by employees, unless the Complainant clearly indicates that they desire a report to be made or a seek a specific response from Case Western Reserve University.

Supportive measures may be offered as the result of such disclosures without formal action by CWRU.

Failure of a Mandated Reporter to report an incident of sexual harassment or gender discrimination of which they become aware is a violation of CWRU policy and can be subject to disciplinary action for failure to comply.

When a Mandated Reporter is engaged in harassment or other violations of this Policy, they still have a duty to report their own misconduct, though CWRU is not on notice when a harasser is also a Mandated Reporter unless the harasser does in fact report.

Finally, it is important to clarify that a Mandated Reporter who is themselves a target of harassment or other misconduct under this Policy is not required to report their own experience, though they are, of course, encouraged to do so.

## Q. When a Complainant Does Not Wish to Proceed

If a Complainant does not wish for their name to be shared, does not wish for an investigation to take place, or does not want a Formal Complaint to be pursued, they may make such a request to the Title IX Coordinator, who will evaluate that request in light of the duty to ensure the safety of the campus and to comply with state or federal law.

The Title IX Coordinator has ultimate discretion over whether the report proceeds when the Complainant does not wish to do so, and the Title IX Coordinator may sign a Formal Complaint to initiate a Grievance Process upon completion of an appropriate violence risk assessment. The Title IX Coordinator's decision should be based on results of the violence risk assessment that show a compelling risk to health and/or safety that requires the CWRU to pursue formal action to protect the community. A compelling risk to health and/or safety may result from evidence of patterns of misconduct, predatory conduct, threats, abuse of minors, use of weapons, and/or violence. CWRU may be compelled to act on alleged employee misconduct irrespective of a Complainant's wishes. The Title IX Coordinator must also consider the effect that non-participation by the Complainant may have on the availability of evidence and CWRU's ability to pursue a Formal Grievance Process fairly and effectively.

When the Title IX Coordinator signs the Complaint, they do not become the Complainant. The Complainant is the individual who is alleged to be the victim of conduct that could constitute a violation of this Policy.

When the investigation and/or Resolution Process proceeds, the Complainant (or their Advisor) may have as much or as little involvement in the process as they wish. The Complainant retains all rights of a Complainant under this Policy irrespective of their level of participation. When the Complainant chooses not to participate, the Advisor may be appointed as proxy for the Complainant throughout the process, acting to ensure and protect the rights of the Complainant, though this does not extend to the provision of evidence or testimony.

Note that CWRU's ability to remedy and respond to Notice may be limited if the Complainant does not want CWRU to proceed with an investigation and/or Grievance Process. The goal is to provide the Complainant with as much control over the process as possible, while balancing CWRU's obligation to protect its community.

In cases in which the Complainant requests confidentiality or no formal action, and the circumstances allow CWRU to honor that request, CWRU will offer informal resolution options, supportive measures and remedies to the Complainant and the community, but will not otherwise pursue formal action.

If the Complainant elects to take no action, they can change that decision if they decide to pursue a Formal Complaint at a later date.

## R. Federal Timely Warning Obligations

Parties reporting sexual assault, domestic violence, dating violence, and/or stalking should be aware that under the Clery Act, CWRU must issue timely warnings for incidents reported to them that pose a serious or continuing threat of bodily harm or danger to members of the campus community. The university will ensure that a Complainant's name and other identifying information

is not disclosed, while still providing enough information for community members to make safety decisions in light of the potential danger.

## S. False Allegations and Evidence

Intentional false and/or malicious accusations made under this Policy are a serious offense and will be subject to appropriate disciplinary action.  This does not include allegations that are made in good faith but are ultimately shown to be erroneous or do not result in a Policy violation determination.

Additionally, witnesses and Parties knowingly providing false evidence, tampering with or destroying evidence after being directed to preserve such evidence, or deliberately misleading an official conducting an investigation, can be subject to discipline under the appropriate university policies for faculty, staff and students.

## T. Amnesty for Complainants and Witnesses

CWRU encourages the reporting of misconduct and crimes by Complainants and witnesses. Sometimes, Complainants or witnesses are hesitant to report to university officials or participate in grievance processes because they fear that they themselves may be in violation of certain policies, such as underage drinking or use of illicit drugs at the time of the incident. Respondents may hesitate to be forthcoming during the process for the same reasons.

It is in the best interests of the university community that Complainants choose to report misconduct to university officials, that witnesses come forward to share what they know, and that all Parties are forthcoming during the process.

To encourage reporting and participation in the process, CWRU maintains a policy of offering Parties and witnesses amnesty from minor policy violations – such as underage consumption of alcohol or the use of illicit drugs – related to the incident.

Amnesty does not apply to more serious allegations such as physical abuse of another or illicit drug distribution. The decision not to offer amnesty to a Respondent is based on neither sex nor gender, but on the fact that collateral misconduct is typically addressed for all students within a progressive discipline system, and the rationale for amnesty – the incentive to report serious misconduct – is rarely applicable to Respondent with respect to a Complainant.

**Students:** Sometimes students are hesitant to assist others for fear that they may get in trouble themselves (for example, an underage student who has been drinking or using marijuana might hesitate to help take an individual who has experienced sexual misconduct to the campus police). CWRU maintains a policy of amnesty for students who offer help to others in need.

**Employees:**  Sometimes, employees are hesitant to report harassment or discrimination they have experienced for fear that they may get in trouble themselves. CWRU maintains a policy of amnesty for employees who offer help to others in need.

## U. Federal Statistical Reporting Obligations

In compliance with the Clery Act (Campus Crime Statistics Act), Designated Reporting Representatives are required to report to CWRU Police sexual misconduct that constitutes a crime (see Section K "Sexual Harassment").  In addition, anonymous reports and de-identified reports of crimes from confidential support resources received by the CWRU Police are also included in the Clery Act Report.   Typically, the following information is included: crime, date, location, and

23

status (i.e. student, faculty, staff, stranger, etc.) of the individuals involved in the crime.  The university never includes the names of the Reporting Party or the Responding Party in crime statistics.

When a complaint of sexual misconduct is made that may also constitute a criminal act, the Title IX Coordinator will inform the Reporting Party of the right to file a criminal complaint.

Campus Security Authorities include student affairs/student conduct staff, campus security and police, coaches, athletic directors, residence life staff, student activities staff, human resources staff, advisors to student organizations, and any other official with significant responsibility for student and campus activities.

## V. Academic Freedom

Case Western Reserve University adheres to the principles and traditions of academic freedom. As stated in the Faculty Handbook section Academic Freedom, Chapter 3, Part One, Article I, Paragraph D, "academic freedom" is a right of all members of the university faculty and applies to university activities including teaching and research. Each faculty member may consider in their classes any topic relevant to the subject matter of the course as defined by the appropriate educational unit.

CWRU also recognizes, however, that these freedoms must be in balance with the rights of others not to be sexually harassed. It is therefore understood that the principles of academic freedom permit topics of all types, including those with sexual content, to be part of courses, lectures and other academic pursuits. If there are questions about whether the course material or the manner in which it is presented falls within the definition of sexual harassment, the concerned Party(s) should contact the Title IX Coordinator.

## W. Recordkeeping

CWRU will maintain for a period of at least seven years records of:

1. Each sexual harassment investigation including any determination regarding responsibility and any audio or audiovisual recording or transcript required under federal regulation;

2. Any disciplinary sanctions imposed on the Respondent;

3. Any remedies provided to the Complainant designed to restore or preserve equal access to the university's educational program or activity;

4. Any appeal and its result;

5. Any Informal Resolution and its result;

6. All materials used to train Title IX Coordinators, Investigators, Decision-makers, and any person who facilitates an Informal Resolution Process. The university will make these training materials publicly available on CWRU's website.

7. Any actions, including any supportive measures, taken in response to a report or formal complaint of sexual harassment, including:

   a) The basis for all conclusions that the response was not deliberately indifferent;

   b) Any measures designed to restore or preserve equal access to the university's education program or activity; and

24

c) If no supportive measures were provided to the Complainant, document the reasons why such a response was not clearly unreasonable in light of the known circumstances.

CWRU will also maintain any and all records in accordance with state and federal laws.

# X. Disabilities Accommodations in the Resolution Process

CWRU provides reasonable accommodations and support to qualified students, employees or others with disabilities to ensure equal access to the Resolution Process in this Policy.

Students needing accommodations or support should contact the Office of Disability Resources for students. Employees should contact the Office of Equity to obtain accommodations.

# Y. Revision of this Policy and Procedures

As to conduct covered by this Policy, this Policy and procedures supersede any previous policies addressing sexual harassment, sexual misconduct, gender discrimination, and/or retaliation. This Policy will be reviewed and updated annually by the Title IX Coordinator. CWRU reserves the right to make changes as necessary, and once those changes are posted online, they are in effect.

During the Resolution Process, the Title IX Coordinator may make minor modifications to procedures that do not materially jeopardize the fairness owed to any Party, such as to accommodate summer schedules. The Title IX Coordinator may also vary this Policy and these procedures materially with notice (on the institutional website, with the appropriate effective date identified) upon determining that changes to law or regulation require policy or procedural alterations.

If government laws or regulations change – or court decisions alter – the requirements in a way that impacts this document, this document will be construed to comply with the most recent government regulations or holdings.

# Z. Statement of the Rights of the Parties

See Appendix A.

# II. RESOLUTION PROCESS FOR ALLEGED VIOLATIONS OF THE POLICY ON SEXUAL HARASSMENT (PROCESS "A")

This Process A and the procedures below apply <u>only</u> to Formal Complaints making qualifying allegations of sexual harassment (including sexual assault, dating violence, domestic violence, and stalking, as defined above) involving students, staff, administrators or faculty members.

"Process B" can apply to sexual harassment (including sexual assault, dating violence, domestic violence, and stalking, as defined above) when jurisdiction does not fall within Process A, as determined by the Title IX Coordinator.

Process A may be used to address collateral misconduct arising from the investigation of or occurring in conjunction with reported misconduct (e.g., vandalism, physical abuse of another) or such misconduct will be addressed through appropriate procedures elaborated in the student code of conduct, and faculty and staff handbooks.

## A. Notice and the Formal Complaint

Upon receipt of a Formal Complaint or Notice to the Title IX Coordinator of an alleged violation of the Policy, the Office of Equity initiates a prompt initial assessment to determine the next steps that CWRU needs to take.

The Title IX Coordinator will initiate at least one of three responses:

1. Offering supportive measures whether or not the Complainant wants to make a Formal Complaint; and/or

2. An informal resolution following submission of a Formal Complaint; and/or

3. A Formal Grievance Process, including an investigation and a hearing, following submission of a Formal Complaint.

The investigation and Grievance Process will determine whether the Policy has been violated. If so, the university will promptly implement effective remedies designed to ensure that it is not deliberately indifferent to harassment or discrimination, the potential recurrence of such conduct, or its effects.

## B. Initial Assessment

Following receipt of Notice or a Formal Complaint, the Title IX Coordinator engages in an initial assessment, typically within one to five business days. The initial assessment may include:

1) The Title IX Coordinator determines whether the person impacted wishes to make a Formal Complaint, and assists them in doing so, if desired. If they do not wish to do so, the Title IX Coordinator determines whether to initiate a Formal Complaint because a violence risk assessment indicates a compelling threat to health and/or safety of a member of the campus community.

2) The Title IX Coordinator works with the Complainant to make sure the Formal Complaint accurately reflects the Complainant's allegations.

3) The Title IX Coordinator offers supportive measures to the Complainant.

4) The Title IX Coordinator informs the Complainant of the right to an Advisor during the process.

5) The Title IX Coordinator helps the Complainant understand the options, which include a supportive and remedial response, an informal resolution, or a Formal Grievance Process.

    a) If a supportive and remedial response is preferred, the Title IX Coordinator identifies the Complainant's wishes and options for implementing them.  No Formal Complaint is filed and no Formal Grievance Process is initiated, although the Complainant may elect to initiate one later.

    b) If an informal resolution option is preferred, the Title IX Coordinator assesses whether the Complaint is suitable for informal resolution and may assess whether the Respondent is willing to engage in an Informal Resolution Process.

    c) If a Formal Grievance Process is preferred, the Title IX Coordinator determines if the reported harassment alleged falls within the scope of Title IX:

        i) If it does, the Title IX Coordinator initiates the Formal Grievance Process, directing the investigation to address:

            (1) an incident, and/or

            (2) a pattern of alleged misconduct, and/or

            (3) a culture/climate issue, based on the nature of the complaint.

        ii) If it does not, or if it does only as to certain allegations, the Title IX Coordinator determines that Title IX does not apply in whole or in part (and dismisses from Process A that/those aspects of the Formal Complaint), assesses which alternative policies may apply and refers the matter (or certain allegations) accordingly, or refers the matter for resolution under Process B. Dismissing all or part of a Formal Complaint under Process A is a procedural requirement under Title IX and does not limit CWRU's authority to address a Complaint with an appropriate process and remedies.

# 1. Violence Risk Assessment

The Title IX Coordinator may determine that a Violence Risk Assessment (VRA) should be conducted by the Threat Assessment Behavioral Intervention Team (TABIT) as part of the initial assessment. A VRA may assess any or all of the following:

- Whether emergency removal of a Respondent is required on the basis of an immediate threat to physical health/safety;

- Whether the Title IX Coordinator should file a Formal Complaint against the Respondent;

- Whether an investigation of an incident, pattern and/or climate is required;

- The existence of potential predatory conduct;

- The presence of grooming behaviors;

- Whether the Complaint is likely to be resolved through informal resolution and which options might be successful;

- Whether to permit the Respondent to voluntarily withdraw on a temporary or permanent basis;

- Whether to impose transcript notation or communicate with a transfer institution about a Respondent; and/or
- Whether a Clery Act Timely Warning, a No Trespass order and/or a Persona-non-grata is needed.

A VRA is a broad term used to assess any potential violence or danger, and does not require the presence of a vague, conditional or direct threat to occur.

VRAs require specific training and are typically conducted by psychologists, clinical counselors, social workers, case managers, law enforcement officers, student conduct officers, or other Behavioral Intervention Team BIT/CARE team members. A VRA authorized by the Title IX Coordinator should occur in collaboration with the BIT/CARE or threat assessment team. Where a VRA is required by the Title IX Coordinator, a Respondent who refuses to cooperate may be charged with failure to comply within the appropriate student, employee or faculty conduct process.

# 2. Dismissal (Mandatory and Discretionary)

Case Western Reserve University <u>must</u> dismiss from this Process A any Formal Complaint or any allegations in it if, at any time during the investigation or hearing, it is determined that:

1. The conduct alleged in the Formal Complaint would not constitute sexual harassment as defined in this Policy , even if proved; and/or
2. The conduct did not occur in an educational program or activity controlled by the CWRU (including buildings or property controlled by recognized student organizations), and/or CWRU does not have control of the Respondent; and/or
3. The conduct did not occur against a person in the United States; and/or
4. At the time of filing a Formal Complaint, a Complainant is not participating in or attempting to participate in the education program or activity of CWRU.

CWRU <u>may</u> dismiss from this Process A any Formal Complaint or allegations in it if, at any time during the investigation or hearing:

1. A Complainant notifies the Title IX Coordinator in writing that the Complainant would like to withdraw the Formal Complaint or any allegations in it; or
2. The Respondent is no longer enrolled in or employed by CWRU; or
3. Specific circumstances prevent CWRU from gathering evidence sufficient to reach a determination as to the Formal Complaint or its allegations.

Upon any dismissal, CWRU will promptly send written notice of the dismissal and the rationale for doing so simultaneously to the Parties.

This dismissal decision is appealable by any Party under the procedures in the appeal section of this Policy.

Please note that dismissing a Formal Complaint under this Process A for not meeting the Title IX jurisdictional requirements does not limit CWRU's authority to address conduct that is subject to a Complaint through alternative appropriate, available process and remedies, such as Process B.

## C. Counterclaims

This Grievance Process may not be abused for retaliatory purposes. Parties may file counterclaims and related claims, but the Title IX Coordinator will assess all allegations to ensure they are made in good faith. Counterclaims made with retaliatory intent will be dismissed and may constitute a violation of this Policy.

Counterclaims reported in good faith will be processed consecutively or simultaneously with the claim that initiated the Grievance Process, pursuant to this Policy, but counterclaims alleging conduct other than sexual harassment will not be processed pursuant to Process A or Process B.

## D. Right to an Advisor

The Parties may each have an Advisor of their choice present with them for all meetings, interviews and hearings. The Parties may select whomever they wish to serve as their Advisor as long as the Advisor is eligible and available.

Choosing an Advisor who is also a witness in the process creates potential for bias and conflict-of interest. A Party who chooses an Advisor who is also a witness can anticipate that issues of potential bias will be explored by the hearing panel.

The Title IX Coordinator may permit Parties to have more than one Advisor upon request. The decision to grant this request is at the sole discretion of the Title IX Coordinator and will be granted equitably to all Parties.

## 1. Who Can Serve as an Advisor

An Advisor may be a friend, mentor, family member, attorney or any other individual a Party chooses to advise, support and/or consult with them, and accompany them, throughout the Resolution Process. The Parties may choose Advisors from inside or outside of CWRU.

On request of a Party, the Title IX Coordinator will assign a trained Advisor for the Party. If the Parties choose an Advisor from the Pool, the Advisor will be trained by the Office of Equity and be familiar with the Resolution Process in this Policy.

## 2. Advisor's Role in Meetings and Interviews

The Parties may be accompanied by their Advisor in all meetings and interviews at which the Party is entitled to be present. Advisors should help the Parties prepare for each meeting, advise ethically, and act with integrity and in good faith.

The university cannot guarantee that the Parties' Advisors are equally able to advise the Parties. This means that, if one Party selects an Advisor who is an attorney, but the other Party does not select or cannot afford an attorney, the university is not obligated to provide an attorney as an Advisor to the other Party.

## 3. Advisors in Hearings/University-Appointed Advisor

Under U.S. Department of Education regulations under Title IX, a form of cross-examination is required during the hearing, but must be conducted by the Parties' Advisors. The Parties are not permitted to directly question each other or any witnesses. If a Party does not have an Advisor

29

for a hearing, CWRU will appoint a trained Advisor for that Party to question the other Party and witnesses.

The Complainant and Respondent may reject this appointment and choose their own Advisor, but they may not participate in the hearing without an Advisor. If the Party's Advisor will not conduct the cross-examination, CWRU will appoint an Advisor to do so regardless of the participation or nonparticipation of the advisee in the hearing.

## 4. Pre-Interview Meetings

Advisors may request to meet with administrative officials conducting interviews/meetings in advance of these interviews or meetings. This pre-meeting allows Advisors to clarify and understand their role pursuant to this Policy.

## 5. Advisor Violations of CWRU Policy

All Advisors are subject to the same university policies and procedures, whether they are attorneys or not. Advisors are expected to advise their advisees without disrupting proceedings. Advisors should not address university officials in a meeting or interview unless invited to (e.g., asking procedural questions).

Advisors may not make a presentation or represent a Party during any meeting or proceeding and may not speak on behalf of the Party to the Investigator(s) or other Decision-maker(s) except during the cross examination in a hearing.

The Complainant and Respondent are expected to ask and respond to questions on their own throughout the investigation phase of the Resolution Process. Although an Advisor generally may not speak on behalf of a Party, the Advisor may consult with the Party with whom they are working, either privately, or by conferring or passing notes during any Resolution Process meeting or interview. For longer or more involved discussions, the Parties and their Advisors should ask for breaks to allow for private consultation.

Any Advisor who oversteps their role as defined by this Policy will be warned only once. If the Advisor continues to disrupt or otherwise respect the limits of the Advisor role, the meeting will be ended, or other appropriate measures implemented. Subsequently, the Title IX Coordinator will determine how to address the Advisor's non-compliance and future role.

## 6. Sharing Information with the Advisor

The Parties may request that the university share documentation and evidence related to the allegations with their Advisors. Parties may share this information directly with their Advisor or other individuals.

CWRU will provide the Parties with a consent form to authorize the university to share information with a Party's Advisor. The Parties must either complete and submit this form to the Office of Equity or provide similar documentation demonstrating consent to a release of information to the Advisor before the university will share records with an Advisor.

## 7. Privacy of Records Shared with Advisor

Advisors are expected to maintain the privacy and confidentiality of the records and information shared with them. Advisor may not share such records and information with others, disclose them publicly or use them for purposes not explicitly authorized by CWRU. CWRU may seek to restrict the role of any Advisor who fails to abide by the university's privacy expectations.

## 8. Expectations of an Advisor

CWRU expects an Advisor to adjust their schedule to attend university meetings, but may change scheduled meetings to accommodate an Advisor's schedule, if doing so does not cause an unreasonable delay.

CWRU may allow an Advisor, who cannot attend in person, to attend a meeting by telephone, video conferencing or other available technologies.

## 9. Expectations of the Parties with Respect to Advisors

The Complainant and Respondent may elect to change Advisors during the process and neither is obligated to use the same Advisor throughout. The Parties are expected to inform the Investigator(s) of the identity of their Advisor at least two (2) business days before the date of their first meeting with Investigators (or as soon as possible if a more expeditious meeting is necessary or desired).

The Parties must timely notify the Title IX Coordinator if they change Advisors. It is assumed that if a Party changes Advisors, consent to share information with the previous Advisor is terminated, and a Party must execute a release of information as to the new Advisor. Parties are expected to inform the Title IX Coordinator of the identity of their hearing Advisor at least two (2) business days before the hearing.

## 10. Assistance in Securing an Advisor

The Office of Equity will work with the Complainant and Respondent to secure an Advisor.

## E. Informal Resolution Processes

Resolution proceedings are private. All persons present at any time during the Resolution Process must maintain the privacy of the proceedings. The Parties may share as much or as little information as they choose during an Informal Resolution Process.

Informal Resolution includes three different approaches:

1. When Parties agree to resolve the matter through an Alternate Resolution Process, usually before investigation of a Formal Complaint takes place;

2. When the Respondent accepts responsibility for violating this Policy, and desires to accept a sanction and end the Resolution Process; or

3. When the Title IX Coordinator resolves the matter informally by providing supportive measures (only) to remedy the situation.

31

To initiate Informal Resolution, a Complainant must submit a Formal Complaint or contact the Title IX Coordinator. A Respondent can initiate Informal Resolution by contacting the Title IX Coordinator.

It is not necessary to pursue Informal Resolution prior to proceeding to the Formal Grievance Process, and any Party participating in Informal Resolution can stop the process at any time and begin or resume the Formal Grievance Process.

Prior to implementing Informal Resolution, CWRU will provide the Parties with written notice of the allegations constituting the possible violation of this Policy and any sanctions or measures that may result from participating in that process.

The Parties must indicate in writing that their participation in Informal Resolution is their voluntary choice.

Informal Resolution Process is prohibited when at least one Party is a student and another is a university employee (Faculty, Staff, Teaching Assistant, and Research Assistant).

The outcome of a Complaints resolved by Alternate Resolution are not appealable.

# 1. Alternate Resolution

Alternate Resolution is an informal process by which a mutually agreed upon resolution of an allegation is reached. All Parties must consent to the use of Alternate Resolution.

The Title IX Coordinator will assess whether and/or which form of Alternate Resolution is appropriate by considering some or all of the following factors:

- The Parties' amenability to Alternate Resolution;
- Likelihood of potential resolution, taking into account any power dynamics between the Parties;
- The Parties' motivation to participate;
- Civility of the Parties to one another;
- Results of a violence risk assessment or ongoing risk analysis;
- Disciplinary history;
- Whether Emergency Removal is required;
- The skills and experience of the Alternate Resolution facilitator;
- Complaint complexity;
- Emotional investment and intelligence of the Parties;
- Rationality of the Parties;
- Goals of the Parties;
- Available resources to invest in Alternate Resolution

The determination whether Alternate Resolution is available or successful is made by the Title IX Coordinator. The Title IX Coordinator maintains records of any resolution that is reached. The failure of a Party to comply with the terms of a resolution agreement may result in disciplinary actions.

## 2. Respondent Accepts Responsibility for Alleged Violations

The Respondent may accept responsibility for all or part of the alleged Policy violation(s) at any point during the Resolution Process. If the Respondent indicates an intent to accept responsibility for all of the alleged sexual harassment, Process A will be paused, and the Title IX Coordinator will determine whether Informal Resolution is appropriate.

During Informal Resolution, the Title IX Coordinator will determine whether all Parties and the university agree on responsibility, sanctions and/or remedies. If so, the Title IX Coordinator will find that the Respondent is in violation of this Policy and implement agreed-upon sanctions and/or remedies. When the Parties cannot agree on all terms of an Informal Resolution, the Formal Grievance Process will resume.

## 3. Negotiated Resolution

The Title IX Coordinator, with the consent of the Parties, may negotiate and implement an agreement to resolve the allegations that satisfies all Parties and the university.

## F.  Formal  Grievance  Process:  Notice  of  Investigation  and Allegations

The Title IX Coordinator will provide written Notice of the Investigation and Allegations (the "NOIA") to the Respondent and the Complainant when a Formal Grievance Process begins. The Respondent may use the NOIA to prepare to meet with an Investigator and as a reason to choose an Advisor to accompany them. The Complainant will be advised in advance that the Title IX Coordinator will issue the NOIA to the Parties.

The NOIA will include:

1. A meaningful summary of all of allegations,

2. The identity of the Parties (if known),

3. The precise violations of this Policy alleged in the Formal Complaint,

4. The date and location of the alleged incident(s) (if known),

5. The specific policies implicated,

6. A description of the applicable procedures,

7. A statement of the potential sanctions/responsive actions that could result,

8. A statement that CWRU presumes the Respondent is not responsible for the reported misconduct unless and until the evidence supports a different determination,

9. A statement that determinations of responsibility are made at the conclusion of the process and that the Parties will be given an opportunity to inspect and review all directly related and/or relevant evidence obtained during the investigation,

10. A statement about CWRU's prohibition against retaliation,

11. Information about the privacy and confidentiality of the process,

12. Information that both Parties are required to select an Advisor and suggestions for identifying an Advisor,

13. A statement informing the Parties that this Policy prohibits knowingly making false statements or submitting false information during the investigation,

14. Information about how a Party may request disability accommodations during this process,

15. A link to the CWRU's VAWA Brochure,

16. The name(s) of the Investigator(s), and a description of the process for asserting that any Investigator has a known conflict of interest, and

17. An instruction to preserve any evidence that is directly related to the allegations.

Amendments and updates to the NOIA may be made as the investigation progresses and more information becomes available.

Notice will be made in writing and may be delivered by one or more of the following methods: in person, mailed to the local or permanent address of the Parties as indicated in official university records, or emailed to the Parties' CWRU-issued email or designated accounts or other email accounts. Once mailed, emailed and/or received in-person, Notice will be presumptively delivered.

## G. Process Timeline

CWRU will make a good faith effort to complete investigations as promptly as circumstances permit and will communicate regularly with the Parties to update them on the progress and timing of the investigation. CWRU will make a good faith effort to complete the Resolution Process within a sixty-to-seventy-five (60-75) business days, including appeal. All timeframes may be extended as necessary for appropriate cause by the Title IX Coordinator, who will provide notice and rationale for any extensions or delays to the Parties as appropriate, as well as an estimate of how much additional time will be needed to complete the process.

## H. Appointment of Investigators

Once a Formal Complaint is made, the Title IX Coordinator will appoint one or more Investigators to conduct the investigation.

## I. Impartiality

Individuals materially involved in the administration of the Resolution Process, including the Title IX Coordinator, Investigator(s) and Decision-maker(s), must not demonstrate a conflict of interest or bias for a Party generally, or for a specific Complainant or Respondent.

The Title IX Coordinator will vet the assigned Investigator(s) to ensure impartiality including assessing the presence of actual or apparent conflicts of interest or disqualifying biases. The Parties may, at any time during the Resolution Process, raise a concern regarding bias or conflict of interest, and the Title IX Coordinator will determine whether the concern is reasonable and supportable. If so, another Investigator will be assigned to remedy the impact of the bias or conflict, if any. If the source of the conflict of interest or bias is the Title IX Coordinator, concerns should be raised with the Office of General Counsel.

The Formal Grievance Process involves an objective evaluation of all relevant evidence obtained, including evidence which supports a conclusion that the Respondent violated this Policy and evidence which supports that the Respondent did not violate this Policy.

34

## J. Delays in the Investigation Process and Interactions with Law Enforcement

CWRU may undertake a short delay in its investigation (several days to a few weeks) if circumstances require. Such circumstances include, but are not limited to, a request from law enforcement to temporarily delay the investigation, the need for language assistance, the absence of Parties and/or witnesses, and/or accommodations for disabilities or health conditions.

CWRU will communicate in writing the anticipated duration of the delay and reason to the Parties and provide the Parties with status updates. CWRU will promptly resume the investigation and Resolution Process as soon as feasible. During such a delay, CWRU will implement appropriate supportive measures.

Except in unusual circumstances, this process will not be delayed, altered or precluded because civil or criminal charges involving the underlying incident(s) have been filed or dismissed or reduced.

## K. Steps in the Investigation Process

All investigations are thorough, reliable, impartial, prompt and fair. Investigations involve interviews with all relevant Parties and witnesses to obtain available, relevant evidence. Infrequently, an investigation may include expert information.

All Parties shall have a full, fair and equal opportunity through the investigation process to identify witnesses and questions, to provide evidence and to fully review and respond to all evidence on the record.

The Investigator(s) typically take(s) some or all of the following steps, if not already completed (not necessarily in this order):

1. Determine the identity and contact information of the Complainant.

2. In coordination with campus partners, initiate or assist with supportive measures.

3. Identify all policies implicated by the alleged misconduct and notify the Complainant and Respondent of the specific policy provisions implicated.

4. Assist the Title IX Coordinator with conducting a prompt initial assessment to determine if the allegations indicate a potential Policy violation.

5. Commence a thorough, reliable, and impartial investigation by identifying issues and developing a strategic investigation plan, including a witness list, evidence list, intended investigation timeframe, and order of interviews for all witnesses and the Parties.

6. Meet with the Complainant to finalize their interview/statement.

7. Prepare the Notice of Investigation and Allegation (NOIA). The NOIA may be amended with any additional or dismissed allegations.

8. Provide each interviewed Party and witness an opportunity to review and verify the Investigator's summary notes of their respective interviews and meetings.

9. Make good faith efforts to notify the Parties of any meeting or interview involving the other Party, in advance when possible.

10. When participation of a Party is expected, provide that Party with written notice of the date, time, and location of the meeting, as well as the expected participants and purpose.

11. Interview all available, relevant witnesses and conduct follow-up interviews as necessary
    12. Allow each Party the opportunity to suggest witnesses and questions they wish the Investigator(s) to ask of the other Party and witnesses, and document in the report which questions were asked, with a rationale for any changes or omissions.

13. Complete the investigation promptly and without unreasonable deviation from the intended timeline.

14. Provide regular status updates to the Parties throughout the investigation.

15. Prior to the conclusion of the investigation, provide the Parties and their respective Advisors (if so desired by the Parties) with a list of witnesses whose information will be used to render a finding.

16. Write a comprehensive Investigation Report fully summarizing the investigation; all witness interviews; addressing all relevant evidence; and including appendices with relevant physical or documentary evidence.

17. The Investigator(s) gather, assess, and synthesize evidence, but make no conclusions, engage in no Policy analysis, and render no recommendations in the report.

18. Prior to the conclusion of the investigation, provide the Parties and their respective Advisors (if so desired by the Parties) a secured electronic or hard copy of the draft Investigation Report as well as an opportunity to inspect and review all of the evidence obtained as part of the investigation that is directly related to the reported misconduct, including evidence upon which the CWRU does not intend to rely in reaching a determination, for a ten (10) business day review and comment period so that each Party may meaningfully respond to the evidence. The Parties may elect to waive the full ten days. Each copy of the materials shared will be watermarked on each page with the role of the person receiving it (e.g., Complainant, Respondent, Complainant's Advisor, and Respondent's Advisor).

19. The Investigator(s) may respond in writing in the Investigation Report to the Parties' submitted responses and/or to share the responses with the other Party and invite additional responses.

20. The Investigator(s) will incorporate relevant elements of the Parties' written responses into the final Investigation Report, include any additional relevant evidence, make any necessary revisions, and finalize the report. The Investigator(s) should document all rationales for any changes made after the review and comment period.

21. The Investigator(s) may share the report with the Title IX Coordinator and/or legal counsel for their review and feedback.

22. The Investigator will incorporate relevant feedback, and then share the final report with the Parties and their Advisors through secure electronic transmission or hard copy at least ten (10) business days prior to a hearing. The Parties are also provided with a file of any directly related evidence that was not included in the report.

## L. Role and Participation of Witnesses in the Investigation

Witnesses (as distinguished from the Parties) who are employees of the university are expected to cooperate with and participate in the investigation and Resolution Process. Failure of such witnesses to cooperate with and/or participate in the investigation or Resolution Process constitutes a violation of this Policy and may warrant disciplinary review.

Parties and all potential witnesses may be interviewed in person or remotely. Skype, Zoom, FaceTime, WebEx, or similar technologies may be used for interviews at the discretion of the Investigator(s).

## M. Recording of Interviews

No unauthorized audio or video recording of any kind is permitted during investigation meetings. If Investigator(s) audio and/or video record interviews, all Parties will be informed of the audio and/or video recording.

## N. Referral for Hearing

After the final Investigation Report is shared with the Parties, the Title IX Coordinator will refer the matter for a hearing, unless the Investigation Report indicates a lack of jurisdiction under this Process A.

The Title IX Coordinator will select a Panel from the Pool.

The hearing will occur at least ten (10) business days after the final Investigation Report is transmitted to the Parties. The only exception is if the Decision-Maker and the Parties agree to an expedited timeline.

## O. Hearing Decision-Maker Composition

The Title IX Coordinator will designate a three-member Panel from the Pool, and one Panel member as the Panel Chair. The Title IX Coordinator may elect to have an alternate Panel member attend the hearing and deliberations in the event that a substitute is needed.

No Panel member will have previously participated in the investigation in any capacity. Pool members serving as Advisors for a Party may not serve on the Panel.

The Title IX Coordinator will give the Panel members the names of all Parties, witnesses, and Advisors at least five (5) business days in advance of the hearing. A Panel member who may have a conflict of interest or bias must notify the Title IX Coordinator as soon as possible.

The Title IX Coordinator may not serve on the Panel but may serve as an administrative facilitator of the hearing. The hearing will convene at a time determined by the Chair.

## P. Evidentiary Considerations in the Hearing

The Panel considers evidence that is relevant and credible. The Panel  does not consider: 1) incidents not directly related to the possible violation, unless they evidence a pattern; 2) the character of the Parties; or 3) questions and evidence about the Complainant's sexual predisposition or prior sexual behavior, unless such questions and evidence are offered to prove that someone other than the Respondent committed the conduct alleged by the Complainant, or if the questions and evidence concern specific incidents of the Complainant's prior sexual behavior with the Respondent and are offered to prove consent.

After post-hearing deliberation, the Panel renders a determination based on the preponderance of the evidence; whether it is more likely than not that, the Respondent violated the Policy as alleged.  The determination will be rendered within five (5) business days at the conclusion of the hearing.

Previous disciplinary action involving the Respondent may be considered in determining an appropriate sanction following a determination of responsibility if progressive discipline applies to the Respondent.

The Parties may each submit a written impact statement prior to the hearing for the consideration by the Panel at the sanction stage of the process after a determination of responsibility is made. The Panel Chair or the Title IX Coordinator will ensure that the Parties have an opportunity to review any impact statement submitted by the other Party.

## Q. Notice of Hearing

No less than ten (10) business days prior to the hearing, the Title IX Coordinator or the Panel Chair will send notice of the hearing to the Parties. Once mailed, emailed and/or received in-person, notice will be presumptively delivered.

The notice will contain:

1. A description of the alleged violation(s), a list of all policies allegedly violated, a description of the applicable procedures, and a statement of the potential sanctions/responsive actions that could result.

2. The time, date, and location of the hearing and a reminder that attendance is mandatory, superseding all other campus activities.

3. The technology that will be used to facilitate the hearing.

4. Information whether the hearing will occur in person or remotely using technology that enables the Panel and Parties to see and hear a Party or witness answering questions. Parties must request from the Title IX Coordinator that a hearing occur remotely at least five (5) business days prior to the hearing.

5. A list of all those who will attend the hearing, along with an invitation to object to any Panel member on the basis of bias or conflict of interest. This must be raised with the Title IX Coordinator at least two (5) business days prior to the hearing.

6. Information on how the hearing will be recorded and on access to the recording for the Parties after the hearing.

7. A statement that if any Party or witness does not appear at the scheduled hearing, the hearing may continue in their absence and the impact of that absence on the Party's or witness's statements given prior to the hearing. For compelling reasons, the Chair may reschedule the hearing if a Party or witness cannot attend on the scheduled date.

8. Notification that the Parties must be accompanied by an Advisor and must use an Advisor to question witnesses or the other Party. The Title IX Coordinator will appoint an Advisor to a Party who does not have one.

9. A copy of all the materials provided to the Panel about the matter unless previously provided to the Parties.

10. An invitation to each Party to submit to the Chair an impact statement pre-hearing that the Panel will review during any sanction determination.

11. An invitation to contact the Title IX Coordinator to arrange any disability accommodations, language assistance, and/or interpretation services that may be needed at the hearing, and that this request must occur at least seven (7) business days prior to the hearing.

12. A listing of other rules for the hearing, for example, whether Parties can/cannot bring mobile phones/devices into the hearing.

Hearings for possible Policy violations that occur near or after the end of an academic term and are unable to be resolved prior to the end of term will typically be held immediately after the end of the term or during the summer.

If the Respondent is a graduating student, a hold may be placed on graduation and/or official transcripts until the matter is fully resolved (including any appeal). A student facing charges under this Policy is not in good standing to graduate.

# R. Pre-Hearing Matters

Any witness scheduled to participate in the hearing must have been first interviewed by the Investigator(s) unless all Parties and the Chair assent to the witness' participation in the hearing. The same holds for any evidence that is first offered at the hearing. If the Parties and Chair do not assent to the admission of evidence newly offered at the hearing, the Chair may delay the hearing and instruct that the investigation needs to be re-opened to consider that evidence or continue the hearing without consideration of the new evidence, particularly if there is no clear justification for failure of a Party to have shared the evidence with the Investigators during the investigation.

The Parties will be given a list of the names of the Panel at least five (5) business days in advance of the hearing. Parties must submit objections to a Panel member in writing, detailing the rationale for the objection, to the Title IX Coordinator no later than one day prior to the hearing. Panel members will only be removed if the Title IX Coordinator concludes that bias or conflict of interest precludes an impartial hearing.

During the ten (10) business day period prior to the hearing, the Parties have the opportunity for continued review and comment on the final Investigation Report and available evidence. That review and comment may be shared with the Chair at the pre-hearing meeting or at the hearing.

# S. Pre-Hearing Meetings

The Chair may convene a pre-hearing meeting or meetings with the Parties and/or their Advisors, at which they may submit the questions they wish to ask at the hearing, so that the Chair can determine their relevance in advance of the hearing and recommend alternative phrasing. The Chair will document the rationale for the exclusion or inclusion of questions at this pre-hearing meeting. Advisors may request reconsideration at the hearing of matters raised at a pre-hearing meeting.

The Chair, with agreement of the Parties, may determine that certain witnesses do not need to be present at the hearing if their statements are or can be summarized by the Investigator(s) in the Investigation Report or during the hearing.

At the pre-hearing meetings, the Chair will consider arguments that evidence identified in the final Investigation Report as relevant is, in fact, not relevant, or that evidence identified as directly related but not relevant is, in fact, relevant. The Chair may advise the Parties of the Chair's determination to accept or reject these arguments to assist the Parties' preparation for the hearing. The Chair may consult with the Office of General Counsel and/or the Title IX Coordinator or ask either or both to attend pre-hearing meetings.

Pre-hearing meeting(s) are not recorded.

## T. Joint Hearings

In hearings involving more than one Respondent and/or more than one Complainant, the Panel may consider allegations involving all Parties in a single hearing. If a hearing involves more than one Respondent, the Panel will make separate determinations of responsibility for each Respondent with respect to each alleged Policy violation.

## U. Hearing Procedures

At the hearing, the Panel has the authority to determine the existence of a Policy violation as to all allegations of gender discrimination in the form of sexual harassment, and related allegations, including retaliation, in the Formal Complaint. The Panel may also determine the existence of additional alleged Policy violations occurring in concert with the allegations in the Formal Complaint even though those collateral allegations may not violate this Policy.

The Chair of the Panel will answer questions about procedure. Anyone questioned at the hearing must respond to questions on their own behalf.

Witnesses will participate in the portion of the hearing in which they are asked to respond to specific questions from the Panel and the Parties, and then the witnesses will be excused.

The Chair of the Panel conducts the hearing according to the hearing script. Administrative elements of the hearing process, including logistics relating to Parties and witnesses, documents, hearing space or technology, separation of the Parties, and other matters are managed by a non-voting hearing facilitator selected by the Title IX Coordinator.

The Chair of the Panel will explain the procedures and introduce the participants. The hearing will occur in an order determined by the Chair, which may include some or all of the steps below.

## 1. Concerns About Bias or Conflict of Interest

The Chair may ask the Parties to raise final challenges about bias or conflict of interest as to any Panel member or Investigator. The Chair will determine the outcome of these challenges unless the Chair is the subject of the challenge, in which case the Title IX Coordinator will review and decide the challenge. The Chair may determine the outcome of these issues, consult with legal counsel, refer them to the Title IX Coordinator and/or preserve them for appeal.

## 2. The Investigator Presents the Final Investigation Report

The Investigator(s) will present a summary of the final Investigation Report, including items that are contested and those that are not, and will answer questions posed by the Panel and the Parties (through their Advisors). The Investigator(s) will be present during the entire hearing, but not deliberations.

Neither the Parties nor the Panel may ask the Investigator(s) to opine on issues of credibility, recommended findings or determinations. The Investigators, Advisors and Parties will refrain from discussing or responding to questions about these assessments. If such information is discussed, the Panel will disregard it.

40

## 3. Questions for the Parties and Witnesses

The Parties and witnesses may provide relevant information, in turn, beginning with the Complainant, and then in the order determined by the Chair. The Parties and witnesses will first answer questions from the Panel and then from the Parties through their Advisors ("cross-examination").

All questions asked by an Advisor are subject to a relevance determination by the Chair before the Party or witness to whom the question was directed, answers it. After the Advisor asks each question, the Chair will consider it and determine whether the question will be permitted, disallowed or must be rephrased.  The Panel Chair may discuss whether a question is relevant with the Advisors. The Chair will explain any decision to exclude a question as not relevant or why it must be reframed for relevance.

The Chair will limit or disallow questions on the basis that they are irrelevant, unduly repetitious (and thus irrelevant), or abusive. The Chair has final say on all questions and determinations of relevance, subject to any appeal. The Chair may consult with legal counsel on any questions of admissibility. The Chair may ask advisors to frame why a question is or is not relevant from their perspective but will not entertain argument from the advisors on relevance once the Chair has ruled on a question.

If bias is not in issue at the hearing, the Chair will not permit irrelevant questions that probe for bias.

## 4. Refusal to Submit to Cross-Examination and Inferences

Consistent with the regulations that implement Title IX, and pertinent legal cases, the Panel Chair will determine the impact of a refusal by a Party or witness to answer a question, or to be unavailable to answer a question, posed to them by an Advisor, on that Party's or witness' other statements.

The Panel may not draw any inference <u>solely</u> from a Party's or witness's absence from the hearing or refusal to answer cross-examination or other questions.

## V. Recording Hearings

Hearings (but not deliberations) are recorded by CWRU for purposes of review in the event of an appeal. No other recordings of the hearing are permitted, including by the Parties.

The Panel, the Parties, their Advisors and appropriate administrators of CWRU will be permitted to listen to the recording in a controlled environment determined by the Title IX Coordinator. No person may keep or copy the recording without permission of the Title IX Coordinator.

## W. Deliberation, Decision-making, and Standard of Proof

The Panel will deliberate privately whether the Respondent is responsible or not responsible for the Policy violation(s) alleged in the Formal Complaint. A simple majority vote is required for the Panel to conclude that the Respondent is responsible for a Policy violation.

The Panel will apply the preponderance of the evidence standard of proof, meaning that more than 50% of the evidence supports the conclusion that the Respondent is responsible for a Policy violation. The Panel Chair may invite the hearing facilitator to attend the Panel's deliberations to answer questions about the process.

Following a finding of responsibility on one or more of the allegations, to determine sanctions, the Panel may consider the Parties' impact statements. The Panel may also consider any pertinent conduct history provided by the Title IX Coordinator. The Panel will determine appropriate sanction(s) in consultation with the Provost for faculty, Vice President for Student of Affairs or designee for students, and Vice President for Human Resources or other appropriate administrator, depending on the nature of the Respondent's role at CWRU.

The Panel Chair will prepare and deliver to the Title IX Coordinator a written Deliberation Statement detailing the Panel's determination, rationale, the evidence used in support of its determination, the evidence not relied upon, credibility assessments and sanctions.

The Deliberation Statement must be submitted to the Title IX Coordinator within two (3) business days of the end of deliberations, unless the Title IX Coordinator grants an extension. If an extension is granted, the Title IX Coordinator will notify the Parties.

# X. Notice of Outcome

The Title IX Coordinator and the Panel Chair will prepare a Notice of Outcome based on the Deliberation Statement. The Notice of Outcome will be reviewed by the Office of General Counsel.

Within five (5) business days of receiving the Panel's Deliberation Statement, the Title IX Coordinator will then simultaneously share Notice of Outcome, including the final determination, rationale and any applicable sanction(s) with the Parties and their Advisors.

The Notice of Outcome will identify the specific policies violated, including the relevant Policy section, and contain a description of the procedural steps taken by the CWRU from Notice through the Formal Complaint to Hearing, including notifications to the Parties, interviews with Parties and witnesses, steps in the investigation, hearing and other events contributing to the outcome.

To the extent that CWRU is permitted to share information under state or federal law, the Notice of Outcome will specify the finding on each alleged Policy violation; the findings of fact that support the determination; conclusions regarding the application of the relevant Policy to the facts; a statement of, and rationale for, the result of each allegation; sanctions issued; and remedies provided to the Complainant designed to ensure access to CWRU's educational or employment opportunities or activity (this detail is not typically shared with the Respondent unless the remedy directly relates to the Respondent).

The Notice of Outcome will also include information on when the hearing outcome is considered final, any changes that occur prior to finalization, and the relevant procedures and bases for any available appeal options.

Notification will be made in writing and may be delivered by one or more of the following methods: in person, mailed to the Parties at the address in official CWRU records, or emailed to the Parties' CWRU-issued email or other account. Once mailed, emailed, and/or received in-person, notice will be presumptively delivered.

# III. RESOLUTION PROCESS FOR ALLEGED VIOLATIONS OF THE POLICY ON SEXUAL HARASSMENT WHERE PROCESS "A" IS NOT APPLICABLE (KNOWN AS PROCESS "B")

The procedures described below apply to allegations of sexual harassment involving students, staff, faculty members or third parties when the Title IX Coordinator determines Process "A" is inapplicable due to mandatory dismissal in Section II (B)(2). If process "A" is applicable, Process "A" must be applied in lieu of Process "B".

This Process B may be used to address collateral misconduct arising from the investigation of or occurring in conjunction with the reported sexual harassment, including vandalism, physical abuse of another or retaliation. All other allegations of misconduct unrelated to allegations of sexual harassment addressed pursuant to this Process B will be addressed through the procedures elaborated in applicable student, faculty and staff handbooks.

## A. Initial Assessment

Within one to five business days following Notice or a Complaint of an alleged violation of this Policy, the Title IX Coordinator will conduct an initial assessment, which may include:

1. The Title IX Coordinator contacts the Complainant to offer supportive measures.

2. The Title IX Coordinator works to connect the Complainant with an Advisor.

3. The Title IX Coordinator determines that the Complainant is seeking a supportive response, an Informal Resolution or an Administrative Resolution.

    a. If a supportive and remedial response is preferred, the Title IX Coordinator works with the Complainant to identify their wishes and then facilitates their implementation.

    b. If an Informal Resolution option is preferred, the Title IX Coordinator assesses whether the complaint is suitable for informal resolution and may determine if the Respondent is also willing to engage in Informal Resolution.

    c. If Administrative Resolution is preferred, the Title IX Coordinator initiates the investigation process and determines the scope of the investigation as:

        i. An incident, and/or

        ii. A potential pattern of misconduct, and/or

        iii. A culture/climate issue.

4. The Title IX Coordinator may initiate the process to obtain a Violence Risk Assessment (VRA) from the Threat Assessment Behavioral Intervention Team (TABIT) as part of the initial assessment. A VRA can aid in critical and/or required determinations, including:

    a. Interim suspension of a Respondent who is a threat to their own or another's health or safety;

    b. Whether the Title IX Coordinator should pursue Administrative Resolution absent a willing or able Complainant;

    c. Whether to investigate the matter as an incident, pattern and/or climate;

a.  Identifying potentially predatory conduct;

b.  Identifying the presence of grooming behaviors;

c.  Whether a Complaint is amenable to Informal Resolution, and what modality may be most successful;

d.  Whether to permit a voluntary withdrawal by the Respondent;

e.  Whether to impose transcript notation or what to communicate about Respondent who may transfer from CWRU;

f.  Assessment of appropriate sanctions, interim measures and/or remedies;

g.  Whether a Clery Act Timely Warning/Persona-non-grata is needed.

Based on the initial assessment, CWRU will initiate one of two responses:

1.  Informal Resolution – typically used for less serious offenses and only when all Parties agree to Alternate Resolution, or when the Respondent is willing to accept responsibility for violating the Policy. This can also include a remedies-only response.

2.  Administrative Resolution – investigation of Policy violation(s), determination by the hearing panel and an opportunity to appeal to an Appeal Panel. The investigation and the subsequent Administrative Resolution will determine whether this Policy has been violated. If so, the university will promptly implement effective remedies designed to end the discrimination, prevent recurrence, and address the effects.

The response pursued considers the Parties' preference but is determined at the discretion of the Title IX Coordinator. If at any point during this Process B, the Title IX Coordinator determines that the allegations, if true, do not support the conclusion that Policy has been violated, the process will end and the Parties will be notified.

The Complainant may request that the Title IX Coordinator review the termination of Process B and/or re-open the investigation. This decision lies in the sole discretion of the Title IX Coordinator, but the request is granted only in extraordinary circumstances.

## B. Resolution Process Pool

Process B relies on a Pool of faculty, staff and students ("the panel") to carry out the process. Panel members will consist of faculty, staff, and students. Investigators in the Office of Equity will conduct all investigations.  Members of the Pool are announced in an annual distribution of this Policy to all students, parents/guardians of students, employees, prospective students, and prospective employees. They are also listed on the Office of Equity website.

Pool member roles, appointment, and training are described above in Section II(F) entitled Grievance Process Pool.

## C. Counterclaims

Counterclaims by the Respondent may be made in good faith but are also sometimes made for purposes of retaliation. The university is obligated to ensure that this process is not abused for retaliatory purposes.

The university permits the filing of counterclaims, but uses the initial assessment, described above in the Policy section, to assess whether the allegations are made in good faith. If they are, the

allegations will be processed using the resolution procedures below, typically after resolution of the underlying allegation.

A delay in the processing of counterclaims is permitted, accordingly. Occasionally, allegations and counterclaims can be resolved through the same investigation, at the discretion of the Title Coordinator. When counterclaims are not made in good faith, they will be considered retaliatory, and may constitute a violation of this Policy.

# D. Advisors

## 1. Expectations of an Advisor

An Advisor is expected to adjust their schedule to allow them to attend meetings related to this Process, but CWRU may reschedule meetings to accommodate an Advisor's inability to attend, if doing so does not cause an unreasonable delay. CWRU may also make reasonable provisions to allow an Advisor to attend a meeting by telephone, video conferencing, or other available technologies.

Parties whose Advisors are disruptive or who do not abide by university policies and procedures may face the loss of that Advisor and/or possible Policy violations.

Advisors are expected to consult with their advisees without disrupting university meetings or interviews. Advisors do not represent Parties in the process; their role is only to advise.

## 2. Expectations of the Parties with Respect to Advisors

Each Party may choose an Advisor[7] who is eligible and available to accompany them throughout the Process. An Advisor can be anyone, including an attorney, but may not be someone who is also a witness in the Process. A Party may change Advisors during the Process.

Parties must inform the Investigators of the identity of their Advisor at least two (2) business days before the date of their first meeting with the Investigator(s) (or as soon as possible if a more expeditious meeting is necessary or desired). Parties are expected to provide timely notice to the Investigator(s) and/or the Title IX Coordinator if they change Advisors.

## 3. Assistance in Securing an Advisor

The Office of Equity will work with the Complainant and Respondent to secure an Advisor.

# E. Resolution Options

All persons present during the Resolution Process are expected to maintain the privacy of the proceedings in accord with university Policy. Parties have discretion to share their own experiences in this Process with others but are encouraged to discuss with their Advisors first before doing so.

---

[7] This could include an attorney, advocate, or support person. Witnesses are not entitled to Advisors within the process, though they can be advised externally. If CWRU allows more than one Advisor for one party, they should do so for all Parties.

45

## 1. Informal Resolution

Informal Resolution is applicable when the Parties voluntarily agree to resolve the matter through Alternate Resolution or when the Respondent accepts responsibility for violating this Policy, or when the Title IX Coordinator can resolve the matter informally.

Informal Resolution is not required as a prerequisite to Administrative Resolution, and any Party participating in Informal Resolution can stop the process at any time and request Administrative Resolution.

If Informal Resolution fails to resolve the matter, Administrative Resolution may be pursued.

### a. Alternate Resolution

Alternate Resolution is an informal process, such as mediation or restorative practices, by which a mutually agreed upon resolution of an allegation is reached. It may be used for less serious, yet inappropriate, behaviors and is encouraged as an alternative to the Administrative Resolution Process (described below) to resolve conflicts. The Parties must consent to the use of Alternate Resolution.

The Title IX Coordinator determines if Alternate Resolution is appropriate, based on the willingness of the Parties, the nature of the conduct at issue, and likelihood that Alternate Resolution will be successful.

In an Alternate Resolution meeting, a trained administrator facilitates a dialogue with the Parties to an effective resolution, if possible. Institutionally-imposed sanctions are not possible as the result of an Alternate Resolution Process, though the Parties may agree to accept sanctions and/or appropriate remedies.

The Title IX Coordinator maintains records of any resolution reached, and failure to abide by the resolution can result in appropriate enforcement actions.

Alternate Resolution is not typically applicable to reports of violent behavior or similar serious violations of this Policy, though it may be made available after the Administrative Resolution Process is completed should the Parties and the Title IX Coordinator, believe it could be beneficial. The results of Alternate Resolution are not appealable.

### b. Respondent Accepts Responsibility for Alleged Violations

The Respondent may accept responsibility for all or part of the alleged violations of this Policy at any point during the Resolution Process. If the Respondent accepts responsibility, the Title IX Coordinator makes a determination that the individual violated the Policy. The Title IX Coordinator then determines appropriate sanction(s) or responsive actions, which are promptly implemented to stop the harassment, discrimination and/or retaliation; prevent its recurrence; and remedy the effects of the conduct. Once this occurs, the process is over. The Complainant will be informed of this outcome.

If the Respondent accepts responsibility for some of the alleged Policy violations and the Title IX Coordinator determines appropriate sanction(s) or responsive actions, which are promptly implemented, for those violations, the remaining allegations will be investigated and resolved. The Complainant will be informed of this outcome. The Parties may seek Alternate Resolution on the remaining allegations, subject to the stipulations above.

46

c. Negotiated Resolution

The Title IX Coordinator, with the consent of the Parties, may negotiate and implement any agreement to resolve the allegations that satisfies all Parties and achieve the goals of stopping the harassment, discrimination and/or retaliation; preventing recurrence; and remedying the effects of the conduct

## 2. Administrative Resolution

Administrative Resolution may be pursued for behavior for which the Respondent has not accepted responsibility that constitutes conduct covered by this Policy. Administrative Resolution starts with a thorough, reliable, and impartial investigation.

If Administrative Resolution is initiated, the Title IX Coordinator will provide written notification of the investigation to the Parties. Typically, notice is given at least 48 hours in advance of an interview. Advanced notice facilitates the Parties' ability to identify and choose an Advisor, if any, to accompany them to the interview.

Notification will include a meaningful summary of the allegations, will be made in writing, and may be delivered by one or more of the following methods: in person, mailed to the local or permanent address of the Parties as indicated in official university records, or emailed to the Parties' university-issued or designated email account.

Once mailed, emailed, and/or received in-person, notice will be presumptively delivered. The notification should include the policies allegedly violated, if known at the time. Alternatively, the policies allegedly violated can be provided at a later date, in writing, as the investigation progresses, and details become clearer.

The university will make a good faith effort to complete investigations as promptly as circumstances permit, usually within 60 days, and will communicate regularly with the Parties to update them on the progress and timing of the investigation.

Once the decision is made to commence an investigation, the Title IX Coordinator appoints Investigators to conduct the investigation (typically using a team of two Investigators), usually within two (2) business days of determining that an investigation should proceed.

The Title IX Coordinator will assign the Investigator(s) who is impartial and free of conflicts of interest or disqualifying bias. The Parties may, at any time during the Resolution Process, raise a concern regarding bias or conflict of interest, and the Title IX Coordinator will determine whether the concern is reasonable and supportable. If so, another Investigator will be assigned and the impact of the bias or conflict, if any, will be remedied. If the bias or conflict relates to the Title IX Coordinator, concerns should be raised with the Office of General Counsel.

CWRU may undertake a short delay in its investigation (several days to weeks, to allow evidence collection) when criminal charges based on the same behaviors that invoke this Resolution Process are being investigated by law enforcement. This Resolution Process is not typically altered or precluded on the grounds that civil or criminal charges involving the underlying incident(s) have been filed or that criminal charges have been dismissed or reduced.

# F. Investigation

The Investigation will be thorough, reliable and impartial, and based on  a strategic investigation plan that includes identifying potential witnesses and evidence, a timeline for completion and the order of interviews for Parties and witnesses. The Investigation may include some or all of the following steps (not necessarily in this order):

- Determine the identity and contact information of the Complainant.

- In coordination with campus partners, the Title IX Coordinator will initiate or assist with implementing necessary supportive measures for the Parties.

- Identify all policies implicated by the alleged misconduct.

- An initial assessment by the Title IX Coordinator to determine if there is reasonable cause to believe the Respondent has violated this Policy.

- Termination of this Process if there is insufficient evidence that this Policy has been violated.

- Prepare the initial Notice of Investigation and Allegation (NOIA) on the basis of the initial assessment. Notice may be one-step or multiple steps, depending on how the investigation unfolds, and potential Policy violations may be added or dropped as more is learned. When this occurs, Investigators will update the NOIA and share the updated NOIA with the Parties. The NOIA will include the following information:

  o That the Parties each have a right to be accompanied by an Advisor at all meetings pursuant to this Process.

  o A written description of the alleged violation(s), all policies allegedly violated, applicable procedures, and a statement of the potential sanctions/responsive actions that could result from this Process.

  o An instruction to the Parties to preserve evidence that is directly related to the allegations.

- Meet with all relevant Parties and witnesses to obtain available, relevant evidence.

- Provide the Parties and witnesses with an opportunity to review and verify the Investigator's summary notes from interviews and meetings with that Party or witness

- Make good faith efforts to notify the Parties of any meeting or interview involving the other Party, in advance when possible.

- Provide the Parties with a full and fair opportunity to suggest witnesses and questions, provide evidence and fully review and respond to all evidence.

- Interview all relevant individuals and conduct follow-up interviews.

- Allow each Party the opportunity to suggest questions they wish the Investigator(s) to ask of the other Party and witnesses.

- Provide status updates to the Parties throughout the investigation and on request.

- Prepare a comprehensive Investigation Report fully summarizing the investigation and all evidence.

- Provide Parties with a the draft Investigation Report.

- Give the Parties a full and fair opportunity to respond to the in writing to the draft Investigation Report within five (5) business days and incorporate that response into the Report. Investigators may respond in writing in the Report to the responses of the Parties, and/or to share the responses with the Parties for further responses.

- Share the final Investigation Report with the Title IX Coordinator or legal counsel for review and feedback.

- Provide the final Investigation Report to the Title IX Coordinator.

48

## G. Hearing and Determination

Within two to three days of receiving the Investigation Report, the Title IX Coordinator will determine if the matter requires a hearing.

If the record is incomplete, the Title IX Coordinator may direct a re-opening of the investigation, or may direct or conduct further investigation, including meeting with the Parties or any witnesses.

If a hearing is required, the Title IX Coordinator will provide a Notice of Hearing. Hearings will be held at minimum 10 days following the Notice of Hearing.

## 1.  Hearing

If a hearing is required, the Title IX Coordinator will designate a three-member Panel from the Pool to hold the hearing.  The Title IX Coordinator will designate one of the three members as Chair of the Panel.

The Chair, after consulting Parties and Title IX Coordinator, may determine that certain witnesses do not need to attend the hearing because their statements can be adequately summarized by the Investigator(s) or through discussion of the Investigation Report or because they do not possess relevant information.

The Parties must bring to the attention of the Panel Chair or the Title IX Coordinator the existence of any conflicts of interest between a Party and the Panel members before the hearing begins.

No new witness interviews may be conducted 48 hours before a scheduled hearing date. If additional witnesses are identified or additional information is discovered, the hearing date will be rescheduled.

The following persons may attend the hearing: the Parties, their advisers, Investigators, general counsel, the Title IX Coordinator and the hearing representative(s). The Title IX Coordinator has discretion to invite other necessary persons to attend the hearing.  The Parties' Advisors may not address the Panel, other Parties or witnesses during the hearing and their role is solely to advise the Party.

The Complainant and Respondent may question witnesses and the other Party or Parties through the Panel Chair. Questions are submitted to the Panel Chair in writing. The Panel Chair will determine if the questions are relevant. If the question is not allowed, it will be noted on the record.

If the Complaint presents more than one allegation of misconduct, the Panel will reach a decision separately as to whether each allegation of a violation of the Policy is established using the preponderance of the evidence standard.

If the Complainant or Respondent become aware of a defect during the procedure, they must immediately call this to the attention of the Panel, Chair or other Decision-Maker. The Title IX Coordinator may, at his/her sole discretion, terminate proceedings and set them for a rehearing upon: (a) receipt of new evidence not available prior to or at time of the hearing that has potential to impact outcome; or (b) notice of procedural irregularity that has potential to impact the hearing's outcome.

## 2. Outcome and Appeal

The Title IX Coordinator will timely provide the Parties with a written Notice of Outcome to include findings for each alleged Policy violation, sanction(s), and a detailed rationale, delivered simultaneously to the Parties.

The Notice of Outcome will state when the determination is final.

Unless based on an acceptance of a finding of a violation by the Respondent, the determination may be appealed by either Party. The Notification of Outcome will state the grounds on which the Parties may appeal and explain how to initiate an appeal. More information about the appeal procedures can be found in the appeals section of this Policy.

# H. Additional Details of the Investigation Process

## 1. Witness responsibilities

Witnesses (as distinguished from the Parties) who are faculty or staff of the university are expected to cooperate with and participate in the investigation and Resolution Process. Failure of a witness to cooperate with and/or participate in the investigation or Resolution Process constitutes a violation of Policy and may be subject to discipline.

## 2. Remote processes

Parties and witnesses may be interviewed remotely by phone, video conferencing, or similar technologies if the Investigator(s) or Decision-maker determine that timeliness or efficiency dictates a need for remote interviewing. Witnesses may also provide written statements in lieu of interviews, or respond to questions in writing, if deemed appropriate by the Investigator(s), though this approach is not ideal. Where remote technologies are used, the CWRU makes reasonable efforts to ensure privacy, and that any technology does not work to the detriment of any Party or subject them to unfairness.

## 3. Recording

No unauthorized audio or video recording of any kind is permitted during the Resolution Process. If Investigator(s) elect to audio and/or video record interviews, all involved Parties must be made aware of audio and/or video recording.

## 4. Evidence

Any evidence that is relevant and credible may be considered, including an individual's prior misconduct history and evidence indicating a pattern of misconduct. Irrelevant or immaterial evidence, that lacking in credibility or that is improperly prejudicial will be excluded or disregarded.

Neither the Title IX Coordinator nor the Investigator(s) will meet with witnesses who lack personal knowledge of the factual event from which the allegations provide and, instead, have information about the character or qualities of one or more Parties.

Previous disciplinary action of any kind involving the Respondent may be considered in determining the appropriate sanction(s), if the CWRU uses a progressive discipline system.

## 5. Notification of Outcome

If the Respondent admits to the violation(s), or is found in violation, the Title IX Coordinator or Panel determines sanction(s) and/or responsive actions, which are promptly implemented in order

to effectively to stop the harassment, discrimination, and/or retaliation; prevent its recurrence; and remedy the effects of the discriminatory conduct, both on the Complainant and the community.

The Title IX Coordinator informs the Parties of the determination within two to three business days of the resolution, ideally simultaneously, but without significant time delay between notifications. Notifications are made in writing and may be delivered by one or more of the following methods: in person; mailed to the local or permanent address of the Parties as indicated in official university records; or emailed to the Parties' university-issued or designated email account. Once mailed, emailed, and/or received in-person, notice is presumptively delivered.

# IV. SANCTIONS, POST-HEARING MATERS AND APPEAL PROCESS APPLICABLE TO PROCESS A AND PROCESS B

## 1. Sanctions

Factors considered when determining a sanction/responsive action following a hearing or resolution pursuant to Process A or Process B may include, but are not limited to:

    a. The nature, severity of, and circumstances surrounding the violation(s)

    b. The Respondent's disciplinary history

    c. Previous allegations or allegations involving similar conduct

    d. The need for sanctions/responsive actions to bring an end to the discrimination,

    e. harassment, and/or retaliation

    f. The need for sanctions/responsive actions to prevent the future recurrence of

    g. discrimination, harassment, and/or retaliation

    h. The need to remedy the effects of the discrimination, harassment, and/or

       retaliation on the Complainant and the community

    i. The impact on the Parties

    j. Any other information deemed relevant by the Decision-maker(s)

Sanctions will be implemented as soon as is feasible, either upon the outcome of any appeal or the expiration of the window to appeal without an appeal being requested.

The sanctions described in this Policy are not exclusive of, and may be in addition to, other actions taken or sanctions imposed by other offices at CWRU and/or authorities external to the university.

The following sanctions may be imposed upon any member of the community found to have violated this Policy. Typical sanctions that may be imposed upon students, employees, or organizations, but not limited to:

<u>Student or Student Organization Sanctions</u>

- Disciplinary Warning
- Disciplinary Probation
- Separation from the University
- Expulsion from the University

51

- Required Education and Training
- Organizational Sanctions
- Community Service
- Restitution
- Rehabilitation
- Restriction (temporary or permanent loss of use of CWRU facilities or services or access to extracurricular activities or other opportunities)
- Withholding Diploma
- Revocation of Degree
- Creative or alternative sanctions

<u>Employee Sanctions:</u>
- Warning: Written or Verbal
- Performance Improvement Plan
- Demotion
- Required Counseling
- Probation
- Loss of oversight or Supervisory Responsibility
- Required Education and Training
- Loss of Annual Pay Increase
- Suspension with pay
- Suspension without pay
- Termination
- Other Actions: In addition to or in place of the above sanctions, CWRU may assign any other sanctions as deemed appropriate.

# B. Sanctioning Guidelines

Any person found responsible for violating Sexual Assault section of the Policy may receive a sanction ranging from suspension to expulsion (student) or suspension to termination (employee), taking into account the severity of the incident, previous disciplinary violations, and other considerations.

Any person found responsible for violation of the Sexual Exploitation or Sexual Harassment section of this Policy may receive a sanction ranging from warning to expulsion (student) or warning to termination (employee), based on the severity of the incident, previous disciplinary violations and other considerations.

Any person found responsible for dating violence, domestic violence or stalking may receive a sanction ranging from disciplinary probation to expulsion (student), or probation, suspension or termination (employee) from the university, based on the severity of the incident, previous disciplinary violations and other considerations.

The Panel reserves the right to broaden or lessen any sanction based on mitigating circumstances or egregiously harmful and/or offensive behavior. Neither the hearing Panel nor any appeals panel will deviate from the range of recommended sanctions absent compelling.

# C. Withdrawal or Resignation While Charges Pending

*Students:*  Should a student decide to not participate in the Resolution Process, the Process proceeds absent their participation. Should a student Respondent permanently withdraw from the university, the Resolution Process ends, as CWRU no longer has disciplinary jurisdiction over the withdrawn student. However, CWRU will continue to address and remedy the conditions that may have contributed to the alleged violation(s) and the effects of the alleged harassment, discrimination and/or retaliation. The student who withdraws or leaves while the Process is pending may not return to CWRU. This applies to all campuses and programs of CWRU. Admissions and the Registrar will be notified that the student is ineligible to be readmitted. The student may also be barred from CWRU property, campus and/or events. If the student Respondent withdraws or takes a leave of absence for a specified period of time (e.g., one semester or term), the Resolution Process may continue remotely and that student is not permitted to reenroll unless and until all sanctions, if any, have been satisfied.

*Employees:* Should an employee Respondent resign with unresolved allegations pending, the Resolution Process ends, as CWRU no longer has disciplinary jurisdiction over the resigned employee. However, CWRU will continue to address and remedy the conditions that may have contributed to the alleged violation(s) and the effects of the alleged harassment, discrimination and/or retaliation. The employee who resigns with unresolved allegations pending is not eligible for rehire with any university programs or campuses, and the records retained by Human Resources will reflect that status. CWRU responses to future inquiries regarding employment references for that individual will include that the former employee resigned during a pending disciplinary matter.

# D. Long-Term Remedies/Other Actions

Following the conclusion of the Resolution Process, and in addition to any sanctions implemented, the Title IX Coordinator may implement additional long-term remedies or actions with respect to the Parties and/or the campus community that are intended to stop the harassment, discrimination, and/or retaliation, remedy the effects, and prevent reoccurrence, and foster the academic success of the Parties.

These remedies/actions may include, but are not limited to:

- Referral to counseling and health services
- Referral to the Employee Assistance Program Impact Solutions
- Education to the individual and/or the community
- Permanent alteration of housing assignments
- Permanent alteration of work arrangements for employees
- Provision of campus safety escorts
- Climate surveys
- Policy modification and/or training
- Provision of transportation accommodations

- Implementation of long-term contact limitations between the Parties
- Implementation of adjustments to academic deadlines, course schedules, etc.

At the discretion of the Title IX Coordinator, certain long-term support or measures may also be provided to the Parties even if no Policy violation is found.

When no Policy violation is found, the Title IX Coordinator will continue to support the Parties to ensure they have access to CWRU's educational programs and activities.

# E. Failure to Comply with Sanctions and/or Interim and Long-Term Remedies and/or Responsive Actions

Respondents are expected to comply with sanctions, responsive actions and/or corrective actions within the timeframe specified for doing so.

Failure to comply with sanction(s) and/or corrective action(s) by the date specified may result in additional sanction(s) and/or corrective action(s), including suspension, expulsion, and/or termination and may be noted on a student's official transcript.

# F. Appeals

Any Party may request an appeal ("Request for Appeal") in writing to the Title IX Coordinator within three (3) business days of the delivery of the Notice of Outcome.

The Title IX Coordinator will designate a three-member Appeal Panel chosen from the Pool. Appeal Panelists will have had no prior involvement in the Resolution Process with the Parties, including any earlier dismissal appeal. The Title IX Coordinator will designate a voting Chair of the Appeal Panel.

The Request for Appeal will be forwarded to the Appeal Chair for consideration to determine if the request meets the grounds for appeal. This assessment is not a review of the merits of the appeal, but solely a determination as to whether the Request for Appeal is based on one of the permitted grounds for appeal and is timely filed.

## 1. Grounds for Appeal

Appeals are limited to the following grounds:

1. Procedural irregularity that affected the outcome;
2. New evidence that was not reasonably available at the time the determination regarding responsibility or dismissal was made, that could affect the outcome of the matter; and
3. The Title IX Coordinator, Investigator(s), or Decision-maker(s) had a conflict of interest or bias for or against Complainants or Respondents generally or the specific Complainant or Respondent that affected the outcome of the matter.

The Chair will deny the Request for Appeal if it is not based on one or more of the above three grounds for appeal. The Chair will then notify the Parties and their Advisors that the appeal is denied because it is not based on one of the above grounds for appeal.

## 2. Appeal process

If the Request for Appeal is based on one or more of the grounds listed above, the Appeal Chair will notify the other Parties and their Advisors, the Title IX Coordinator, the Appeal Panelists, and, when appropriate based on the reasons articulated for the appeal, the Investigators and/or the hearing Panel.

The Chair will send the Request for Appeal to the other Parties and their Advisors, the Title IX Coordinator, and, when appropriate, the Investigators and/or hearing Panel, and instruct them to respond, within 3 business days, to the appeal. Once received by the Chair, all responses to the Request for Appeal will be shared with all Parties for review and comment.

The non-appealing Party (if any) may choose to Request an Appeal at this time. If so, that will be reviewed pursuant to the process described above and forwarded to the Party who initially requested an appeal, and others, which will be circulated for review and comment by all Parties.

Following the end of the response and comment period, neither Party may submit new Requests for Appeal. The Appeal Chair will collect information documentation required to assess the appeal, the Requests for Appeal and the responses, and share this with the Appeal Panel. The Chair of the Appeal Panel will render a decision in within five (5) business days, unless this period is extended for good reason by the Title IX Coordinator, who will notify the Parties.

A Notice of Appeal Outcome will be sent to all Parties simultaneously including the decision on each approved ground and rationale for each decision. The Notice of Appeal Outcome will specify the finding on each ground for appeal, specific instructions for remand or reconsideration, sanctions impacted by the appeal, and the rationale supporting the essential findings.

Notification will be made in writing and delivered to all persons previously advised of the Request for Appeal.

## 3. Status of Sanctions During the Appeal

Any sanctions in the Notice of Outcome are stayed during the appeal process. Supportive measures may be continued or reinstated.

If sanctions are to be implemented immediately post-hearing, but cannot be due to an appeal, the Title IX Coordinator may institute Emergency Removal procedures within 48 hours of the Request for Appeal.

CWRU may place holds on official transcripts, diplomas, graduations and course registration pending the outcome of an appeal when the Notice of Outcome issued a sanction that included separation.

## 4. Appeal Considerations

a. Decisions on appeal are to be deferential to the rationale in the Notice of Outcome. The findings and sanctions may be reversed or revised on appeal only when there is clear error and a compelling justification to do so.
b. Appeals are not intended to provide for a re-hearing and full reconsideration of the matters considered at the hearing. In most cases, appeals are based entirely on a review of the written documentation or record of the hearing and documentation regarding the grounds for appeal.
c. The Appeal Chair or Panel may consult with the Title IX Coordinator on questions of procedure or rationale for clarification. Documentation of all such consultation will be maintained.

d.  Appeals granted based on new evidence may be remanded to the Investigator(s) and Hearing Panel for reconsideration.

e.  Once an appeal is decided, the outcome is final. There are no further appeals provided for in this Process. This is true even if the Outcome of the Appeal alters in whole or in part the Notice of Outcome, including revising a sanction. The only exception is when the Outcome of the Appeal requires a new hearing. In that case, the Notice of Outcome of the new hearing will be appealable pursuant to this Process.  Similarly, if the Outcome of the Appeal remands the matter for additional consideration by the Hearing Panel, the subsequent decision of the Hearing Panel is not appealable.

f.  In rare cases where a procedural error cannot be cured (as in cases of bias), the Appeal Panel may order a new hearing with a new Panel.

g.  In cases in which the appeal results in reinstatement to CWRU or resumption of privileges, all reasonable attempts will be made to restore the Respondent to their prior status, recognizing that some opportunities lost may be irreparable in the short term.

# Appendix A: Statement of Rights of the Parties

1. The right to an equitable investigation and resolution of all credible allegations of prohibited harassment or discrimination made in good faith to CWRU officials.

2. The right to timely written notice of all alleged violations, including the identity of the Parties involved (if known), the precise misconduct being alleged, the date and location of the alleged misconduct (if known), the implicated policies and procedures, and possible sanctions.

3. The right to timely written notice of any material adjustments to the allegations (e.g., additional incidents or allegations, additional Complainants, unsubstantiated allegations) and any attendant adjustments needed to clarify potentially implicated Policy violations.

4. The right to be informed in advance of any public release of information regarding the allegation(s) or underlying incident(s), whenever possible.

5. The right not to have any personally identifiable information released to the public without consent provided, except to the extent permitted by law.

6. The right to be treated with respect by CWRU officials.

7. The right to have CWRU policies and procedures followed without material deviation.

8. The right not to be pressured to mediate or otherwise informally resolve any reported misconduct involving violence, including sexual violence.

9. The right not to be discouraged by CWRU officials from reporting sexual misconduct or discrimination to both on-campus and off-campus authorities.

10. The right to be informed by CWRU officials of options to notify proper law enforcement authorities, including on-campus and local police, and the option(s) to be assisted by CWRU authorities in notifying such authorities, if the Party so chooses. This also includes the right not to be pressured to report, as well.

11. The right to have allegations of violations of this Policy responded to promptly and with sensitivity by CWRU law enforcement and/or other CWRU officials.

12. The right to be informed of available interim actions and supportive measures, such as counseling; advocacy; health care; legal, student financial aid, visa, and immigration assistance; or other services, both on campus and in the community.

13. The right to a CWRU-implemented no-contact order [or a no-trespass order against a non-affiliated third Party] when a person has engaged in or threatens to engage in stalking, threatening, harassing, or other improper conduct that presents a danger to the welfare of the Party or others.

14. The right to be informed of available assistance in changing academic, living, and/or working situations after an alleged incident of discrimination, harassment, and/or retaliation, if such changes are reasonably available. No formal report, or investigation, either campus or criminal, needs to occur before this option is available. Such actions may include, but are not limited to:

    a. Relocating an on-campus student's housing to a different on-campus location

    b. Assistance from CWRU staff in completing the relocation

    c. Changing an employee's work environment (e.g., reporting structure, office/workspace relocation)

    d. Transportation accommodations

     e.  Visa/immigration assistance

     f.  Arranging to dissolve a housing contract and a pro-rated refund

     g.  Exam, paper, and/or assignment rescheduling or adjustment

     h.  Receiving an incomplete in, or a withdrawal from, a class (may be retroactive)

     i.  Transferring class sections

     j.  Temporary withdrawal/leave of absence (may be retroactive)

     k.  Campus safety escorts

     l.  Alternative course completion options.

15. The right to have CWRU maintain such actions for as long as necessary and for supportive measures to remain private, provided privacy does not impair CWRU's ability to provide the supportive measures.

16. The right to receive sufficiently advanced, written notice of any meeting or interview involving the other Party, when possible.

17. The right to ask the Investigator(s) and Decision-maker(s) to identify and question relevant witnesses, including expert witnesses.

18. The right to provide the Investigator(s)/Decision-maker(s) with a list of questions that, if deemed relevant by the Investigator(s)/Chair, may be asked of any Party or witness.

19. The right not to have irrelevant prior sexual history or character admitted as evidence.

20. The right to know the relevant and directly related evidence obtained and to respond to that evidence.

21. The right to fair opportunity to provide the Investigator(s) with their account of the alleged misconduct and have that account be on the record.

22. The right to receive a copy of the Investigation Report, including all factual, Policy, and/or credibility analyses performed, and all relevant and directly related evidence available and used to produce the Investigation Report, subject to the privacy limitations imposed by state and federal law, prior to the hearing, and the right to have at least ten (10) business days to review the report prior to the hearing.

23. The right to respond to the Investigation Report, including comments providing any additional relevant evidence after the opportunity to review the Investigation Report, and to have that response on the record.

24. The right to be informed of the names of all witnesses whose information will be used to make a finding, in advance of that finding, when relevant.

25. The right to regular updates on the status of the investigation and/or resolution.

26. The right to have reports of alleged Policy violations addressed by Investigators, Title IX Coordinators, and Decision-maker(s) who have received relevant annual training.

27. The right to a Hearing Panel that is not single-sex in its composition, if a panel is used.

28. The right to preservation of privacy, to the extent possible and permitted by law.

29. The right to meetings, interviews, and/or hearings that are closed to the public.

30. The right to petition that any CWRU representative in the process be recused on the basis of disqualifying bias and/or conflict of interest.

31. The right to have an Advisor accompany and assist the Party in all meetings and/or interviews associated with the Resolution Process.

32. The right to have CWRU compel the participation of faculty, staff, and student witnesses.

33. The right to the use of the appropriate standard of evidence, preponderance of the evidence to make a finding after an objective evaluation of all relevant evidence.

34. The right to be present, including presence via remote technology, during all testimony given and evidence presented during any formal grievance hearing.

35. The right to have an impact statement considered by the Decision-maker(s) following determination of responsibility for any allegation, but prior to sanctioning.

36. The right to be promptly informed in a written Notice of Outcome letter of the finding(s) and sanction(s) of the Resolution Process and a detailed rationale therefor (including an explanation of how credibility was assessed), delivered simultaneously (without undue delay) to the Parties.

37. The right to be informed in writing of when a decision by CWRU is considered final and any changes to the sanction(s) that occur before the decision is finalized.

38. The right to be informed of the opportunity to appeal the finding(s) and sanction(s) of the Resolution Process, and the procedures for doing so in accordance with the standards for appeal established by CWRU.

39. The right to a fundamentally fair resolution as defined in these Procedures.

ATIXA 2020 ONE POLICY, TWO PROCEDURES MODEL
USE AND ADAPTATION OF THIS MODEL WITH CITATION TO ATIXA IS PERMITTED
THROUGH A LIMITED LICENSE TO CASE WESTERN RESERVE UNIVERSITY.
ALL OTHER RIGHTS RESERVED. ©2020. ATIXA