IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN NOAKES<br><br>Plaintiff<br><br>v.<br><br>CASE WESTERN RESERVE UNIVERSITY,<br><br>Defendant | Case No. 1:21-cv-1776-PAB<br><br>Judge: BARKER<br><br>MOTION FOR ORDER TO SHOW CAUSE WHY WITNESS SHOULD NOT BE HELD IN CONTEMPT FOR FAILURE TO COMPLY WITH SUBPOENA AND ORDERING FORENSIC EXAMINATION OF WITNESS' ELECTRONIC DEVICES |

Pursuant to Fed. R. Civ. Proc. 45, Plaintiff John Noakes requests an Order of this Court for a witness, Jane Roe, to appear and show cause why she should not be held in contempt for failure to comply with a subpoena. In addition, to prevent the destruction of evidence, Plaintiff requests that the Court order the witness to surrender her electronic devices for a forensic examination.

A copy of the subpoena and relevant correspondence accompany this Motion. A proposed Order also accompanies this Motion.

**FACTS**

**A.     This Litigation**

This case arises out of, *inter alia*, the efforts of administrators at the Case Western Reserve University and Case Western Reserve University School of Medicine (collectively "CWRU") to retaliate against John Noakes after he was found "not responsible" for allegations of sexual misconduct against a fellow student, identified here as "Jane Roe." Jane Roe had alleged that John Noakes had sexually assaulted her. She never filed a police complaint. Instead, the matter was reported to the CWRU Office of Equity, the office charged with enforcement of CWRU's non-

1

discrimination and sexual harassment policies. CWRU investigated the matter and, following a hearing, John Noakes was cleared of all charges.

The Amended Complaint alleges, *inter alia*, that CWRU was deliberately indifferent to harassment and retaliation against Plaintiff by students, faculty, and staff who were disappointed in the results of the Title IX process. This, the Amended Complaint alleges, constitutes violations of Title IX.

While the facts of this case are detailed, this is what is necessary to understand this Motion:

After John Noakes was cleared of the charges, Jane Roe, other CWRU students, and school administrators (including the Title IX Coordinator and a Dean in the Medical School) who were unhappy with the outcome began a campaign of intimidation and harassment against John Noakes.[1] Students, with the tacit encouragement of Jane Roe and administrators, started an on-line campaign to expel John Noakes. Part of this plan involved encouraging students to use the school's "professionalism" process as a 'second bite at the apple' to discipline John Noakes.[2] (*See* Am. Complaint ¶ 50, 91.) At least two CWRU deans (Dean Ricanati and Dean Logio), working with Jane Roe, sought to "flood" the school's professionalism process with complaints about Plaintiff. *See* Pl. Reply to Opposition to Motion for Preliminary Injunction, Doc#30, PageID#1020-1023 (explaining how professionalism process "was clearly being abused to accomplish what could not be accomplished through the Title IX process").

---

[1] The campaign of harassment and intimidation culminated in a second Title IX investigation of John Noakes because someone, unbeknownst to John Noakes, had posted information on-line critical of the CWRU disciplinary process. Again, John Noakes was ultimately exonerated. But, again, John Noakes was damaged by having to defend himself against spurious charges.

[2] In *Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019), the Sixth Circuit acknowledged its traditional "broad view of what constitutes academic conduct" in general, and that "medical schools have good reason" to impose professionalism requirements, in particular. 938 at 299. But the court warned against efforts of medical schools to "construe all types of misconduct" as professionalism concerns. 938 F.3d at-300.

Jane Roe's role and knowledge of this activity was confirmed by posts obtained from a group chat involving medical student friendly to Jane Roe One student admitted to the group that this was a process encouraged by the Medical School Deans with the knowledge of Jane Roe:



One student indicates that the group did not want to act without Jane Roe's knowledge:



The students then circulated a petition and posted on social media as part of a retaliatory effort to pressure the school to remove John Noakes. (*See e.g.* Am. Complaint ¶¶ 109, 111.) Again, group chat posts confirm that Jane Roe was communicating with the other students about this issue.

3



Other messages acknowledged communications with Jane Roe about these issues:



And messages confirm that the students involved communicated with Jane Roe:



4

CWRU is, according to the Amended Complaint, liable because officials with knowledge of the retaliatory harassment failed to take action to preserve John Noakes' ability to complete his medical education in peace.

**B.     The Subpoena**

The subpoena was delivered by UPS Next Day Air Saver on November 9, 2022.[3]

The subpoena requested various documents related to the CWRU investigations and adjudications of the allegations that Plaintiff and Jane Roe committed retaliation. In particular, the subpoenas sought evidence of communications by Jane Roe with CWRU faculty, staff, and students to support the claim that Jane Roe and her friends engaged in a coordinated with the tacit encouragement and support of CWRU administrators. (*See e.g.* Amended Complaint ¶¶ 94, 108-109, 164.) The subpoena also sought evidence of Jane Roe social media posts on CWRU's response to the problem of sexual assault on campus because of the prevalence of social media commentary on this issue. Jane Roe had posted often on this issue and a faculty member referred to "Jane Roe's report as an 'incident posted to Instagram' … referring to the Instagram page regarding CWRU's Title IX problems." (Am. Complaint ¶67.)

Jane Roe responded to the subpoena by providing only three documents related to her cooperation with a Federal investigation of the manner in which CWRU addresses the problem of

---

[3] The subpoena was apparently delivered to a neighbor on November 9, 2022; the neighbor told counsel that the subpoena was then delivered to Jane Roe. To alleviate any future confusion about jurisdiction, Jane Roe will be personally served (again). Regardless, Jane Roe can not contest that she has actual notice of the subpoena and its requirements. *See Lakin v. Bloomin' Brands,* E.D.Mich. No. 17-cv-13088, 2019 U.S. Dist. LEXIS 234671, at *8 (Apr. 2, 2019) ("Defendants fulfilled the purpose underlying Rule 45 to tender service that insures the actual receipt of the subpoena by the witness."; *United States v. Miller*, 2007 U.S. Dist. LEXIS 4501, at *3 (N.D. Ind. 2007) (holding that despite lack of personal service, where the subpoenaed party had actual notice of the subpoena and appeared for a court-hearing regarding the subpoena, any defects in the service were cured).

sexual assault on campus. (Email, November 10, 2022 at 1:38 PM.) Counsel wrote to Jane Roe, suggesting that her response was incomplete, adding, "I am certain this is an oversight and that documents and electronic records were not deleted or destroyed to avoid having to produce them in response to a subpoena." (Letter, November 10, 2022.) Jane Roe responded that she had "provided all of the documents that I have on hand." (Email, November 10, 2022 at 5:09 PM.) She added, "Yes, I knowingly and purposely deleted most documentation over the summer, as I am working on moving on from this situation." (*Id.*)[4]

Counsel however, had observed that on November 9, 2022 – right after the subpoena would have been received -- Jane Roe began deleting evidence. Jane Roe deleted several social media posts that addressed the manner in which CWRU responded to allegations of sexual misconduct. Instagram posts addressing sexual assault and tagging CWRU had appeared on Jane Roe's Instagram page on November 9, 2022 but were missing on November 10, 2022. While none of these posts are particularly relevant to this lawsuit or inculpatory, the deletions raise a concern that Jane Roe was seeking to conceal and delete evidence that would be discoverable this litigation.[5] These included:

---

[4] Interestingly, Jane Roe suggested that "Much of this information can be provided by the school or other sources, if you really need." True, much of this information may be in email accounts searchable by CWRU. And true, also, CWRU has previously been requested, even before this litigation, to preserve relevant evidence. During recent Rule 37 communications about document production, CWRU expressed reluctance to produce emails from Jane Roe's account. However, CWRU has agreed to preserve all emails in Jane Roe's account – including "trash" folders which may confirm Jane Roe's efforts to delete responsive documents.

Regardless, the subpoena seeks communications through text messages, personal email accounts, etc… that would not be in the custody and control of CWRU.

[5] Why would Jane Roe is go to go to the trouble of deleting seemingly innocuous social media posts, she certainly would delete communications with CWRU faculty and staff encouraging retaliatory actions. Jane Roe would be motivated to delete these (likely inculpatory) communications because she is currently under investigation by CWRU for her actions.






Counsel wrote to Jane Roe,

> We have good reason to believe that records have been deleted very recently. To identify one example, we have reason to believe that Instagram posts that would be responsive to the subpoena were very recently deleted. I am therefore requesting that you make a diligent search for any records in your custody and control, including emails and other electronic communications that may have been deleted but are retained in 'trash' folders.

7

(Email, November 10, 2022 at 6:03 PM.) Jane Roe responded,

> I guess I could have expected this from the council [sic] of a rapist, but you are unbelievable. These are absolutely ABSURD, not evidence-based, and disrespectful accusations. I will return your request at my earliest convenience, likely this week or the next. Bully someone your own size.

(Email, November 10, 2022 at 6:13 PM.) A few minutes later, she sent another email indicating, "I have diligently searched for what you requested, and have provided everything I have." (Email, November 10, 2022 at 6:27 PM.)

This Motion followed.

## ARGUMENT

Rule 45 of the Federal Rules of Civil Procedure provides that a party may command a non-party to produce designated documents, electronically stored information, or tangible things in that person's possession, custody or control. Fed. R. Civ. P. 45(a)(1)(A)(iii). In responding to a subpoena, a nonparty must either comply with the subpoena or make a written objection claiming privilege of protection. Rule 45(e) provides that the "issuing court may [on its own or on a party's motion] hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena." Fed.R.Civ.P. 45(e). A witness may be ordered to appear and show cause why she should not be held in contempt of court for her failure to produce materials for inspection as directed. *Green v. Taylor*, N.D.Ohio No. 1:03 CV 1804, 2005 U.S. Dist. LEXIS 55043, at *10 (Apr. 12, 2005); *Shirley v. City of Eastpointe*, E.D.Mich. Civil Action No. 11-14297, 2012 U.S. Dist. LEXIS 152964, at *5 (Oct. 23, 2012).

There is no question that Jane Roe possesses relevant and discoverable information to this case. Evidence obtained, so far, confirms that Jane Roe actively communicated with other students and faculty as part of the effort to retaliate against Plaintiff. *See supra.* Yet, Jane Roe has refused to produce records in response to a subpoena. Jane Roe claims that many of the documents were "deleted" months ago. This appears to be unlikely. Jane Roe was aware that the documents sought

8

by the subpoena – particularly document related to CWRU's investigation and adjudication of her claim to be a victim of sexual misconduct -- were relevant to ongoing investigations both by CWRU and the Federal Government. Indeed, one of the documents Jane Roe did produce was a March 24, 2022 email (recall: Jane Roe claimed to have destroyed documents during the summer) stating that the Civil Rights Division of the U.S. Department of Justice (is conducting a "compliance review" of CWRU's response to complaints of sexual harassment and its Title IX compliance.

This Court should move swiftly to protect the integrity of the legal system – people who receive a subpoena have an obligation to conduct a diligent search and provide responsive records. Jane Roe clearly has not done so. She did not produce any records of group chats or other text message communications with other students or faculty. Even if the Court believes Jane Roe deleted emails about this issue, communications with other persons within text messages and chats are not so easily sorted. Instead, relevant communications would be contained *within* the text message strings or other conversations with persons.

The potential destruction of records after the receipt of a subpoena should not be countenanced. Courts have the authority to "order a forensic examination of electronic devices when there is reason to question the candor of a party's production in response to a Rule 45 subpoena." *Ignite Spirits, Inc. v. Consulting by AR, Ltd. Liab. Co.*, D.Nev. No. 2:21-cv-01590, 2022 U.S. Dist. LEXIS 144307, at *9 (Aug. 11, 2022), *citing Addison v. Monarch & Assocs.*, C.D.Cal. No. CV 14-00358, 2016 U.S. Dist. LEXIS 195629, at *3-4 (Nov. 10, 2016) (noting that forensic examination was warranted based on prior misrepresentations and that a party "should not be forced to accept [the witness'] representations on their face" that no documents existed). Jane Roe's deletion of social media posts shortly after receiving the subpoena suggests a desire to avoid compliance and, at a minimum, warrants further inquiry. In accordance with this authority, and order to protect the integrity of the process, this Court should further: (i) Order Jane Roe to preserve any responsive documents pending a hearing

on this matter and (ii) following a hearing Order Jane Roe to surrender her electronic devices to the US Marshall or other custodian for safekeeping to allow for imaging and a forensic examination to determine if records may be recovered from these devices. *See e.g. Pearce v. Emmi, E.D.Mich.* No. 16-cv-11499, 2017 U.S. Dist. LEXIS 18178, at *7 (Feb. 9, 2017) (ordering phone in possession of third party witness be produced for forensic examination);

## CONCLUSION

Pursuant to Fed. R. Civil P. 45, this Court should issue an Order for a witness, Jane Roe, to appear and show cause why she should not be held in contempt for failure to comply with a subpoena. In addition, to prevent the destruction of evidence, Plaintiff requests that the Court order the witness to preserve all evidence and surrender her electronic devices for a forensic examination.

Respectfully submitted,

/s/ Joshua Engel
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Courts ECF system this November 14 2022 upon all counsel of record. I further certify that a copy was served on Jane Roe by email.

                                        /s/ Joshua Adam Engel
                                        Joshua Adam Engel (0075769)