**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JOHN NOAKES | Case No. 1:21-cv-1776-PAB |
| Plaintiff | Judge: BARKER |
| v. | OPPOSITION TO MOTION FOR PROTECTIVE ORDER |
| CASE WESTERN RESERVE UNIVERSITY, | |
| Defendant | |

Plaintiff John Noakes respectfully submits this Opposition to Case Western Reserve University's Motion for a Protective Order. (Doc#46.) This Opposition is accompanied by the Affidavit of Anne Tamashasky and additional letters between Counsel submitted as exhibits.

CWRU failed to comply with the "meet and confer" requirements of Rule 26 and Local Rule 37.1. CWRU fails to submit any evidence that the subpoenas in question will cause annoyance, embarrassment, oppression, or undue burden or expense. And, most importantly, CWRU asserts only in a conclusory fashion – unsupported by any evidence or explanation whatsoever – that the subpoenas will interfere with its disciplinary process. For these reasons, the Motion should be denied.

**FACTS**

**A.     This Litigation**

This case arises out of, *inter alia*, the efforts of administrators at the Case Western Reserve University and Case Western Reserve University School of Medicine (collectively "CWRU") to retaliate against John Noakes after he was found "not responsible" for allegations of sexual misconduct against a fellow student, identified here as "Jane Roe." Jane Roe had alleged that John Noakes had sexually assaulted her. She never filed a police complaint. Instead, the matter was

1

reported to the CWRU Office of Equity, the office charged with enforcement of CWRU's non-discrimination and sexual harassment policies. CWRU investigated the matter and, following a hearing, John Noakes was cleared of all charges.

While the facts of this case are detailed, this is what is necessary to understand this Motion:

After John Noakes was cleared of the charges, Jane Roe, other CWRU students, and school administrators (including the Title IX Coordinator and a Dean in the Medical School) who were unhappy with the outcome began a campaign of intimidation and harassment against John Noakes.[1] (*See, generally,* Tamashasky Aff. ¶¶ 3-4.) Students, with the tacit encouragement of Jane Roe and administrators, started an on-line campaign to expel John Noakes. Part of this plan involved encouraging students to use the school's "professionalism" process as a 'second bite at the apple' to discipline John Noakes.[2] (*See* Am. Complaint ¶ 50, 91.) At least two CWRU deans working with Jane Roe, sought to "flood" the school's professionalism process with complaints about Plaintiff. *See* Pl. Reply to Opposition to Motion for Preliminary Injunction, Doc#30, PageID#1020-1023 (explaining how professionalism process "was clearly being abused to accomplish what could not be accomplished through the Title IX process").

During the late fall of 2020 and winter of 2021 Jane Roe encouraged the creation of a committee of medical students to organize methods to intimidate, embarrass, harass, and punish John Noakes for participating in a Title IX investigation. Jane Roe and her friends continued to disparage

---

[1] The campaign of harassment and intimidation culminated in a second Title IX investigation of John Noakes because someone, unbeknownst to John Noakes, had posted information on-line critical of the CWRU disciplinary process. *See* Opinion and Order Denying Motion for Temporary Restraining Order. Again, John Noakes was ultimately exonerated. But, again, John Noakes was damaged by having to defend himself against spurious charges.

[2] In *Endres v. Northeast Ohio Med. Univ.*, 938 F.3d 281 (6th Cir. 2019), the Sixth Circuit acknowledged its traditional "broad view of what constitutes academic conduct" in general, and that "medical schools have good reason" to impose professionalism requirements, in particular. 938 at 299. But the court warned against efforts of medical schools to "construe all types of misconduct" as professionalism concerns. 938 F.3d at-300.

John Noakes and suggest that he had engaged in sexual misconduct. Faculty at the Medical School also made efforts to ostracize John Noakes and met with the students who sought to exclude John Noakes on a number of occasions. On or about April 25, 2021, the student committee circulated a Class Survey online. This Class Survey mentioned John Noakes by name and indicated that it was "gauging levels of concern regarding gender-based violence…" The survey suggested that John Noakes should not remain in the School of Medicine. (The Class Survey also included a link for students to submit professionalism complaints about John Noakes.) On May 5, 2021, the same Students circulated a Petition encouraging their classmates to refuse to work with John Noakes and demanding that "the School of Medicine ought to take clear and decisive action by expelling [John Noakes]."

CWRU is, according to the Amended Complaint, liable because officials with knowledge of the retaliatory harassment failed to take action to preserve John Noakes' ability to complete his medical education in peace. The Amended Complaint (Count I) alleges, *inter alia*, that CWRU was deliberately indifferent to harassment and retaliation against Plaintiff by students, faculty, and staff who were disappointed in the results of the Title IX process. The Amended Complaint (Count II) alleges, *inter alia*, that CWRU selectively enforced its sexual misconduct policies because female students, including Jane Roe and other medical students, were in circumstances sufficiently similar to John Noakes's and were treated more favorably by CWRU.

**B.      The CWRU Investigations And The Subpoenas**

Shortly after the Survey and Petition were circulated, John Noakes specifically complained to that Jane Roe and other students had engaged in a sustained pattern of conduct designed to embarrass, harass or punish John Noakes for engaging in protected activity.[3] He repeated this complaint in early

---

[3] In fact, John Noakes had complained at least three times to school officials in Winter 2021 that the conduct of Jane Roe and her friends has resulted in his exclusion from the curriculum and that he is

3

August 2021, when school re-started, and again in an email to the school's Title IX Coordinator on August 31, 2021. On September 3, 2021, John Noakes and his advisor spoke with the CWRU Title IX Coordinator and again requested an investigation of these matters. Almost three months later, on November 29, 2021, John Noakes was informed that CWRU would be investigating his allegations that Jane Roe and other students had engaged in retaliatory conduct based on the Petition, Class survey and other related harassment.

As of the date of this Response, CWRU acknowledges that these investigations are not completed. Plaintiff served a subpoena on Jane Roe, a subpoena on the law firm acting as investigators, and three subpoenas on medical students seeking documents related to CWRU investigation and adjudication of John Noakes' claims that he was the victim of harassment and retaliation.

**ARGUMENT**

Rule 26(c) governs protective orders. That Rule authorizes the Court "for good cause shown" to issue a protective order to protect a party or person "from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). In deciding whether to grant a protective order, a district court must balance the parties' competing interests and compare the hardships of granting or denying the request. *Sharqawi v. Kirby Co.*, N.D.Ohio No. 1:20-CV-00271, 2021 U.S. Dist. LEXIS 199279, at *2 (June 11, 2021). "The burden of establishing good cause for a protective order rests with the movant." *Nix v. Sword*, 11 Fed. App'x 498, 500 (6th Cir. 2001).

---

unable to participate fully in his education. One CWRU official responded only that John Noakes should "get therapy" and that he suffered from "toxic masculinity."

4

A.  **This Motion Should Be Summarily Denied As Procedurally Improper**

    1.  **CWRU Failed To Comply With The Certification Requirements Of Rule 26 and Local Rule 37.1**

Under Rule 26(c)(1) of the Federal Rules of Civil Procedure, a motion for a protective order "must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action." Local Rule 37.1(a) similarly provides, "Discovery disputes shall be referred to a Judicial Officer only after counsel for the party seeking the disputed discovery has made, and certified to the Court the making of, sincere, good faith efforts to resolve such disputes."

The Motion filed by CWRU does not contain any such a certification. Nor has any such process been completed.

On November 4, 2022, Plaintiff's Counsel sent a letter to CWRU's counsel that addressed, in part, this issue concerning CWRU's discovery responses. (November 4, 2022 Letter, Page 2 (attached as Exhibit).) While service issues surrounding a subpoena to Jane Roe were discussed,[4] this issue regarding the subpoenas was never discussed. (*See* Nov. 4, 2022 Letter, Page 3.) CWRU's counsel never responded to this letter.

This Court has found that the failure to comply with Local Rule 37.1's certification requirement is sufficient grounds to deny the Motion. *Kohn v. Glenmede Trust Co., N.A.*, N.D.Ohio No. 1:19-cv-1352, 2019 U.S. Dist. LEXIS 223457, at *22 (Dec. 31, 2019) ("The court may deny a discovery motion if a party fails to comply with Local Rule 37.1's requirement to make a good faith effort to meet and confer with opposing counsel before seeking judicial resolution of a discovery dispute.");

---

[4] Specifically, Counsel discussed concerns that when service was provided pursuant to Rule 45(a)(4) on CWRU, someone at CWRU would "tip off" Jane Roe about the subpoena, possibly permitting her to dodge serve or destroy evidence. (*See* Nov. 4, 2022 Letter at 3 ("You have explicitly agreed to not share with [Jane Roe] that she will be receiving a subpoena in advance…").

5

*Sterling Jewelers, Inc. v. Alex & Ani, LLC*, N.D.Ohio No. 5:17-cv-2540, 2019 U.S. Dist. LEXIS 1086, at *5-6 fn.3 (Jan. 3, 2019) ("The failure to make the necessary certification represents an additional reason for denying defendant's request.") (collecting cases.).

### 2. CWRU Failed To Comply With This Court's Standing Order

This Court's Standing Order on Discovery Disputes provides that, after the parties comply with Local Rule 37.1, the parties may then (and only then) file Position Papers on the docket. Instead, CWRU filed this Motion.

The failure to comply with a Court's Standing Order on discovery is grounds to deny the Motion. *Branard v. ABC Professional Tree Servs.*, N.D.Ohio No. 08CV250, 2008 U.S. Dist. LEXIS 139253, at *2 (Nov. 7, 2008) (discovery motion was "summarily" denied for failure to follow Local Rule 37.1 and Court's Standing Order on discovery); *Baker v. Carnine*, S.D.Ohio No. 1:19-cv-060, 2021 U.S. Dist. LEXIS 111520, at *15 (June 15, 2021) (denying discovery motion where party "failed to satisfy his obligations… "in compliance with the undersigned's Standing Order…").

### 3. CWRU Fails To Support The Motion With Evidence

"To sustain a protective order under Rule 26(c), the moving party must show 'good cause' for protection from one (or more) harms identified in Rule 26(c)(1)(A) 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" *In re Ohio Execution Protocol Litig.*, 845 F.3d 231, 236 (6th Cir. 2016), *quoting Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012)). "Good cause exists if 'specific prejudice or harm will result' from the absence of a protective order." *In re Ohio Execution Protocol Litig.*, 845 F.3d at 236, *quoting Father M. v. Various Tort Claimants (In re Roman Catholic Archbishop)*, 661 F.3d 417, 424 (9th Cir. 2011).

CWRU has failed to provide any affidavits or other evidence to support the claims in the Motion. "The objecting party must specifically establish the nature of any basis to support granting the motion, *usually by affidavit or other reliable evidence*." *Davis v. Gladwin*, E.D.Mich. No. 08-CV-14552,

6

2009 U.S. Dist. LEXIS 20887, at *2 (Mar. 16, 2009) (emphasis supplied), *citing State Farm Mut. v. Pain & Injury Rehab. Clinic, Inc.,* E.D.Mich. No. 07-CV-15129, 2008 U.S. Dist. LEXIS 50507 (June 30, 2008). This is fatal to the Motion. This Court has explained, "since protective orders are antithetical to the presumption of public discovery, 'good cause' for the order must be shown, and the party seeking the order carries a substantial burden to show, *with specific evidence*, that a protective order is necessary." *Ohio & Vicinity Regional Council of Carpenters v. Archer Interiors, Inc.*, N.D.Ohio No. 5:08CV1996, 2009 U.S. Dist. LEXIS 153507, at *10 (July 30, 2009) (emphasis supplied). *See also Loomis v. Unum Group Corp.*, 338 F.R.D. 225, 230 (E.D.Tenn. 2021) (denying Motion where party "failed to meet her burden to present evidence of the harms she alleges in her motion").

**B.     The Subpoenas Will Not Interfere With Any Ongoing Disciplinary Proceedings**

CWRU claims that "Permitting discovery into these active and on-going investigations would interrupt and interfere with CWRU's ability to comply with Title IX and its processes outlined in its Policy." Def. Memo. at PageID#1367.

This is wrong for two reasons:

**1.     CWRU's Conclusory Statements Of Harm Are Insufficient**

CWRU fails to explain exactly *how* permitting discovery will interrupt and interfere with the investigations.

Certainly, the proceedings won't be "interrupted." They can proceed regardless of discovery in this Court.

The only evidence before the Court concerning "interference" is a statement from counsel experienced in these types of hearings that "permitting the discovery sought by the subpoenas will not interrupt and interfere with the investigations." (Tamashasky Aff. ¶ 13.) This, alone, should lead the Court to deny the Motion. CWRU has not met its burden to show a clearly-defined and significant harm. CWRU relies, instead, on conclusory assertions that the response to the subpoenas would, in

7

some nebulous and undefined manner, be harmful to its process.[5] *See Owens v. Liberty Life Assur. Co.*, W.D.Ky. No. 4:15-CV-00071, 2016 U.S. Dist. LEXIS 115477, at *9 (Aug. 29, 2016) ("vague and conclusory allegations which are insufficient to support the granting of a protective order…")*Levy v. Ina Life Ins. Co. of New York*, S.D.N.Y. No. 05 Civ. 10310, 2006 U.S. Dist. LEXIS 83060at *2 (S.D.N.Y. Nov. 14, 2006) ("generalized and conclusory assertions" of harm are "insufficient to show good cause for a protective order"). CWRU had ample opportunity to make such a showing in this case, but simply fails to support those assertions with any evidence or facts despite having ample opportunity to do so.[6]

CWRU likely has an ulterior and improper motive in seeking this protective order: the subpoena is likely to demonstrate that CWRU's investigation is inadequate and cursory. If CWRU

---

[5] At best, CWRU suggests that "permitting the discovery sought by Plaintiff in this case would provide an unfair advantage to" one side in any upcoming hearing. Def. Memo. at PAGEID#1361. But this won't occur if: (i) the investigators do their job and obtain all relevant documents and information from parties or witnesses; and (ii) the school completes the investigation in a timely manner. *See infra.* (*Compare* Tamashasky Aff. ¶ 15.)

CWRU's argument, unsupported by any evidence, is speculative because permitting this discovery may, in fact, aid a school's process by preventing one party from gaining an unfair advantage by hiding evidence. Beyond being speculative, CWRU's argument has an even deeper problem. CWRU elevates treating all sides in a school disciplinary matter the same over justice and the truth. A school disciplinary hearing is not a sporting event where everyone needs a level playing field, but, instead, is a search for truth. Discovery, regardless of which party initiates the process, helps develop a full account of the relevant facts, helps detect and expose attempts to falsify evidence, and prevents factors such as surprise from influencing the outcome at the expense of the merits of the claims. These objectives are undermined by asking this Court to prevent the discovery of relevant evidence that the investigators, whether through incompetence or bias, decide not to obtain.

[6] CWRU should not be permitted to submit additional evidence in a Reply. *Superior Prod. Partnership v. Gordon Auto Body Parts Co., Ltd.*, S.D.Ohio No. 2:06-cv-0916, 2010 U.S. Dist. LEXIS 96491, at *10 (Aug. 25, 2010) ("it would be improper for [party] to offer new evidence or arguments in a reply memorandum"); *Travelers Indemn. Co. v. Excalibur Reinsurance Corp.*, D.Conn. No. 3:11 - CV- 1209, 2013 U.S. Dist. LEXIS 110396, at *7 (Aug. 5, 2013) ("In general, a party may not attempt to cure deficiencies in its moving papers by including new evidence in its reply to opposition papers."); *Wike v. Vertrue, Inc.*, M.D.Tenn. No. 3:06-0204, 2007 U.S. Dist. LEXIS 19843, at *22 (Mar. 20, 2007) (the court "will not allow [defendant] to sandbag the Plaintiff by first presenting the evidence in reply").

has done its job, all of the records sought by the subpoenas should already be part of the investigation. A diligent investigator, for example, would gather all potentially relevant documents from the witnesses, record all interviews, and then make that evidence available to the parties. As shown in the attached Affidavit of Counsel, CWRU has not done this. Ms. Tamashasky, who has been working as John Noakes' advisor during the investigations, tells the Court that CWRU has not been responsive to multiple requests to provide evidence, conduct searches for electronic records, or provide transcripts of inter views instead of cursory summaries. (Tamashasky Aff. ¶ 14.) Moreover, to the extent that relevant evidence may be obtained by the subpoenas that was not obtained by the investigators, the subpoenas are likely *to aid* in CWRU's investigation by allowing the parties to present additional relevant evidence to the fact finder. (Tamashasky Aff. ¶¶ 12, 15.)

### 2. **CWRU Has Not Been Diligent**[7]

CWRU's argument would have significantly more force if it had been acting diligently to resolve this matter. But it has not, and there is a significant risk that CWRU is extending the investigations for the express purpose of delaying disclosure of records until after the Court's discovery deadline.[8]

As noted, *supra*, John Noakes submitted his complaint against Jane Roe in August 2021 and his complaint against the other medical student in November 2021. (Tamashasky Aff. ¶¶ 6-8.) CWRU

---

[7] CWRU claims that courts often defer to school disciplinary decisions. Def. Memo. at PageID#1366. This line of cases is inapplicable to deliberate indifference cases. One court has observed that any "deference is not absolute" in student-on-student sexual harassment matters because "deliberate indifference may be shown "where [a] school 'dragged its feet' before implementing 'little more than half-hearted measures'" to curb known harassment." DJ v. School Bd., 488 F. Supp. 3d 307, 334 (E.D.Va.2020), *quoting S.B. v. Bd. of Edn.*, 819 F.3d 69, 77 (4th Cir. 2016). *See also Forbes v. St. Thomas Univ., Inc.*, 768 F.Supp.2d 1222, 1233 (S.D.Fla.2010) ("judicial deference to the academic decisions is not absolute, as deference only attaches to decisions evincing some amount of reasoned consideration or professional judgment").

[8] Counsel are engaged in the Rule 37 conferral process on CWRU's documents related to ongoing investigations. Filings in accordance with the Court's Standing Order on Discovery Disputes are anticipated shortly.

has, thus, had over a year to complete these investigations. (Tamashasky Aff. ¶¶ 9-10.) According to CWRU's own policies, these investigations should have been completed months ago, if not longer. The CWRU Policy provides that "Complaints may take 60-75 business days to resolve." (Doc#41-1, PageID#1163.) These investigations, thus, have taken far, far, far beyond the length of time indicated for the completion of the entire process described in the school's Title IX Policy.[9] (Tamashasky Aff. ¶ 11.)

Some of the delay for investigation may have been the result of settlement discussions between the parties (although John Noakes never explicitly agreed to a stay) – but even if this is true, this does not explain most of the delay. And CWRU has – according to its policy – had more than enough time to complete the investigations since such talks concluded. On September 6, 2022 Counsel wrote to Counsel for CWRU indicting that "all outstanding complaints brought by our client must proceed to a speedy resolution." Further, Counsel explained that the investigations should be completed expeditiously:

> we expect CWRU to continue and complete in a timely manner all outstanding investigations into complaints by our client. We also expect CWRU to continue any and all appropriate conduct and professionalism investigations and adjudications related to the petition, class survey and other related harassment, and [Jane Roe's] submission of fraudulent documents during the Tumblr investigation. Since CWRU is aware of these matters we do not believe any further action on our part is necessary but let me know if we need to take any further action to make sure CWRU is able to proceed with these important matters.

(September 6, 2022 Letter (attached as Exhibit).)

This is where CWRU's failure to provide evidence to support its Motion is particularly problematic. The Court has no way to assess if the school is acting in good faith or if the Court should

---

[9] CWRU's Policy acknowledges that there "may be exceptions and extenuating circumstances that can cause a resolution to take longer." But CWRU was still required to "provide written notice… of the delay, the cause of the delay, and an estimate of the anticipated additional time that will be needed as a result of the delay." No such notices has been provided.

be concerned that CWRU is keeping the investigations "open" to avoid discovery related to these matters in this case or as part of an ongoing strategy to "protect" Jane Roe. Notably, CWRU during the exact same time period, had the ability to complete not only an entire investigation against John Noakes, but also a hearing and an appeal process.[10] Yet, even with multiple additional months available, none of these investigations are done? Because CWRU has the burden in this Motion, the Court does not need to decide the question of CWRU's motive in order to deny the Motion; it is enough for purposes of this Motion to observe that CWRU has no explanation in the record for why these investigations are *still* open.

C. **The Documents Sought Are Relevant**

The documents sought are relevant to both John Noakes' selective enforcement and deliberate indifference claims. The basic theory of this case is simple: CWRU initiated and pursued disciplinary investigations against Plaintiff but, when faced with credible information that that Jane Roe and other medical students had engaged in similar conduct, CWRU failed to take these claims seriously or conduct a full and fair investigation of John Noakes's claims against Jane Roe and the other students. To prevail on a Title IX Selective Enforcement claim, Plaintiff need demonstrate that a similarly-situated member of the opposite sex was treated more favorably. *Embry-Riddle Aeronautical Univ.*, 2021 U.S. Dist. LEXIS 128761, at *8; *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016). In a selective enforcement claim, a plaintiff alleges that the decision to initiate proceedings or the penalty imposed was affected by plaintiff's gender. *Yusuf v. Vassar College*, 35 F.3d 709, 715(2d Cir. 1994). To prevail on his deliberate indifference claim, Plaintiff must establish that: (1) he was subjected to a sexually hostile environment; (2) he provided actual notice of the situation to an 'appropriate person,' who

---

[10] In other words, CWRU can act in a timely manner when it wants to (such as when there are complaints against John Noakes), but also knows how to drags its feet when convenient. This, alone, should raise an inference that CWRU is not acting in good faith, here.

11

was, at a minimum, an official of the educational entity with authority to take corrective action and to end discrimination; and (3) the institution's response to the harassment amounted to "deliberate indifference." *Klemencic v. Ohio State Univ.*, 263 F.3d 504 (6th Cir. 2001).

This is not a fishing expedition – the documents sought are narrowly tailored to evidence directly related to "the investigation and adjudication of any allegations that [John Noakes] or [Jane Roe] committed sexual misconduct or retaliation." (*See e.g.* Subpoenas, PageID#1384, 1388, 1394.) This goes to the elements of both the selective enforcement and deliberate indifference claims.

The *only* relevance argument CWRU makes is that because the matters are not complete, any claims are not "ripe." Def. Memo. at PageID#1368. CWRU, thus, concedes that the documents sought eventually will be relevant; the school just seems to suggest they are not relevant until the disciplinary process is completed. But this argument shows a fundamental misunderstanding of Title IX law. Under both a selective enforcement and deliberate indifference theory how CWRU conducted the investigations is what matters, not the ultimate outcomes.

A selective enforcement inquiry turns on the decision of the school to initiate an investigation, not on what the ultimate result of that investigation might turn out to be. Plaintiff contends that CWRU investigated him for misconduct while declining to pursue his allegations of sexual harassment and retaliation against other students. The fact that we don't yet know the outcome of the proceedings against Jane Roe and others is immaterial to a selective enforcement claim because a selective enforcement claim focuses on "the decision to initiate the proceeding." *Yusuf,* 35 F.3d at 715. Courts have explicitly held that a selective enforcement claim may be premised on the claim that "the decision to initiate enforcement proceedings was motivated by gender bias.*" Klocke v. Univ. of Texas*, 938 F.3d 204, 213 (5th Cir. 2019) (emphasis supplied). *See also Doe v. Quinnipiac Univ.*, 404 F. Supp. 3d 643, 663 fn.10 (D.Conn. 2019) ("decisions to initiate proceedings based on gender bias are actionable"); *Van Overdam v. Texas A&M Univ.*, S.D.Tex. No. 4:18-CV-02011, 2021 U.S. Dist. LEXIS 196709, at *2-3

(Jan. 28, 2021) (selective enforcement claim "raises a sole issue: whether [school] either initiated its investigation or punished [student] because of his gender").

A deliberate indifference claim may be premised on the school's delayed and inadequate investigation. Plaintiff contends that CWRU did not adequately investigate or otherwise respond to his allegations of sexual harassment and retaliation. An educational institution's failure to adequately respond to complaints of sexual harassment may constitute deliberate indifference – as such evidence goes to show that a school's minimal, ineffective, or belated efforts to respond to sexual harassment are unreasonable. *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 262 (6th Cir. 2000); *Patterson v. Hudson Area Schs.*, 551 F.3d 438, 450 (6th Cir. 2009); *Williams v. Bd. of Regents of Univ. Sys. of G*a., 477 F.3d 1282, 1295-97 (11th Cir. 2007).

Finally, CRWU's suggestion that the subpoenas are intended to "intended to solely victimize complainants and witnesses" has no basis in the record. (Def. Memo. at PageID#1368.) Such accusations are highly inappropriate, especially when directed at former career prosecutors.[11] (Tamashasky Aff. ¶ 15.) But the fact that CWRU makes this argument gives away the school's true motive to protect Jane Roe and her friends at the expense of John Noakes. No subpoenas were served on students who are "complainants." Instead, the subpoenas to Jane Roe and another student were served on "respondents." This is a Freudian slip, as the whole point of this case is CWRU only saw Jane Roe as a victim/complainant, and not as a perpetrator/respondent who made unsubstantiated allegations and then, when she was unhappy with the outcome, proceeded to engage in a pattern of retaliation and harassment against John Noakes.

---

[11] Plaintiff did not send subpoenas to *every* witness, just witnesses who specifically communicated with Jane Roe about relevant issues.

13

**E.     The Motion Does Not Concern The Deposition Of Jane Roe**

CWRU attached the subpoena for the deposition testimony of Jane Roe, but makes not argument that this should be quashed.

## CONCLUSION

The Motion should be denied.

Further, the Court should consider imposing costs due to CWRU's failure to confer in good faith with other affected parties in an effort to resolve the dispute without court action.

Respectfully submitted,

/s/ Joshua Engel
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via the Courts ECF system this November 30, 2022 upon all counsel of record. I further certify that a copy was served on Jane Roe by email.

/s/ Joshua Adam Engel
Joshua Adam Engel (0075769)

14