

Joshua Engel, Partner
Jim Hardin, Partner
Mary Martin, Partner
Anne Tamashasky, Of Counsel

November 4, 2022

**Via Email Only**
Amanda T. Quan
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower, 127 Public Square, Suite 4100
Cleveland, OH 44114

      Re:    *Noakes v. Case Western Reserve University, et al.*
               N.D. Ohio Case Number 1:21-cv-01776

Dear Amanda:

This letter is intended to set forth our view on some of the discovery issues we discussed yesterday. Please consider this letter to be part of the Rule 37 good faith conferral process.

1)   Currently, we have not received written responses to the following outstanding discovery:

      First Set of Requests for the Production of Documents (served November 10, 2021)
      First Set of Interrogatories (served November 10, 2021)
      First Set of Requests for Admissions (served November 10, 2021)
      Second Set of Requests for Production of Documents (served November 29, 2021)
      Second Set of Interrogatories (served September 6, 2022)

We have agreed that you will provide written responses to the overdue discovery requests by November 11, 2022. We expect that a rolling production of records will start next week.

2)   We understand that CWRU objects to producing records related to open investigations into complaints by Plaintiff.

While that position may have some merit in the abstract, in some cases the delay has been extensive. Our client submitted his retaliation complaints in November 2021. The CWRU Policy provides that "Complaints may take 60-75 business days to resolve." (Doc#41-1, PageID#1163.) True, the Policy acknowledges that there "may be exceptions and extenuating circumstances that can cause a resolution to take longer," CWRU was still required to "provide written notice… of the delay, the cause of the delay, and an estimate of the anticipated additional time that will be needed as a result of the delay." I don't believe such notices has been provided.

While there have been some settlement discussions which may have led to delays, I don't believe that our client ever officially agreed to a stay of these investigations and, in fact, my understanding is that the students accused of misconduct never actually participated in such discussions. I note that back on September 6, 2022 I wrote to you saying, "all outstanding complaints brought by our client must proceed to a speedy resolution." Further, I wrote:

> we expect CWRU to continue and complete in a timely manner all outstanding investigations into complaints by our client. We also expect CWRU to continue any and all appropriate conduct and professionalism investigations and adjudications related to the petition, class survey and other related harassment, and [___] submission of fraudulent documents during the Tumblr investigation. Since CWRU is aware of these matters we do not believe any further action on our part is necessary but let me know if we need to take any further action to make sure CWRU is able to proceed with these important matters.

Our concern at this stage is that CWRU may be keeping the investigations "open" to avoid discovery related to the matters. Alternatively, CWRU may be keeping the investigations "open" as part of an ongoing strategy to protect the respondents. In either case, this objection is no longer valid.

3) CWRU has objected to searching [___] email accounts for responsive documents.

[___] email account is likely to contain documents related to the investigation and adjudication of her, and Plaintiff's, allegations of sexual misconduct and retaliation. This seems to be uncontested. I understand your objection to searching this email account to be that the records are likely to be duplicative of records in other accounts. This argument is not well taken for two reasons.

First, [___] may have communicated with other students or employees not included in the original search about these matters. For example, on April 21, 2021 Dr. Ricanati sent an email to a close friend of [___] encouraging the student to invite other students to a meeting to discuss Plaintiff and [___] Title IX case. [___] emails may contain discussion of these meetings, as well as encouragement of retaliation against Plaintiff. [___] emails are also likely to contain evidence of supportive measures she received as a result of her claims against Plaintiff.

Second, limitations on search parameters can be implemented so as to exclude the production of duplicative emails, addressing the concern that this production would consist of many emails that had been previously produced through the prior searches of the other custodians. Without further information, it is hard to see how including an additional person in the search will create an undue burden.

Finally, I note that here are no privacy considerations here. The CWRU Acceptable Use of Information Technology Policy states, "Users shall have no inherent expectation of privacy for information stored on and transported through CWRU information technology resources…" (https://case.edu/utech/departments/information-security/policies/i-1-acceptable-use-information-technology-policy-aup)

4) CWRU has objected to the production of other sexual misconduct and retaliation investigations

This material is highly relevant. The records sought in discovery might demonstrate other situations where females were alleged to have committed misconduct, but the school chose only to investigate male students. Courts have held that such discovery is permissible. One court observed that such discovery is of "inarguable relevance," noting that if a school "has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation." *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2015 U.S. Dist. LEXIS 141218, at *4 (Oct. 16, 2015). *See also Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D.Pa. 2017).

At this point, we do not have sufficient information to suggest that the production would be unduly burdensome. In a similar case, the court over-ruled an objection that a school producing records from other investigations was unduly burdensome. *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, *13-14 (Oct. 15, 2018).

5) CWRU has objected to the production of records from Department of Education investigations.

The historical and regulatory backdrop is necessary to properly evaluate the conduct of CWRU. Pressure from the Department of Education has been found to support an inference of gender bias. *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019); *Doe v. Univ. of the Sciences*, 961 F.3d 203, 214 (3d Cir. 2020). The Sixth Circuit, in Doe v. Miami Univ., 882 F.3d 579, 596 (6th Cir. 2018), treated as relevant allegations that pressure from OCR led a school to discriminate against men in its sexual-assault adjudication process. The Sixth Circuit, in Miami Univ., credited claims that "pressure from the government to combat vigorously sexual assault on college campuses and the severe potential punishment – loss of all federal funds – if it failed to comply, led [the school] to discriminate against men in its sexual-assault adjudication process." 882 F.3d at 594. The Sixth Circuit later explained that pressure from Department of Education "provides a backdrop, that, when combined with other circumstantial evidence of bias in [a student's] specific proceeding" supports a plausible claim of gender discrimination. *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018).

6) Protective Order

You have promised to provide a revised draft of the Protective Order on Monday. The ball on this issue has been in your court for some time. As we discussed, we share the preference initially to work with records with personally identifying information redacted. However, the Protective Order is necessary in the event that such redactions are insufficient and to prevent any delay in production in the event of objections from third parties.

Finally, as we discussed, we will be sending a subpoena to ▮ on Tuesday. I have provided you with time to discuss some of the issues this might raise with your client. You have explicitly agreed to not share with ▮ that she will be receiving a subpoena in advance so that we will not have issues with service. We will tentatively schedule her deposition for December 27, 2022; we are willing to move this date to avoid any conflicts with counsel or the parties.

If you have any questions or concerns, please do not hesitate to give me a call.

Sincerely,

Joshua Engel

cc: Anne Tamashasky, Esq.