

Joshua Engel, Partner
Jim Hardin, Partner
Mary Martin, Partner
Anne Tamashasky, Of Counsel

December 2, 2022

<u>Via ECF Only</u>
The Honorable Pamela A. Barker
Carl B. Stokes United States Court House
801 West Superior Avenue, Courtroom 16A
Cleveland, Ohio 44113-1838

> Re:    *Noakes v. Case Western Reserve University, et al.*
>          N.D. Ohio Case Number 1:21-cv-01776

Dear Judge Barker:

Please accept this letter as Plaintiff's Position Paper in accordance with the Court's Discovery Dispute Standing Order. This Position Paper is intended to address certain deficiencies in Defendant's Discovery responses.

In accordance with the Court's Order, the undersigned certifies that, in accordance with Fed. R. Civ. P. 26 and 37 and Local Rule 37.1, Counsel have attempted to resolve this issue in good faith prior to seeking the assistance of the Court. This Position Paper is accompanied by relevant correspondence of the parties. This Paper is also accompanied by the written discovery requests and responses at issue.

**Initial Disclosures**

Defendant has, despite repeated requests, not provided initial disclosures.

**Production of Documents**

Discovery was initially served in 2021. Prior to this litigation, CWRU was sent preservation letters. CWRU has provided only a very small subset of responsive documents. In particular, CWRU had not produced the majority of documents that are unquestionably relevant and discoverable.

The parties had agreed to stay discovery while engaged in settlement discussions. These ended in the late summer of 2022. On August 29, 2022, Counsel wrote, "we expect to receive responses to outstanding discovery in seven days." An extension was agreed to, but on September 6, 2022, Counsel wrote, "We expect to receive responses to outstanding discovery by September 13, 2022." Other extensions followed. On November 4, 2022 Counsel wrote,

4660 Duke Drive | Suite 101 | Mason, Ohio  45040
513-445-9600 | www.engelandmartin.com | @engelandmartin

> We have agreed that you will provide written responses to the overdue discovery requests by November 11, 2022. We expect that a rolling production of records will start next week.

A further brief extension due to the necessity of rapid responses related to the Motion to Show Cause was provided.  The last extension is confirmed in Counsel's November 17, 2022 Letter.  This states that the parties had "agreed to a final, brief, extension until November 15, 2022," but that extension had not been honored  On November 21, 2022, Counsel wrote,

> We are still awaiting MANY additional responsive documents. We understand the need for a rolling production, but, as noted previously, CWRU has had the requests for a very long period of time and should be able to produce records quickly. We note, in particular, that have not seen investigative files, including reports, drafts of investigative reports, and transcripts/audio recordings of hearings – documents that should not be difficult to produce.

While the parties may have some good faith disputes about the scope of discovery, and counsel have been working cooperatively, at this point it is hard to come to any conclusion except that CWRU continues to stall production.

**Search Terms And Electronic Discovery**

CWRU has failed to provide Counsel with the search terms used for electronic discovery or a description of the accounts search for relevant communications.  CWRU has refused, also, to search student school accounts for responsive documents despite the fact that there is no expectation of privacy under CWRU policies and such accounts contain responsive documents.

**Privilege Log**

CWRU has not provided a privilege log describing documents withheld from discovery.

**Requests for Admissions Cannot "Speak for Themself" (RFA#7, RFA#8),**

In answering requests for admissions, the response that a document "'speaks for itself' is not permissible under the federal rules." *Robert Weiler Co. v. Kingston Twp.*, S.D.Ohio No. 2:07-cv-0760, 2008 U.S. Dist. LEXIS 115880, at *14 (Oct. 27, 2008), *citing Miller v. Holzmann*, 240 F.R.D. 1, 4 (D.D.C. 2006) ("document speaks for itself" objection is both "tautological" and "a waste of time…").

**Information On Jane Roe And Other** Students (RFA#12, RFP#15, RFP#16, RFP#17, RFP#18, RFP#19

Documents about Jane Roe and other students are relevant since they may show that one set of students, but not another, received undisclosed supporting.  Such information is relevant to whether CWRU adequately and equitably responded to allegations by and against Plaintiff. *Cf. Doe v. Ohio State Univ.*, 219

F. Supp. 3d 645, 663 (S.D.Ohio 2016) ("If the Administrators knew that Jane Roe lied about" accommodations "that plausibly violated John Doe's right to a fundamentally fair hearing."). Similarly, Communications from Jane Roe and other students about the claims against John Doe are not merely relevant they are vital, highly probative, and go to the heart of the disputed issues in this case, particularly as they likely show the knowledge of appropriate persons at CWRU of harassment and retaliation.

CWRU responded to many discovery requests that they seek "confidential student records," presumably in reference to FERPA. But while the protections against the unauthorized disclosure of educational records FERPA affords are broad, FERPA does not absolutely prohibit the disclosure of educational records, or otherwise prevent discovery of relevant records under the Federal Rules of Civil Procedure. "FERPA is not a law which absolutely prohibits the disclosure of educational records; rather it is a provision which imposes a financial penalty for the unauthorized disclosure of educational records" *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004).

To the extent FERPA is applicable, CWRU may respond by redacting any  personally identifying information or making the response subject to the protective order. *See Project on Predatory Lending of the Legal Servs. Ctr. of Harvard Law School v. United States DOJ*, 325 F. Supp. 3d 638, 664 (W.D.Pa. 2018) (permitting production of FERPA material subject to protective order); *Jackson v. Willoughby Eastlake Sch. Dist.*, N.D. Ohio No. 1:16-cv-3100, 2018 U.S. Dist. LEXIS 49508, *4 (N.D. Ohio Mar. 23, 2018) (FERPA material may be produced subject to a protective order); *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *14 (Oct. 15, 2018) (requiring production of student records "pursuant to the parties' stipulated protective order").

### "Narrative Objections" (Int#5, Int#6, Int#8, Int#11, Int#12, Int#13, Int#15)

The objection that the interrogatory "'calls for narrative' is an impermissible objection to an interrogatory request." *Qashqeesh v. Monster Bev. Corp.,* S.D.Ohio No. 2:20-cv-03776, 2021 U.S. Dist. LEXIS 154428, at *6 (Aug. 17, 2021), *citing Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D. Ohio 1989).

### Improper Reliance On Civil Rule 33(d) (Int#5, Int#11, Int#12, Int#13, Int#15)

CWRU's reliance on Rule 33(d) with a mere general reference to a mass of documents or records is not an adequate response.  CWRU has failed, beyond vague references to  documents "including Office of Equity records" to specify the documents upon which they rely in their interrogatory answers; simply referring to certain files is not enough, especially when CWRU seemingly is referring Plaintiff to hundreds of unspecified files and thousands of pages of documents (many of which have not yet been produced).  "Fed. R. Civ. P. Rule 33(d) is not satisfied by the 'wholesale dumping of documents.'" *Bayview Loan Servicing, Ltd. Liab. Co. v. Boland*, 259 F.R.D. 516, 518-519 (D.Colo. 2009), *quoting O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 277 (C.D. Cal. 1999).

**Improper Vague and Ambiguous Objections and Non-Responsive Answers (Int#5, Int#6, Int#, Int#14, RFP#4, RFP#5, RFP#6, RFP#7, RFP#8, RFP#9, RFP#10, RFP#11)**

CWRU often claims that terms such as training" and "nature of the allegation" are ambiguous. CWRU ignored Counsel's good faith effort to provide explanations and limitations. CWRU also dodges by trying to re-write the requests, For example, CWRU responds to some interrogatories abouts it policies by describing some of its practices instead of answering the question. When asked to produce records about allegations by and against Plaintiff for retaliation and/or sexual misconduct, CWRU arbitrarily states that it will only provide information about certain matters.

**Other Investigations (Int#6, Int#8, RFP#27, RFP#28, RFP#29)**

Other investigations of sexual misconduct by both the Title IX Office and the Professionalism Committee. Without elaboration about the number of investigations involved, it is impossible to discern if the burden or expense of the proposed discovery outweighs its likely benefit. And even if the documents are voluminous, a Southern District court over-ruled an objection that a school producing records from other investigations was unduly burdensome. *Doe v. Ohio State Univ*, *supra* at*13-14.

These records ae clearly relevant because they demonstrate other situations where male and female students were not treated equally. Courts have held that such discovery is permissible. One court observed that such discovery is of "inarguable relevance," noting that if a school "has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation." *Doe v. Ohio State Univ.,* S.D.Ohio No. 2:15-cv-2830, 2015 U.S. Dist. LEXIS 141218, at *4 (Oct. 16, 2015). *See also Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D.Pa. 2017). Another court noted that "although most of the allegations of Plaintiff's complaint relate to the investigation conducted in his case, he also asserts that Defendant has engaged in a pattern of discrimination… Accordingly, Defendant's files pertaining to [other] sexual assault investigations while Plaintiff was a student… are relevant." *Doe v. Rollins College*, M.D.Fla. No. 6:18-cv-1069, 2019 U.S. Dist. LEXIS 236677, at *11-12 (Apr. 10, 2019).

**Response to External Pressure and Trainings (Int#11, Int#12, Int#13, Int#15, RFP#20, RFP#21, RFP#23, RFP#24, RFP#26)**

These response of the school to pressure from the federal government and other sources to crack-down on sexual assault on campus is highly relevant. The Seventh Circuit, in an opinion by Judge (now Justice) Barrett, found that pressure on schools, and the school's responses, is relevant to this type of case because it gives accused students "a story about why [a school] might have been motivated to discriminate against males…" *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019). *See also Doe v. Univ. of the Sciences*, 961 F.3d 203, 214 (3d Cir. 2020) (courts have considered claims by students that schools "were allegedly intimidated by the 2011 Dear Colleague Letter and associated threats of litigation or [Department of Education] scrutiny"); *Doe v. Miami Univ.*, 882 F.3d 579, 596 (6th Cir. 2018) (treating as relevant allegations that pressure from OCR led a school to discriminate against men in its sexual-assault adjudication process).

Trainings are particularly relevant because evidence that school administrators possessed outdated, stereotypical, and discriminatory views of gender and sexuality can support an inference of gender bias because "these views would have naturally infected the outcome of [a] Title IX disciplinary proceedings." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 586 (E.D.Va.2018).  *See Doe v. Washington & Lee Univ.*, W.D.Va. No. 6:19-cv-00023, 2021 U.S. Dist. LEXIS 74222 (Apr. 17, 2021) ("gender bias could be inferred" from the Title IX Coordinator's hosting a presentation that endorsed the idea "'[a]lmost [e]very [g]irl'" experiences non-consensual sex."); *Prasad v. George Washington Univ.*, 325 F.R.D. 1, 5 (D.D.C. 2018) ("training policies on Title IX-related matters… are relevant to Plaintiff's claims").

Communications with the federal government about the manner in which CWRU investigates and adjudicates allegations of sexual misconduct is relevant under Sixth Circuit precedents.  *Doe v. Vanderbilt Univ.*, M.D.Tenn. No. 3:18-cv-00569, 2019 U.S. Dist. LEXIS 173269, at *27 (Sep. 30, 2019) ( "[T]he Sixth Circuit has recognized that being investigated by the federal government for potential Title IX violations is a relevant allegation suggesting that the university might be induced to discriminate against males in disciplinary hearings..."), *citing Doe v. Cummins*, 662 F.App'x 437, 453 (6th Cir. 2016).

**Other Professionalism Matters (RFP#31, RFP#32, Second Set RFP#16-19)**

These are relevant because in prior deposition testimony and affidavits in this case witnesses stated that CWRU Medical school has a practice of reviewing Title IX reports. These requests seek to verify this information and also determine whether referrals and early concerns against Plaintiff were handled in an equitable and nonretaliatory manner.

**CONCLUSION**

Plaintiff urges the Court to Order Defendant to comply with discovery obligations.  We thank the Court for the attention to this matter.

Sincerely,

Joshua Engel

cc:      All Counsel (via ECF)