**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO**

| | |
|---|---|
| JOHN NOAKES | Case No. 1:21-cv-1776-PAB |
| Plaintiff | Judge:  BARKER |
| v. | PLAINTIFF'S FIRST SET OF INTERROGATORIES |
| CASE WESTERN RESERVE UNIVERSITY, | |
| Defendant | |

Pursuant to Fed R. Civil Rule 33, Plaintiff John Noakes submits this First Set of Interrogatories Documents to Defendant Case Western Reserve University. ("CWRU").

Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer.  The Defendant shall quote each interrogatory immediately preceding the corresponding answer or objection.  The answers are to be signed by the person making them, and the objections signed by the attorney making them. The Defendant shall serve a copy of the answers and objections within twenty-eight days.

<u>Definitions.</u>

The following definitions apply to all discovery requests:

1. *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

2. *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

3. *Parties.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. "John Noakes" and "Jane Roe" are synonymous with the persons described and identified in the Complaint. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

1

4. *Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

5. *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

6. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

7. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

8. *Sexual Misconduct.* The term "sexual misconduct" includes sexual assault, sexual exploitation, sexual intimidation, sexual harassment, domestic violence, dating violence and stalking, and is synonymous with the use of the term in the "Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties."

9. *Sexual Misconduct Policy.* The term "Sexual Misconduct Policy" means any policy adopted by CWRU to define and describe prohibited sexual conduct and establish a procedural mechanism for processing complaints of Sexual Misconduct. The term specifically includes, but is not limited to the Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties referenced in the Complaint and any revisions to that policy.

10. *Supportive Measures.* The term "Supportive Measures" means any non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to a student to restore or preserve access to the university's education program or activity, including measures designed to protect the safety of the student or the university's educational environment, and/or deter harassment, discrimination, and/or retaliation.

11. *Retaliation.* The term "Retaliation" means any taking or attempting to take any adverse action, including intimidating, threatening, coercing, harassing, or discriminating, against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under any Sexual Misconduct Policy.

12. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

13. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

<u>Requests</u>

1.    Identify every document you reasonably anticipate introducing as an exhibit at trial or in support of or in opposition to a motion for summary judgment.

2.    Identify every person you reasonably anticipate calling as a witness at trial or who you anticipate will be submitting an affidavit in support of or in opposition to a motion for summary judgment.  For each person identified in response to this Interrogatory, describe the person's anticipated testimony.

3.    Identify every expert you reasonably anticipate calling as a witness at trial or who you anticipate will be submitting an affidavit in support of or in opposition to a motion for summary judgment.  For each person identified in response to this Interrogatory, summarize the expert witness's testimony, findings, analysis, conclusions, or opinion, and provide a summary of the expert's qualifications.

4.    Identify all persons who took any action concerning the investigation, adjudication, or review of claims that the Plaintiff committed sexual misconduct, retaliation, or acted unprofessionally.

5.    For each person identified in response to the previous interrogatory: (a) describe in detail the actions taken by each person in the investigation or adjudication of the claims that the Plaintiff committed sexual misconduct, retaliation or acted unprofessionally; and (b) describe in detail any training completed by the person concerning the investigation or adjudication of allegations of sexual misconduct.

6.    Identify all students who have been alleged to have engaged in Sexual Misconduct or retaliation at CWRU from 2016 through 2021.  For each person identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the complainant or alleged victim; describe the results of any investigation and/or any appeal or hearing on the allegations, including any sanctions or discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter); and describe any accommodations or interim measures requested by and/or provided to the alleged victim.

7.    Identify all medical students who have been alleged to have engaged in unprofessional conduct reviewed by the Professionalism Working Group or the Committee on Students at CWRU from 2011 through 2021 (whether as a result of an "early concern" or otherwise).  For each person identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the complainant or alleged victim; describe the results of any investigation and/or any appeal or hearing on the allegations, including any sanctions or discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter).

8.      Identify all sexual misconduct and retaliation investigations reviewed by the Professionalism Working Group or Committee on Students at CWRU from 2011 through 2020.  For each investigation identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the complainant or alleged victim; describe the results of the review by the COS, including any sanctions or discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter).

9.      Provide the name(s) and title(s) of the CWRU Title IX coordinator(s), and any deputy or co-coordinator(s) from 2011 to 2020 and describe when each individual assumed and/or left his or her position.

10.     Provide the names and titles of any CWRU personnel responsible for investigating incidents of discrimination and harassment biased on sex or implementing any part of the University's Title IX grievance process.

11.     Describe any steps CWRU took from 2011-2020 to make students, faculty, and staff at the University aware of the policies and that address discrimination and harassment based on sex, including sexual misconduct, such as publications, website statements, and/or training.

12.     Describe any training regarding Title IX as it applies to sexual misconduct or retaliation CWRU provided or offered to (i) University personnel; and (ii) University students from 2011 through 2020.  In answering this interrogatory, for each training, include the date of the training; the target audience (e. g., coaches, residence hall staff, etc.); and a description of the background/expertise of the individual who provided training.

13.     Describe how CWRU has assessed the campus climate regarding sexual harassment issues, conducted self-assessments, collected data, or monitored sexual harassment, misconduct, or violence on campus, if at all, for 2011 through 2020.

14.     Identify any CWRU policy that requires students to maintain the confidentiality of investigations into allegations that the student engaged in sexual misconduct or retaliation.  In answering this Interrogatory, please identify the specific section of the CWRU policy by page or section number.

15.     Describe any communications between any employee or representative of CWRU and the Federal Government concerning the manner in which CWRU or CWRU Medical School investigates and adjudicates allegations of sexual misconduct, including but not limited to any investigation by the Department of Education or Department of Health and Human Services.  In answering this interrogatory, include: all participants to the communication; the date and time of the communication; the mode of communication (e.g. spoken, telephone, email, letter etc . . .); and the substance of the communication.

Respectfully submitted,

_____/s/ Joshua A. Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (OH 0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via email this November 10, 2021 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

JOHN NOAKES

Plaintiff

v.

CASE WESTERN RESERVE
UNIVERSITY,

Defendant

Case No. 1:21-cv-1776-PAB

Judge:  BARKER

PLAINTIFF'S FIRST SET OF
REQUESTS FOR THE
PRODUCTION OF DOCUMENTS

Pursuant to Fed R. Civil Rule 34, Plaintiff John Noakes submits this First Set of Requests for the Production of Documents to Defendant Case Western Reserve University. ("CWRU").

Plaintiff requests the Defendant to produce and permit the Plaintiff, or someone acting on the Plaintiff's behalf, to inspect and copy any designated documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained that are in the possession, custody, or control of the Defendant.  Electronically stored information may be produced in a form or forms in which the information is ordinarily maintained if that form is reasonably useable, or in any form that is reasonably useable.

The Defendant shall serve a written response within the time required by the Rules of Civil Procedure. With respect to each item or category, the response shall state that inspection and related activities will be permitted as requested, unless it is objected to, including an objection to the requested form or forms for producing electronically stored information, in which event the reasons for objection shall be stated.

Definitions.

The following definitions apply to all discovery requests:

1. *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

2. *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.  This definition specifically includes any documents

1

contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

3. *Parties.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. "John Noakes" and "Jane Roe" are synonymous with the persons described and identified in the Complaint. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

4. *Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

5. *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

6. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

7. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

8. *Sexual Misconduct.* The term "sexual misconduct" includes sexual assault, sexual exploitation, sexual intimidation, sexual harassment, domestic violence, dating violence and stalking, and is synonymous with the use of the term in the "Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties."

9. *Sexual Misconduct Policy.* The term "Sexual Misconduct Policy" means any policy adopted by CWRU to define and describe prohibited sexual conduct and establish a procedural mechanism for processing complaints of Sexual Misconduct. The term specifically includes, but is not limited to the Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties referenced in the Complaint and any revisions to that policy.

10. *Supportive Measures.* The term "Supportive Measures" means any non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to a student to restore or preserve access to the university's education program or activity, including measures designed to protect the safety of the student or the university's educational environment, and/or deter harassment, discrimination, and/or retaliation.

11. *Retaliation.* The term "Retaliation" means any taking or attempting to take any adverse action, including intimidating, threatening, coercing, harassing, or discriminating, against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or complaint, testified, assisted, or participated

or refused to participate in any manner in an investigation, proceeding, or hearing under any Sexual Misconduct Policy.

<u>Requests</u>

1.     Every document you reasonably anticipate introducing as an exhibit at trial or in support of or in opposition to a motion for summary judgment.

2.     Every document relied upon or reviewed by any expert you reasonably anticipate calling as a witness at trial or who you anticipate will be submitting an affidavit in support of or in opposition to a motion for summary judgment.

3.     Every document identified in response to Defendants' First Set of Interrogatories.

4.     All documents concerning the investigation or adjudication of the claims that the Plaintiff committed Sexual Misconduct or Retaliation.

5.     All documents concerning the investigation or adjudication of the claims by Plaintiff that he was the victim of Sexual Misconduct or Retaliation.

6.     All documents concerning communications between Jane Roe and any CWRU employee concerning the investigation or adjudication of the claims that John Noakes committed Sexual Misconduct or Retaliation.

7.     All documents concerning communications between John Noakes and any CWRU employee concerning the investigation or adjudication of the claims that Jane Roe committed Sexual Misconduct or Retaliation.

8.     All documents concerning communications to, form or between any CWRU employees concerning the investigation or adjudication of the claims that Jane Roe committed Sexual Misconduct or Retaliation.

9.     All documents concerning communications to, form or between any CWRU employees concerning the investigation or adjudication of the claims that John Noakes committed Sexual Misconduct or Retaliation.

10.    All documents concerning communications to, form or between any CWRU employees the claims that John Noakes violated any CWRU policies or procedures, or acted in an unprofessional manner, in posting to GroupMe in April 2021.

11.    All documents concerning communications to, form or between any CWRU employees the claims that John Noakes violated any CWRU policies or procedures, or acted in an unprofessional manner, in regards to the Tumblr and Instagram posts described in the Complaint and the Affidavit of Dr. Logio.

12.    All documents concerning the April 2021 meeting/"open discussion" scheduled by Dr. Ricanati to discuss "the CWRU Title IX process" and other matters, as described in the Complaint.

3

13.     The personnel and/or academic files of all persons involved in the investigation or adjudication of the claims that that Jane Roe or John Noakes committed Sexual Misconduct or Retaliation.

14.     The academic file of John Noakes.

15.     The academic file of Jane Roe.

16.     All documents concerning accommodations, benefits, or interim measures provided by CWRU to Jane Roe, or requested by Jane Roe, related to her allegations that she was a victim of sexual misconduct.

17.     All documents concerning accommodations, benefits, or interim measures provided by CWRU to John Noakes, or requested by John Noakes, related to his allegations that he was a victim of sexual misconduct.

18.     All documents concerning communications between Jane Roe and any person acting as an advocate or advisor to related to her claim that she was a victim of sexual misconduct.

19.     All documents concerning communications between Jane Roe and any person acting as an advocate or advisor to related to her claim that she was a victim of retaliation.

20.     Copies of any CWRU policies or procedures in effect from 2016-2021 that address discrimination and harassment based on sex, including sexual misconduct, involving students, employees, and third parties, including sexual violence/misconduct/harassment policies and procedures, Title IX grievances, applicable disciplinary procedures and codes, appeal procedures, and nondiscrimination notices.  If any of the above policies or procedures changed over the applicable time period, copies of: (i) all documents that reflect each change, noting the date(s) when the new policy or procedure became applicable; and (ii) drafts of all such policies.

21.     Copies of any notes, agendas, summaries or follow-up communication related to any meetings during 2011-2021 between CWRU staff and student(s) regarding the manner in which CWRU investigates and adjudicates allegations of sexual misconduct.

22.     Copies of documents related to any steps CWRU took from 2011-2020 to make students, faculty, and staff at the University aware of the policies and that address discrimination and harassment based on sex, including sexual misconduct, such as publications, website statements, and/or training.

23.     Copies of any materials distributed at any training regarding Title IX as it applies to sexual harassment, including sexual assault and violence, the University provided or offered to (i) CWRU personnel; and (ii) CWRU students from 2011-2021.

24.     Copies of any and all brochures, pamphlets, or other materials that are disseminated by CWRU to students regarding sexual harassment, the rights of complainants and

4

accused individuals, and/or other campus resources available to assist those facing sexual harassment/violence for 2011-2021.

25. Copies of any summaries or interim or final reports that describe the outcome of efforts by CWRU to assess the campus climate regarding sexual harassment/sexual misconduct issues, including self-assessments, collected data, or monitored sexual harassment, misconduct, or violence on campus, if at all, for 2011-2021.

26. All documents concerning the training of staff for conducting investigations on allegations students have engaged in Sexual Misconduct for 2011-2021.

27. All documentation concerning any formal or informal complaints or reports of sexual misconduct or retaliation made to CWRU (including, but not limited to those received by CWRU personnel, campus police, the Title IX Office, Equal Opportunity, housing, or those received elsewhere and then referred to CWRU) or investigated/resolved by CWRU from 2016 through 2021, including:
    a. any written complaints or reports, and any documents containing descriptions of any verbal complaints;
    b. all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;
    c. any documents showing the steps of the investigation and the results of the investigation, including any correspondence, e-mails, and other documents concerning how CWRU notified pertinent parties of the outcome of each investigation;
    d. any documents, including student academic records, memoranda, e-mails, notes, or other documents, that discuss or relate to accommodations or interim measures provided to the complainant while the complaint was being investigated or after the investigation concluded;
    e. any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report
    f. any documents that discuss or relate to: whether CWRU found that the complainant and/or other students were sexually harassed/assaulted; whether CWRU found that any complaint was part of a larger pattern of similar complaints; and whether CWRU made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment.
    g. If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by CWRU faculty, staff, administration, and/or trustees from 2011-2020, that discuss, relate or refer to the complaints or reports identified under this request.

28. All documentation concerning any formal or informal complaints or reports of sexual misconduct or retaliation made to CWRU Medical School Committee on Students (including, but not limited to those received by CWRU personnel, campus police, the Title IX Office, Equal Opportunity, housing, or those received elsewhere and then referred to CWRU) or investigated/resolved by the CWRU Medical School Committee on Students from 2016 through 2021, including:

a. any written complaints or reports, and any documents containing descriptions of any verbal complaints;

b. all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;

c. any documents showing the steps of the investigation and the results of the investigation, including any correspondence, e-mails, and other documents concerning how CWRU notified pertinent parties of the outcome of each investigation;

d. any documents, including student academic records, memoranda, e-mails, notes, or other documents, that discuss or relate to accommodations or interim measures provided to the complainant while the complaint was being investigated or after the investigation concluded;

e. any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report

f. any documents that discuss or relate to: whether CWRU found that the complainant and/or other students were sexually harassed/assaulted; whether CWRU found that any complaint was part of a larger pattern of similar complaints; and whether CWRU made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment.

g. If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by CWRU faculty, staff, administration, and/or trustees from 2011-2020, that discuss, relate or refer to the complaints or reports identified under this request.

29. All documentation concerning any formal or informal complaints or reports of sexual misconduct or retaliation made to CWRU Medical School Committee on Students (including, but not limited to, "early concerns") or investigated/resolved by the CWRU Medical School Committee on Students  from 2016 through 2021, including:

a. any written complaints or reports, and any documents containing descriptions of any verbal complaints;

b. all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;

c. any documents, including student academic records, memoranda, e-mails, notes, or other documents, that discuss or relate to accommodations or interim measures provided to the complainant while the complaint was being investigated or after the investigation concluded;

d. any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report

e. any documents that discuss or relate to: whether CWRU found that the complainant and/or other students were sexually harassed/assaulted; whether CWRU found that any complaint was part of a larger pattern of similar complaints; and whether CWRU made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment.

f. If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by

CWRU faculty, staff, administration, and/or trustees from 2016-2021, that discuss, relate or refer to the complaints or reports identified under this request.

30. All documentation concerning any formal or informal complaints or reports of unprofessional conduct made to CWRU Medical School Committee on Students (including, but not limited to "early concerns") or investigated/resolved by the CWRU Medical School Committee on Students  from 2016 through 2021, including:

   a. any written complaints or reports, and any documents containing descriptions of any verbal complaints;
   b. all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;
   c. any documents showing the steps of the investigation and the results of the investigation, including any correspondence, e-mails, and other documents concerning how CWRU notified pertinent parties of the outcome of each investigation;
   d. any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report;
   e. any documents that discuss or relate to: whether CWRU found that the complainant and/or other students acted unprofessionally;
   f. If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by CWRU faculty, staff, administration, and/or trustees from 2011-2020, that discuss, relate or refer to the complaints or reports identified under this request.

31. All documents concerning the any "Early Concerns" alleging allegations of Sexual Misconduct or Retaliation from 2016 to through 2021.

32. All documents concerning medical students referred to the Professionalism Working Group or Committee on Students due to social media posts, social media activities, or electronic communications.

Respectfully submitted,

_____/s/ Joshua A. Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (OH 0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via email this November 10, 2021 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN NOAKES | Case No. 1:21-cv-1776-PAB |
| Plaintiff | Judge:  BARKER |
| v. | PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSIONS |
| CASE WESTERN RESERVE UNIVERSITY, | |
| Defendant | |

Pursuant to Fed R. Civil Rule 36, Plaintiff John Noakes submits this First Set of Requests for Admissions to Defendant Case Western Reserve University ("CWRU").

A matter is admitted unless, within 30 days after being served, the Defendant serves on the Plaintiff a written answer or objection addressed to the matter and signed by the party or its attorney. If a matter is not admitted, the answer must specifically deny it or state in detail why the Defendant cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that the Defendant qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The grounds for objecting to a request must be stated. The Defendant must not object solely on the ground that the request presents a genuine issue for trial.

<u>Definitions.</u>

The following definitions apply to all discovery requests:

1. *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

2. *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

3. *Parties.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. "John Noakes" and "Jane

1

Roe" are synonymous with the persons described and identified in the Complaint. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

4. *Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

5. *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

6. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

7. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

8. *Sexual Misconduct.* The term "sexual misconduct" includes sexual assault, sexual exploitation, sexual intimidation, sexual harassment, domestic violence, dating violence and stalking, and is synonymous with the use of the term in the "Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties."

9. *Sexual Misconduct Policy.* The term "Sexual Misconduct Policy" means any policy adopted by CWRU to define and describe prohibited sexual conduct and establish a procedural mechanism for processing complaints of Sexual Misconduct. The term specifically includes, but is not limited to the Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties referenced in the Complaint and any revisions to that policy.

10. *Supportive Measures.* The term "Supportive Measures" means any non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to a student to restore or preserve access to the university's education program or activity, including measures designed to protect the safety of the student or the university's educational environment, and/or deter harassment, discrimination, and/or retaliation.

11. *Retaliation.* The term "Retaliation" means any taking or attempting to take any adverse action, including intimidating, threatening, coercing, harassing, or discriminating, against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under any Sexual Misconduct Policy.

12. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been

2

identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

13. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

<u>Requests</u>

1. Defendant Case Western Reserve University voluntarily participates in federal spending programs.

2. In the year preceding the disciplinary actions against John Noakes, there was substantial criticism of CWRU, both in the student body and in the public media, accusing CWRU of not taking seriously complaints of female students alleging sexual assault by male students.

3. In the summer of 2020, a group of CWRU students, "CWRU Survivors," established the @cwru.survivors Instagram page so students could anonymously share their experiences with sexual assault, violence, harassment and discrimination on CWRU's campus, as well as experiences with the Title IX office

4. CWRU believes survivors of sexual misconduct.

5. In 2018, the Office of Civil Rights for the Department of Health and Human Services completed an evaluation of the School of Medicine's compliance with Title IX.

6. CWRU's Title IX Coordinator leads CWRU's centralized Title IX Office and oversees all aspects of Title IX investigations and prevention and education programs university-wide, including investigating grievances involving the School of Medicine.

7. No CWRU Policy requires that student keep investigations or adjudications into allegations of sexual misconduct confidential.

8. CWRU students are free to disclose any information obtained in the investigative or administrative process concerning allegations of sexual misconduct.

9. On November 7, 2020 at 6:34 am John Noakes reported to the Office of Equity that he is being threatened and harassed by Jane Roe.

10. CWRU never investigated John Noakes' claims that he was being threatened and harassed by Jane Roe.

11. CWRU never disciplined Jane Roe for threatening and harassing John Noakes.

12. The Professional Working Group or Committee on Students has never reviewed any allegations of unprofessional misconduct by Jane Roe.

13. The Professional Working Group or Committee on Students has reviewed allegations of unprofessional misconduct by John Noakes.

3

14. Between November 2020 and April 2021, Jane Roe disclosed information concerning the allegations that John Noakes committed sexual misconduct to other members of their medical school class.

15. The removal of John Noakes in April 2021 from the GroupMe group chat used by the Medical School had the effect of excluding John Noakes from class discussions and communications regarding curricular activities.

16. Between 2016 and 2021, the Professional Working Group or Committee on Students has not reviewed allegations of unprofessional conduct by a student related to social media posts.

17. In April 2021, CWRU employees were aware that a medical student in John Noakes' class created a committee to respond to the allegations that John Noakes committed sexual misconduct.

18. In April 2021, CWRU employees were aware that a medical student in John Noakes' class created and publicized a survey/petition seeking the dismissal of John Noakes from the medical school.

19. In April 2021, CWRU employees were aware that a medical student in John Noakes' organized an effort to encourage others to file Early Concern complaints against John Noakes.

20. In April 2021, CWRU employees were aware that a Jane Roe encouraged students to submit complaints or "early concerns" about John Noakes.

21. In April 2021, CWRU employees were aware that a medical student in John Noakes' class referred to John Noakes as "scum of the earth" while John Noakes was attempting to lead a group discussion.

22. Between April 2021 and November 2021, CWRU employees were aware of multiple allegations that Jane Roe had violated a no contact directive.

23. On April 19, 2021, Dr. Ricanati threatened John Noakes with institutional discipline for undisclosed inappropriate conduct.

24. In April 2021, John Noakes requested, but was not provided with, interim supportive measures related to his retaliation complaint against Dr. Ricanati and Dr. Parker.

25. Dr. Ricanati invited the entire medical school class to a April 26, 2021 meeting to discuss "the CWRU Title IX process" and "Identify[ing] potential action items."

26. John Noakes was not informed of the April 26, 2021 class meeting by Dr. Ricanati or any other CWRU faculty.

27. On May 6, 2021, Dr. Greenfield accused John Noakes of not having "empathy" in regards to Jane Roe and his GroupMe post.

28. On May 6, 2021, Dr. Greenfield told John Noakes that "if you can show insight into how other people may have been affected, and you can show empathy for other people, then [the COS] will not kick you out of school."

4

29. On September 1, 2021, Dr. Greenfield told John Noakes that taking a year off was the "only solution."

30. On September 1, 2021, Dr. Greenfield told John Noakes that he should not pursue Title IX or consult lawyers.

31. On September 1, 2021, Dr. Greenfield told John Noakes that Title IX "only creates a toxic environment."

32. On September 1, 2021, Dr. Greenfield told John Noakes that bad things could happen to John Noakes if he pursues his Title IX complaint against Jane Roe.

33. On September 7, 2021 Dr. Greenfield told John Noakes that it was his responsibility to "de-escalate" the situation with Jane Roe.

34. On September 7, 2021 Dr. Greenfield told John Noakes that he could get in trouble for various Tumblr posts, even if was done without his knowledge

35. On September 7, 2021 Dr. Greenfield told John Noakes he should take a year off from his medical school studies, adding, "the only way out of this for you… is… [to] step into a different class."

36. On September 7, 2021 Dr. Greenfield told John Noakes "you need to not make your own Title IX report… You need to just hunker down and do your own stuff if you're going to stay in the class."

37. On September 7, 2021 Dr. Greenfield told John Noakes that in response to continued harassment from Jane Roe, he should "do the Martin Luther King approach, you know, just turn the other cheek."

38. On September 7, 2021 Dr. Greenfield told John Noakes that his retaliation complaints were "ill advised."

39. On September 7, 2021 Dr. Greenfield told John Noakes, "Even if the unfairness of the situation is galling, I think what's going to be in your interest… to just say I'm just going to accept it as it is."

40. On September 7, 2021 Dr. Greenfield told John Noakes "You're digging yourself a hole, honey."

41. On September 7, 2021 Dr. Greenfield told John Noakes "I can't protect you.  You know, you have to make a decision about how you're going to behave through this, and I think you are making some poor decisions…."

42. On September 7, 2021 Dr. Greenfield told John Noakes he needed to stop "looking like you're causing problems."

43. On September 7, 2021 Dr. Greenfield told John Noakes, "I know it doesn't feel fair.  I know you feel like you know that things aren't being done in a fair way, but I'm just talking from a practical sense."

44. John Noakes engaged in protected activity when he participated and provided evidence in the investigations and adjudication of Jane Roe complaints.

       /s/ Joshua A. Engel        
Joshua Adam Engel (0075769)
Anne Tamashasky (OH 0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via email this November 10, 2021 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN NOAKES | Case No. 1:21-cv-1776-PAB |
| Plaintiff | Judge:  BARKER |
| v. | PLAINTIFF'S THIRD SET OF INTERROGATORIES |
| CASE WESTERN RESERVE UNIVERSITY, | |
| Defendant | |

Pursuant to Fed R. Civil Rule 33, Plaintiff John Noakes submits this First Set of Interrogatories Documents to Defendant Case Western Reserve University. ("CWRU").

Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the reasons for objection shall be stated in lieu of an answer.  The Defendant shall quote each interrogatory immediately preceding the corresponding answer or objection.  The answers are to be signed by the person making them, and the objections signed by the attorney making them. The Defendant shall serve a copy of the answers and objections within twenty-eight days.

Definitions.

The following definitions apply to all discovery requests:

1. *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

2. *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

3. *Parties.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. "John Noakes" and "Jane Roe" are synonymous with the persons described and identified in the Complaint. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

1

4. *Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

5. *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

6. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

7. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

8. *Sexual Misconduct.* The term "sexual misconduct" includes sexual assault, sexual exploitation, sexual intimidation, sexual harassment, domestic violence, dating violence and stalking, and is synonymous with the use of the term in the "Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties."

9. *Sexual Misconduct Policy.* The term "Sexual Misconduct Policy" means any policy adopted by CWRU to define and describe prohibited sexual conduct and establish a procedural mechanism for processing complaints of Sexual Misconduct. The term specifically includes, but is not limited to the Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties referenced in the Complaint and any revisions to that policy.

10. *Supportive Measures.* The term "Supportive Measures" means any non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to a student to restore or preserve access to the university's education program or activity, including measures designed to protect the safety of the student or the university's educational environment, and/or deter harassment, discrimination, and/or retaliation.

11. *Retaliation.* The term "Retaliation" means any taking or attempting to take any adverse action, including intimidating, threatening, coercing, harassing, or discriminating, against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or complaint, testified, assisted, or participated or refused to participate in any manner in an investigation, proceeding, or hearing under any Sexual Misconduct Policy.

12. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

13. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

<u>Interrogatories</u>

1.  Describe in detail all efforts by CWRU officials who had the authority to address the alleged discriminatory harassment and retaliation against John Noakes described in the Amended Complaint and to institute corrective measures on John Noakes' behalf to correct such behavior in a timely manner.

2.  State whether CWRU is aware of any allegations that John Noakes has violated any CWRU policy, including the CWRU Code of Conduct, the CWRU Title IX Policy, or the School of Medicine Student Handbook, or engaged in any unprofessional conduct, that have not previously been disclosed to John Noakes.  If the answer to this interrogatory is anything other than an unqualified "no," describe the allegation, any to investigate, adjudicate, or take any other action in regards to the matter; and identify all persons with knowledge of the allegations.

3.  State whether CWRU has disclosed the existence of, or discussed the contents of, any allegations against and/or the proceedings before the Office of Student Conduct, the Title IX Office ("Office of Equity"), School of Medicine's Professionalism Working Group, or the School of Medicine's Committee on Students concerning John Noakes to any third party.  If the answer to this interrogatory is anything other than an unqualified "no," describe the information disclosed, identify the CWRU personnel with knowledge of the disclosure, and identify the recipient.

Respectfully submitted,

_____/s/ Joshua A. Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (OH 0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via email this September 6, 2022 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO

JOHN NOAKES

Plaintiff

v.

CASE WESTERN RESERVE
UNIVERSITY,

Defendant

Case No. 1:21-cv-1776-PAB

Judge:  BARKER

PLAINTIFF'S SECOND SET OF
REQUESTS FOR THE
PRODUCTION OF DOCUMENTS

Pursuant to Fed R. Civil Rule 34, Plaintiff John Noakes submits this Second Set of Requests for the Production of Documents to Defendant Case Western Reserve University. ("CWRU").

Plaintiff requests the Defendant to produce and permit the Plaintiff, or someone acting on the Plaintiff's behalf, to inspect and copy any designated documents or electronically stored information, including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations stored in any medium from which information can be obtained that are in the possession, custody, or control of the Defendant.  Electronically stored information may be produced in a form or forms in which the information is ordinarily maintained if that form is reasonably useable, or in any form that is reasonably useable.

The Defendant shall serve a written response within the time required by the Rules of Civil Procedure. With respect to each item or category, the response shall state that inspection and related activities will be permitted as requested, unless it is objected to, including an objection to the requested form or forms for producing electronically stored information, in which event the reasons for objection shall be stated.

Definitions.

The following definitions apply to all discovery requests:

1. *Communication.* The term "communication" means the transmittal of information (in the form of facts, ideas, inquiries, or otherwise).  This definition specifically includes any documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

2. *Document.* The term "document" is defined to be synonymous in meaning and equal in scope to the usage of this term in Fed R. Civ. P. 34(a). A draft or non-identical copy is a separate document within the meaning of this term.  This definition specifically includes any documents

1

contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants.

3. *Parties.* The terms "plaintiff" and "defendant" as well as a party's full or abbreviated name or a pronoun referring to a party mean the party and, where applicable, its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates. "John Noakes" and "Jane Roe" are synonymous with the persons described and identified in the Complaint. This definition is not intended to impose a discovery obligation on any person who is not a party to the litigation.

4. *Person.* The term "person" is defined as any natural person or any business, legal, or governmental entity or association.

5. *Concerning.* The term "concerning" means referring to, describing, evidencing, or constituting.

6. *Identify (With Respect to Persons).* When referring to a person, "to identify" means to give, to the extent known, the person's full name, present or last known address, and, when referring to a natural person, the present or last known place of employment. Once a person has been identified in accordance with this subparagraph, only the name of that person need be listed in response to subsequent discovery requesting the identification of that person.

7. *Identify (With Respect to Documents).* When referring to documents, "to identify" means to give, to the extent known, the (a) type of document; (b) general subject matter; (c) date of the document; and (d) author(s), addressee(s), and recipient(s).

8. *Sexual Misconduct.* The term "sexual misconduct" includes sexual assault, sexual exploitation, sexual intimidation, sexual harassment, domestic violence, dating violence and stalking, and is synonymous with the use of the term in the "Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties."

9. *Sexual Misconduct Policy.* The term "Sexual Misconduct Policy" means any policy adopted by CWRU to define and describe prohibited sexual conduct and establish a procedural mechanism for processing complaints of Sexual Misconduct. The term specifically includes, but is not limited to the Interim Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties referenced in the Complaint and any revisions to that policy.

10. *Supportive Measures.* The term "Supportive Measures" means any non-disciplinary, non-punitive individualized services offered as appropriate, as reasonably available, and without fee or charge to a student to restore or preserve access to the university's education program or activity, including measures designed to protect the safety of the student or the university's educational environment, and/or deter harassment, discrimination, and/or retaliation.

11. *Retaliation.* The term "Retaliation" means any taking or attempting to take any adverse action, including intimidating, threatening, coercing, harassing, or discriminating, against any individual for the purpose of interfering with any right or privilege secured by law or policy, or because the individual has made a report or complaint, testified, assisted, or participated

or refused to participate in any manner in an investigation, proceeding, or hearing under any Sexual Misconduct Policy.

<u>Requests</u>

1.    Every document concerning the claim in ¶ 9 of the Lutner Affidavit (Doc#18-1) that on or around September 13, 2021, Lutner "began receiving reports that members of the School of Medicine community, including CWRU employees, began receiving invitations to a new Instagram account, which posted a link to the Tumblr content."

2.    Every document concerning the claim in ¶ 10 of the Lutner Affidavit (Doc#18-1) that on September 14, 2021, Lutner determined that "there was a reasonable basis to believe that Plaintiff, or someone on his behalf or working with him, may be sharing or posting information on Tumblr to intimidate, embarrass, harass, or punish Ms.  Roe for filing a Title IX complaint against Plaintiff."

3.    Every document concerning the claim in ¶ 10 of the Lutner Affidavit (Doc#18-1) that on September 14, 2021, Lutner "scheduled a meeting for September 15, 2021 at 9 a.m. to notify Ms. Roe that CWRU would be proceeding with an investigation of her retaliation complaint."

4.    Every document concerning the September 15, 2021 meeting between Lutner and Jane Roe.

5.    Every document concerning the claim in ¶ 13 of the Lutner Affidavit (Doc#18-1) that on September 15, 2021 Lutner communicated to Jane Roe "that CWRU would be investigating her retaliation complaint."

6.    Every document demonstrating when Lutner learned of this lawsuit.

7.    Every document concerning the claim in ¶ 7, of the Ricanati Affidavit (Doc#18-3) that Dr. Ricanati "was working with Dr. Lia Logio on a correspondence to the school of medicine regarding professional and appropriate uses of electronic forms of communications."

8.    Every document concerning drafts of the email/policy described  in ¶ 7 of the Ricanati Affidavit (Doc#18-3).

9.    Every document concerning "early concerns" submitted concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

10.   Every document concerning the "internal policy" of the Committee on Students to review all Title IX matters.

11.   Every document concerning the notification of Dr. Ricanati and Dr. Parker that Plaintiff had named them in a retaliation complaint.

12. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students from November 2020 to the present.

13. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group from November 2020 to the present.

14. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning Plaintiff.

15. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning Plaintiff.

16. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning Jane Roe.

17. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning Jane Roe.

18. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

19. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

4

Respectfully submitted,

_____/s/ Joshua A. Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (OH 0064393)
ENGEL AND MARTIN, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
(513) 445-9600
engel@engelandmartin.com

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been electronically served via email this November 29, 2021 upon all counsel of record.

/s/ Joshua Engel
Joshua Engel