IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NOAKES, | ) | Case No. 1:21-cv-01776 |
| | ) | |
| Plaintiff, | ) | The Honorable Judge Pamela A. Barker |
| | ) | |
| v. | ) | **DEFENDANT'S OBJECTIONS AND** |
| | ) | **RESPONSES TO PLAINTIFF'S FIRST** |
| CASE WESTERN RESERVE UNIVERSITY, | ) | **SET OF INTERROGATORIES** |
| | ) | |
| Defendant. | ) | |
| | ) | |

Defendant Case Western Reserve University ("CWRU" or the "University" or "Defendant"), by responding to Plaintiff John Noakes' First Set of Interrogatories ("Discovery Requests"), does not waive its right to object to the use of the produced documents and information at any time on any grounds in this or any other proceeding.  In addition, discovery in this action is still proceeding, and, therefore, Defendant specifically reserves the right to amend any response in light of later-discovered facts or introduce additional documents and information in support of its position at trial.  With respect to all documents and information produced in this response, Defendant does not waive, but expressly preserves:

1.     All questions as to the competency, relevancy, privilege, and admissibility as evidence of all documents and information, for any purpose in any subsequent proceeding or the trial of this or any other action;

2.     The right to object to the use of any document produced pursuant to Plaintiff's Discovery Requests in any subsequent proceeding or in the trial of this or any other action on any grounds;

3.     The right to object on any ground at any time to demand for further requests of documents or information;

1

4.      The right at any time to revise, correct, add, or to clarify any of the responses;

5.      The right to object to the use of any document or information on the grounds of attorney-client and/or attorney work-product privileges; and

6.      The right to seek protection from disclosure of confidential or proprietary information that may subsequently be provided in response to these requests through the entry of a motion or agreed order.

## GENERAL OBJECTIONS TO DEFINITIONS

1.      Defendant objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it seeks to define "communication" as "the transmittal of information" on the ground that the Definition is vague, ambiguous, overly broad, unduly burdensome, includes data that is not accessible without imposing an undue burden, and expands the term "document" beyond the scope of Rule 26(b)(1) and 34 of the Federal Rules of Civil Procedure.  Defendant further objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it includes "documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

2.      Defendant objects to Definition No. 2, and all affected Definitions and/or Discovery Requests, to the extent it exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure and to the extent it includes "documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 2, and all affected Definitions and/or Discovery Requests, to the extent it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

3.      Defendant objects to Definition No. 3, and all affected Definitions and/or Discovery Requests, to the extent it seeks to define "defendant" as including "its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 3, and all affected Definitions and/or Discovery Requests, to the extent

it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

4.      Defendant objects to Definition Nos. 6, 7, 12, and 13, and all affected Definitions and/or Discovery Requests, to the extent they exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure and to the extent they are vague and ambiguous with respect to the meaning of the phrases "type of document" and "general subject matter," unduly burdensome, call for a narrative response, which is more appropriate for another form of discovery, and transform each Discovery Request into a compound request.

5.      Defendant objects to the Definitions, and all affected Definitions and/or Discovery Requests, to the extent they exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  Defendant states that it will comply with its obligations as outlined in Rule 26(e) of the Federal Rules of Civil Procedure.

6.      Defendant objects to all Definitions and Discovery Requests to the extent they seek disclosure of protected student information.  The Buckley Amendment, codified as the Family Educational Rights and Privacy Act  ("FERPA"), 20 U.S.C. § 1232g and 34 C.F.R. § 99.3, prohibits disclosure of student information without student consent and limits the student information a college or university can legally disclose without written consent, a valid judicial order, or a lawfully issued subpoena.

7.      Defendant objects to all Definitions and Discovery Requests to the extent they seek information and/or documents about ongoing and pending investigations being conducted by the Office of Equity, as such disclosure or production would disrupt and interfere with the investigations and would unfairly prejudice other parties to the investigations who do not have similar access to such information or documents.

4

Subject in each instance to this General Statement and the General Objections to Definitions, Defendant submits specific responses and objections as follows:

## INTERROGATORIES

1.     Identify every document you reasonably anticipate introducing as an exhibit at trial or in support of or in opposition to a motion for summary judgment.

**RESPONSE: Objection. Interrogatory No. 1 seeks information protected by the attorney-client privilege and/or attorney work product doctrine. CWRU further objects to Interrogatory No. 1 because it is premature as discovery is ongoing. Subject to and without waiving those objections, CWRU will abide by all rules, orders, or procedures of the Court regarding the disclosure of exhibits. Further responding, documents produced by the parties in discovery may be used as exhibits.**

2.     Identify every person you reasonably anticipate calling as a witness at trial or who you anticipate will be submitting an affidavit in support of or in opposition to a motion for summary judgment.  For each person identified in response to this Interrogatory, describe the person's anticipated testimony.

**RESPONSE: Objection. Interrogatory No. 2 seeks information protected by the attorney-client privilege and/or attorney work product doctrine, and also calls for a narrative response, which is more appropriate for another form of discovery. CWRU further objects to Interrogatory No. 2 because it is premature as discovery is ongoing and CWRU has not yet identified the (non-expert or expert) witnesses it may call to testify at the trial of this matter. Subject to and without waiving the foregoing objections, CWRU will abide by all rules, orders, or procedures of the Court regarding the identification of (non-expert and expert) witnesses.**

3.     Identify every expert you reasonably anticipate calling as a witness at trial or who you anticipate will be submitting an affidavit in support of or in opposition to a motion for summary judgment.  For each person identified in response to this Interrogatory, summarize the expert witness's testimony, findings, analysis, conclusions, or opinion, and provide a summary of the expert's qualifications.

**RESPONSE: Objection. Interrogatory No. 3 is compound, seeks information protected by the attorney-client privilege and/or attorney work product doctrine, and calls for a narrative response, which is more appropriate for another form of discovery. CWRU further objects to Interrogatory No. 3 because it is premature as discovery is ongoing and CWRU has not yet identified the expert witnesses it may call to testify at the trial of this matter. Subject to and without waiving the foregoing objections, CWRU will abide by all rules, orders, or procedures of the Court regarding the identification of expert witnesses.**

4.     Identify all persons who took any action concerning the investigation, adjudication, or review of claims that the Plaintiff committed sexual misconduct, retaliation, or acted unprofessionally.

**RESPONSE:** Objection. Interrogatory No. 4 is overly broad, and vague and ambiguous with respect to the meaning of the phrase "took any action concerning the investigation, adjudication, or review of claims that the Plaintiff committed sexual misconduct, retaliation, or acted unprofessionally." Subject to and without waiving the foregoing objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, documents from which all or part of the answer may be ascertained, including Office of Equity records concerning Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff, and School of Medicine documents concerning the Early Concerns submitted about Plaintiff in or around April 2021, will be produced.  Further responding, CWRU states that the following of CWRU's employees or agents, who may only be contacted through the undersigned counsel, were involved in the investigation or processing of Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff and the Early Concerns submitted about Plaintiff in or around April 2021:

- **Karen C. Abbott,** Professor, Department of Biology: appeal of Jane Roe's complaint of retaliation against Plaintiff
- **Rebecca Benard,** Senior Instruction, Department of Biology: hearing on Jane Roe's complaint of sexual misconduct against Plaintiff
- **Rachel Hambrick,** Department Assistant, Office of Equity: investigation, hearing, and appeal of Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff
- **Grace Hurley,** Investigator: investigation of Jane Roe's complaint of retaliation against Plaintiff
- **Lia Logio,** Vice Dean of Medical Education: Early Concerns submitted about Plaintiff in or around April 2021
- **Rachel Lutner,** Senior Associate Vice President - Equity and Title IX Coordinator, Office of Equity: investigation, hearing, and appeal of Jane Roe's complaint of retaliation against Plaintiff
- **Ricky Marcus,** Assistant Director of Student Advancement, Student Success: hearing on Jane Roe's complaint of retaliation against Plaintiff
- **Elizabeth McNeil,** former Equity Specialist and Investigator, Office of Equity: investigation of Jane Roe's complaint of sexual misconduct against Plaintiff
- **Ana Merdita,** Executive Assistant to the Dean, Weatherhead School of Management: appeal of Jane Roe's complaint of retaliation against Plaintiff
- **Carlier Myers,** Associate Registrar, University Registrar: hearing on Jane Roe's complaint of sexual misconduct against Plaintiff
- **Daniel Nemeth-Neumann,** Former Equity Specialist and Investigator, Office of Equity: investigation of Jane Roe's complaint of sexual misconduct against Plaintiff
- **Susan Padrino,** Committee on Students Chair: Early Concerns submitted about Plaintiff in or around April 2021
- **Darnell Parker,** former Associate Vice President for Student Affairs and Title IX Coordinator: investigation, hearing, and appeal of Jane Roe's complaint of sexual misconduct
- **Sarah Polly,** Managing Attorney, Milton A. Kramer Law Clinic Center at School of Law: hearings on Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff

- **Steven Ricanati**, Society Dean and Associate Dean, Office of Student Affairs for the School of Medicine: Early Concerns submitted about Plaintiff in or around April 2021
- **Alp Sehirlioglu**, Associate Professor, School of Engineering: hearing on Jane Roe's complaint of sexual misconduct against Plaintiff
- **Emily Szymanski**, Research Associate, Begun Center for Violence Prevention Research and Education in the Jack, Joseph and Morton Mandel School of Applied Social Sciences: hearing on Jane Roe's complaint of retaliation against Plaintiff
- **Antonio Tate**, Residential Community Director: appeal of Jane Roe's complaint of retaliation against Plaintiff
- **Carrie Valdez**, Investigator: investigation of Jane Roe's complaint of retaliation against Plaintiff

5. For each person identified in response to the previous interrogatory: (a) describe in detail the actions taken by each person in the investigation or adjudication of the claims that the Plaintiff committed sexual misconduct, retaliation or acted unprofessionally; and (b) describe in detail any training completed by the person concerning the investigation or adjudication of allegations of sexual misconduct.

**RESPONSE: Objection. Interrogatory No. 5 is compound, vague and ambiguous with respect to the meaning of the phrase "training completed by the person concerning the investigation or adjudication of allegations of sexual misconduct," calls for a narrative response, which is more appropriate for another form of discovery, and seeks information that is not relevant to the claims and defenses in this action. Subject to and without waiving the foregoing objections, *see* objections and response to Interrogatory No. 4.  Further responding, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, documents from which all or part of the answer may be ascertained, including Office of Equity records concerning Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff, and School of Medicine documents concerning the Early Concerns submitted about Plaintiff in or around April 2021, will be produced.**

6. Identify all students who have been alleged to have engaged in Sexual Misconduct or retaliation at CWRU from 2016 through 2021.  For each person identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the complainant or alleged victim; describe the results of any investigation and/or any appeal or hearing on the allegations, including any sanctions or discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter); and describe any accommodations or interim measures requested by and/or provided to the alleged victim.

**RESPONSE: Objection. Interrogatory No. 6 is compound, overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "nature of the allegation," calls for a narrative response, which is more appropriate for another form of discovery, calls for protected student and educational records containing personally identifiable information and/or other academic information protected under FERPA, seeks information that is not relevant to the claims and defenses in this action, is not proportional**

7

to the needs of the case, and exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure.

      7.      Identify all medical students who have been alleged to have engaged in unprofessional conduct reviewed by the Professionalism Working Group or the Committee on Students at CWRU from 2011 through 2021 (whether as a result of an "early concern" or otherwise).  For each person identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the complainant or alleged victim; describe the results of any investigation and/or any appeal or hearing on the allegations, including any sanctions or discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter).

**RESPONSE: Objection. Interrogatory No. 7 is compound, overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrases "nature of the allegation," "the complainant and the respondent," "the complainant or alleged victim," "results of any investigation and/or any appeal or hearing on the allegations," and "interim sanctions imposed prior to the resolution of the matter," calls for a narrative response, which is more appropriate for another form of discovery, calls for protected student and educational records containing personally identifiable information and/or other academic information protected under FERPA, seeks information that is not relevant to the claims and defenses in this action, is not proportional to the needs of the case, and exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure.**

      8.      Identify all sexual misconduct and retaliation investigations reviewed by the Professionalism Working Group or Committee on Students at CWRU from 2011 through 2020.  For each investigation identified: describe the nature of the allegation; state the gender of the complainant and the respondent; identify the complainant or alleged victim; describe the results of the review by the COS, including any sanctions or discipline imposed on a student (including any interim sanctions imposed prior to the resolution of the matter).

**RESPONSE: Objection. Interrogatory No. 8 is compound, overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrases "all sexual misconduct and retaliation investigations reviewed by the Professionalism Working Group or Committee on Students," "nature of the allegation," "the complainant and the respondent," "the complainant or alleged victim," and "interim sanctions imposed prior to the resolution of the matter," calls for a narrative response, which is more appropriate for another form of discovery, calls for protected student and educational records containing personally identifiable information and/or other academic information protected under FERPA, seeks information that is not relevant to the claims and defenses in this action, is not proportional to the needs of the case, and exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure.**

      9.      Provide the name(s) and title(s) of the CWRU Title IX coordinator(s), and any deputy or co-coordinator(s) from 2011 to 2020 and describe when each individual assumed and/or left his or her position.

**RESPONSE**: Objection. Interrogatory No. 9 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "any deputy or co-coordinator(s)," and seeks information that is not relevant to the claims and defenses in this action.  Subject to and without waiving the foregoing objections, CWRU states that Darnell Parker served as CWRU's Associate Vice President for Student Affairs and Title IX Coordinator from on or around July 13, 2015 to in or around July 2019 and as Senior Associate Vice President of Equity and Title IX Coordinator from in or around July 2019 to in or around July 2021, and Rachel Lutner has served as CWRU's Senior Associate Vice President – Equity and Title IX Coordinator since in or around June 2021.[1]

> 10.    Provide the names and titles of any CWRU personnel responsible for investigating incidents of discrimination and harassment biased [sic] on sex or implementing any part of the University's Title IX grievance process.

**RESPONSE**: Objection. Interrogatory No. 10 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "CWRU personnel responsible for investigating incidents of discrimination and harassment biased [sic] on sex or implementing any part of the University's Title IX grievance process," and seeks information that is not relevant to the claims and defenses in this action.  Subject to and without waiving the foregoing objections, CWRU states that the Office of Equity is responsible for implementing the Policy. Further responding, CWRU states that it employs the following individuals within the Office of Equity to assist in investigating complaints under the Policy:

- **Matthew Goins**, Equity Specialist and Investigator;
- **Carmen Guess**, Equity Specialist and Investigator;
- **Rachel Hambrick**, Department Assistant;
- **Jewel Heath**, Equity Specialist and Investigator;
- **Rachel Lutner,** Senior Associate Vice President - Equity and Title IX Coordinator;
- **Ricky Marcus**, Equity Specialist and Investigator; and
- **Joseph Primiano**, Equity Specialist and Investigator.

> 11.    Describe any steps CWRU took from 2011-2020 to make students, faculty, and staff at the University aware of the policies and that address discrimination and harassment based on sex, including sexual misconduct, such as publications, website statements, and/or training.

**RESPONSE**: Objection. Interrogatory No. 11 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "any steps… to make students, faculty, and staff at the University aware of the policies and that address discrimination and harassment based on sex," calls for a narrative response, which is more appropriate for another form of discovery, seeks information that is not relevant to the claims and defenses in this action, and is not proportional to the needs of the case.  Subject to and without waiving the foregoing objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, documents from which all or part of the answer may be ascertained, including documents

---

[1] CWRU states that, according to its records, Plaintiff did not enroll at CWRU until the 2020-2021 academic year.

concerning information CWRU provided to first year medical students in or around the fall of 2020 about or related to its Interim Sexual Harassment Policy (the "Interim Policy") in effect during the 2020-2021 academic year, will be produced.  Further responding, CWRU states that, during the 2020-2021 academic year, a copy of the Interim Policy, was publicly available on CWRU's website.

12.     Describe any training regarding Title IX as it applies to sexual misconduct or retaliation CWRU provided or offered to (i) University personnel; and (ii) University students from 2011 through 2020.  In answering this interrogatory, for each training, include the date of the training; the target audience (e. g., coaches, residence hall staff, etc.); and a description of the background/expertise of the individual who provided training.

**RESPONSE**: Objection. Interrogatory No. 12 is compound, overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "training regarding Title IX as it applies to sexual misconduct or retaliation CWRU provided or offered," calls for a narrative response, which is more appropriate for another form of discovery, seeks information that is not relevant to the claims and defenses in this action, and is not proportional to the needs of the case.  Subject to and without waiving the foregoing objections, pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, documents from which all or part of the answer may be ascertained, including documents concerning training and information CWRU provided to first year medical students in or around the fall of 2020 about or related to the Interim Policy, will be produced.

13.     Describe how CWRU has assessed the campus climate regarding sexual harassment issues, conducted self-assessments, collected data, or monitored sexual harassment, misconduct, or violence on campus, if at all, for 2011 through 2020.

**RESPONSE**: Objection. Interrogatory No. 13 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "how CWRU has assessed the campus climate regarding sexual harassment issues, conducted self-assessments, collected data, or monitored sexual harassment, misconduct, or violence on campus," calls for a narrative response, which is more appropriate for another form of discovery, seeks information that is not relevant to the claims and defenses in this action, is not proportional to the needs of the case, and exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure.

14.     Identify any CWRU policy that requires students to maintain the confidentiality of investigations into allegations that the student engaged in sexual misconduct or retaliation.  In answering this Interrogatory, please identify the specific section of the CWRU policy by page or section number.

**RESPONSE**: Objection. Interrogatory No. 14 is overly broad in time frame.  Subject to and without waiving the foregoing objection, CWRU states that, in accordance with the Office of Equity's policies and procedures, notices of investigation and allegations typically include the following statements: "*Confidentiality* – You have the right to discuss this matter with your advisor and others, but the institution will conduct this investigation confidentially,

10

**meaning that it will only share information as permitted or required by law. CWRU asks for your discretion in what you choose to share and hopes that you will respect the private and sensitive nature of these allegations."**

> 15. Describe any communications between any employee or representative of CWRU and the Federal Government concerning the manner in which CWRU or CWRU Medical School investigates and adjudicates allegations of sexual misconduct, including but not limited to any investigation by the Department of Education or Department of Health and Human Services. In answering this interrogatory, include: all participants to the communication; the date and time of the communication; the mode of communication (e.g. spoken, telephone, email, letter etc . . .); and the substance of the communication.

**RESPONSE: Objection. Interrogatory No. 15 is overly broad in time frame and scope, compound, vague and ambiguous with respect to the meaning of the phrase "any communications… concerning the manner in which CWRU or CWRU Medical School investigates and adjudicates allegations of sexual misconduct," unduly burdensome, calls for a narrative response, which is more appropriate for another form of discovery, seeks information that is not relevant to the claims and defenses in this action, is not proportional to the needs of the case, and exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure.**

As to objections:

*/s/ Amanda T. Quan*
John Gerak (#0075431)
Amanda T. Quan (#0086623)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
amanda.quan@ogletree.com

*Attorneys for Defendant Case Western Reserve University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 17, 2022, a copy of the foregoing *Defendant's Objections and Responses to Plaintiff's First Set of Interrogatories* was sent via email to all counsel of record, as follows:

> Joshua Adam Engel, Esq.
> Anne Tamashasky, Esq.
> Engel and Martin, LLC
> 4660 Duke Dr., Suite 101
> Mason, OH 45040
> engel@engelandmartin.com
> *Counsel for Plaintiff*

*/s/ Amanda T. Quan*
*One of the Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NOAKES, | ) | Case No. 1:21-cv-01776 |
| | ) | |
| Plaintiff, | ) | The Honorable Judge Pamela A. Barker |
| | ) | |
| v. | ) | **DEFENDANT'S OBJECTIONS AND** |
| | ) | **RESPONSES TO PLAINTIFF'S FIRST** |
| CASE WESTERN RESERVE UNIVERSITY, | ) | **SET OF REQUESTS FOR THE** |
| | ) | **PRODUCTION OF DOCUMENTS** |
| Defendant. | ) | |
| | ) | |

Defendant Case Western Reserve University ("CWRU" or the "University" or "Defendant"), by responding to Plaintiff John Noakes' First Set of Requests for the Production of Documents ("Discovery Requests"), does not waive its right to object to the use of the produced documents and information at any time on any grounds in this or any other proceeding.  In addition, discovery in this action is still proceeding, and, therefore, Defendant specifically reserves the right to amend any response in light of later-discovered facts or introduce additional documents and information in support of its position at trial.  With respect to all documents and information produced in this response, Defendant does not waive, but expressly preserves:

1.      All questions as to the competency, relevancy, privilege, and admissibility as evidence of all documents and information, for any purpose in any subsequent proceeding or the trial of this or any other action;

2.      The right to object to the use of any document produced pursuant to Plaintiff's Discovery Requests in any subsequent proceeding or in the trial of this or any other action on any grounds;

3.      The right to object on any ground at any time to demand for further requests of documents or information;

1

4.      The right at any time to revise, correct, add, or to clarify any of the responses;

5.      The right to object to the use of any document or information on the grounds of attorney-client and/or attorney work-product privileges; and

6.      The right to seek protection from disclosure of confidential or proprietary information that may subsequently be provided in response to these requests through the entry of a motion or agreed order.

## GENERAL OBJECTIONS TO DEFINITIONS

1.      Defendant objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it seeks to define "communication" as "the transmittal of information" on the ground that the Definition is vague, ambiguous, overly broad, unduly burdensome, includes data that is not accessible without imposing an undue burden, and expands the term "document" beyond the scope of Rule 26(b)(1) and 34 of the Federal Rules of Civil Procedure.  Defendant further objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it includes "documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

2

2.      Defendant objects to Definition No. 2, and all affected Definitions and/or Discovery Requests, to the extent it exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure and to the extent it includes "documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 2, and all affected Definitions and/or Discovery Requests, to the extent it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

3.      Defendant objects to Definition No. 3, and all affected Definitions and/or Discovery Requests, to the extent it seeks to define "defendant" as including "its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 3, and all affected Definitions and/or Discovery Requests, to the extent

3

it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

4.      Defendant objects to Definition Nos. 6 and 7, and all affected Definitions and/or Discovery Requests, to the extent they exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure and to the extent they are vague and ambiguous with respect to the meaning of the phrases "type of document" and "general subject matter," unduly burdensome, call for a narrative response, which is more appropriate for another form of discovery, and transform each Discovery Request into a compound request.

5.      Defendant objects to the Definitions, and all affected Definitions and/or Discovery Requests, to the extent they exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  Defendant states that it will comply with its obligations as outlined in Rule 26(e) of the Federal Rules of Civil Procedure.

6.      Defendant objects to all Definitions, and all affected Discovery Requests, to the extent they seek disclosure of protected student information.  The Buckley Amendment, codified as the Family Educational Rights and Privacy Act  ("FERPA"), 20 U.S.C. § 1232g and 34 C.F.R. § 99.3, prohibits disclosure of student information without student consent and limits the student information a college or university can legally disclose without written consent, a valid judicial order, or a lawfully issued subpoena.

7.      Defendant objects to all Definitions and Discovery Requests to the extent they seek information and/or documents about ongoing and pending investigations being conducted by the Office of Equity, as such disclosure or production would disrupt and interfere with the investigations and would unfairly prejudice other parties to the investigations who do not have similar access to such information or documents.

4

8.    Defendant objects to all Definitions, and all affected Discovery Requests, to the extent they make overly broad and non-tailored requests for ESI (including emails and text messages) on the grounds that such requests are not proportional to the needs of the case and exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure. With respect to any request for unstructured ESI, Defendant will consider a search of mutually-agreeable key terms in the email folders of a mutually-agreeable list of custodians following the execution of a mutually-agreeable cost-shifting agreement.  Such efforts must be proportional to the needs of the case in light of factors such as the amount in controversy.

Subject in each instance to this General Statement and the General Objections to Definitions, Defendant submits specific responses and objections as follows:

## REQUESTS FOR PRODUCTION

1.    Every document you reasonably anticipate introducing as an exhibit at trial or in support of or in opposition to a motion for summary judgment.

**RESPONSE: Objection. Document Request No. 1 seeks documents protected by the attorney-client privilege and/or attorney work product doctrine.  CWRU further objects to Document Request No. 1 because it is premature as discovery is ongoing.  Subject to and without waiving those objections, CWRU will abide by all rules, orders, or procedures of the Court regarding the production of exhibits. Further responding, documents produced by the parties in discovery may be used as exhibits at trial.**

2.    Every document relied upon or reviewed by any expert you reasonably anticipate calling as a witness at trial or who you anticipate will be submitting an affidavit in support of or in opposition to a motion for summary judgment.

**RESPONSE: Objection. Document Request No. 2 seeks documents protected by the attorney-client privilege and/or attorney work product doctrine.  CWRU further objects to Document Request No. 2 because it is premature as discovery is ongoing and CWRU has not yet identified the expert witnesses it may call to testify at the trial of this matter.  Subject to and without waiving those objections, CWRU will abide by all rules, orders, or procedures of the Court regarding expert witness identification and/or the exchange of expert reports.**

3.    Every document identified in response to Defendants' First Set of Interrogatories.

**RESPONSE**: Objection. Document Request No. 3 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. CWRU further objects to the extent Document Request No. 3 seeks documents protected by the attorney-client privilege and/or attorney work-product doctrine. Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search will be produced.

4.     All documents concerning the investigation or adjudication of the claims that the Plaintiff committed Sexual Misconduct or Retaliation.

**RESPONSE**: Objection. Document Request No. 4 is overly broad, and vague and ambiguous with respect to the meaning of the phrase "investigation or adjudication of the claims that the Plaintiff committed Sexual Misconduct or Retaliation." CWRU further objects to Document Request No. 4 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search, including Office of Equity records concerning Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff, will be produced upon entry of a mutually agreeable confidentiality agreement.

5.     All documents concerning the investigation or adjudication of the claims by Plaintiff that he was the victim of Sexual Misconduct or Retaliation.

**RESPONSE**: Objection. Document Request No. 5 is overly broad, vague and ambiguous with respect to the meaning of the phrase "investigation or adjudication of the claims by Plaintiff that he was the victim of Sexual Misconduct or Retaliation," and assumes facts not in evidence insofar as it incorrectly assumes that Plaintiff filed a sexual misconduct complaint with the Office of Equity. CWRU further objects to Document Request No. 5 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. In addition, CWRU objects to Document Request No. 5 to the extent it seeks documents concerning ongoing and pending investigations being conducted by the Office of Equity.  Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search concerning Plaintiff's retaliation complaints against Dr. Steven Ricanati and Darnell Parker, and Plaintiff's initial retaliation complaint against Jane Roe, were previously produced.

6.     All documents concerning communications between Jane Roe and any CWRU employee concerning the investigation or adjudication of the claims that John Noakes committed Sexual Misconduct or Retaliation.

**RESPONSE**: Objection. Document Request No. 6 is overly broad and unduly burdensome. CWRU further objects to Document Request No. 6 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving those objections, responsive documents that were discovered during a

**reasonable search, including Office of Equity records concerning Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff, will be produced upon entry of a mutually agreeable confidentiality agreement.**

7. All documents concerning communications between John Noakes and any CWRU employee concerning the investigation or adjudication of the claims that Jane Roe committed Sexual Misconduct or Retaliation.

**RESPONSE: Objection. Document Request No. 7 is overly broad, vague and ambiguous with respect to the meaning of the phrase "investigation or adjudication of the claims that Jane Roe committed Sexual Misconduct or Retaliation," and assumes facts not in evidence insofar as it incorrectly assumes that a sexual misconduct complaint was filed against Jane Roe with the Office of Equity. CWRU further objects to Document Request No. 7 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. In addition, CWRU objects to Document Request No. 7 to the extent it seeks documents concerning ongoing and pending investigations being conducted by the Office of Equity.  Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search concerning Plaintiff's initial retaliation complaint against Jane Roe were previously produced.**

8. All documents concerning communications to, form [sic] or between any CWRU employees concerning the investigation or adjudication of the claims that Jane Roe committed Sexual Misconduct or Retaliation.

**RESPONSE: Objection. Document Request No. 8 is overly broad, vague and ambiguous with respect to the meaning of the phrase "investigation or adjudication of the claims that Jane Roe committed Sexual Misconduct or Retaliation," and assumes facts not in evidence insofar as it incorrectly assumes that a sexual misconduct complaint was filed against Jane Roe with the Office of Equity. CWRU further objects to Document Request No. 8 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. In addition, CWRU objects to Document Request No. 8 to the extent it seeks documents concerning ongoing and pending investigations being conducted by the Office of Equity.  Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search concerning Plaintiff's initial retaliation complaint against Jane Roe were previously produced.**

9. All documents concerning communications to, form [sic] or between any CWRU employees concerning the investigation or adjudication of the claims that John Noakes committed Sexual Misconduct or Retaliation.

**RESPONSE: Objection. Document Request No. 9 is overly broad, and vague and ambiguous with respect to the meaning of the phrase "investigation or adjudication of the claims that John Noakes committed Sexual Misconduct or Retaliation." CWRU further objects to Document Request No. 9 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search**

7

concerning Jane Roe's complaints of sexual misconduct and retaliation against Plaintiff will be produced upon entry of a mutually agreeable confidentiality agreement.

10.     All documents concerning communications to, form [sic] or between any CWRU employees the [sic] claims that John Noakes violated any CWRU policies or procedures, or acted in an unprofessional manner, in posting to GroupMe in April 2021.

**RESPONSE: Objection. Document Request No. 10 is overly broad, and vague and ambiguous with respect to the meaning of the phrase "communications to, form [sic] or between any CWRU employees the [sic] claims that John Noakes violated any CWRU policies or procedures, or acted in an unprofessional manner, in posting to GroupMe in April 2021." CWRU further objects to Document Request No. 10 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search concerning the Early Concerns submitted about Plaintiff in or around April 2021 will be produced upon entry of a mutually agreeable confidentiality agreement.**

11.     All documents concerning communications to, form [sic] or between any CWRU employees the [sic] claims that John Noakes violated any CWRU policies or procedures, or acted in an unprofessional manner, in regards to the Tumblr and Instagram posts described in the Complaint and the Affidavit of Dr. Logio.

**RESPONSE: Objection. Document Request No. 11 is overly broad, and vague and ambiguous with respect to the meaning of the phrase "communications to, form [sic] or between any CWRU employees the [sic] claims that John Noakes violated any CWRU policies or procedures, or acted in an unprofessional manner, in regards to the Tumblr and Instagram posts described in the Complaint and the Affidavit of Dr. Logio." CWRU further objects to Document Request No. 11 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search concerning Jane Roe's complaint of retaliation against Plaintiff will be produced upon entry of a mutually agreeable confidentiality agreement.**

12.     All documents concerning the April 2021 meeting/"open discussion" scheduled by Dr. Ricanati to discuss "the CWRU Title IX process" and other matters, as described in the Complaint.

**RESPONSE: Objection. Document Request No. 12 is overly broad, and assumes facts not in evidence insofar as it asserts Dr. Ricanati scheduled the "April 2021 meeting/'open discussion.'" CWRU further objects to Document Request No. 12 on the grounds that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search will be produced.**

13.     The personnel and/or academic files of all persons involved in the investigation or adjudication of the claims that that [sic] Jane Roe or John Noakes committed Sexual Misconduct or Retaliation.

**RESPONSE: Objection. Document Request No. 13 is overly broad, vague and ambiguous with respect to the meaning of the phrases "academic files" and "all persons involved in the investigation or adjudication of the claims that that [sic] Jane Roe or John Noakes committed Sexual Misconduct or Retaliation," assumes facts not in evidence insofar as it incorrectly assumes that a sexual misconduct complaint was filed against Jane Roe with the Office of Equity, seeks documents that are not relevant to the claims and defenses in this action, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential and personal information of non-parties without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. In addition, CWRU objects to Document Request No. 13 to the extent it seeks documents concerning ongoing and pending investigations being conducted by the Office of Equity.  Subject to and without waiving those objections, CWRU will produce copies of discipline and/or performance-related records contained in the personnel files of Rachel Lutner, Elizabeth McNeil, and Daniel Nemeth-Neumann upon entry of a mutually agreeable confidentiality agreement.**

14.     The academic file of John Noakes.

**RESPONSE: Objection. Document Request No. 14 is vague and ambiguous with respect to the meaning of the phrase "academic file" and seeks documents that are not relevant to the claims and defenses in this action. Subject to and without waiving those objections, CWRU will produce copies of Plaintiff's academic transcript and course schedule.**

15.     The academic file of Jane Roe.

**RESPONSE: Objection. Document Request No. 15 is vague and ambiguous with respect to the meaning of the phrase "academic file," seeks documents that are not relevant to the claims and defenses in this action, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA.**

16.     All documents concerning accommodations, benefits, or interim measures provided by CWRU to Jane Roe, or requested by Jane Roe, related to her allegations that she was a victim of sexual misconduct.

**RESPONSE: Objection. Document Request No. 16 is overly broad, vague and ambiguous with respect to the meaning of the phrase "documents concerning accommodations, benefits, or interim measures provided by CWRU to Jane Roe, or requested by Jane Roe, related to her allegations that she was a victim of sexual misconduct," seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and**

**protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Subject to and without waiving those objections, responsive documents that were discovered during a reasonable search, including Office of Equity records concerning Jane Roe's complaint of sexual misconduct against Plaintiff, will be produced upon entry of a mutually agreeable confidentiality agreement.**

17.    All documents concerning accommodations, benefits, or interim measures provided by CWRU to John Noakes, or requested by John Noakes, related to his allegations that he was a victim of sexual misconduct.

**RESPONSE: Objection. Document Request No. 17 is overly broad, vague and ambiguous with respect to the meaning of the phrase "documents concerning accommodations, benefits, or interim measures provided by CWRU to John Noakes, or requested by John Noakes, related to his allegations that he was a victim of sexual misconduct," assumes facts not in evidence insofar as it incorrectly asserts that Plaintiff filed a complaint alleging sexual misconduct with the Office of Equity, and seeks documents that are not relevant to the claims and defenses in this action. Subject to and without waiving those objections, Plaintiff did not file any complaint alleging sexual misconduct with the Office of Equity and, as a result, CWRU is not aware of any responsive documents.**

18.    All documents concerning communications between Jane Roe and any person acting as an advocate or advisor to [sic] related to her claim that she was a victim of sexual misconduct.

**RESPONSE: Objection. Document Request No. 18 is overly broad, vague and ambiguous with respect to the meaning of the phrase "communications between Jane Roe and any person acting as an advocate or advisor to [sic] related to her claim that she was a victim of sexual misconduct," seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA.**

19.    All documents concerning communications between Jane Roe and any person acting as an advocate or advisor to [sic] related to her claim that she was a victim of retaliation.

**RESPONSE: Objection. Document Request No. 19 is overly broad, vague and ambiguous with respect to the meaning of the phrase "communications between Jane Roe and any person acting as an advocate or advisor to [sic] related to her claim that she was a victim of retaliation," seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA.**

20.    Copies of any CWRU policies or procedures in effect from 2016-2021 that address discrimination and harassment based on sex, including sexual misconduct,

involving students, employees, and third parties, including sexual violence/misconduct/harassment policies and procedures, Title IX grievances, applicable disciplinary procedures and codes, appeal procedures, and nondiscrimination notices.  If any of the above policies or procedures changed over the applicable time period, copies of: (i) all documents that reflect each change, noting the date(s) when the new policy or procedure became applicable; and (ii) drafts of all such policies.

**RESPONSE: Objection. Document Request No. 20 is compound, overly broad in time frame and scope, vague and ambiguous, and seeks documents that are not relevant to the claims and defenses in this action. Subject to and without waiving those objections, CWRU will produce copies of its Sexual Misconduct Policy/Sexual Harassment Policy in effect beginning in the 2020-2021 academic year through the present.**

21.  Copies of any notes, agendas, summaries or follow-up communication related to any meetings during 2011-2021 between CWRU staff and student(s) regarding the manner in which CWRU investigates and adjudicates allegations of sexual misconduct.

**RESPONSE: Objection. Document Request No. 21 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "notes, agendas, summaries or follow-up communication related to any meetings during 2011-2021 between CWRU staff and student(s) regarding the manner in which CWRU investigates and adjudicates allegations of sexual misconduct," unduly burdensome, seeks documents that are not relevant to the claims and defenses in this action, and exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure.**

22.  Copies of documents related to any steps CWRU took from 2011-2020 to make students, faculty, and staff at the University aware of the policies and that address discrimination and harassment based on sex, including sexual misconduct, such as publications, website statements, and/or training.

**RESPONSE: Objection. Document Request No. 22 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "any steps CWRU took… to make students, faculty, and staff at the University aware of the policies and that address discrimination and harassment based on sex, including sexual misconduct, such as publications, website statements, and/or training," unduly burdensome, seeks information that is not relevant to the claims and defenses in this action, and is not proportional to the needs of the case.  Subject to and without waiving those objections, CWRU will produce documents concerning information CWRU provided to first year medical students in or around the fall of 2020 about or related to its Interim Sexual Harassment Policy (the "Interim Policy") in effect during the 2020-2021 academic year.**

23.  Copies of any materials distributed at any training regarding Title IX as it applies to sexual harassment, including sexual assault and violence, the University provided or offered to (i) CWRU personnel; and (ii) CWRU students from 2011-2021.

**RESPONSE**: Objection. Document Request No. 23 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "training regarding Title IX as it applies to sexual harassment, including sexual assault and violence, the University provided or offered to (i) CWRU personnel; and (ii) CWRU students from 2011-2021," unduly burdensome, seeks information  that is not relevant to the claims and defenses in this action, and is not proportional to the needs of the case.  Subject to and without waiving those objections, CWRU will produce documents concerning training and information CWRU provided to first year medical students in or around the fall of 2020 about or related to the Interim Policy.

24.    Copies of any and all brochures, pamphlets, or other materials that are disseminated by CWRU to students regarding sexual harassment, the rights of complainants and accused individuals, and/or other campus resources available to assist those facing sexual harassment/violence for 2011-2021.

**RESPONSE**: Objection. Document Request No. 24 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "brochures, pamphlets, or other materials that are disseminated  by CWRU to students regarding sexual harassment, the rights of complainants and accused individuals, and/or other campus resources available to assist those facing sexual harassment/violence for 2011-2021," unduly burdensome, seeks information that is not relevant to the claims and defenses in this action, and is not proportional to the needs of the case.  Subject to and without waiving those objections, CWRU will produce documents concerning information CWRU provided to first year medical students in or around the fall of 2020 about or related to the Interim Policy.

25.    Copies of any summaries or interim or final reports that describe the outcome of efforts by CWRU to assess the campus climate regarding sexual harassment/sexual misconduct issues, including self-assessments, collected data, or monitored sexual harassment, misconduct, or violence on campus, if at all, for 2011-2021.

**RESPONSE**: Objection. Document Request No. 25 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "outcome of efforts by CWRU to assess the campus climate regarding sexual harassment/sexual misconduct issues, including self-assessments, collected data, or monitored sexual harassment, misconduct, or violence on campus, if at all, for 2011-2021," seeks information that is not relevant to the claims and defenses in this action, is not proportional to the needs of the case, and exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure.

26.    All documents concerning the training of staff for conducting investigations on allegations students have engaged in Sexual Misconduct for 2011-2021.

**RESPONSE**: Objection. Document Request No. 26 is overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrase "training of staff for conducting investigations on allegations students have engaged in Sexual Misconduct," unduly burdensome, seeks information that is not relevant to the claims and defenses in this action, and is not proportional to the needs of the case.  Subject to and without waiving those objections, CWRU will produce responsive documents concerning training received by the

individuals identified in CWRU's Response to Interrogatory No. 4 who assisted with the Office of Equity investigations into complaints involving Plaintiff upon entry of a mutually agreeable confidentiality agreement.

27.  All documentation concerning any formal or informal complaints or reports of sexual misconduct or retaliation made to CWRU (including, but not limited to those received by CWRU personnel, campus police, the  Title IX Office, Equal Opportunity, housing, or those received elsewhere and then referred to CWRU) or investigated/resolved by CWRU from 2016 through 2021, including:

a.  any written complaints or reports, and any documents containing descriptions of any verbal complaints;

b.  all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;

c.  any documents showing the steps of the investigation and the results of the investigation, including any correspondence, e-mails, and other documents concerning how CWRU notified pertinent parties of the outcome of each investigation;

d.  any documents, including student academic records, memoranda, e-mails, notes, or other documents, that discuss or relate to accommodations or interim measures provided to the complainant while the complaint was being investigated or after the investigation concluded;

e.  any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report

f.  any documents that discuss or relate to: whether CWRU found that the complainant and/or other students were sexually harassed/assaulted; whether CWRU found that any complaint was part of a larger pattern of similar complaints; and whether CWRU made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment.

g.  If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by CWRU faculty, staff, administration, and/or trustees from 2011-2020, that discuss, relate or refer to the complaints or reports identified under this request.

**RESPONSE: Objection. Document Request No. 27 is compound, overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrases "informal complaints" and "any documents showing the steps of the investigation and the results of the investigation," unduly burdensome, seeks documents that are not relevant to the claims and defenses in this action, is not proportional to the needs of the case, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. CWRU further objects to Document Request No. 27**

13

**to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.**

28.     All documentation concerning any formal or informal complaints or reports of sexual misconduct or retaliation made to CWRU Medical School Committee on Students (including, but not limited to those received by CWRU personnel, campus police, the  Title IX Office, Equal Opportunity, housing, or those received elsewhere and then referred to CWRU) or investigated/resolved by the CWRU Medical School Committee on Students  from 2016 through 2021, including:

a.  any written complaints or reports, and any documents containing descriptions of any verbal complaints;

b.  all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;

c.  any documents showing the steps of the investigation and the results of the investigation, including any correspondence, e-mails, and other documents concerning how CWRU notified pertinent parties of the outcome of each investigation;

d.  any documents, including student academic records, memoranda, e-mails, notes, or other documents, that discuss or relate to accommodations or interim measures provided to the complainant while the complaint was being investigated or after the investigation concluded;

e.  any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report

f.  any documents that discuss or relate to: whether CWRU found that the complainant and/or other students were sexually harassed/assaulted; whether CWRU found that any complaint was part of a larger pattern of similar complaints; and whether CWRU made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment.

g.  If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by CWRU faculty, staff, administration, and/or trustees from 2011-2020, that discuss, relate or refer to the complaints or reports identified under this request.

**RESPONSE: Objection. Document Request No. 28 is compound, overly broad in time frame and scope, vague and ambiguous with respect to the meaning of the phrases "informal complaints" and "any documents showing the steps of the investigation and the results of the investigation," assumes facts not in evidence insofar as it incorrectly implies that complaints of sexual misconduct or retaliation are to be directed to the School of Medicine Committee on Students, is unduly burdensome, seeks documents that are not relevant to the claims and defenses in this action, is not proportional to the needs of the case, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and**

**educational records containing personally identifiable information and/or other academic information protected under FERPA. CWRU further objects to Document Request No. 28 to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.**

29.    All documentation concerning any formal or informal complaints or reports of sexual misconduct or retaliation made to CWRU Medical School Committee on Students (including, but not limited to, "early concerns") or investigated/resolved by the CWRU Medical School Committee on Students from 2016 through 2021, including:

   a.  any written complaints or reports, and any documents containing descriptions of any verbal complaints;
   b.  all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;
   c.  any documents, including student academic records, memoranda, e-mails, notes, or other documents, that discuss or relate to accommodations or interim measures provided to the complainant while the complaint was being investigated or after the investigation concluded;
   d.  any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report
   e.  any documents that discuss or relate to: whether CWRU found that the complainant and/or other students were sexually harassed/assaulted; whether CWRU found that any complaint was part of a larger pattern of similar complaints; and whether CWRU made any conclusion about whether the complainant and/or other students were subject to a sexually hostile environment.
   f.  If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by CWRU faculty, staff, administration, and/or trustees from 2016-2021, that discuss, relate or refer to the complaints or reports identified under this request.

**RESPONSE: Objection. Document Request No. 29 is compound, overly broad in time frame and scope, vague and ambiguous, assumes facts not in evidence insofar as it incorrectly implies that complaints of sexual misconduct or retaliation are to be reported through the Early Concerns Reporting process, is unduly burdensome, seeks documents that are not relevant to the claims and defenses in this action, is not proportional to the needs of the case, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. CWRU further objects to Document Request No. 29 to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.**

30.     All documentation concerning any formal or informal complaints or reports of unprofessional conduct made to CWRU Medical School Committee on Students (including, but not limited to "early concerns") or investigated/resolved by the CWRU Medical School Committee on Students  from 2016 through 2021, including:

    a.  any written complaints or reports, and any documents containing descriptions of any verbal complaints;

    b.  all investigative files, interview memoranda, witness statements, and related documents concerning any investigation of these complaints or reports;

    c.  any documents showing the steps of the investigation and the results of the investigation, including any correspondence, e-mails, and other documents concerning how CWRU notified pertinent parties of the outcome of each investigation;

    d.  any documents, including student discipline records, memoranda, e-mails, notes, or other documents, that discuss or relate to any disciplinary or other remedial action CWRU took in response to each complaint or report;

    e.  any documents that discuss or relate to: whether CWRU found that the complainant and/or other students acted unprofessionally;

    f.  If not included in responses above, all communications, including letters, e-mails, notes, memoranda, reports, notices, or other communications sent or received by CWRU faculty, staff, administration, and/or trustees from 2011-2020, that discuss, relate or refer to the complaints or reports identified under this request.

**RESPONSE: Objection. Document Request No. 30 is compound, overly broad in time frame and scope, vague and ambiguous, unduly burdensome, seeks documents that are not relevant to the claims and defenses in this action, is not proportional to the needs of the case, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. CWRU further objects to Document Request No. 30 to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.**

31.     All documents concerning the [sic] any "Early Concerns" alleging allegations of Sexual Misconduct or Retaliation from 2016 to through 2021.

**RESPONSE: Objection. Document Request No. 31 is overly broad in time frame and scope, vague and ambiguous, unduly burdensome, assumes facts not in evidence insofar as it incorrectly implies that complaints of sexual misconduct or retaliation are to be reported through the Early Concerns Reporting process, seeks documents that are not relevant to the claims and defenses in this action, is not proportional to the needs of the case, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. CWRU further objects to Document**

**Request No. 31 to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.**

32.    All documents concerning medical students referred to the Professionalism Working Group or Committee on Students due to social media posts, social media activities, or electronic communications.

**RESPONSE: Objection. Document Request No. 32 is overly broad in time frame and scope, vague and ambiguous, unduly burdensome, seeks documents that are not relevant to the claims and defenses in this action, is not proportional to the needs of the case, exceeds the scope of CWRU's discovery obligations under the Federal Rules of Civil Procedure, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. CWRU further objects to Document Request No. 32 to the extent it seeks information protected by the attorney-client privilege and/or attorney work product doctrine.**

As to objections:

*/s/ Amanda T. Quan*
John Gerak (#0075431)
Amanda T. Quan (#0086623)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
amanda.quan@ogletree.com

*Attorneys for Defendant Case Western Reserve University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2022, a copy of the foregoing *Defendant's Objections and Responses to Plaintiff's First Set of Requests for the Production of Documents* was sent via email to all counsel of record, as follows:

Joshua Adam Engel, Esq.
Anne Tamashasky, Esq.
Engel and Martin, LLC
4660 Duke Dr., Suite 101
Mason, OH 45040
engel@engelandmartin.com
tamashasky@engelandmartin.com
*Counsel for Plaintiff*

/s/ Amanda T. Quan
*One of the Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NOAKES, | ) | Case No. 1:21-cv-01776 |
| | ) | |
| Plaintiff, | ) | The Honorable Judge Pamela A. Barker |
| | ) | |
| v. | ) | **DEFENDANT'S OBJECTIONS AND** |
| | ) | **RESPONSES TO PLAINTIFF'S FIRST** |
| CASE WESTERN RESERVE UNIVERSITY, | ) | **SET OF REQUESTS FOR** |
| | ) | **ADMISSIONS** |
| Defendant. | ) | |
| | ) | |

Defendant Case Western Reserve University ("CWRU" or the "University" or "Defendant"), by responding to Plaintiff John Noakes' First Set of Requests for Admissions ("Discovery Requests"), does not waive its right to object to the use of the produced information at any time on any grounds in this or any other proceeding. In addition, discovery in this action is still proceeding, and, therefore, Defendant specifically reserves the right to amend any response in light of later-discovered facts or introduce additional documents and information in support of its position at trial. With respect to all information produced in this response, Defendant does not waive, but expressly preserves:

1.      All questions as to the competency, relevancy, privilege, and admissibility as evidence of all documents and information, for any purpose in any subsequent proceeding or the trial of this or any other action;

2.      The right to object to the use of any document produced pursuant to Plaintiff's Discovery Requests in any subsequent proceeding or in the trial of this or any other action on any grounds;

3.      The right to object on any ground at any time to demand for further requests of documents or information;

1

4.      The right at any time to revise, correct, add, or to clarify any of the responses;

5.      The right to object to the use of any document or information on the grounds of attorney-client and/or attorney work-product privileges; and

6.      The right to seek protection from disclosure of confidential or proprietary information that may subsequently be provided in response to these requests through the entry of a motion or agreed order.

Subject in each instance to this General Statement, Defendant submits specific responses and objections as follows:

## REQUESTS FOR ADMISSIONS

1. Defendant Case Western Reserve University voluntarily participates in federal spending programs.

**RESPONSE: Objection. Request for Admission No. 1 is vague and ambiguous with respect to the meaning of the phrase "voluntarily participates in federal spending programs." Subject to and without waiving this objection, CWRU states that it receives various research and other grants. CWRU denies the remaining allegations in Request for Admission No. 1.**

2. In the year preceding the disciplinary actions against John Noakes, there was substantial criticism of CWRU, both in the student body and in the public media, accusing CWRU of not taking seriously complaints of female students alleging sexual assault by male students.

**RESPONSE: Objection. Request for Admission No. 2 is vague and ambiguous with respect to the meaning of the phrases "year preceding the disciplinary actions against John Noakes" and "substantial criticism of CWRU." Subject to and without waiving this objection, CWRU does not have information sufficient to form a belief as to the truth of the vague allegations of criticism purportedly levied against CWRU in 2020 in Request for Admission No. 2 and therefore denies them.  CWRU denies the remaining allegations in Request for Admission No. 2.**

3. In the summer of 2020, a group of CWRU students, "CWRU Survivors," established the @cwru.survivors Instagram page so students could anonymously share their experiences with sexual assault, violence, harassment and discrimination on CWRU's campus, as well as experiences with the Title IX office.

**RESPONSE: CWRU states that, upon information and belief, in the summer of 2020, the @cwru.survivors Instagram page was set up to "[s]hare experiences of sexual misconduct." CWRU does not have information sufficient to form a belief as to the truth of the remaining allegations in Request for Admission No. 3 and therefore denies them.**

4. CWRU believes survivors of sexual misconduct.

**RESPONSE: Objection. Request for Admission No. 4 assumes facts not in evidence insofar as it incorrectly assumes that CWRU "believes" complainants versus respondents, and is vague and ambiguous with respect to the meaning of the phrase "believes survivors of sexual misconduct." Subject to and without waiving these objections, CWRU states that Title IX of the Education Amendments Act of 1972, 20 U.S.C. §§ 1681-1688 ("Title IX") and its implementing regulations require a school, among other things, to avoid credibility determinations based on a person's status as a complainant, respondent, or witness. Further responding, CWRU states that it complies with Title IX and its implementing regulations. CWRU denies the remaining allegations in Request for Admission No. 4.**

5. In 2018, the Office of Civil Rights for the Department of Health and Human Services completed an evaluation of the School of Medicine's compliance with Title IX.

**RESPONSE: CWRU states that, on or around August 16, 2018, the U.S. Department of Health and Human Services Office for Civil Rights (the "OCR") notified CWRU that the OCR completed a compliance review of CWRU's School of Medicine, that the "OCR did not find evidence that the CWRU School of Medicine violated Title IX," and that the OCR closed its compliance review. CWRU further states that a copy of the August 16, 2018 correspondence from the OCR is attached to Plaintiff's Complaint as Exhibit A. CWRU denies the remaining allegations in Request for Admission No. 5.**

6. CWRU's Title IX Coordinator leads CWRU's centralized Title IX Office and oversees all aspects of Title IX investigations and prevention and education programs university-wide, including investigating grievances involving the School of Medicine.

**RESPONSE: CWRU states that, in accordance with its Sexual Harassment Policy and Procedures for All Faculty, Students, Employees, and Third Parties (the "Policy"), it has a designated Title IX Coordinator to implement Title IX and the processes described in the Policy. CWRU denies the remaining allegations in Request for Admission No. 6.**

7. No CWRU Policy requires that student [sic] keep investigations or adjudications into allegations of sexual misconduct confidential.

**RESPONSE: CWRU states that its policies, including the Policy, speak for themselves. Further responding, CWRU states that, in accordance with the Office of Equity's policies and procedures, notices of investigation and allegations typically include the following statements: "*Confidentiality* – You have the right to discuss this matter with your advisor and others, but the institution will conduct this investigation confidentially, meaning that it will only share information as permitted or required by law. CWRU asks for your discretion in what you choose to share and hopes that you will respect the private and sensitive nature of these allegations." CWRU denies the remaining allegations in Request for Admission No. 7.**

8. CWRU students are free to disclose any information obtained in the investigative or administrative process concerning allegations of sexual misconduct.

**RESPONSE**: CWRU states that its policies, including the Policy, speak for themselves. Further responding, CWRU states that, in accordance with the Office of Equity's policies and procedures, notices of investigation and allegations typically include the following statements: "*Confidentiality* – **You have the right to discuss this matter with your advisor and others, but the institution will conduct this investigation confidentially, meaning that it will only share information as permitted or required by law. CWRU asks for your discretion in what you choose to share and hopes that you will respect the private and sensitive nature of these allegations.**"  **CWRU denies the remaining allegations in Request for Admission No. 8.**

9.  On November 7, 2020 at 6:34 am John Noakes reported to the Office of Equity that he is being threatened and harassed by Jane Roe.

**RESPONSE**: CWRU states that, on November 7, 2020 at 6:34 a.m., Plaintiff sent an email to the Office of Equity stating that Ms. Roe threatened to file a complaint alleging that Plaintiff sexually assaulted her.  Further responding, CWRU states that the November 7, 2020 email speaks for itself.  CWRU denies the remaining allegations in Request for Admission No. 9.

10.  CWRU never investigated John Noakes' claims that he was being threatened and harassed by Jane Roe.

**RESPONSE**: CWRU denies the allegations in Request for Admission No. 10.

11.  CWRU never disciplined Jane Roe for threatening and harassing John Noakes.

**RESPONSE**: Objection. Request for Admission No. 11 assumes facts not in evidence insofar as it incorrectly assumes that CWRU made a determination that Jane Roe threatened and harassed Plaintiff.  Subject to and without waiving this objection, CWRU states that Plaintiff complained to Rachel Lutner that Ms. Roe stalked and harassed Plaintiff in October and November 2020 (the "Stalking Complaint").  CWRU further states that, based on the Office of Equity's initial assessment of the Stalking Complaint, CWRU determined that the conduct alleged did not fall under the Policy and dismissed the Stalking Complaint.  CWRU denies the remaining allegations in Request for Admission No. 11.

12.  The Professional Working Group or Committee on Students has never reviewed any allegations of unprofessional misconduct by Jane Roe.

**RESPONSE**: Objection. Request for Admission No. 12 is vague and ambiguous with respect to the meaning of the phrase "never reviewed any allegations of unprofessional misconduct by Jane Roe," and assumes facts not in evidence insofar as it incorrectly implies that allegations of unprofessional misconduct by Jane Roe were submitted via CWRU's School of Medicine Early Concerns Reporting process. CWRU further objects to Request for Admission No. 12 to the extent it seeks confidential student records of the Professionalism Working Group and/or Committee on Students that are unrelated to Plaintiff. Subject to and without waiving these objections, CWRU states that its School of Medicine utilizes an Early Concerns Reporting process to allow any individual to report times when a medical student's actions suggest a lapse in professionalism.  Further responding, CWRU states that, in or around April 2021, more than 30 first-year medical students submitted Early Concerns

about Plaintiff and, as a result, such allegations of unprofessional conduct were reviewed by the Professionalism Working Group and the Committee on Students.  CWRU denies the remaining allegations in Request for Admission No. 12.

13. The Professional Working Group or Committee on Students has reviewed allegations of unprofessional misconduct by John Noakes.

**RESPONSE**: **Objection. Request for Admission No. 13 is vague and ambiguous with respect to the meaning of the phrase "reviewed allegations of unprofessional misconduct by John Noakes." Subject to and without waiving this objection, CWRU states that its School of Medicine utilizes an Early Concerns Reporting process to allow any individual to report times when a medical student's actions suggest a lapse in professionalism.  Further responding, CWRU states that, in or around April 2021, more than 30 first-year medical students submitted Early Concerns about Plaintiff and, as a result, such allegations of unprofessional conduct were reviewed by the Professionalism Working Group and the Committee on Students.  CWRU denies the remaining allegations in Request for Admission No. 13.**

14. Between November 2020 and April 2021, Jane Roe disclosed information concerning the allegations that John Noakes committed sexual misconduct to other members of their medical school class.

**RESPONSE**: **Objection. Request for Admission No. 14 is vague and ambiguous with respect to the meaning of the phrases "disclosed" and "other members of their medical school class." Subject to and without waiving this objection, CWRU does not have information or knowledge sufficient to form a belief as to the truth of the allegations in Request for Admission No. 14 regarding Ms. Roe's conversations or interactions with other medical students, and therefore denies them. CWRU denies the remaining allegations in Request for Admission No. 14.**

15. The removal of John Noakes in April 2021 from the GroupMe group chat used by the Medical School had the effect of excluding John Noakes from class discussions and communications regarding curricular activities.

**RESPONSE**: **CWRU denies the allegations in Request for Admission No. 15.**

16. Between 2016 and 2021, the Professional Working Group or Committee on Students has not reviewed allegations of unprofessional conduct by a student related to social media posts.

**RESPONSE**: **Objection. Request for Admission No. 16 is vague and ambiguous with respect to the meaning of the phrase "allegations of unprofessional conduct by a student related to social media posts." Subject to and without waiving this objection, CWRU denies the allegations in Request for Admission No. 16.**

17. In April 2021, CWRU employees were aware that a medical student in John Noakes' class created a committee to respond to the allegations that John Noakes committed sexual misconduct.

**RESPONSE: Objection. Request for Admission No. 17 is vague and ambiguous with respect to the meaning of the phrases "CWRU employees" and "a committee to respond to the allegations that John Noakes committed sexual misconduct." Subject to and without waiving this objection, CWRU denies the allegations in Request for Admission No. 17.**

18. In April 2021, CWRU employees were aware that a medical student in John Noakes' class created and publicized a survey/petition seeking the dismissal of John Noakes from the medical school.

**RESPONSE: Objection. Request for Admission No. 18 is vague and ambiguous with respect to the meaning of the phrase "CWRU employees." Subject to and without waiving this objection, CWRU states that, on or around April 26, 2021, a medical student showed Dr. Ricanati data from a survey that the student indicated was circulated to the School of Medicine Class of 2024 "gauging levels of concern regarding gender-based violence and unprofessionalism." CWRU denies the remaining allegations in Request for Admission No. 18.**

19. In April 2021, CWRU employees were aware that a medical student in John Noakes' organized an effort to encourage others to file Early Concern complaints against John Noakes.

**RESPONSE: Objection. Request for Admission No. 19 is vague and ambiguous with respect to the meaning of the phrases "CWRU employees" and "organized an effort to encourage others to file Early Concern complaints." Subject to and without waiving this objection, CWRU denies the allegations in Request for Admission No. 19.**

20. In April 2021, CWRU employees were aware that a Jane Roe encouraged students to submit complaints or "early concerns" about John Noakes.

**RESPONSE: Objection. Request for Admission No. 20 is vague and ambiguous with respect to the meaning of the phrases "CWRU employees" and "encouraged students to submit complaints or 'early concerns.'" Subject to and without waiving this objection, CWRU denies the allegations in Request for Admission No. 20.**

21. In April 2021, CWRU employees were aware that a medical student in John Noakes' class referred to John Noakes as "scum of the earth" while John Noakes was attempting to lead a group discussion.

**RESPONSE: Objection. Request for Admission No. 21 is vague and ambiguous with respect to the meaning of the phrase "CWRU employees." Subject to and without waiving this objection, CWRU denies the allegations in Request for Admission No. 21.**

22. Between April 2021 and November 2021, CWRU employees were aware of multiple allegations that Jane Roe had violated a no contact directive.

**RESPONSE: Objection. Request for Admission No. 22 is vague and ambiguous with respect to the meaning of the phrases "CWRU employees" and "multiple allegations." Subject to and without waiving this objection, CWRU states that, between April 2021 and November**

2021, Plaintiff complained to the Office of Equity that Ms. Roe allegedly violated the no contact directive, including on or around August 9, 2021, August 25, 2021, August 27, 2021, August 30, 2021, September 1, 2021, September 20, 2021, and October 19, 2021. Further responding, CWRU states that Plaintiff filed the Stalking Complaint in or around September 2021 and a complaint alleging that Ms. Roe retaliated against him in or around November 2021. CWRU denies the remaining allegations in Request for Admission No. 22.

23. On April 19, 2021, Dr. Ricanati threatened John Noakes with institutional discipline for undisclosed inappropriate conduct.

**RESPONSE: Objection. Request for Admission No. 23 is vague and ambiguous with respect to the meaning of the phrase "institutional discipline for undisclosed inappropriate conduct." Subject to and without waiving this objection, CWRU denies the allegations in Request for Admission No. 23.**

24. In April 2021, John Noakes requested, but was not provided with, interim supportive measures related to his retaliation complaint against Dr. Ricanati and Dr. Parker.

**RESPONSE: CWRU denies the allegations in Request for Admission No. 24.**

25. Dr. Ricanati invited the entire medical school class to a [sic] April 26, 2021 meeting to discuss "the CWRU Title IX process" and "Identify[ing] potential action items."

**RESPONSE: CWRU states that, in response to an influx of questions and concerns from medical students about the Title IX process and gender-based harassment, students who asked about CWRU's Interim Sexual Harassment Policy and process were invited to a joint listening session on April 26, 2021, coordinated by the Office of Equity, the Office of Medical Education, and the Office of General Counsel, and facilitated by Dr. Angela Clark-Taylor of the Flora Stone Mather Center for Women and Dr. Ricanati. CWRU states that the agenda for the meeting included "[l]istening to student concerns, [c]larifying the CWRU Title IX process, [and i]dentify[ing] potential action items." Further responding, CWRU states that, upon information and belief, one of the students invited to the listening session forwarded the meeting information to other medical students. CWRU denies the remaining allegations in Request for Admission No. 25.**

26. John Noakes was not informed of the April 26, 2021 class meeting by Dr. Ricanati or any other CWRU faculty.

**RESPONSE: *See* response to Request for Admission No. 25. Further responding, CWRU states that, because Plaintiff was not one of the medical students who submitted questions and concerns to the School of Medicine about the Title IX process and gender-based harassment, the School of Medicine did not invite Plaintiff to the listening session. CWRU denies the remaining allegations in Request for Admission No. 26.**

27. On May 6, 2021, Dr. Greenfield accused John Noakes of not having "empathy" in regards to Jane Roe and his GroupMe post.

**RESPONSE: Objection. Request for Admission No. 27 is vague and ambiguous with respect to the meaning of the phrase "accused John Noakes of not having 'empathy.'" Subject to and without waiving this objection, CWRU states that, in or around May 2021, Dr. Greenfield met with Plaintiff, as his Society Dean, to discuss and prepare for the Committee on Students meeting scheduled for May 13, 2021 regarding professionalism concerns raised in connection with Plaintiff's GroupMe activities. Upon information and belief, CWRU denies the remaining allegations in Request for Admission No. 27.**

28. On May 6, 2021, Dr. Greenfield told John Noakes that "if you can show insight into how other people may have been affected, and you can show empathy for other people, then [the COS] will not kick you out of school."

**RESPONSE:** *See* **response to Request for Admission No. 27. Upon information and belief, CWRU denies the remaining allegations in Request for Admission No. 28.**

29. On September 1, 2021, Dr. Greenfield told John Noakes that taking a year off was the "only solution."

**RESPONSE: CWRU states that, in or around September 2021, Plaintiff informed Dr. Greenfield that he received an attractive offer from a start-up company, and inquired whether it was possible to take a year off from medical school. CWRU further states that, in response to Plaintiff's inquiry, Dr. Greenfield obtained information regarding a possible deferral of the start of Plaintiff's second year of medical school and provided the requested information to Plaintiff. Upon information and belief, CWRU denies the remaining allegations in Request for Admission No. 29.**

30. On September 1, 2021, Dr. Greenfield told John Noakes that he should not pursue Title IX or consult lawyers.

**RESPONSE: Upon information and belief, CWRU denies the allegations in Request for Admission No. 30.**

31. On September 1, 2021, Dr. Greenfield told John Noakes that Title IX "only creates a toxic environment."

**RESPONSE: Upon information and belief, CWRU denies the allegations in Request for Admission No. 31.**

32. On September 1, 2021, Dr. Greenfield told John Noakes that bad things could happen to John Noakes if he pursues his Title IX complaint against Jane Roe.

**RESPONSE: Upon information and belief, CWRU denies the allegations in Request for Admission No. 32.**

33. On September 7, 2021 Dr. Greenfield told John Noakes that it was his responsibility to "de-escalate" the situation with Jane Roe.

**RESPONSE**: **Upon information and belief, CWRU denies the allegations in Request for Admission No. 33.**

34. On September 7, 2021 Dr. Greenfield told John Noakes that he could get in trouble for various Tumblr posts, even if [sic] was done without his knowledge

**RESPONSE**: **Upon information and belief, CWRU denies the allegations in Request for Admission No. 34.**

35. On September 7, 2021 Dr. Greenfield told John Noakes he should take a year off from his medical school studies, adding, "the only way out of this for you… is… [to] step into a different class."

**RESPONSE**: **CWRU states that, in or around September 2021, Plaintiff informed Dr. Greenfield that he received an attractive offer from a start-up company, and inquired whether it was possible to take a year off from medical school. CWRU further states that, in response to Plaintiff's inquiry, Dr. Greenfield obtained information regarding a possible deferral of the start of Plaintiff's second year of medical school and provided the requested information to Plaintiff. Upon information and belief, CWRU denies the remaining allegations in Request for Admission No. 35.**

36. On September 7, 2021 Dr. Greenfield told John Noakes "you need to not make your own Title IX report… You need to just hunker down and do your own stuff if you're going to stay in the class."

**RESPONSE**: **Upon information and belief, CWRU denies the allegations in Request for Admission No. 36.**

37. On September 7, 2021 Dr. Greenfield told John Noakes that in response to continued harassment from Jane Roe, he should "do the Martin Luther King approach, you know, just turn the other cheek."

**RESPONSE**: **Upon information and belief, CWRU denies the allegations in Request for Admission No. 37.**

38. On September 7, 2021 Dr. Greenfield told John Noakes that his retaliation complaints were "ill advised."

**RESPONSE**: **Upon information and belief, CWRU denies the allegations in Request for Admission No. 38.**

39. On September 7, 2021 Dr. Greenfield told John Noakes, "Even if the unfairness of the situation is galling, I think what's going to be in your interest… to just say I'm just going to accept it as it is."

**RESPONSE**: **Upon information and belief, CWRU denies the allegations in Request for Admission No. 39.**

40. On September 7, 2021 Dr. Greenfield told John Noakes "You're digging yourself a hole, honey."

**RESPONSE: Upon information and belief, CWRU denies the allegations in Request for Admission No. 40.**

41. On September 7, 2021 Dr. Greenfield told John Noakes "I can't protect you. You know, you have to make a decision about how you're going to behave through this, and I think you are making some poor decisions…."

**RESPONSE: Upon information and belief, CWRU denies the allegations in Request for Admission No. 41.**

42. On September 7, 2021 Dr. Greenfield told John Noakes he needed to stop "looking like you're causing problems."

**RESPONSE: Upon information and belief, CWRU denies the allegations in Request for Admission No. 42.**

43. On September 7, 2021 Dr. Greenfield told John Noakes, "I know it doesn't feel fair. I know you feel like you know that things aren't being done in a fair way, but I'm just talking from a practical sense."

**RESPONSE: Upon information and belief, CWRU denies the allegations in Request for Admission No. 43.**

44. John Noakes engaged in protected activity when he participated and provided evidence in the investigations and adjudication of Jane Roe complaints.

**RESPONSE: Objection. Request for Admission No. 44 states legal conclusions and is vague and ambiguous with respect to the meaning of the phrase "participated and provided evidence in the investigations and adjudication of Jane Roe complaints." Subject to and without waiving this objection, CWRU states that Plaintiff participated in connection with multiple investigations conducted by the Office of Equity. CWRU denies the remaining allegations in Request for Admission No. 44.**

As to objections:

*/s/ Amanda T. Quan*

John Gerak (#0075431)
Amanda T. Quan (#0086623)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
amanda.quan@ogletree.com

*Attorneys for Defendant Case Western Reserve University*

11

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15th, 2022, a copy of the foregoing *Defendant's Objections and Responses to Plaintiff's First Set of Requests for Admissions* was sent via email to all counsel of record, as follows:

> Joshua Adam Engel, Esq.
> Anne Tamashasky, Esq.
> Engel and Martin, LLC
> 4660 Duke Dr., Suite 101
> Mason, OH 45040
> engel@engelandmartin.com
> tamashasky@engelandmartin.com
> *Counsel for Plaintiff*

> /s/ *Amanda T. Quan*
> *One of the Attorneys for Defendant*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN NOAKES, | ) | Case No. 1:21-cv-01776 |
| | ) | |
| Plaintiff, | ) | The Honorable Judge Pamela A. Barker |
| | ) | |
| v. | ) | **DEFENDANT'S OBJECTIONS AND** |
| | ) | **RESPONSES TO PLAINTIFF'S** |
| CASE WESTERN RESERVE UNIVERSITY, | ) | **SECOND SET OF REQUESTS FOR** |
| | ) | **THE PRODUCTION OF** |
| Defendant. | ) | **DOCUMENTS** |
| | ) | |

Defendant Case Western Reserve University ("CWRU" or the "University" or "Defendant"), by responding to Plaintiff John Noakes' Second Set of Requests for the Production of Documents ("Discovery Requests"), does not waive its right to object to the use of the produced documents and information at any time on any grounds in this or any other proceeding. In addition, discovery in this action is still proceeding, and, therefore, Defendant specifically reserves the right to amend any response in light of later-discovered facts or introduce additional documents and information in support of its position at trial. With respect to all documents and information produced in this response, Defendant does not waive, but expressly preserves:

1. All questions as to the competency, relevancy, privilege, and admissibility as evidence of all documents and information, for any purpose in any subsequent proceeding or the trial of this or any other action;

2. The right to object to the use of any document produced pursuant to Plaintiff's Discovery Requests in any subsequent proceeding or in the trial of this or any other action on any grounds;

3. The right to object on any ground at any time to demand for further requests of documents or information;

1

4.      The right at any time to revise, correct, add, or to clarify any of the responses;

5.      The right to object to the use of any document or information on the grounds of attorney-client and/or attorney work-product privileges; and

6.      The right to seek protection from disclosure of confidential or proprietary information that may subsequently be provided in response to these requests through the entry of a motion or agreed order.

## GENERAL OBJECTIONS TO DEFINITIONS

1.      Defendant objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it seeks to define "communication" as "the transmittal of information" on the ground that the Definition is vague, ambiguous, overly broad, unduly burdensome, includes data that is not accessible without imposing an undue burden, and expands the term "document" beyond the scope of Rule 26(b)(1) and 34 of the Federal Rules of Civil Procedure.  Defendant further objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it includes "documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 1, and all affected Definitions and/or Discovery Requests, to the extent it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

2.      Defendant objects to Definition No. 2, and all affected Definitions and/or Discovery Requests, to the extent it exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure and to the extent it includes "documents contained in personal email accounts used by officers, directors, employees, agents, or elected officials of defendants" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 2, and all affected Definitions and/or Discovery Requests, to the extent it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

3.      Defendant objects to Definition No. 3, and all affected Definitions and/or Discovery Requests, to the extent it seeks to define "defendant" as including "its officers, directors, employees, partners, corporate parent, subsidiaries, or affiliates" and/or otherwise seeks information in the possession or control of any individual not employed by the University, any individual in any capacity unrelated to the individual's official association with the University, and/or non-managerial employees of the University on the grounds that the Definition is overly broad, would impose an undue burden requiring CWRU to interview all of its personnel (and other third-parties) to ascertain each individual's knowledge, and exceeds the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  In addition, Defendant further objects to Definition No. 3, and all affected Definitions and/or Discovery Requests, to the extent

3

it seeks information protected by the attorney-client privilege and/or attorney work-product doctrine.

4.      Defendant objects to Definition Nos. 6 and 7, and all affected Definitions and/or Discovery Requests, to the extent they exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure and to the extent they are vague and ambiguous with respect to the meaning of the phrases "type of document" and "general subject matter," unduly burdensome, call for a narrative response, which is more appropriate for another form of discovery, and transform each Discovery Request into a compound request.

5.      Defendant objects to the Definitions, and all affected Definitions and/or Discovery Requests, to the extent they exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure.  Defendant states that it will comply with its obligations as outlined in Rule 26(e) of the Federal Rules of Civil Procedure.

6.      Defendant objects to all Definitions, and all affected Discovery Requests, to the extent they seek disclosure of protected student information.  The Buckley Amendment, codified as the Family Educational Rights and Privacy Act  ("FERPA"), 20 U.S.C. § 1232g and 34 C.F.R. § 99.3, prohibits disclosure of student information without student consent and limits the student information a college or university can legally disclose without written consent, a valid judicial order, or a lawfully issued subpoena.

7.      Defendant objects to all Definitions and Discovery Requests to the extent they seek information and/or documents about ongoing and pending investigations being conducted by the Office of Equity, as such disclosure or production would disrupt and interfere with the investigations and would unfairly prejudice other parties to the investigations who do not have similar access to such information or documents.

4

8.      Defendant objects to all Definitions, and all affected Discovery Requests, to the extent they make overly broad and non-tailored requests for ESI (including emails and text messages) on the grounds that such requests are not proportional to the needs of the case and exceed the scope of Defendant's discovery obligations under the Federal Rules of Civil Procedure. With respect to any request for unstructured ESI, Defendant will consider a search of mutually-agreeable key terms in the email folders of a mutually-agreeable list of custodians following the execution of a mutually-agreeable cost-shifting agreement.  Such efforts must be proportional to the needs of the case in light of factors such as the amount in controversy.

Subject in each instance to this General Statement and the General Objections to Definitions, Defendant submits specific responses and objections as follows:

## REQUESTS FOR PRODUCTION

1. Every document concerning the claim in ¶ 9 of the Lutner Affidavit (Doc#18-1) that on or around September 13, 2021, Lutner "began receiving reports that members of the School of Medicine community, including CWRU employees, began receiving invitations to a new Instagram account, which posted a link to the Tumblr content."

**RESPONSE: CWRU objects to Document Request No. 1 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving this objection, responsive documents that were discovered during a reasonable search will be produced.**

2. Every document concerning the claim in ¶ 10 of the Lutner Affidavit (Doc#18-1) that on September 14, 2021, Lutner determined that "there was a reasonable basis to believe that Plaintiff, or someone on his behalf or working with him, may be sharing or posting information on Tumblr to intimidate, embarrass, harass, or punish Ms. Roe for filing a Title IX complaint against Plaintiff."

**RESPONSE: CWRU objects to Document Request No. 2 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving this objection, responsive documents that were discovered during a reasonable search will be produced.**

3. Every document concerning the claim in ¶ 10 of the Lutner Affidavit (Doc#18-1) that on September 14, 2021, Lutner "scheduled a meeting for September 15, 2021 at 9 a.m. to notify Ms. Roe that CWRU would be proceeding with an investigation of her retaliation complaint."

**RESPONSE: CWRU objects to Document Request No. 3 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving this objection, responsive documents that were discovered during a reasonable search will be produced.**

4. Every document concerning the September 15, 2021 meeting between Lutner and Jane Roe.

**RESPONSE: CWRU objects to Document Request No. 4 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Further, Document Request No. 4 is overly broad, vague and ambiguous, and appears to call for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Subject to and without waiving these objections, (non-protected) responsive documents that were discovered during a reasonable search will be produced.**

5. Every document concerning the claim in ¶ 13 of the Lutner Affidavit (Doc#18-1) that on September 15, 2021 Lutner communicated to Jane Roe "that CWRU would be investigating her retaliation complaint."

**RESPONSE: CWRU objects to Document Request No. 5 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving this objection, responsive documents that were discovered during a reasonable search will be produced.**

6. Every document demonstrating when Lutner learned of this lawsuit.

**RESPONSE: CWRU objects to Document Request No. 6 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving this objection, responsive documents that were discovered during a reasonable search will be produced.**

7. Every document concerning the claim in ¶ 7, of the Ricanati Affidavit (Doc#18-3) that Dr. Ricanati "was working with Dr. Lia Logio on a correspondence to the school of medicine regarding professional and appropriate uses of electronic forms of communications."

**RESPONSE: Objection.  Document Request No. 7 is overly broad, and seeks documents that are not relevant to the claims and defenses in this action. CWRU further objects to Document Request No. 7 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search will be produced.**

8. Every document concerning drafts of the email/policy described in ¶ 7 of the Ricanati Affidavit (Doc#18-3).

**RESPONSE: Objection.  Document Request No. 8 is overly broad, and seeks documents that are not relevant to the claims and defenses in this action. CWRU further objects to Document Request No. 8 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search will be produced.**

9. Every document concerning "early concerns" submitted concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

**RESPONSE: Objection.  It is unclear what documents Plaintiff is seeking in Document Request No. 9.  To the extent Document Request No. 9 incorrectly implies that Early Concerns were submitted about the survey and petition, CWRU objects as the request assumes facts not in evidence.  Please clarify what documents Plaintiff is seeking in Document Request No. 9.**

10. Every document concerning the "internal policy" of the Committee on Students to review all Title IX matters.

**RESPONSE: Objection.  Document Request No. 10 is overly broad, and seeks documents that are not relevant to the claims and defenses in this action. CWRU further objects to Document Request No. 10 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search will be produced.**

11. Every document concerning the notification of Dr. Ricanati and Dr. Parker that Plaintiff had named them in a retaliation complaint.

**RESPONSE: Objection.  Document Request No. 11 is overly broad, and seeks documents that are not relevant to the claims and defenses in this action. CWRU further objects to Document Request No. 11 to the extent that it seeks documents protected by the attorney-client privilege and/or attorney work product doctrine. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search will be produced.**

12. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students from November 2020 to the present.

**RESPONSE: Objection.  Document Request No. 12 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search concerning Committee on Students meetings addressing or involving Plaintiff from November 2020 to the present will be produced.**

13. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group from November 2020 to the present.

**RESPONSE: Objection.  Document Request No. 13 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search concerning Professionalism Working Group meetings addressing or involving Plaintiff from November 2020 to the present will be produced.**

14. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning Plaintiff.

**RESPONSE: Objection.  Document Request No. 14 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search concerning Committee on Students meetings addressing or involving Plaintiff from November 2020 to the present will be produced.**

15. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning Plaintiff.

**RESPONSE: Objection.  Document Request No. 15 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Subject to and without waiving these objections, responsive documents that were discovered during a reasonable search concerning Professionalism Working Group meetings addressing or involving Plaintiff from November 2020 to the present will be produced.**

16. All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning Jane Roe.

**RESPONSE: Objection.  Document Request No. 16 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records**

**containing personally identifiable information and/or other academic information protected under FERPA.**

      17.   All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning Jane Roe.

**RESPONSE: Objection.  Document Request No. 17 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA.**

      18.   All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

**RESPONSE: Objection.  Document Request No. 18 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Further, to the extent Document Request No. 18 incorrectly implies that Early Concerns were submitted about the survey and petition, CWRU objects as the request assumes facts not in evidence.**

      19.   All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

**RESPONSE: Objection.  Document Request No. 19 is overly broad, seeks documents that are not relevant to the claims and defenses in this action, and calls for confidential, personal, and protected student information without sufficient justification and educational records containing personally identifiable information and/or other academic information protected under FERPA. Further, to the extent Document Request No. 19 incorrectly implies that Early Concerns were submitted about the survey and petition, CWRU objects as the request assumes facts not in evidence.**

As to objections:

*/s/ Amanda T. Quan*
John Gerak (#0075431)
Amanda T. Quan (#0086623)
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
amanda.quan@ogletree.com

*Attorneys for Defendant Case Western Reserve University*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 18, 2022, a copy of the foregoing *Defendant's*

*Objections and Responses to Plaintiff's Second Set of Requests for the Production of Documents*

was sent via email to all counsel of record, as follows:

       Joshua Adam Engel, Esq.
       Anne Tamashasky, Esq.
       Engel and Martin, LLC
       4660 Duke Dr., Suite 101
       Mason, OH 45040
       engel@engelandmartin.com
       tamashasky@engelandmartin.com
       *Counsel for Plaintiff*

                                   */s/ Amanda T. Quan*
                                   *One of the Attorneys for Defendant*