

Joshua Engel, Partner
Jim Hardin, Partner
Mary Martin, Partner
Anne Tamashasky, Of Counsel

August 29, 2022

**Via Email Only**
Amanda T. Quan
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower, 127 Public Square, Suite 4100
Cleveland, OH 44114

  Re: *Noakes v. Case Western Reserve University, et al.*
    N.D. Ohio Case Number 1:21-cv-01776

Dear Amanda:

  This letter is intended to set forth our view on current settlement discussions and this litigation. While all sides have worked in good faith towards a resolution, it does not appear that we will have this accomplished prior to the upcoming Status Conference with the Court and we do not intend to allow this litigation to linger any further.



  Accordingly, we remain willing to continue settlement negotiations, but the Litigation and all outstanding complaints brought by our client must proceed to a speedy resolution.

4660 Duke Drive | Suite 101 | Mason, Ohio  45040
513-445-9600 | www.engelandmartin.com | @engelandmartin

We expect to receive responses to outstanding discovery in seven days.

We propose the following be provided to the Court in preparation for the Status Conference:

> *In compliance with this Court's Order, the parties jointly submit the following status report.*
>
> *All currently pending school disciplinary matters have been resolved in favor of Plaintiff. The school's disciplinary process took longer than anticipated. The parties had agreed to stay discovery obligations and the filing of an Amended Complaint as they pursued settlement and in recognition that the resolution of the school's disciplinary process would narrow the issues.*
>
> *The parties have been discussing settlement but despite good faith efforts have been unable to reach a resolution. Plaintiff will be filing an Amended Complaint with the consent of Defendant and this litigation should now be permitted to continue.*
>
> *The parties request that the Court enter a revised scheduling Order as follows:*
>
> > *Recommended deadline to file Amended Complaint: September 7, 2022*
> >
> > *Recommended discovery cut-off date: December 31, 2022*
> >
> > *Recommended dispositive motion date: March 31, 2023*
> >
> > *Recommended expert discovery date: March 10, 2023*
> > *Expert report(s) by party initially seeking to introduce expert testimony recommended due date: January, 27, 2023; Responsive expert report(s) due date: February 17, 2023*
> >
> > *Recommended date for Status Hearing: November 2022*
> >
> > *Recommended date for Settlement Conference: January 2023*
>
> *The Parties anticipate that despite the good faith efforts of the parties, there will be discovery disputes concerning education records that the parties will be unable to resolve the dispute through Rule 37.1 consultation. The Parties therefore request that the Court schedule a conference or hearing on any outstanding discovery matters in approximately 6-8 weeks.*

I will be out of town starting early Wednesday next week, so we need to get the report to the Court prior to 5:00 on Tuesday.

CWRU must continue and complete in a timely manner all outstanding investigations into complaints by our client, including his allegations that ▇▇▇▇ and other students had engaged in retaliatory conduct based on the Petition, Class survey and other related harassment. CWRU should also, as Dr. Logio in her deposition (page 57) indicated was appropriate, initiate the "early concern" process separate and apart from any Title IX processes for those students. Finally, CWRU should initiate (if it has not done

so already) an investigation into ▓▓▓▓ submission of fraudulent documents during the Tumblr Investigation falsely suggesting that her name was on the tumblr.

    If you have any questions or concerns, please do not hesitate to give me a call.

    Sincerely,

    Joshua Engel

cc:     Anne Tamashasky, Esq.



Joshua Engel, Partner
Jim Hardin, Partner
Mary Martin, Partner
Anne Tamashasky, Of Counsel

September 6, 2022

**Via Email Only**
Amanda T. Quan
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower, 127 Public Square, Suite 4100
Cleveland, OH 44114

Re: *Noakes v. Case Western Reserve University, et al.*
N.D. Ohio Case Number 1:21-cv-01776

Dear Amanda:

This letter is intended to set forth our view on current settlement discussions and this litigation. [REDACTED] Accordingly, the Litigation and all outstanding complaints brought by our client must proceed to a speedy resolution.

We expect to receive responses to outstanding discovery by September 13, 2022. Please find attached a revised draft of a proposed protective order. I know we worked on this last year and exchanged drafts (I *think* this is the latest version); we expect that this can be submitted to the Court sufficiently in advance of September 13, 2022 so that any discovery will not be delayed for FERPA reasons.

Please send any comments or suggestions on the proposed scheduling order dates I previously provided sufficiently in advance of the Status Conference so that we can provide dates to the Court.

As I previously indicated, we expect CWRU to continue and complete in a timely manner all outstanding investigations into complaints by our client. We also expect CWRU to continue any and all appropriate conduct and professionalism investigations and adjudications related to the petition, class survey and other related harassment, and [REDACTED] submission of fraudulent documents during the Tumblr investigation. Since CWRU is aware of these matters we do not believe any further action on our part is necessary but let me know if we need to take any further action to make sure CWRU is able to proceed with these important matters.

If you have any questions or concerns, please do not hesitate to give me a call.

Sincerely,

Joshua Engel

cc: Anne Tamashasky, Esq.



Joshua Engel, Partner
Jim Hardin, Partner
Mary Martin, Partner
Anne Tamashasky, Of Counsel

November 4, 2022

**Via Email Only**
Amanda T. Quan
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower, 127 Public Square, Suite 4100
Cleveland, OH 44114

   Re: *Noakes v. Case Western Reserve University, et al.*
     N.D. Ohio Case Number 1:21-cv-01776

Dear Amanda:

This letter is intended to set forth our view on some of the discovery issues we discussed yesterday. Please consider this letter to be part of the Rule 37 good faith conferral process.

1) Currently, we have not received written responses to the following outstanding discovery:

  First Set of Requests for the Production of Documents (served November 10, 2021)
  First Set of Interrogatories (served November 10, 2021)
  First Set of Requests for Admissions (served November 10, 2021)
  Second Set of Requests for Production of Documents (served November 29, 2021)
  Second Set of Interrogatories (served September 6, 2022)

We have agreed that you will provide written responses to the overdue discovery requests by November 11, 2022. We expect that a rolling production of records will start next week.

2) We understand that CWRU objects to producing records related to open investigations into complaints by Plaintiff.

While that position may have some merit in the abstract, in some cases the delay has been extensive. Our client submitted his retaliation complaints in November 2021. The CWRU Policy provides that "Complaints may take 60-75 business days to resolve." (Doc#41-1, PageID#1163.) True, the Policy acknowledges that there "may be exceptions and extenuating circumstances that can cause a resolution to take longer," CWRU was still required to "provide written notice… of the delay, the cause of the delay, and an estimate of the anticipated additional time that will be needed as a result of the delay." I don't believe such notices has been provided.

4660 Duke Drive | Suite 101 | Mason, Ohio  45040
513-445-9600 | www.engelandmartin.com | @engelandmartin

November 4, 2022
Page 2 of 4

While there have been some settlement discussions which may have led to delays, I don't believe that our client ever officially agreed to a stay of these investigations and, in fact, my understanding is that the students accused of misconduct never actually participated in such discussions. I note that back on September 6, 2022 I wrote to you saying, "all outstanding complaints brought by our client must proceed to a speedy resolution." Further, I wrote:

> we expect CWRU to continue and complete in a timely manner all outstanding investigations into complaints by our client. We also expect CWRU to continue any and all appropriate conduct and professionalism investigations and adjudications related to the petition, class survey and other related harassment, and ▇ submission of fraudulent documents during the Tumblr investigation. Since CWRU is aware of these matters we do not believe any further action on our part is necessary but let me know if we need to take any further action to make sure CWRU is able to proceed with these important matters.

Our concern at this stage is that CWRU may be keeping the investigations "open" to avoid discovery related to the matters. Alternatively, CWRU may be keeping the investigations "open" as part of an ongoing strategy to protect the respondents. In either case, this objection is no longer valid.

3) CWRU has objected to searching ▇ email accounts for responsive documents.

▇ email account is likely to contain documents related to the investigation and adjudication of her, and Plaintiff's, allegations of sexual misconduct and retaliation. This seems to be uncontested. I understand your objection to searching this email account to be that the records are likely to be duplicative of records in other accounts. This argument is not well taken for two reasons.

First, ▇ may have communicated with other students or employees not included in the original search about these matters. For example, on April 21, 2021 Dr. Ricanati sent an email to a close friend of ▇ encouraging the student to invite other students to a meeting to discuss Plaintiff and ▇ Title IX case. ▇ emails may contain discussion of these meetings, as well as encouragement of retaliation against Plaintiff. ▇ emails are also likely to contain evidence of supportive measures she received as a result of her claims against Plaintiff.

Second, limitations on search parameters can be implemented so as to exclude the production of duplicative emails, addressing the concern that this production would consist of many emails that had been previously produced through the prior searches of the other custodians. Without further information, it is hard to see how including an additional person in the search will create an undue burden.

Finally, I note that here are no privacy considerations here. The CWRU Acceptable Use of Information Technology Policy states, "Users shall have no inherent expectation of privacy for information stored on and transported through CWRU information technology resources…" (https://case.edu/utech/departments/information-security/policies/i-1-acceptable-use-information-technology-policy-aup)

4) CWRU has objected to the production of other sexual misconduct and retaliation investigations

This material is highly relevant. The records sought in discovery might demonstrate other situations where females were alleged to have committed misconduct, but the school chose only to investigate male students. Courts have held that such discovery is permissible. One court observed that such discovery is of "inarguable relevance," noting that if a school "has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation." *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2015 U.S. Dist. LEXIS 141218, at *4 (Oct. 16, 2015). *See also Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D.Pa. 2017).

At this point, we do not have sufficient information to suggest that the production would be unduly burdensome. In a similar case, the court over-ruled an objection that a school producing records from other investigations was unduly burdensome. *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, *13-14 (Oct. 15, 2018).

5) CWRU has objected to the production of records from Department of Education investigations.

The historical and regulatory backdrop is necessary to properly evaluate the conduct of CWRU. Pressure from the Department of Education has been found to support an inference of gender bias. *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019); *Doe v. Univ. of the Sciences*, 961 F.3d 203, 214 (3d Cir. 2020). The Sixth Circuit, in Doe v. Miami Univ., 882 F.3d 579, 596 (6th Cir. 2018), treated as relevant allegations that pressure from OCR led a school to discriminate against men in its sexual-assault adjudication process. The Sixth Circuit, in Miami Univ., credited claims that "pressure from the government to combat vigorously sexual assault on college campuses and the severe potential punishment – loss of all federal funds – if it failed to comply, led [the school] to discriminate against men in its sexual-assault adjudication process." 882 F.3d at 594. The Sixth Circuit later explained that pressure from Department of Education "provides a backdrop, that, when combined with other circumstantial evidence of bias in [a student's] specific proceeding" supports a plausible claim of gender discrimination. *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018).

6) Protective Order

You have promised to provide a revised draft of the Protective Order on Monday. The ball on this issue has been in your court for some time. As we discussed, we share the preference initially to work with records with personally identifying information redacted. However, the Protective Order is necessary in the event that such redactions are insufficient and to prevent any delay in production in the event of objections from third parties.

Finally, as we discussed, we will be sending a subpoena to ▉ on Tuesday. I have provided you with time to discuss some of the issues this might raise with your client. You have explicitly agreed to not share with ▉ that she will be receiving a subpoena in advance so that we will not have issues with service. We will tentatively schedule her deposition for December 27, 2022; we are willing to move this date to avoid any conflicts with counsel or the parties.

If you have any questions or concerns, please do not hesitate to give me a call.

        Sincerely,

        Joshua Engel

cc:    Anne Tamashasky, Esq.



Joshua Engel, Partner
Jim Hardin, Partner
Mary Martin, Partner
Anne Tamashasky, Of Counsel

November 17, 2022

**Via Email Only**
Amanda T. Quan
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower, 127 Public Square, Suite 4100
Cleveland, OH 44114

Re: *Noakes v. Case Western Reserve University, et al.*
N.D. Ohio Case Number 1:21-cv-01776

Dear Amanda:

This letter is intended to address outstanding discovery. Please consider this letter to be part of the Rule 37 good faith conferral process.

Currently, we have not received written responses to the following outstanding discovery:

- First Set of Requests for the Production of Documents (served November 10, 2021)
- First Set of Interrogatories (served November 10, 2021)
- Second Set of Requests for Production of Documents (served November 29, 2021)
- Second Set of Interrogatories (served September 6, 2022)

We had previously agreed to multiple extensions as we worked through possible settlement and other issues related to this Litigation. In light of issues related to the Motion to Show Cause, we agreed to a final, brief, extension until November 15, 2022. This was confirmed by your email.



November 17, 2022<br>
Page 2 of 2

On November 15, 2022, we received responses to the Requests for Admissions. However, we did not receive written responses to discovery or any documents. On that date, you sent an email indicating that the remainder of outstanding discovery would be provided on November 16, 2022.



Yesterday, November 16, 2022, as we discussed expediting discovery of some documents related to the Motion to Show Cause, I repeated the expectation that we receive the outstanding discovery:



As of the date of this letter, we have not received the outstanding discovery or any documents. (While we have a hope that settlement discussions can be re-started, we have not agreed to stay discovery for this purpose.) Accordingly, please provide responses and documents immediately. If we do not receive these materials, we will have no choice but to seek the assistance of the Court.

If you have any questions or concerns, please do not hesitate to give me a call.

Sincerely,

Joshua Engel

cc:    Anne Tamashasky, Esq.



Joshua Engel, Partner
Jim Hardin, Partner
Mary Martin, Partner
Anne Tamashasky, Of Counsel

November 21, 2022

**Via Email Only**
Amanda T. Quan
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
Key Tower, 127 Public Square, Suite 4100
Cleveland, OH 44114

   Re: *Noakes v. Case Western Reserve University, et al.*
     N.D. Ohio Case Number 1:21-cv-01776

Dear Amanda:

This letter is intended to address certain deficiencies in Defendant's Discovery responses. This letter is sent consistent with the conferral requirements of Rule 37.

## MISSING DOCUMENTS, PRIVILEGE LOG AND INITIAL DISCLOSURES

We are still awaiting MANY additional responsive documents. We understand the need for a rolling production, but, as noted previously, CWRU has had the requests for a very long period of time and should be able to produce records quickly. We note, in particular, that have not seen investigative files, including reports, drafts of investigative reports, and transcripts/audio recordings of hearings – documents that should not be difficult to produce.

THEREFORE, PLEASE PLAN TO PROVIDE A COMPLETE PRODUCTION OF DOCUMENTS BY THE END OF THIS WEEK.

Please provide a privilege log describing any documents withheld from production and the basis. And, because student names are redacted from documents (per our agreement), please provide a list of the names of all students redacted from discovery, along with updated contact information. We will keep this information confidential.

Please provide the Initial Disclosures required by the Federal Rules. In this Initial Disclosures, please be certain to include the names and contact information for all students identified as witnesses/complainants/respondents in any of the investigations.

**REQUESTS FOR ADMISSIONS**

**Requests Nos. 7 and 8**

These requests concern CWRU sexual misconduct policies.

The answers state that CWRU's policies "speak for themselves." The response that a document "'speaks for itself' is not a permissible answer under the federal rules." *Robert Weiler Co. v. Kingston Twp.*, S.D.Ohio No. 2:07-cv-0760, 2008 U.S. Dist. LEXIS 115880, at *14 (Oct. 27, 2008), *citing Miller v. Holzmann*, 240 F.R.D. 1, 4 (D.D.C. 2006) (the "document speaks for itself" objection is both "tautological" and "a waste of time…"); *Jones v. Univ. of Memphis*, W.D.Tenn. No. 2:15-cv-02148, 2016 U.S. Dist. LEXIS 145634, at *3-4 (Sep. 23, 2016) (collecting cases; "stating a document 'speaks for itself' does not sufficiently meet the requirements of Rule 36").

**Request No. 12**

This request concerns whether CWRU has reviewed any allegations of unprofessional conduct by Jane Roe.

The answer, which refers to complaints against Plaintiff is evasive. Fed.R.Civ.P. 37(a) expressly provides that an evasive or incomplete disclosure, answer or response to a discovery request must be treated as a failure to disclose, answer or respond. An objection that a request for admissions "assumes facts not in evidence" is non-sensical – the entire purpose of a request for admission is to narrow the scope of disputed facts and necessary discovery. Because of the discussion of irrelevant facts, we are unable to discern from the answer whether the school is denying that Jane Roe was investigated for professionalism concerns.

Moreover, the response that the request seeks "confidential student records" is not well taken. Presumably, CWRU is referring to FERPA. But while the protections against the unauthorized disclosure of educational records FERPA affords are broad, FERPA does not absolutely prohibit the disclosure of educational records, or otherwise prevent discovery of relevant records under the Federal Rules of Civil Procedure. "FERPA is not a law which absolutely prohibits the disclosure of educational records; rather it is a provision which imposes a financial penalty for the unauthorized disclosure of educational records" *Ellis v. Cleveland Mun. Sch. Dist.*, 309 F. Supp. 2d 1019, 1023 (N.D. Ohio 2004).

**FIRST SET OF INTERROGATORIES**

**Interrogatory No 5**

This Interrogatory seeks information about the actions of CWRU employees in the investigation of the allegations against Plaintiff.

The relevance objection is non-sensical – this case is about the investigation and adjudication of claims made by and against Plaintiff and that is the information sought by the interrogatory.

The objection that the interrogatory "'calls for narrative' is an impermissible objection to an interrogatory request." *Qashqeesh v. Monster Bev. Corp.,* S.D.Ohio No. 2:20-cv-03776, 2021 U.S. Dist. LEXIS 154428, at *6 (Aug. 17, 2021), *citing Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D. Ohio 1989).

The refusal to answer on the basis of Rule 33(d) is also improper, as asking about the actions of individual CWRU employees does not require CWRU to sift through its owns evidence to determine the facts of the case and it is reasonable to infer that CWRU knows what actions were taken by its employees without reviewing the records (or to make a reasonable inquiry). CWRU's reliance on Rule 33(d) with a mere general reference to a mass of documents or records is not an adequate response as CWRU should be able to answer this interrogatory without referring Plaintiff to the records. CWRU has failed, beyond vague references to documents "including Office of Equity records" to specify the documents upon which they rely in their interrogatory answers; simply referring to certain files is not enough, especially when CWRU seemingly is referring Plaintiff to hundreds of unspecified files and thousands of pages of documents. "Fed. R. Civ. P. Rule 33(d) is not satisfied by the 'wholesale dumping of documents.'" *Bayview Loan Servicing, Ltd. Liab. Co. v. Boland*, 259 F.R.D. 516, 518-519 (D.Colo. 2009), *quoting O'Connor v. Boeing North American, Inc.*, 185 F.R.D. 272, 277 (C.D. Cal. 1999). "A party who seeks to rely upon the Rule must not only certify that the answer may be found in the records referenced by it, but also 'must specify where in the records the answers [can] be found.'" *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 514-515 (W.D.Ky. 2010), *quoting Cambridge Electronics Corp. v. MGA Electronics, Inc.*, 227 F.R.D. 313, 322-23 (C.D. Cal. 2004).

Finally, the term training is hardly ambiguous, as 34 C.F.R. 106.45(b)(1)(3) requires Title IX Coordinators, investigators, and decision-makers to receive training, *inter alia* on the definition of sexual harassment, the scope of the recipient's education program or activity, how to conduct an investigation and grievance process including hearings, appeals, and informal resolution processes, as applicable, and how to serve impartially, including by avoiding prejudgment of the facts at issue, conflicts of interest, and bias. If any clarification is needed, please refer to the regulations.

**Interrogatories Nos. 6, 8**

These interrogatories concern other investigations of sexual misconduct by both the Title IX Office and the Professionalism Committee.

We believe that the five-year period of time is appropriate and, without further elaboration about the number of investigations involved, we can not discern if the burden or expense of the proposed discovery outweighs its likely benefit. As for the vagueness objections, we, frankly, have no idea why simple terms like "nature of the allegation" can be vague or ambiguous but are willing to provide clarification if you can explain the issue.

As noted, *supra*, the objection that the interrogatory calls for narrative is an impermissible objection to an interrogatory request.

The reference to FERPA as a basis for not responding is not well taken, as FERPA protects only educations records. To the extent FERPA is applicable, CWRU may respond by redacting any personally identifying information or making the response subject to the protective order. *See Project on Predatory Lending of the Legal Servs. Ctr. of Harvard Law School v. United States DOJ*, 325 F. Supp. 3d 638, 664 (W.D.Pa. 2018) (permitting production of FERPA material subject to protective order); Jackson v. Willoughby Eastlake Sch. Dist., N.D. Ohio No. 1:16-cv-3100, 2018 U.S. Dist. LEXIS 49508, *4 (N.D. Ohio Mar. 23, 2018) (FERPA material may be produced subject to a protective order); *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *14 (Oct. 15, 2018) (requiring production of student records "pursuant to the parties' stipulated protective order").

As I noted in my November 4, 2022 correspondence, any relevance objection is not well taken. The records sought in discovery might demonstrate other situations where females were alleged to have committed misconduct, but the school chose only to investigate male students. Courts have held that such discovery is permissible. One court observed that such discovery is of "inarguable relevance," noting that if a school "has a pattern and practice that treats males unfairly in sexual misconduct investigations, then the school has a significant problem in this litigation." *Doe v. Ohio State Univ.*, S.D.Ohio No. 2:15-cv-2830, 2015 U.S. Dist. LEXIS 141218, at *4 (Oct. 16, 2015). *See also Doe v. Trustees of the Univ. of Pennsylvania*, 270 F. Supp. 3d 799 (E.D.Pa. 2017). Another court noted that "although most of the allegations of Plaintiff's complaint relate to the investigation conducted in his case, he also asserts that Defendant has engaged in a pattern of discrimination… Accordingly, Defendant's files pertaining to [other] sexual assault investigations while Plaintiff was a student… are relevant." *Doe v. Rollins College*, M.D.Fla. No. 6:18-cv-1069, 2019 U.S. Dist. LEXIS 236677, at *11-12 (Apr. 10, 2019).

At this point, we do not have sufficient information to suggest that the production would be unduly burdensome. And even if the documents are voluminous, a Southern District court over-ruled an objection that a school producing records from other investigations was unduly burdensome. *Doe v. Ohio State Univ*, 2018 U.S. Dist. LEXIS 176752, *13-14.

**Interrogatory Nos. 11-13, 15**

These interrogatories concern the response of the school to pressure from the federal government and other sources to crack-down on sexual assault on campus.

For the reasons explained, *supra,* the objections that the interrogatories "call for a narrative" and the refusal to answer on the basis of Rule 33(d) are improper.

At this point, we do not have sufficient information to suggest that the production would be unduly burdensome or that the burden of production would outweigh the benefits. Please clarify and provide details.

This information is highly relevant. The Seventh Circuit, in an opinion by Judge (now Justice) Barrett, found that pressure on schools, and the school's responses, is relevant to this type of case because it gives accused students "a story about why [a school] might have been motivated to discriminate against males…" *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019). The Third Circuit in *Doe v. Univ. of the Sciences*, 961 F.3d 203, 214 (3d Cir. 2020), noted that courts have considered claims by students that

schools "were allegedly intimidated by the 2011 Dear Colleague Letter and associated threats of litigation or [Department of Education] scrutiny." The *Univ. of the Sciences* court further held that, while not conclusive, the DCL and related enforcement efforts "is relevant to alleging a plausible Title IX discrimination claim." 961 F.3d at 210. And the Sixth Circuit, in *Doe v. Miami Univ.*, 882 F.3d 579, 596 (6th Cir. 2018), treated as relevant allegations that pressure from OCR led a school to discriminate against men in its sexual-assault adjudication process.

The trainings sought by Interrogatory No. 12 are particularly relevant. Evidence that school administrators possessed outdated, stereotypical, and discriminatory views of gender and sexuality can support an inference of gender bias because "these views would have naturally infected the outcome of [a] Title IX disciplinary proceedings." *Doe v. Marymount Univ.*, 297 F. Supp. 3d 573, 586 (E.D.Va.2018). Evidence of gender stereotypes is most often inferred from statements or trainings conducted by school administrators. In *Purdue*, for example, the Seventh Circuit held that gender stenotypes could be inferred when a university center posted an article insinuating that men were "the cause of campus sexual assault." 928 F.3d at 669. In *Prasad v. George Washington Univ.*, 325 F.R.D. 1, 5 (D.D.C. 2018), a court concluded that a schools "training policies on Title IX-related matters… are relevant to Plaintiff's claims." For example, in *Doe v. Washington & Lee Univ.*, W.D.Va. No. 6:19-cv-00023, 2021 U.S. Dist. LEXIS 74222 (Apr. 17, 2021), a court held that "gender bias could be inferred" from the Title IX Coordinator's hosting a presentation that endorsed the idea "'[a]lmost [e]very [g]irl'" experiences non-consensual sex." 2015 U.S. Dist. LEXIS 102426 at *10. And in *Marymount Univ.*, a court held that gender bias could be inferred when the adjudicator asked questions about male sexuality which suggested that she "adhered to certain gendered beliefs." 297 F. Supp. 3d at 585. And

Similarly, the objections to communications with the federal government about the manner in which CWRU investigates and adjudicates allegations of sexual misconduct are not well taken because such evidence is relevant under Sixth Circuit precedents. "[T]he Sixth Circuit has recognized that being investigated by the federal government for potential Title IX violations is a relevant allegation suggesting that the university might be induced to discriminate against males in disciplinary hearings..." *Doe v. Vanderbilt Univ.*, M.D.Tenn. No. 3:18-cv-00569, 2019 U.S. Dist. LEXIS 173269, at *27 (Sep. 30, 2019), *citing Doe v. Cummins*, 662 F.App'x 437, 453 (6th Cir. 2016). *See also Gischel v. Univ. of Cincinnati*, S.D.Ohio No. 1:17-cv-475, 2018 U.S. Dist. LEXIS 230848, at *26 (Jan. 23, 2018) (same); *Doe v. Baum*, 903 F.3d 575, 586 (6th Cir. 2018) (noting that "public attention and [an] ongoing [federal] investigation put pressure on the university to prove that it took complaints of sexual misconduct seriously").

**Interrogatory No. 14**

The answer provided is non-responsive. The Interrogatory asks CWRU to identify any policy that requires students to maintain confidentiality. The response that notices of investigation "typically" include certain language does not identify a policy. If no such policy exists, CWRU should say so.

**FIRST SET OF DOCUMENT REQUESTS**

CWRU indicated in response to many requests that that Defendant is searching for additional documents, particularly within certain email accounts. IN ORDER TO EVALUATE THE RESPONSE BY CWRU, PLEASE IMMEDIATELY PROVIDE A LIST OF THE ACCOUNTS

SEARCHED AND THE KEYWORDS USED. It is important that CWRU cooperate in selecting the accounts to be searched and the keywords used. The failure of CWRU to consult with us in advance, and the apparent refusal to include student email accounts in the search and preservation, is inconsistent with the requirement in the Federal Rules that counsel to meet and confer on "any issues about disclosure, discovery, or preservation of electronically stored information, including the form or forms in which it should be produced[.]" Fed. R. Civ. P. 26(f)(3)(C).

Consistent with his, we request that after providing the information requested here, CWRU will work with us to develop appropriate search terms, date ranges and accounts to be searched.

**Document Request Nos. 4 – 11.**

These requests concerns allegations by and against Plaintiff for retaliation and/or sexual misconduct. The responses appear to limit the production to certain matters.

To the extent that there are allegations that the school investigated that are not included in the response, this is improper as such matters are relevant to whether CWRU adequately and equitably responded to allegations by and against Plaintiff. To help evaluate this question, please clarify if CWRU is aware of any allegations by and against Plaintiff for retaliation and/or sexual misconduct that are NOT being produced.

To the extent that investigations are being withheld on the grounds that they are still open, please see my November 4, 2022 Letter. Given the extensive period of time, and our upcoming discovery deadlines, this is no longer a valid reason to withhold unquestionably relevant documents.

**Document Request Nos. 15-17**

This request concerns the academic file of Jane Roe and accommodations received by Jane Roe and Plaintiff.

The objection that the term "academic file" is vague or ambiguous is not appropriate. Similarly, the term "accommodations…" is well known in Title IX litigation, and is synonymous with "supportive measures" These terms seem obvious, but we are willing to work to clarify if you wish.

The objections that the material is "confidential" and protected from disclosure by FERPA are addressed *supra*.

The documents are relevant since they may show that either Plaintiff or Jane Roe received undisclosed supporting measures which could have affected their credibility during hearings. Such information is relevant to whether CWRU adequately and equitably responded to allegations by and against Plaintiff. *Cf. Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 663 (S.D.Ohio 2016) ("If the Administrators knew that Jane Roe lied about" accommodations "that plausibly violated John Doe's right to a fundamentally fair hearing.").

**Document Requests Nos. 18-19**

These requests seek communications between Jane Roe about her claims against Plaintiff.

The relevancy objection is highly dubious. Communications from Jane Roe about her claims against John Doe are not merely relevant, if they are in the possession of CWRU they are vital, highly probative, and go to the heart of the disputed issues in this case. We do not understand how communications directly about the claims at the center of this litigation are not relevant; nothing could be more relevant for Rule 26 purposes. Please explain.

The objections that the material is "confidential" and protected from disclosure by FERPA are addressed *supra.*

**Document Requests Nos. 20-21, 23-24**

These requests concern the manner in which CWRU responded to pressure from the community and the Department of Education on the school to change school policies and procedures.

The objection on relevance based is not well taken for reasons explained *supra*. Indeed, by agreeing to provide some responsive documents, CWRU is essentially conceding relevance. Any relevancy objection to documents dating back to the 2011 DCL is not well taken. As noted, *supra,* the view that pressure from the Department of Education supports an inference of gender bias, is the considered views of the Sixth Circuit and other courts of appeals. *Purdue Univ.*, 928 F.3d at 668; *Miami Univ.*, 882 F.3d at 594; *Univ. of the Sciences*, 961 F.3d at 210. Discovery of prior policies and practices may show, for example, that the impact of the DCL on CWRU is not speculative. Instead, such discovery will show how CWRU changed the school's policies and procedures to eliminate traditional hearings, cross-examination of adverse witnesses, and other traditional due process protections in favor of a summary process in order to avoid OCR inquiries.

**Document Request No. 26**

This request concerns trainings for CWRU personnel and students.

As with other requests, we continue to struggle to understand how this request is vague or ambiguous. These terms seem obvious, but we are willing to work to clarify if you wish.

The objection based on relevancy and the time-period of the request are not well taken for the reasons explained *supra.*

The effort to assert that the trainings are confidential is difficult to understand, as such trainings would not include FERPA material.

**Document Requests No. 27-29,**

These requests concern other investigations of sexual misconduct by both the CWRU Title IX Office and the Medical School.

The objections to these requests are addressed *supra* in the discussion of Interrogatories nos. 6-8.

**Document Request Nos. 31-32.**

These requests concern prior activities by the Medical School on Professionalism matters.
The relevancy objection is not well taken given the previous deposition testimony and affidavits in this case. In regard to Request No. 31, claims have been made that CWRU Medical school has a practice of reviewing Title IX reports. Dr. Logio testified that *"*the formal report is reviewed by the Chair of the Committee on Students once the matter is officially closed…" There was also testimony that the professionalism process is initiated by an "early concern." And in regard to Request No. 32, In an Affidavit (Doc#18-3), Dr. Ricanati told the Court in ¶7, "several medical students were referred to the Professionalism Working Group due to social media posts, social media activities, or electronic communications." These requests seek to verify this information and also determine whether referrals and early concerns for sexual misconduct and social media posts are handled in an equitable and non-retaliatory manner.

**SECOND SET OF REQUESTS**

As with the First Set of Requests, many responses indicate that responsive documents will be provided after a search. We will, therefore, withhold some comments until after receiving responsive documents and details of the search provided.

**Request No. 16-19**

These requests concern review of certain matters by the Medical school of students who allegedly engaged in retaliatory conduct against Plaintiff. If no such documents exist, then CWRU should say so. Otherwise, the objections are not well taken for the reasons described *supra*.

If CWRU is unwilling to rectify these deficiencies, we will seek the assistance of the Court and request appropriate sanctions. If you have any questions or concerns, please do not hesitate to give me a call.

Sincerely,

Joshua Engel

cc: Anne Tamashasky, Esq.