## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| JOHN NOAKES, | Case No. 1:21-cv-1776-PAB |
| Plaintiff, | Judge: BARKER |
| v. | JOINT STATUS REPORT RE: DISCOVERY DISPUTE |
| CASE WESTERN RESERVE UNIVERSITY, | |
| Defendant. | |

Pursuant to this Court's December 5, 2022 entry, Plaintiff John Noakes and Defendant Case Western Reserve University respectfully submit this Status Report on the two discovery disputes identified by Plaintiff. (Doc#51, Doc#52.)

The parties conferred on these issues by telephone on December 7, 2022. The parties subsequently exchanged emails on the status of the efforts to resolve this dispute. Copies of those emails accompany this Status Report.

**Protective Order:**

The parties have been unable to reach agreement on a proposed Protective Order. A proposed Order accompanies this Status Report and the Parties jointly request that, if acceptable to the Court, the Proposed Order be adopted. A mark-up with proposed revisions and points of attention is attached. The only area of disagreement between the parties involves Section 1.5 of the proposed Order.

**Defendant's Position:** Defendant does not deny that Plaintiff may obtain personally identifiable information on students subject to a protective order. However, the process that Plaintiff proposes and seeks in this case, as outlined in section 1.5(d) of the marked up draft would convert "all discovery requests" propounded by Plaintiff into a "judicial order" for FERPA purposes.

The parties have agreed to produce documents with students' personally identifiable information redacted (and Defendant has produced thousands of pages already utilizing this process in accordance with 34 CFR 99.31(b)(1)). As outlined in the attached emails, if there is a need for documents to be produced in unredacted format with students' personally identifiable information, the process contemplated in section 1.5(c) provides for a reasonable procedure whereby Defendant can comply with its notice obligations under FERPA. As

offered to Plaintiff, Defendant is willing to instead remove section 1.5(d) (or all of section 1.5) and handle in accordance with FERPA. In that instance, if Plaintiff were to seek unredacted copies of documents then a judicial order could be sought to outline the students to whom Defendant must provide FERPA notifications. Per 34 CFR 99.31(a)(9)(i) and (ii), an "educational agency or institution may disclose information [to comply with a judicial order or lawfully issued subpoena] only if the agency or institution makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action." Plaintiff's desire to convert "all discovery requests" into a "judicial order" without limitation would effectively mean that any time Plaintiff propounds a discovery request upon Defendant, if any potential student records are contemplated, Defendant would need to send out FERPA notifications to the entire universe of potential students. There is a reason FERPA does not permit discovery subject only to a discovery request, and specifies only "a judicial order or lawfully issued subpoena." This is especially the case where, as here, the parties have agreed to produce documents with students' personally identifiable information redacted in accordance with 34 CFR 99.31(b)(1)).

**Plaintiff's Position:** Plaintiff is entitled to obtain personally identifiable information on students subject to a protective order. Defendant continues to deny this well-established authority. *Jackson v. Willoughby Eastlake Sch. Dist.*, N.D. Ohio No. 1:16-cv-3100, 2018 U.S. Dist. LEXIS 49508, *4 (N.D. Ohio Mar. 23, 2018) (FERPA material may be produced subject to a protective order); *Doe v. Ohio State Univ.*, S.D.Ohio No.2:16-cv-171, 2018 U.S. Dist. LEXIS 176752, at *14 (Oct. 15, 2018) (requiring production of student records "pursuant to the parties' stipulated protective order"). Defendant is improperly attempting to restrict the ability to Plaintiff to obtain the identity of important witnesses who can provide information about inadequacies and biases in Defendant's investigative process. CWRU seeks to impose a requirement that any request for student information, or unredacted copies of documents, be preceded by Plaintiff showing a "a justifiable need for an unredacted copy of a document." This additional requirement of "justifiable need" on discovery has no basis in the law, is likely to lead to additional litigation when CWRU (which continues to use every opportunity to delay discovery) inevitably says that every request is not "justified," and risks requiring Counsel to disclose protected work product and trial strategy behind the requests.

## Initial Disclosures

Defendant has agreed to provide Initial Disclosures by the end of the week.

## Production of Documents

Defendant has agreed that the production of documents will continue on a rolling basis, with additional documents expected to be produced this week, and that all documents will be produced by December 23, 2022.

Defendant has refused to produce documents related to the ongoing retaliation complaints submitted by Plaintiff.

**Defendant's Position:** As outlined in Defendant's Motion for Protective Order and/or Motion to Quash or Modify, in part, Third-Party Subpoenas Issued to Jane Roe, Student 1, Student 2, Student 3 and Baker & Hostetler [ECF 46] and its related Reply Brief [ECF 53],

which are both incorporated by reference, Plaintiff's attempts to seek discovery concerning ongoing Title IX investigations undermines CWRU's rights and obligations under Title IX to follow its published grievance procedures and processes.  Permitting the discovery requested by Plaintiff concerning **pending** complaints that are the subject of **ongoing** investigations would jeopardize CWRU's ability – and frankly the ability of every other university and college across the nation – to enforce disciplinary standards and processes and to carry out legal obligations under Title IX to respond to sexual harassment (and related retaliation).  If this Court were to permit the requested discovery, any complainant or respondent in an active Title IX investigation could simply file a lawsuit and serve discovery requests to obtain all documents related to the ongoing investigation, including other party and witnesses' communications and documents (which records other parties to the Title IX investigation would not be privy to).  Allowing Plaintiff to obtain the requested discovery through this lawsuit would undermine CWRU's Title IX process and its ability to maintain and follow its outlined process as required by Title IX.[1]  Defendant has offered to produce responsive, non-privileged documents regarding its ongoing investigations following the completion of such processes.

**Plaintiff's position:**  Defendant does not contest that this information is relevant and discoverable.  Defendant's objection that the production of records related to the investigation and adjudication of his complaints will interfere with its "process" is speculative and unsupported by any evidence.  Defendant recently informed Plaintiff that some of the investigations are complete – there is no reason to continue to withhold these documents simply because the matters may be scheduled for hearings at some unknown date in the future.  These investigations have been ongoing for over a year, even though CWRU's policy states the entire process – investigation/hearing/appeal -- should be completed in 60-75 business days.  (Doc#41-1, PageID#1163.)   Defendant cannot complain of possible 'interference' unless it has acted diligently to complete the matters.  *Cf.* Plaintiff's Response to Motion for protective Order (Doc#50.)  There is no end in sight and Defendant, seemingly, intends to cynically drag on the "process" until past all deadlines in this case.

## Search Terms And Electronic Discovery

Defendant agreed to provide this week a list of search terms used and user accounts searched and to engage in good faith discussions about the need to modify those terms or accounts.

The parties, in emails, also clarified that CWRU does not comply with its discovery obligations simply by searching email accounts, and our discussion about this matter should not be taken as an agreement that merely searching email accounts is sufficient.  The production of documents by December 23, 2022 described above will include all documents, electronically stored information, and tangible in its

---

[1] This reasoning is similarly applied in cases where there are **ongoing** criminal investigations.  *See, e.g. In re Department of Investigation of City of New York*, 856 F.2d 481, 484-485 (2nd Cir. 1988) (recognizing the importance of protecting documents related to ongoing criminal investigations "to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation" and acknowledging "[t]he danger of… deterring witnesses from cooperating with [the investigation] out of fear of disclosure"); *Day v. CHSV Fairway View, LLC*, 2002 WL 4239061 (M.D. La. Sept. 14, 2022) (granting a motion to quash a subpoena seeking information about a pending criminal investigation).

possession, custody, or control, except as indicated above.  This includes documents, notes, text messages, and other material not contained in email accounts.

Defendant has refused to search student accounts for responsive documents.

> **Defendant's position:**  As outlined in the attached emails, absent some articulated or demonstrated and genuine need for specific and tailored searches of particular student email accounts, CWRU will not be searching the CWRU email accounts of its students.  Plaintiff's Title IX claims relate to ***CWRU's*** actions, not actions or communications unknown to CWRU that may be contained in student emails.  All relevant emails regarding CWRU's actions and decisions will be captured within the email searches of its administrators, faculty, and staff.

> **Plaintiff's Position:**  Defendant does not contest that this information is relevant and discoverable or suggest that the production will be unduly burdensome.  Nor does Defendant contest that the evidence is in the custody and control of Defendant.  *See*  Fed. R. Civ. P. 34(a)(1).  Student emails – and in particular Jane Roe's school emails – are likely to contain communications with students, employees, attorneys, and advisors not included in the original searches conducted by CWRU, including descriptions of meetings with CWRU faculty and staff.  Defendant has failed to provide any statutory or legal basis to refuse to produce this evidence.  There are no privacy considerations here as the CWRU Acceptable Use of Information Technology Policy states, "Users shall have no inherent expectation of privacy for information stored on and transported through CWRU information technology resources…"    (https://case.edu/utech/departments/information-security/policies/i-1-acceptable-use-information-technology-policy-aup)  This includes communications with her advisors and counsel, as courts have been clear that students "effectively waived the attorney-client privilege when they used their [school]-issued e-mail accounts to communicate with their attorneys."  *Doe v. George Washington Univ.*, 480 F. Supp. 3d 224, 230 (D.D.C.2020)

**Privilege Log**

CWRU will provide a privilege log by December 23, 2022.

**Requests for Admissions Cannot "Speak for Themself" (RFA#7, RFA#8),**

CWRU has agreed to provide amended responses to RFA#7 and RFA#8 by December 16, 2022.

**Information On Jane Roe And Other Students (RFA#12, RFP#15, RFP#16, RFP#17, RFP#18, RFP#19**

CWRU has agreed to produce all documents concerning supportive measures offered to and received by Jane Roe.   CWRU will review the production of Jane Roe's academic transcript following the resolution of the protective order issue.

CWRU refuses to provide any communications between Jane Roe and any advocates or advisors.

> **Defendant's position:**  See above regarding Defendant's position on searching student email accounts.

**Plaintiff's position:** Plaintiff agrees that any communications with counseling services should remain confidential. CWRU should provide a log of these communications. However, communications with advocates such as the CWRU "Student Advocate for Gender Violence Prevention, Education, and Advocacy Case Western Reserve University" are not subject to any privilege and are hihghly likely to contain evidence about how CWRU's investigation and adjudication of Plaintiff's retaliation and harassment complaints.

## "Narrative Objections" (Int#5, Int#6, Int#8, Int#11, Int#12, Int#13, Int#15)

CWRU has state that "information was not withheld from the responses to these referenced interrogatories on this basis." However, CWRYU has not agreed to provided amended or supplemental responses.

**Defendant's position:** Courts have recognized that interrogatories may be objected to to the extent they improperly call for a narrative response. *See, e.g., Gregg v. Local 305 Ibew*, 1:08-CV-160, 2009 WL 1325103 (N.D. Ind. May 13, 2009). Regardless, Defendant indicated to Plaintiff that information was not withheld from the responses to the referenced interrogatories on this basis.

**Plaintiff's position:** This Court has said, "Interrogatories may seek narrative responses." *Giunto v. Metro. Group Property & Cas. Ins. Co.*, N.D.Ohio No. 1:11 CV 2774, 2013 U.S. Dist. LEXIS 202441, at *23 (Aug. 19, 2013), *citing Babcock Swine, Inc. v. Shelbco, Inc.*, 126 F.R.D. 43, 45 (S.D. Ohio 1989). *See also* Position Paper. Defendant should be required to provide complete responses to these interrogatories. Interrogatories may seek narrative responses. Babcock Swine, Inc. v. Shelbco, Inc., 126 F.R.D. 43, 45 (1989).

## Improper Reliance On Civil Rule 33(d) (Int#5, Int#11, Int#12, Int#13, Int#15)

CWRU has agreed to provide supplemental responses to these interrogatories by December 23, 2022.

## Trainings

CWRU has agreed to produce we would intend to produce the training materials for the past five years by December 23, 2022. CWRU may provide more information, if necessary, to limit the training produced to certain target audiences and the parties will confer if CWRU believes that training materials for some "target audiences" may be beyond the scope of discovery.

## Improper Vague and Ambiguous Objections and Non-Responsive Answers (Int#5, Int#6, Int#, Int#14, RFP#4, RFP#5, RFP#6, RFP#7, RFP#8, RFP#9, RFP#10, RFP#11)

Defendant has stated that while it  is not withdrawing the stated objections, Defendant now understand what it is sought in the referenced requests.

## Other Investigations (Int#6, Int#8, RFP#27, RFP#28, RFP#29)

CWRU would provide full and complete responses to Interrogatories Nos. 6 and 8 without identifying students by December 23, 2022. After reviewing these responses, the parties will confer to attempt to limit the investigations that need to be produced.

5

**Response to External Pressure and Trainings (Int#11, Int#12, Int#13, Int#15, RFP#20, RFP#21, RFP#23, RFP#24, RFP#26)**

CWRU objects that evidence of pressure from the federal government and other sources to crack-down on sexual assault on campus is relevant.

> Defendant's Position: Title IX erroneous outcome claims require proof of a causal connection between the flawed outcome and gender bias.  It is in connection with this causal connection that some courts have permitted discovery on evidence of federal pressure.  The standards for Title IX retaliation, deliberate indifference, and selective enforcement claims are different, and do not require proof of a causal connection.  We are not aware of case law allowing for discovery of evidence of federal pressure in cases without an erroneous outcome claim.

> Plaintiff's position:  As stated in Plaintiff's position paper, external pressure on schools, and the school's responses, is relevant to this type of case because it gives accused students "a story about why [a school] might have been motivated to discriminate against males…" *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019).  Defendant suggests that this is only applicable in 'erroneous outcome' Title IX cases.  A claim under the selective enforcement theory pursued by Plaintiff also requires a showing that the university's conduct "was motivated by a sexual bias." *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003).  *Cf. Marshall v. Ohio Univ.,* S.D.Ohio No. 2:15-cv-775, 2015 U.S. Dist. LEXIS 155291, at *22 (Nov. 17, 2015) ("selective enforcement claim fails because [student] has not alleged facts that make it plausible that gender bias was the motivating factor behind any difference in their treatment"); *Doe v. Cummins*, 662 F. App'x 437, 452 (6th Cir. 2016) (noting that in a 'selective enforcement' claim, a plaintiff must show that a similarly-situated member of the opposite sex was treated more favorably "due to his or her gender").

> In addition, CWRU's communications with federal investigators about this and other matters is independently relevant, particularly as documents produced so far confirm that federal investigators spoke to CWRU specifically about Plaintiff's matter.  And, as noted in Plaintiff's Position Paper: "[T]he Sixth Circuit has recognized that being investigated by the federal government for potential Title IX violations is a relevant allegation suggesting that the university might be induced to discriminate against males in disciplinary hearings..." *Doe v. Vanderbilt Univ.*, M.D.Tenn. No. 3:18-cv-00569, 2019 U.S. Dist. LEXIS 173269, at *27 (Sep. 30, 2019).

**Other Professionalism Matters (RFP#31, RFP#32, Second Set RFP#16-19)**

CWRU has agreed  only to provide "de-identified and redacted documents evidencing the School of Medicine's policy and practice of reviewing Title IX matters where there are professionalism issues."

> **Defendant's Position:** Where Title IX cases are referred to the Committee on Students for review for potential professionalism issues, Defendant will produce the records as outlined in the attached emails.  The Title IX outcome letters reference referral to the Committee on Students.  The Committee on Students does not review every single Title IX matter.

6

**Plaintiff's position:**  Deposition testimony and affidavits in this case where witnesses stated that CWRU Medical school has a practice of reviewing Title IX reports.  For example, Dr. Ricanati, in his deposition (page 58), said, "So there is an internal policy of the Committee on Students that once the University has a Title IX determination that the head of the Committee on Students reviews the Title IX documentation to determine if there were any additional professionalism concerns at the School of Medicine."  These requests are designed to determine if such a policy or practice does, in fact, exist and, if so, if it has been applied in an equitable manner.  Defendant cannot pick and choose what documents to produce in support of this claim. But must produce all relevant documents.

FOR PLAINTIFF:


_____/s/ Joshua Engel_____
Joshua Adam Engel (0075769)
Anne Tamashasky (0064393)
ENGEL AND MARTIN, LLC
4660 Duke Drive, Ste. 101
Mason, OH 45040
(513) 445-9600
(513) 492-8989 (Fax)
engel@engelandmartin.com

FOR DEFENDANT:


_____/s/ Amanda Quan_____
John Gerak (#0075431)
Amanda T. Quan (#0086623)
OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.
127 Public Square
4100 Key Tower
Cleveland, OH 44114
216.241.6100
216.357.4733 (FAX)
john.gerak@ogletree.com
amanda.quan@ogletree.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been electronically served via the Courts ECF system this December 9, 2022 upon all counsel of record.

<u>/s/ Joshua Engel</u>
Joshua Engel