IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

JOHN NOAKES,                                    Case No. 1:21-CV-01776-PAB

                           Plaintiff,

      -vs-                                   JUDGE PAMELA A. BARKER

CASE WESTERN RESERVE                            MEMORANDUM OPINION AND
UNIVERSITY,                                     ORDER

                        Defendant.

      Currently before the Court are two Notices of Discovery Disputes filed on December 2, 2022 by Plaintiff John Noakes[1] ("Plaintiff").  (Doc. Nos. 51, 52.)  The parties were ordered to meet and confer, by communicating verbally via phone or in person, as to the two discovery disputes and to subsequently update the Court on the result of the meet and confer and the current status of the discovery disputes.  (Dec. 5, 2022 non-doc. Order.)  On December 9, 2022, the parties filed a Joint Status Report regarding the two discovery disputes.  (Doc. No. 54.)  The Court has reviewed the parties' Joint Status Report and makes the following findings relative to the discovery issues that remain unresolved.

I.      **Background**

      The Court presumes the parties' familiarity with its previous opinions in this case, as well as the case's procedural history, and sets forth only the background relevant to resolving the remaining discovery issues.

---

[1] "John Noakes" is a pseudonym.  This Court granted Plaintiff leave to proceed anonymously. (Oct. 8, 2021 non-doc. Order.)

On October 6, 2022, Plaintiff filed a 70-page Amended Complaint against Defendant Case Western Reserve University ("CWRU"), in which he asserts claims for retaliation (Count I), deliberate indifference (Count II), and selective enforcement (Count III) under Title IX. (Doc. No. 41.) Plaintiff's claims arise out of the alleged efforts of administrators at CWRU "to retaliate against [him] after he was found 'not responsible' for allegations of sexual misconduct against a fellow student," identified in the pleadings as "Jane Roe" ("Roe"). (*Id.* at ¶ 2.) Roe had alleged that Plaintiff sexually assaulted her, and the matter was reported to the CWRU Office of Equity, which is charged with enforcing CWRU's non-discrimination and sexual harassment policies. (*Id.* at ¶ 3.) "CWRU investigated the matter and, following a hearing, [Plaintiff] was cleared of all charges." (*Id.*) Plaintiff alleges that after he was cleared of the charges, "CWRU officials – including the Title IX Coordinator and a Dean in the Medical School – who were unhappy with the outcome began a campaign of intimidation and harassment against [him]." (*Id.* at ¶ 4.) According to Plaintiff, "[o]ther students, with the tacit encouragement of Jane Roe and administrators, started an on-line campaign to expel [him]." (*Id.*) Plaintiff alleges that CWRU administrators told him that "he could be expelled if he continued to assert his own rights under Title IX against these students or pursued retaliation complaints against administrators." (*Id.*)

Plaintiff avers that this campaign culminated in a second Title IX investigation against Plaintiff "because someone, unbeknownst to [Plaintiff], had posted information on-line critical of the CWRU disciplinary process." (*Id.* at ¶ 5.) Plaintiff claims he was "ultimately exonerated," but again "was damaged by having to defend himself against spurious charges." (*Id.*) During this time, Plaintiff alleges that he was "continuously subjected to retaliatory harassment by other medical students," and despite CWRU officials having knowledge of this retaliatory harassment, CWRU

2

officials "failed to take action to preserve [Plaintiff's] ability to complete his medical education in peace." (*Id.* at ¶ 6.)

## II.     Standard of Review

Fed. R. Civ. P. 26(b)(1) provides as follows:

> (1)     Scope in General.  Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.  Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).  "Relevance is construed very broadly for discovery purposes." *Doe v. Ohio State Univ.*, 2018 WL 1373868, at *2 (S.D. Ohio Mar. 19, 2018); *see also State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C.*, 315 F.R.D. 220, 222 (E.D. Mich. 2016) (noting that "the 2015 amendments [to Rule 26] do not alter the basic tenet that Rule 26 is to be liberally construed to permit broad discovery" (quoting *Rui He v. Rom*, 2016 WL 909405, at *2 (N.D. Ohio Mar. 10, 2016))).  "District courts have broad discretion over docket control and the discovery process." *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 642 (6th Cir. 2018).

## III.    Analysis

Based on the Court's evaluation of the parties' Joint Status Report, the following discovery issues remain in dispute: (1) section 1.5 of the proposed protective order; (2) document production as to ongoing retaliation complaints; (3) the search of student accounts for responsive documents; (4) communications between Jane Roe and any advocates or advisors; (5) narrative objections as to certain interrogatories; (6) relevance objections to evidence of external pressure and trainings; and (7) document production as to Title IX matters involving professionalism issues.  As to the other

3

issues initially identified in Plaintiff's Notices of Discovery Disputes, the parties' Joint Status Report indicates that the parties are continuing to work to resolve, or have already resolved, those issues without the Court's intervention.

**A.      Proposed Protective Order**

The parties disagree as to section 1.5 of the proposed protective order.  Section 1.5 deals with the designation of protected material, and reads as follows, with the controverted language bolded:

1.5      Whenever any discovery request requires Defendant to produce Protected Materials documents or other information containing Personally Identifiable Information (as that term is defined in 34 CFR § 99.3) of students, the following procedures shall apply:

(a) The parties agree that, in compliance with FERPA, the Personally Identifiable Information of any students will be redacted prior to production in discovery in this case. **The producing parties shall, upon request, provide to the receiving party the identity of the students whose Personally Identifiable Information was redacted**; this information shall be kept confidential under the terms of this Order.  Documents or other information produced pursuant to this paragraph shall not be considered to be CONFIDENTIAL, unless appropriately designated as such in accordance with this Order.

(b) If a party inadvertently discloses any document or thing containing the Personally Identifiable Information of any students, the disclosing party shall promptly upon discovery of such inadvertent disclosure inform the receiving party in writing, forwarding a replacement copy of the inadvertently disclosed material with the Personally Identifiable Information of students redacted. The receiving party shall thereafter treat the information as if it had been properly redacted from the outset and shall make a reasonable effort to retrieve and destroy the unredacted versions of the inadvertently disclosed material. Disclosure by the receiving party to unauthorized persons before being notified of the inadvertent disclosure shall not constitute a violation of this Order. Nothing in this Order shall preclude the receiving party from challenging the redactions of the late-marked material.

(c) Plaintiff may request that Defendant produce an unredacted copy of any materials produced in accordance with Paragraph 1.5(a). If there is **a justifiable need** for an unredacted copy of a document containing Personally Identifiable Information of a student, prior to the production of any such

4

unredacted Protected Material, Defendant shall make a reasonable effort to notify the student or the student's parent of the request for the production of the Protected Material as required by 34 CFR § 99.31(a)(9)(ii). After seven days, if no protective action has been sought by the parent or student, Defendant shall produce the unredacted Protected Material. The parties agree that this Paragraph 1.5(c) is not intended to limit Defendant's rights under FERPA or otherwise expand Defendant's obligations under FERPA.

(d) The Court Orders the Parties to comply with all discovery obligations in this case subject to any objections permitted by the Federal Rules of Civil Procedure; accordingly, **all discovery requests shall also be considered to be pursuant to a "judicial order" as that term is used in 34 CFR 99.31(a)(9)(i) for this limited FERPA purpose**. Nothing in this paragraph limits or alters a party's ability to object to any requested discovery or to seek assistance from the Court in connection with the scope of the requested discovery.

As to the bolded language in section 1.5(a), Defendant argues that this is a FERPA violation. (Doc. No. 54 at 1-2; *see also* Doc. No. 54-2 at 58.)  Under FERPA:

An educational agency or institution, or a party that has received education records or information from education records under this part, may release the records or information without the consent required by § 99.30 after the removal of all personally identifiable information provided that the educational agency or institution or other party has made a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information.

34 CFR 99.31(b)(1).  Thus, Defendant may release a student's records without the student's consent only after first removing all personally identifiable information from the records.

Defendant argues that section 1.5(c) of the proposed protective order provides Plaintiff with an adequate mechanism to obtain the non-redacted information he desires without violating FERPA. (Doc. No. 54 at 1-2.)  Section 1.5(c) allows for Plaintiff to request unredacted information, and if there is a "justifiable need" for this information, Defendant will make appropriate FERPA notifications to students.  (*Id.*)  Defendant is also willing to remove section 1.5(d) (or all of section 1.5) and handle this process in accordance with FERPA—meaning if Plaintiff were to seek

5

unredacted copies of documents, then a judicial order could be sought to outline the students to whom Defendant must provide FERPA notifications.  (*Id.*)

Defendant further argues that Plaintiff's attempt to convert all of its discovery requests to a "judicial order" in section 1.5(d) effectively means that anytime Plaintiff propounds a discovery request, Defendant would need to send out FERPA notifications to the entire universe of potential students.  (*Id.* at 2.)  Defendant argues that this is in direct contravention of FERPA, which permits discovery only upon "a judicial order or lawfully issued subpoena," not upon a discovery request. (*Id.*)

Plaintiff argues that Defendant's interpretation of FERPA is incorrect.  (Doc. No. 54 at 2; *see also* Doc. No. 54-2 at 57.)  Because the information would be provided subject to the terms of the protective order, Plaintiff argues FERPA does not apply, and the "justifiable need" requirement has no basis in law.  (Doc. No. 54 at 2.)  Rather, Plaintiff argues he is entitled to obtain personally identifiable information on students subject to a protective order.  (*Id.*)

Under 34 CFR 99.31(a)(9)(i), an "educational agency or institution may disclose personally identifiable information from an education record of a student without the consent required" if the "disclosure is to comply with a **judicial order or lawfully issued subpoena**."  *Id.* (emphasis added). In that instance, the educational institution may disclose information if the institution "makes a reasonable effort to notify the parent or eligible student of the order or subpoena in advance of compliance, so that the parent or eligible student may seek protective action."  *Id.* at § 99.31a(9)(ii).

The Court finds Plaintiff's case law citations in support of his argument that he is entitled to obtain personally identifiable information on students subject to a protective order unavailing.  *See Jackson v. Willoughby Eastlake Sch. Dist.*, 2018 WL 1468666, at *3 (N.D. Ohio Mar. 23, 2018)

6

(requiring the parties to produce and exchange documents subject to a protective order consistent with FERPA, after the court examined the categories of documents requested and determined that the plaintiffs' need for the certain categories of documents outweighed the students' privacy interests); *Doe v. Ohio State Univ.*, 2018 WL 4958958, at *4 (S.D. Ohio Oct. 15, 2018) (recognizing that consent of a person is not required when "disclosure is court-ordered and subject to a protective order").  In both of these cases, the courts ordered production of certain documents *subject to* a protective order. The courts did not, however, determine that a protective order allowed for the blanket production of unredacted personal identifying information contained in responsive documents.  Rather, before ordering the parties to produce the documents in unredacted form, the courts examined the categories of documents requested and weighed the plaintiffs' need for the documents against the students' right to privacy.  Accordingly, upon the courts' orders, the parties were required to produce the unredacted documents in accordance with FERPA.  Contrary to Plaintiff's argument, the courts did not view the parties' protective order as a "court order."

Because Plaintiff has not provided any case law that allows for the parties to circumvent the "upon judicial order" language in 34 CFR 99.31(a)(9)(i) with the use of a protective order, the parties are ordered to amend section 1.5 of the proposed protective order accordingly.  The amended proposed protective order shall require the parties to handle requests that seek the production of documents containing Personally Identifiable Information (as that term is defined in 34 CFR 99.3) of students in accordance with FERPA.  A request for an unredacted copy of a document containing Personally Identifiable Information must be approved by a separate court order.  The protective order is not considered a court order under FERPA.  At minimum, this will require the parties to remove the bolded language in 1.5(a), to revise the first two sentences in 1.5(c), and to remove the bolded

language in 1.5(d).  The parties shall file a proposed protective order for the Court's review and approval incorporating the Court's directives within ten (10) days of the date of this Order.

### B.    Document production as to ongoing retaliation complaints

Defendant has not agreed to produce documents related to the ongoing retaliation complaints submitted by Plaintiff.  (Doc. No. 54 at 2.)  In Defendant's briefing on this issue, Defendant incorporates the arguments set forth in Defendant's Motion for a Protective Order and/or Motion to Quash or Modify, in part, Third-Party Subpoenas Issued to Jane Roe, Student 1, Student 2, Student 3, and Baker & Hostetler (Doc. No. 46) ("Motion for Protective Order"), and its related Reply in support thereof (Doc. No. 53).  Specifically, Defendant argues that Plaintiff's attempts to seek this discovery "undermines CWRU's rights and obligations under Title IX to follow its published grievance procedures and processes."  (Doc. No. 54 at 3.)  Without citing to any evidence, Defendant argues that "[a]llowing Plaintiff to obtain the requested discovery through this lawsuit would undermine CWRU's Title IX process and its ability to maintain and follow its outlined process as required by Title IX."  (*Id.*)  In a footnote, Defendant cites to cases where the courts have precluded the discovery of documents related to ongoing *criminal* investigations.  (*Id.* at n.1.)

Plaintiff argues that "Defendant does not contest that this information is relevant and discoverable," and that Defendant's argument that this production "will interfere with its 'process[,]' is speculative and unsupported by any evidence."  (*Id.* at 3.)  Plaintiff further argues that Defendant cannot argue any possible interference because Defendant has not acted diligently to complete its investigations into these retaliation complaints, as these investigations have been ongoing for over a

year even though CWRU's policy states that investigations "should be completed in 60-75 days."[2] (*Id.*)

Subsequent to the parties' submission of their Joint Status Report, on December 15, 2022, Defendant withdrew its Motion for Protective Order.  Specifically, Defendant advised the Court that "counsel for Jane Roe, Student 1, Student 2, and Student 3 represented that all four of these students do not object to the production of documents related to the ongoing CWRU investigations."  (Doc. No. 55 at 1.)

The Court finds that documents related to the ongoing retaliation complaints submitted by Plaintiff are highly relevant to Plaintiff's claims.  In fact, these documents go to the heart of Plaintiff's claims that Defendant retaliated against Plaintiff, that Defendant was deliberately indifferent to Plaintiff's complaints, and that Defendant selectively enforced its Title IX policy.  Defendant has not submitted any evidence that production of this material would, in fact, "undermine[] CWRU's rights and obligations under Title IX to follow its published grievance procedures and processes."  (*See* Doc. No. 54 at 3.)  Rather, the Court is persuaded by Plaintiff's argument that Defendant's position is merely speculative and unsupported by the evidence.  (*See id.*)  The Court is further persuaded that the length of time it has taken Defendant to investigate Plaintiff's complaints reinforces Plaintiff's need for these documents to support his claims in this Court.  The Court's finding is also supported by the third parties' agreement to produce documents related to the ongoing retaliation complaints submitted by Plaintiff in their possession.

---

[2] The Court notes that while Defendant's Sexual Harassment Policy and Procedures for Faculty, Students, Employees, and Third Parties states that "[c]omplaints may take 60-75 days to resolve," the policy also states that "[t]here may be exceptions and extenuating circumstances that can cause a resolution to take longer, but [that] CWRU will avoid all undue delays within its control."  (Doc. No. 41-1 at 12.)

The Court is unpersuaded by Defendant's citations to cases involving ongoing criminal investigations, as those cases involve the "law enforcement privilege." (*Id.* at n.1.) "The purpose of this privilege is to prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witness and law enforcement personnel, to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In re Dep't of Investigation of City of New York*, 856 F.2d 481, 484 (2d Cir. 1988). The law enforcement privilege and most of the purposes thereof, i.e., preventing disclosure of law enforcement techniques and procedures and ensuring the safety of confidential informants, law enforcement officers, and witnesses to criminal conduct, do not apply to Title IX investigations.

Accordingly, Defendant must produce documents related to the ongoing retaliation complaints submitted by Plaintiff to the extent they are responsive to any discovery requests propounded by Plaintiff.

### C.    Searching student accounts for responsive documents

Defendant has not agreed to search student accounts for responsive documents. (Doc. No. 54 at 3.) According to Defendant, "absent some articulated or demonstrated and genuine need for specific and tailored searches of particular student email accounts, CWRU will not be searching the CWRU email accounts of its students." (*Id.* at 4.) Defendant argues that this action involves Title IX claims relating to Defendant's (CWRU's) actions, not the actions or communications unknown to Defendant in student emails. (*Id.*) Defendant argues that all relevant emails regarding CWRU's actions and decisions will be captured within the emails of administrators, faculty, and staff. (*Id.*)

Plaintiff argues that Defendant has not contested the relevance of these emails, nor has Defendant argued that this production would be unduly burdensome. (*Id.*) Plaintiff argues that the

student emails, particularly Jane Roe's student emails, "are likely to contain communications with students, employees, attorneys, and advisors not included in the original searches conducted by CWRU, including descriptions of meetings with CWRU faculty and staff." (*Id.*)  Plaintiff argues that Defendant has not provided any statutory or legal basis to refuse to produce these documents.  (*Id.*)  Plaintiff also argues that there are no privacy considerations here as Defendant's own policy provides that "[u]sers shall have no inherent expectation of privacy for information stored on and transported through CWRU information technology resources . . . ." (*Id.*)  Further, Plaintiff argues that to the extent any emails are between Jane Roe and her counsel, by using her student email, Jane Roe has waived her attorney client privilege as to those documents.  (*Id.*)

In support of his argument that Roe (and perhaps other students) waived their attorney-client privilege by using their student emails, Plaintiff cites to *Doe 1 v. George Wash. Univ.*, 480 F. Supp. 3d 224, 226 (D.D.C. 2020).  In that case, the court considered the four factors courts use to determine if the attorney-client privilege applies to information transmitted between an employee and his/her lawyer through the employer's email system in the student/university context:

> (1) does the corporation maintain a policy banning personal or other objectionable use, (2) does the company monitor the use of the employee's computer or e-mail, (3) do third parties have a right of access to the computer or e-mails, and (4) did the corporation notify the employee, or was the employee aware, of the use and monitoring policies?

*Id.* (quoting *In re Asia Glob. Crossing, Ltd.*, 322 B.R. 247, 257 (Bankr. S.D.N.Y. 2005)).  According to the court, "[e]ach case should be given an individualized look to see if the party requesting the protection of the privilege was reasonable in its actions."  *Id.* (quoting *Convertino v. U.S. Dep't of Justice*, 674 F. Supp. 2d 97, 110 (D.D.C. 2009)).  In analyzing each of the factors to the case at hand,

the court held that certain plaintiffs effectively waived the attorney-client privilege when they used their school-issued email accounts to communicate with their attorneys.  *Id.* at 229-230.

Here, the Court determines that responsive documents may be found in student email accounts, especially to the extent, for instance, that these emails may describe students' meetings and communications with CWRU administrators, faculty, and staff.  Defendant is thus ordered to search student accounts for responsive documents.

The Court finds, however, that Plaintiff's attorney-client privilege argument is premature.  To the extent students' waiver of their attorney-client privilege by use of their school-issued email becomes an issue, the Court will require additional briefing on the matter.  The parties will need to present additional case law research, as well as provide evidence as to any students' potential waiver of their attorney client privilege in accordance with the factors the Court must consider in determining if such a waiver has occurred.

### D.      Communications between Jane Roe and any advocates or advisors

Defendant does not agree to provide any communications between Jane Roe and any advocates or advisors for the same reasons it provided for not agreeing to search student email accounts.  (Doc. No. 54 at 4.)  Plaintiff agrees that communications with counseling services should remain confidential, and CWRU should provide a log of these communications.  (*Id.* at 5.)  Plaintiff argues, however, that communications with advocates such as Defendant's "Student Advocate for Gender Violence, Prevention, Education and Advocacy" are not subject to any privilege and are highly likely to contain evidence regarding Defendant's investigation and adjudication of Plaintiff's retaliation and harassment complaints.  (*Id.*)

The Court determines that the communications between Roe and her CWRU advisors and advocates may, in fact, "contain evidence regarding Defendant's investigation and adjudication of Plaintiff's retaliation and harassment complaints." Accordingly, the Court orders Defendant to produce documents responsive to Plaintiff's discovery requests that include communications between Jane Roe and her advocates or advisors, not to include communications between Jane Roe and counseling services. This directive also does not include any communications between Jane Roe and her attorney(s). As the Court previously stated, it will require additional briefing as to the waiver of attorney-client privilege if/once that issue arises.

### E. Narrative objections as to certain interrogatories

Defendant has objected to Requests for Interrogatories Nos. 5, 6, 8, 11, 12, 13, and 15 as requiring a narrative response. (*Id.*) Defendant argues that courts have recognized that interrogatories may be objected to, to the extent they improperly call for a narrative response. (*Id.*) Regardless, Defendant states that "information was not withheld from the responses to the referenced interrogatories on this basis." (*Id.*) Plaintiff argues that interrogatories may seek narrative responses and Defendant should be required to provide complete responses to these interrogatories.

In support of their arguments, both parties cite case law in which courts have indeed recognized a party's ability to object when an interrogatory calls for a narrative response. In particular, in *Giunto v. Metro. Grp. Prop. & Cas. Ins. Co.*, 2013 WL 12131306, at *8 (N.D. Ohio Aug. 20, 2013), Judge Solomon found a discovery request to be burdensome when it required "defense counsel [to] sift through 'their own body of evidence, [to] determine the elements of that body of evidence relevant to' its affirmative defenses and present it to a plaintiff, so that the plaintiff can easily use it against defendant." *Id.* (quoting *DeCuzzi v. Westlake*, 947 N.E.2d 1229, 1232 (Ohio

13

Ct. App. 2010)).  The court determined that when an interrogatory seeks to require a defendant to "compile the relevant information into a neat little package," so that the plaintiff can easily use it against the defendant, such a request is improper.  *See id.*

In *Gregg v. Local 305 Ibew*, 2009 WL 1325103, at *3 (N.D. Ind. May 13, 2009), the court held that a plaintiff may not seek narrative responses in an attempt to avoid the requirements limiting his number of allowed interrogatories.  *Id.*

This Court follows the courts' analysis in *Giunto* and *Gregg*.  Here, according to the exhibits submitted to the Court, Plaintiff has served 18 of his allotted 25 written interrogatories on Defendant. (Doc. No. 52-2, at 1-5, 20-23; *see* Fed. R. Civ. P. 33(a).)  And the interrogatories at issue request responses that would require Defendant to collect, analyze, and summarize information for Plaintiff, that Plaintiff could gather himself from documents produced in response to the document requests. Such requests are improper to the extent they seek a narrative response, and to the extent Plaintiff is seeking to combine multiple requests to avoid the limitation on such interrogatories.  Thus, Defendant is not required to further supplement its responses to these interrogatories.

In fact, in its responses to interrogatory nos. 5, 11, and 12, Defendant states that it *will* produce documents that Plaintiff can analyze to ascertain the information it requests in the interrogatories. Defendant further objects to the remaining interrogatories on various other grounds.  Because Defendant states that no information was withheld from its responses as a result of its narrative objections, requiring a further response would be futile.

Accordingly, the Court holds that Defendant's narrative objections as to these interrogatories are proper.

**F.      Relevance objections to evidence of external pressure and trainings**

Defendant objects to various interrogatories and requests for production on the grounds that evidence regarding pressure from the federal government and other sources to "crack-down on sexual assault on campus" is not relevant.  (Doc. No. 54 at 6.)  Defendant argues that this evidence is only relevant to Title IX erroneous outcome claims, as those claims require proof of a causal connection between the flawed outcome and gender bias.  (*Id.*)  Here, Defendant argues that the standards for Title IX retaliation, deliberate indifference, and selective enforcement claims do not require proof of a causal connection.  (*Id.*)  Defendant is not aware of any case law allowing for the discovery of evidence regarding federal pressure in cases without an erroneous outcome claim.  (*Id.*)

Plaintiff argues, and cites case law for the proposition, that external pressure on schools is relevant to these types of case because it gives students "a story about why [a school] might have been motivated to discriminate against males."  (*Id.* (quoting *Doe v. Purdue Univ.*, 928 F.3d 652, 669 (7th Cir. 2019)).  Plaintiff argues that while Defendant suggests that this evidence is only applicable in erroneous outcome cases, a claim under the selective enforcement theory also requires a showing that Defendant's conduct "was motivated by a sexual bias."  (*Id.* (quoting *Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003)).  Plaintiff further argues that Defendant's communications with federal investigators about this and other matters is independently relevant, "particularly as documents produced so far confirm that federal investigations spoke to [Defendant] specifically about Plaintiff's matter."  (*Id.*)

The Court finds that the requested information as to evidence of external pressure and trainings is not relevant.  Here, Plaintiff has asserted a selective enforcement claim under Title IX. As supported by the case law cited by Plaintiff, selective enforcement claims under Title IX do not

require proof of causation. The erroneous outcome standard, however, does require proof of causation—or in other words, that there was a causal connection between the flawed outcome and gender bias—but Plaintiff has not alleged a violation of Title IX based on an erroneous outcome. Thus, because selective enforcement claims require evidence to support an allegation that "a female was in circumstances sufficiently similar to his own and was treated more favorably" by CWRU, *Mallory*, 76 F. App'x at 641, not evidence of causation, evidence of external pressure is not relevant here.

### G.    Document production as to Title IX matters involving professionalism issues

The parties' final discovery dispute is in regards to Requests for Production Nos. 31 and 32, and Second Set of Requests for Production Nos. 16-19, which read:

> RFP No. 31: All documents concerning the any "Early Concerns" alleging allegations of Sexual Misconduct or Retaliation from 2016 to through 2021.

> RFP No. 32: All documents concerning medical students referred to the Professionalism Working Group or Committee on Students due to social media posts, social media activities, or electronic communications.

> Second RFP No. 16: All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning Jane Roe.

> Second RFP No. 17: All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning Jane Roe.

> Second RFP No. 18: All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Committee on Students concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

> Second RFP No. 19: All agendas, minutes or other documents describing the issues discussed, motions proposed or voted on, and activities undertaken by the Professionalism Working Group concerning the students who authored the "Survey" and "Petition" identified as Deposition Exhibits 4 and 5.

16

(Doc. No. 52-2 at 12, 27.)

Defendant has agreed to provide "redacted documents evidencing the School of Medicine's policy and practice of reviewing Title IX matters where there are professionalism issues." (Doc. No. 54 at 6.)  Defendant has also agreed to produce records where "Title IX cases are referred to the Committee on Students for review for potential professionalism issues." (*Id.*)  Defendant asserts that the Title IX outcome letters reference referral to the Committee on Students, but the Committee on Students does not review every single Title IX matter. (*Id.*)

Plaintiff argues that according to deposition testimony and affidavits in this case, Defendant's Committee on Students reviews Title IX documentation to determine if there were additional professionalism concerns at the School of Medicine. (*Id.*)  Plaintiff argues that these requests are designed to determine if such a policy exists, and if so, if it has been applied in an equitable manner. (*Id.*)  Plaintiff argues that Defendant "cannot pick and choose what documents to produce in support of this claim," but must produce all relevant documents. (*Id.*)

Because Defendant has agreed to produce redacted documents evidencing the School of Medicine's policy and practice of reviewing Title IX matters where there are professionalism issues, and has also agreed to produce records where Title IX cases are referred to the Committee on Students for review for potential professionalism issues, the Court finds Defendant's response adequate.  To be clear, however, the Court finds that Defendant's response, and subsequent production, must include documents responsive to each of the requests identified above, namely Plaintiff's Requests for Production Nos. 31 and 32 and Second Set of Requests for Production Nos. 16-19.  To the extent the parties need the Court to further evaluate this issue, it should submit additional briefing.  As it stands, Defendant is ordered to produce documents responsive to these requests as such documents

are relevant to Plaintiff's claims and Defendant has not identified any burden in completing such a production.

## IV.     Conclusion

As to the parties' Discovery Disputes, the Court holds as follows:

**A.**     The parties are ordered to file a proposed protective order for the Court's review and approval incorporating the Court's directives to revise section 1.5 of the proposed protective order within ten (10) days of the date of this Order.

**B.**     Defendant is ordered to produce documents related to the ongoing retaliation complaints submitted by Plaintiff to the extent they are responsive to any discovery requests propounded by Plaintiff.

**C.**     Defendant is ordered to search student accounts for responsive documents.

**D.**     Defendant is ordered to produce documents responsive to Plaintiff's discovery requests that include communications between Jane Roe and her advocates or advisors, not to include communications between Jane Roe and counseling services nor communications between Jane Roe and her attorney(s).

**E.**     Defendant's narrative objections as Requests for Interrogatories Nos. 5, 6, 8, 11, 12, 13, and 15 are proper.

**F.**     Evidence of external pressure and trainings is not relevant.

**G.**     Defendant is ordered to produce documents responsive to Plaintiff's Request for Production Nos. 31 and 32 and Second Set of Requests for Production Nos. 16-19.

**IT IS SO ORDERED.**


                     *s/Pamela A. Barker*
                     PAMELA A. BARKER
Date:  December 19, 2022           U.S. DISTRICT JUDGE